J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II*
*Limited Partnership and Resource Recovery*
*Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Wells Fargo Bank, N.A. | Case No.: 2:17-CV-04140-JJT |
| Plaintiff, | |
| v. | **CWT PARTIES' OPPOSITION TO MOTION FOR IMMEDIATE RELEASE OF RESTRAINED FUNDS** |
| Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting, | |
| Defendants. | **Oral Argument Requested** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

    A.    The New York Court Enters Judgment Against Dennis Danzik and RDX for Defrauding the CWT Parties Out of Millions in Tax Credits ..................... 3

    B.    The New York Court Holds Danzik and RDX in Criminal and Civil Contempt ..................................................................................................... 4

    C.    The CWT Parties Take Discovery About Danzik's Assets ........................... 5

    D.    Danzik Launders Money Through Danzik Applied Sciences, LLC .............. 6

    E.    Danzik Launders Money Through Solverdi Worldwide Corporation ............ 6

    F.    Danzik Launders Money Through Wyo Tech Investment Group, LLC .......... 7

    G.    The Restraining Notice and the Instant Interpleader Action ...................... 11

ARGUMENT ...................................................................................................... 12

    I.    THE EXISTING RECORD ESTABLISHES A MATERIAL ISSUE OF FACT AS TO DANZIK'S INTEREST IN THE RESTRAINED FUNDS AND THE CWT PARTIES ARE, AT A MINIMUM, ENTITLED TO DISCOVERY BEFORE ANY FUNDS ARE RELEASED. ............................ 13

    II.    WYO TECH'S CHALLENGES TO THE VALIDITY OF THE RESTRAINING NOTICE FAIL. ...................................................... 15

CONCLUSION .................................................................................................. 17

Defendants CWT Canada II Limited Partnership ("CWT Canada"), Resource Recovery Corporation ("RRC"), and Jean Noelting ("Noelting," and together with CWT Canada and RRC, the "CWT Parties") submit this memorandum of points and authorities, together with the Declaration of Jeffrey M. Eilender, in opposition to the motion of Defendant Wyo Tech Investment Group, LLC ("Wyo Tech") for immediate release of the restrained funds (the "Motion").

## **INTRODUCTION**

This interpleader action arises from a New York Restraining Notice that the CWT Parties served on a New York branch of Wells Fargo in furtherance of their efforts to collect on a more-than $7 million judgment entered in the CWT Parties' favor against Wyo Tech's former principal Dennis Danzik.  While the $546,282.55 that Wells Fargo restrained in accordance with the Restraining Notice was held in an account purportedly belonging to Wyo Tech, the evidence already available—before any discovery has been taken in this action—shows that Danzik exercises de facto control over the account such that the restrained funds actually belong to him.  For example:

- Wyo Tech was formed by Danzik's wife Elizabeth who, until recently was a homemaker with no relevant business experience.

- Over half of the funds paid from the restrained Wyo Tech account were paid to Danzik's company (Danzik Applied Sciences, LLC ("DAS")), or to Elizabeth Danzik, Danzik's daughter, Jhovanna, and to other known Danzik cronies.

- Wyo Tech also paid thousands of dollars in Danzik's legal fees out of this account (in cases in which Wyo Tech was not involved).

- The signature card on the account states that Jovahna Danzik (a recent college graduate with no relevant business experience or other qualifications) is the "owner with control" of Wyo Tech.

That Danzik would use a sham company to hold his assets and keep them out of the reach of creditors is nothing new. Indeed, in the New York action in which the judgment against Danzik was entered, the Court held Danzik in criminal and civil contempt—and issued a warrant for his arrest—for, among other things, creating a "sham company" to evade creditors and violate a TRO prohibiting him from transferring funds without Court permission. Danzik has since fled New York, and he will be imprisoned if he returns.

Danzik is now attempting to perpetrate the same fraud in this Court. On August 1, 2018, the Court granted Wells Fargo's unopposed motion to interplead the restrained funds. With this motion, Wyo Tech—not coincidentally represented by Danzik's longtime counsel—seeks to skip over the second stage of the interpleader action: *i.e.*, the judicial determination of the ownership of the funds. Although styled as an application for "immediate release" of the restrained funds, the Motion, in effect, seeks summary judgment on the issue of ownership before the parties have conducted any discovery in this action. Wyo Tech asks the Court to release the funds based on its counsel's mere assertion that the funds do not belong to Danzik. It is well-established, however, that a judgement creditor can restrain and garnish funds in which the judgment debtor has an interest, even if the funds are nominally held in the name of a third-party. As shown below, the existing record presents material issues of fact as to Danzik's interest in the restrained funds, thus precluding an award of summary judgment. At a minimum, the CWT Parties are entitled to conduct discovery before the funds are summarily released.

For these reasons, the Motion should be denied.

## STATEMENT OF FACTS

**A.     The New York Court Enters Judgment Against Dennis Danzik and RDX for Defrauding the CWT Parties Out of Millions in Tax Credits**

In 2013, the CWT Parties sold a renewable energy company called Changing World Technologies, L.P. ("CWT") to RDX Technologies Corporation ("RDX").  Danzik was RDX's CEO.  Under a subsidy program enacted by Congress, CWT was eligible for tax credits equal to $1 per gallon of renewable diesel fuel oil ("RDO") that it produced and sold. These credits could be applied to offset excise or corporate income taxes. Because RES owed no such taxes (as it had no profits), it was to receive a payment for each gallon of RDO. For RDO produced and sold in 2012, RES stood to receive at least $6 or $7 million in cash payments from the U.S. Government.

When RDX acquired CWT, in 2013, the parties agreed that tax credit payments the company received after the sale that were attributable to the 2012 tax year would be immediately remitted to the CWT Parties.  However, following the acquisition, Danzik and RDX refused to remit over $5 million of tax credits to which RRC and CWT Canada were entitled. Instead, Danzik and RDX transferred the tax credits to Danzik himself, Danzik's wife Elizabeth, and companies that Danzik or his wife controlled.  On November 4, 2015, because of what the New York court held were "multiple extensive, willful and contumacious violations of this court's discovery orders," the New York court struck Danzik's and RDX's defenses. On August 4, 2016, the New York court granted the CWT Parties' motion for a default judgment.  Ex. 1.[1]

On September 7, 2016, the New York court entered judgment in favor of the CWT Parties and against Danzik and RDX for $7,033,491.13—which included the stolen tax credits, amounts due from a separate fraud, and pre-judgment interest.  Ex. 2.

---

[1] Citations to "Ex. __" refer to the exhibits to the accompanying declaration of Jeffrey M. Eilender.

**B.** **The New York Court Holds Danzik and RDX in Criminal and Civil Contempt**

On June 3, 2016, after a four-day hearing, the New York court also held Danzik and RDX in criminal and civil contempt for their violation of additional court orders. Specifically, the court held that Danzik (a) deliberately violated an attachment order directing him to return the stolen tax credits, and a TRO prohibiting RDX from transferring funds without court permission; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft.  Ex. 3.

In holding Danzik and RDX in contempt, the New York court held that the evidence at the contempt hearing showed "beyond a reasonable doubt, and certainly by clear and convincing evidence," that Danzik "stole all of the money" from the tax credits. The court also held that Danzik "admit[ted] his noncompliance with the Attachment Order," which required him to restore the stolen funds, and that his excuse for his noncompliance—that he lacked the funds to comply—was a "lie." Indeed, the New York court held that Danzik transferred the tax credit funds to "himself, his family members and their businesses," and then used that money to pay "personal expenses." *Id.*

The New York court also held that Danzik violated the TRO by creating a "sham" company, called M2R Licensing, LLC, for the purpose of "evading the court's orders and defrauding RDX's creditors." Indeed, the New York court held that "[a]fter having deposited the tax credit funds in a new, secret Hometown bank account, Danzik made sure to invoice all of RDX's clients with M2R invoices so revenue would be received by M2R instead of RDX," and changed invoices to existing RDX customers to come from M2R instead, "*before* M2R was even formed." The purpose of this scheme was for RDX to then claim that it "had no funds to comply with the Attachment Order." But according to the New York court, "that excuse" was a "fraud on the court."  *Id.*

Further, according to the New York court, Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court." *Id.*

After holding Danzik and RDX in contempt, and giving them an opportunity to purge their contempt by restoring the stolen tax credits (which they did not do), the New York court issued a commitment order and an arrest warrant for Danzik.  Exs. 4, 5. Danzik has since fled New York. If he returns, he will be arrested and imprisoned.

**C.    The CWT Parties Take Discovery About Danzik's Assets**

Danzik and RDX have waived any appeal of the judgment entered against them in New York. But Danzik and RDX have refused to pay any portion of the judgment, and have actively interfered with the CWT Parties to enforce the judgment and take discovery about their assets.

Indeed, the CWT Parties have been seeking post-judgment discovery from Danzik and RDX in New York, Arizona, and Wyoming—where the judgment is also domesticated.  Danzik has largely refused to cooperate in this discovery, forcing the CWT Parties to seek information about his assets from reliable nonparties.  Initially, the CWT Parties did a nationwide search for bank accounts in Danzik's name, but came back with almost nothing. The CWT Parties also served numerous nonparty subpoenas on banks they believed might hold funds belonging to Danzik, but have not found any accounts in his name with a positive balance. It thus appeared that Danzik had no financial existence.

But according to Danzik himself, he is gainfully employed, and continues to enjoy a significant income stream. Indeed, during his December 2016 deposition in his failed Wyoming Chapter 11 bankruptcy—which Danzik filed the night before the last day of the contempt hearing in New York, and which the bankruptcy court dismissed as having been

filed in "bad faith"—Danzik testified that he averages "somewhere between $800,000, and a couple million dollars a year" in income.  Ex. 6 at 88; Ex. 7 (order dismissing Danzik's Wyoming bankruptcy case).  Further, during the October 16, 2017 hearing in Arizona state court, Danzik testified that he is currently employed full time.  Ex. 8 at 18. And more fundamentally, Danzik has over $5 million of the CWT Parties' tax credits.

Given that Danzik appears to have hidden his assets and the stolen tax credits, and appears to have almost no assets in his own name, the CWT Parties expanded their search to include entities that Danzik owns or controls.

**D.   Danzik Launders Money Through Danzik Applied Sciences, LLC**

The first entity to which the CWT Parties looked was DAS, which is a Delaware LLC that Danzik and his wife own.  A forensic accounting expert retained by the CWT Parties determined that DAS is one of the entities to which Danzik transferred the stolen tax credits.  Danzik testified that he "book[s]" business "through" DAS.  Ex. 9 at 42. While he claimed that his wife, Elizabeth, is DAS's majority owner and managing member, Elizabeth was a housewife until recently, and had little or no business experience.  Further, DAS has paid Danzik's legal fees in New York, Arizona, and Wyoming—and has even paid the legal fees for some of Danzik's coconspirators.  Ex. 10.

Moreover, Danzik's Arizona counsel, which purport to represent DAS in a separate lawsuit in federal court in Arizona, send bills to DAS, "c/o Danzik Danzik," at Danzik's e-mail address—even though Danzik is not a party to that separate action.  Ex. 11.  Thus, the evidence shows that Danzik controls DAS, and has a beneficial interest in all DAS's assets.

**E.   Danzik Launders Money Through Solverdi Worldwide Corporation**

Rather than paying most of its profits to Danzik and Elizabeth—DAS's two supposed owners—DAS transfers tens of thousands of dollars each month to another

Danzik entity, Solverdi.  Ex. 12.

The evidence shows that Solverdi holds Danzik's "slush fund"—which he uses for personal expenses and to support his lavish lifestyle.  Danzik is the only authorized signer on the Solverdi account ending in 2153.  Ex. 13.  And Danzik—an admitted compulsive gambler—spends tens of thousands of dollars each month at casinos in Las Vegas using his Solverdi account.  Ex. 14.  Danzik also uses this Solverdi account for other personal expenses, including dinners at PF Chang's and Red 8 (an Asian restaurant at the Wynn Las Vegas), and purchases at local and online stores like Walgreen's and Amazon.  Danzik also withdraws cash from the account—indeed, on October 9, 2017, he withdrew $3,400 for himself.  Ex. 15.  Thus, the evidence shows that Danzik's money flows through DAS accounts, into the Solverdi "slush fund," and then goes out to support Danzik's lavish lifestyle and gambling habit.

## F.    Danzik Launders Money Through Wyo Tech Investment Group, LLC

The evidence shows that Danzik, Elizabeth, and Jovahna keep DAS—and thus Solverdi—funded by transferring hundreds of thousands of dollars from Wyo Tech to DAS.  According to William J. Hinz (who claims to be a member and the interim CEO of Wyo Tech) Elizabeth formed Wyo Tech in Wyoming, and set up its bank accounts.  Also, according to Hinz, Elizabeth acted as Wyo Tech's "manager" when Wyo Tech was first formed. And according to Elizabeth herself, Elizabeth was a Wyo Tech employee doing "bookkeeping" and "other duties."  Ex. 16. Until recently, Elizabeth had no experience in "bookkeeping," "manage[ment]," or entity formation.

On September 2, 2016, Elizabeth opened a Wyo Tech account at Wells Fargo ending in 0345. On the account application, Elizabeth listed herself as the "Owner with Control of the Entity."  Ex. 17.  The statements for this account were sent to 1108 14th., Cody, Wyoming 82414, which is Danzik's and Elizabeth's address.  Ex. 18.  Almost

immediately after opening this Wyo Tech account, Elizabeth began transferring tens of thousands of dollars from the Wyo Tech account to DAS accounts, and to her own personal accounts. Indeed, Elizabeth transferred money to DAS on almost a daily basis, sometimes for as much as $20,000, and other times for as little as $100. Ex. 19. Elizabeth also wrote checks for thousands of dollars from this Wyo Tech account to DAS, Danzik, and even Solverdi. And Elizabeth withdrew thousands of dollars in cash from this account for herself. Ex. 20. This account was suddenly closed in April 2017, with the last few transfers going to DAS or to Elizabeth herself.

Hinz has claimed that "Danzik has been engaged to work on engineering and construction projects for Wyo Tech through" DAS—supposedly explaining some of these transfers to DAS—and that "neither Mr. Danzik nor DAS is currently engaged to perform further services for Wyo Tech." Ex. 21. But these statements are inconsistent with Hinz's own previous statements, and Wyo Tech's bank records. Indeed, as explained above, Elizabeth wrote checks directly to Danzik. So either Danzik was also employed directly by Wyo Tech—which Hinz has denied—or he was receiving payments from Wyo Tech for no reason. Further, Hinz and his counsel previously told the CWT Parties' counsel that, as of October 2017, DAS had worked for Wyo Tech only in the first quarter of 2017. But Wyo Tech's bank statements show that Wyo Tech was paying tens of thousands of dollars per month to DAS through the fall of 2017. Moreover, while Elizabeth has claimed that she no longer works for Wyo Tech, she still maintains a credit card in its name. She uses this credit card to pay personal expenses, including a Sirius XM Radio subscription and limousine service. Ex. 22.

On April 20, 2017, Jovahna opened up a new Wyo Tech account at Wells Fargo, ending in 2809 (the "Wells Fargo Account"). This is the account that the CWT Parties restrained, giving rise to this interpleader action. On the Wells Fargo Account

application, Jovahna listed herself "Owner with Control of the Entity."  Ex. 23.  Jovahna recently graduated from college, and aside for working for DAS, has no relevant business or professional experience. Indeed, according to a resume posted online, Jovahna went to college for design and art.  Ex. 24.  After opening the Wells Fargo Account, Jovahna then almost immediately began transferring tens of thousands of dollars to DAS accounts, Danzik, and Elizabeth. Again, these transfers varied drastically in amount, and were made on almost a daily basis. Indeed, on some days, Jovahna made half a dozen separate transfers.  Ex. 25.  Further, Jovahna wrote checks for tens of thousands of dollars to herself and to Elizabeth, and to many of Danzik's old cronies from his time at RDX— including Tony Calim, Vince Meil, Doug Bean, and Monica Garcia.  Ex. 26.

Indeed, Jovahna used the Wells Fargo Account as the Danziks' personal piggy bank. Approximately 65% of the spent funds from the Wells Fargo Account were paid to DAS, Elizabeth, Jovahna, or Danzik's known cronies.  Moreover, Jovahna used the Wells Fargo Account to pay for Danzik's personal expenses. Indeed, she used the Wells Fargo Account for purchases at Best Buy, payment of Danzik's Verizon and other bills, and hotel stays.  Further, Jovahna paid thousands of dollars to Danzik's Arizona counsel from the Wells Fargo Account.  Ex. 27.  Wyo Tech is not a party to any lawsuits with Danzik, and Danzik's Arizona counsel has stated that it does not represent Wyo Tech, and does not know why Wyo Tech paid Danzik's legal fees.  Ex. 28.

Moreover, Elizabeth also maintained another Wyo Tech account at U.S. Bank ending in 3829. From this account, she paid thousands of dollars to Danzik's New York counsel, Catafago Fini LLP.  Ex. 29.  Danzik's New York counsel, Jacques Catafago, has stated that this payment was for legal services his firm rendered to one of Danzik's coconspirators—whom the RRC and CWT Canada are suing separately in Arizona federal court—Tony Ker.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, the evidence shows that Danzik—acting with Elizabeth, Jovahna, and Wyo Tech, and with Hinz's approval and assistance—is laundering his own money through "investors" or other means into Wyo Tech, and then out to DAS and Solverdi and to himself and his family members, or he has some beneficial interest in or entitlement to the funds in the Wells Fargo Account. Indeed, Danzik even pays some of his personal expenses directly from Wyo Tech. Further, the evidence shows that to the extent there are legitimate "investors" in Wyo Tech, Danzik, Elizabeth, Jovahna, and Wyo Tech are stealing from those investors by transferring Wyo Tech money to DAS, Danzik, Elizabeth, Jovahna, and Solverdi—as he did with CWT and RDX.

Moreover, Jovahna also wrote a check for $25,000 from the Wells Fargo Account to Inductance for Inductance's "opening." Ex. 30. According to Hinz, Inductance was Danzik's "employer" as of October 2017, and Hinz was Inductance's CEO. On October 27, 2017, the CWT Parties served a subpoena duces tecum on Inductance in the Wyoming judgment-enforcement action. Inductance never responded to this subpoena. In November 2017, the CWT Parties also served a writ of garnishment on Inductance in the Wyoming judgment-enforcement action to garnish Danzik's wages. Inductance never responded to this subpoena either.

According to Danzik's recent Chapter 11 bankruptcy petition, Danzik no longer works for Inductance, and instead now works for another company called Learsi, LLC. Ex. 31. But according to RDX's recent Chapter 11 bankruptcy petition, Inductance is paying RDX's legal fees, and is a "potential investor in a prospective plan of reorganization" of RDX. Ex. 32. And Inductance—just like Wyo Tech—has paid thousands of dollars to Elizabeth and Jovahna, including thousands of dollars for supposed "petty cash." The evidence thus shows that Inductance is a sham entity controlled by Danzik, Hinz, Elizabeth, and Jovahna—and operated to further Danzik's

and the Crossclaim Defendants' schemes and efforts to evade creditors.

On December 5, 2017, RDX filed for Chapter 11 bankruptcy protection in Arizona. On December 6, 2017, Danzik filed for Chapter 11 bankruptcy protection in Wyoming. Danzik and RDX filed these bankruptcy petitions on the eve of depositions they were required to attend in the Arizona judgment-enforcement action.  This pattern of obstructionism is consistent with Danzik's and RDX's previous bankruptcy filings. Indeed, as explained above, Danzik previously filed bankruptcy on the eve of the last day of the contempt hearing in New York in an attempt to stay the contempt hearing. This bankruptcy was dismissed in bad faith. RDX also filed bankruptcy in a conceded effort to delay the New York action as well. RDX ultimately dismissed its petition after conceding that there was no purpose behind its Chapter 11 action if the automatic stay were lifted. Danzik's and RDX's most recent bankruptcy filings were made in bad faith.

**G.     The Restraining Notice and the Instant Interpleader Action**

On October 18, 2017, the CWT Parties served a restraining notice, issued pursuant to the Section 5222 of the New York Civil Practice Law and Rules ("CPLR"), on a New York branch of Wells Fargo (the "Restraining Notice").  Dkt. 12, Ex. B.  The Restraining Notice required Wells Fargo to restrain "any accounts held in the name of Wyo Tech Investment Group LLC."  The notice attached a copy of a check issued from a Wyo Tech account at Wells Fargo, and payable to Danzik's counsel, Wilenchik and Bartness.

Wells Fargo restrained the funds pursuant to the Restraining Notice.  Wyo Tech, then represented by attorney Richard Walker, protested that the funds were improperly restrained because they belonged to Wyo Tech, not to Danzik.  In response, the CWT Parties' counsel sent a letter spelling out the basis for their belief that Danzik had an interest in these funds.  Dkt. 12, Ex. D.

On November 9, 2017, Wells Fargo filed the instant interpleader proceeding.  On

1
2
3
4
5
6
7
8
9
10
11

August 1, 2018, the Court granted Wells Fargo's motion to interplead the restrained funds. Dkt. 69. In the same order, the Court dismissed Wyo Tech's counterclaims against Wells Fargo for wrongful garnishment and aiding and abetting, finding that they failed to state a claim upon which relief could be granted. In so ruling, the Court rejected Wyo Tech's argument that the Restraining Notice was facially defective because it was served on a Wells Fargo branch in New York, and the funds were held in Arizona. The Court held that this so-called "single entity rule" applied only to foreign bank branches, and did not preclude enforcement in Arizona of "an out-of-state garnishment notice served on an out-of-state branch." *Id.* at 6. Accordingly, "Wells Fargo had authority under New York law to comply with the Restraining Notice by freezing a bank account opened in Arizona." *Id.*

12
13
14
15
16
17
18
19

On August 16, 2018, Wyo Tech—now represented by Danzik's counsel, Wilenchik and Bartness—filed what it called a "Motion for Immediate Release of Wrongfully Restrained Funds." Dkt. 72. The Motion asks the Court to determine the ultimate issue in this interpleader action—*i.e.*, whether Danzik has an interest in the restrained funds such that they can be used to satisfy the CWT Parties' judgment. Thus, the motion effectively seeks summary judgment in favor of Wyo Tech, although counsel did not submit a Statement of Undisputed Material Facts, as required by LR 56.1.

20
21
22
23

On August 27, 2018, the Court entered a scheduling order, negotiated by the parties, pursuant to which fact discovery is scheduled to be completed by April 29, 2019, and the cut-off for all discovery is August 9, 2019. Dkt. 79. To date no discovery has been conducted.

24

## ARGUMENT

25
26
27
28

"An interpleader action usually proceeds in two stages. At the first stage, the court determines whether the interpleader action is appropriate. . . . At the second stage, the court adjudicates the defendants' competing claims to the interplead funds, and the action

usually proceeds as any other civil action." *Metro. Life Ins. Co. v. Reynolds*, 2013 WL 6048808, at *2 (D. Ariz. Nov. 15, 2013). Thus, the parties to an interpleader are entitled to conduct discovery and to have the dispute adjudicated on a full record. Courts have rejected applications for "early distribution of disputed funds" that do not afford the parties "full due process of law." *Wells Fargo Bank, Nat. Ass'n v. Magellan Ship Owners Ass'n*, 2010 WL 2266752, at *2 (D. Ariz. June 4, 2010).

In the instant Motion, Wyo Tech effectively asks this Court to grant it summary judgment on the central questions in dispute.[2] As shown below, the motion must be denied because the existing record presents material issues of fact as to the ownership of the restrained funds, and, at a minimum, the CWT Parties are entitled to take discovery on this issue before the Court rules. Furthermore, Wyo Tech's legal arguments concerning the facial validity of the restraining notice are incorrect, and indeed were already rejected by this Court in its prior order.

Thus, the Motion should be denied.

**I. THE EXISTING RECORD ESTABLISHES A MATERIAL ISSUE OF FACT AS TO DANZIK'S INTEREST IN THE RESTRAINED FUNDS AND THE CWT PARTIES ARE, AT A MINIMUM, ENTITLED TO DISCOVERY BEFORE ANY FUNDS ARE RELEASED.**

Wyo Tech's motion is based on the circular argument that the restrained funds should be summarily released because the Wells Fargo account is "the sole property of Wyo Tech." Wyo Tech Mem. at 9. Yet this is the very issue this Court must determine in this interpleader action—*i.e.*, whether the funds are, in fact, the sole property of Wyo

---

[2] Because it is really a summary judgment motion, Wyo Tech's Motion is also procedurally deficient in that it lacks an accompanying Statement of Undisputed Material Facts, as required by Local Rule 56.1 The motion can be denied for this reason alone. *See* L.R. 56.1 ("failure to submit a separate statement of facts . . . may constitute grounds for the denial of the motion"); *see also Fernandez v. City of Phoenix*, 2012 WL 1985682, at *3 (D. Ariz. June 4, 2012) ("non-compliance" with L.R. 56.1 is an "an independent ground" for denying a summary judgment motion.

Tech, or whether Danzik instead has an interest in those funds.  Although Wyo Tech flatly asserts that "[t]here is no evidence that Mr. Danzik held any interest in the Wyo Tech funds," Wyo Tech. Mem. at 9, the existing record is replete with evidence that Danzik exercised de facto control over the account and the funds were largely used for his personal benefit.  The evidence detailed above shows that Danzik used the Wyo Tech account to launder funds that were ultimately transferred to Danzik's accounts at DAS and Solverdi where he spent the money to support his lavish lifestyle.  Moreover, tens of thousands of dollars from the account were used to pay Danzik's personal attorneys. Danzik's de facto control of Wyo Tech's account is further supported by the fact that the company was set up by Danzik's wife (until recently a homemaker with no relevant business experience), and Danzik's daughter (a recent college graduate with a degree in art and design) has signature authority for the account and is listed in bank records as the "Owner with Control of the Entity."

It is well-established that a judgment creditor can restrain funds even though they "are not nominally held in the name of the judgment debtor . . . if such funds are used for the benefit of the judgment debtor."  *Wimbledon Financing Master Fund, Ltd. v. Bergstein*, 2018 WL 2163586, at *3 (Sup. Ct. N.Y. Co. May 10, 2018); *see also Bingham v. Zolt*, 231 A.D.2d 479, 479 (N.Y. App. Div. 1st Dep't 1996) (restraining notice properly issued when evidence showed that "judgment debtor ha[d] regularly used another's bank account as a 'recipient' of the debtor's personal assets or as a source for payment of the debtor's expenses," including using funds from this account to "pay his legal expenses"); *ERA Mgt., Inc. v Morrison Cohen Singer & Weinstein*, 199 A.D.2d 179, 179 (N.Y. App. Div. 1st Dep't 1993) (bank accounts belonging to non-debtor entities were properly restraining when evidence showed that accounts were "regularly used to pay [debtor's] personal expenses" and functioned as "'recipients' of his personal assets").  Here, the

evidence easily creates a material issue of fact that the Wyo Tech funds were used for Danzik's benefit and thus properly subject to the Restraining Notice. *See Blue Giant Equipment Corp. v. Tec-Ser, Inc.*, 92 A.D.2d 630, 631 (N.Y. App. Div. 3d Dep't 1983) (reversing vacature of restraining notice and noting that "issue of fact . . . concerning the judgment debtor's continued interest in the accounts [ ] is resolvable in a hearing").

At a minimum, the CWT Parties are entitled to take discovery, pursuant to the Court's scheduling order, before the funds are summarily released. Thus, Wyo Tech's motion, filed nearly a year before the discovery cut-off is at best premature. *See Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("Implicit in the opportunity to respond is the requirement that sufficient time be afforded for discovery necessary to develop facts essential to justify a party's opposition to the motion [for summary judgment]."); *Jordan v. Ryan*, 2010 WL 1541588, at *2 (D. Ariz. Apr. 19, 2010) (denying summary judgment as "premature" where "[n]o discovery has taken place"); *Bank of Am., N.A. v. Woodcrest Homeowners Ass'n*, 2016 WL 8732298, at *1 n.1 (D. Nev. Mar. 25, 2016) (summary judgment motion denied as "premature" when filed "ten months before the discovery cut-off date").[3]

## II.   WYO TECH'S CHALLENGES TO THE VALIDITY OF THE RESTRAINING NOTICE FAIL.

Wyo Tech argues that the Restraining Notice is invalid as a matter of law because (a) there was allegedly no evidence that Danzik had any interest in the restrained funds; (b) the Restraining Notice, which was served on a Wells Fargo branch in New York allegedly could not apply to an account held in Arizona; and (c) the CWT Parties did not

---

[3] Although its counsel previously stipulated to an extensive discovery schedule, Wyo Tech argues that the CWT Parties should not be entitled to take any discovery in this action because they have had the opportunity to depose Dennis and Elizabeth Danzik in other proceedings. But those depositions focused largely on other matters at issue in those cases and are not a substitute for the discovery the CWT Parties are entitled to take in this separate interpleader action.

comply with Arizona's Writ of Garnishment Statute.  As an initial matter, Wyo Tech's arguments about the validity of the restraining notice are irrelevant now that the previously restrained funds have been interplead with the Court—with Wyo Tech's consent.  The question before the Court in this interpleader action is not whether the original restraint was valid, but rather whether Danzik does or does not have an interest in those funds such that they can be used to satisfy a portion of the CWT Parties' judgment.

In any event, Wyo Tech's arguments regarding the Restraining Notice fail.

***First***, Wyo Tech's argument that the Restraining Notice was invalid because Wells Fargo had no reason to believe that Danzik had an interest in the funds is incorrect.  The CWT Parties provided such evidence—including the check attached to the Notice itself (which shows the use of the funds to pay Danzik's personal lawyers who were not then representing Wyo Tech), and the information provided in the letter from the CWT Parties' counsel, which was copied to Wells Fargo's counsel.  Moreover, as this Court ruled in its August 1, 2018 order, where, as here, a restraining notice specifies the property to be levied upon, the garnishee bank has "no duty to investigate the validity of the Restraining Notice."  Dkt. 69 at 8.  Thus, the Restraining Notice was facially valid, and the funds were validly restrained.  Following the completion of discovery, this Court will resolve the issue of Danzik's interest in those funds.

***Second***, Wyo Tech erroneously argues that under the so-called "single entity rule," "a restraining notice served on a New York branch will be effective for assets held only in accounts at that branch but will have no impact on assets in other branches."  Wyo Tech Mem. at 15.  To the contrary, under New York law, "[o]nce a court has personal jurisdiction over the judgment debtor and bank, it can order the turn over of 'money or other personal property,' even property located out of state." *Signature Bank v. HSBC Bank USA, N.A.*, 67 A.D.3d 917, 918 (N.Y. App. Div. 2nd Dep't 2009); *see also*

*McCarthy v Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 275 (E.D.N.Y. 2011) ("as long as the New York court has personal jurisdiction over a defendant, regardless of whether it is the judgment debtor himself, or the garnishee bank, the court may order it to turn over out-of-state property to a judgment creditor") (citing *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009)).[4]

This Court already rejected Wyo Tech's interpretation of New York's "single entity rule," holding that "Wells Fargo had authority under New York law to comply with the Restraining Notice by freezing a bank account in Arizona." Dkt. 69 at 6. That holding is now "law of the case" and cannot be revisited on this Motion. *See United States v. County of Maricopa*, 151 F. Supp. 3d 998, 1013 (D. Ariz. 2015) (citing *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012)) ("Law of the case doctrine precludes a court from reexamining an issue previously decided by the same court, or a higher court, in the same case") (internal quotation marks omitted).

**Third**, Wyo Tech's argument that the CWT Parties failed to comply with Arizona's Garnishment completely misses the mark. Again, this Court ruled that the CWT Parties could properly use a New York restraining notice to restrain funds held by Wells Fargo in Arizona. Wyo Tech cites no case to the contrary, and provides no argument why the Arizona courts would not afford full faith and credit to an order issued from a sister state.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court should deny Wyo Tech's Motion.

---

[4] In *Motorola Credit Corp. v. Standard Chartered Bank*, the New York Court of Appeals held that "a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches." 24 N.Y.3d 149, 159 (2014). But the court's holding there was limited to the question whether process served in New York could restrain "assets held in *foreign* branch accounts," and the court specifically noted that it had "no occasion" to address whether process served in New York could restrain assets held in "domestic bank branches in New York or elsewhere in the United States." *Id.* at 159 n.2.

1   Dated: October 9, 2018
2          Phoenix, Arizona

3
4                                         Respectfully submitted,

5                                         **RYAN RAPP & UNDERWOOD, P.L.C.**

6                                         By:     /s/ Henk Taylor (016321)
7                                                 J. Henk Taylor (016321)
                                                  3200 N. Central Ave., Suite 1600
8                                                 Phoenix, Arizona 85012
                                                  Telephone: (602) 280-1000
9                                                 Facsimile: (602) 265-1495
                                                  E-Mail: htaylor@rrulaw.com
10

11                                        **SCHLAM STONE & DOLAN LLP**

12                                                Jeffrey M. Eilender
13                                                Bradley J. Nash
                                                  Joshua Wurtzel
14                                                26 Broadway
15                                                New York, New York 10004
                                                  Telephone: (212) 344-5400
16                                                Facsimile: (212) 34407677
                                                  E-Mail: jme@schlamstone.com
17                                                E-Mail: bnash@schlamstone.com
18                                                E-Mail: jwurtzel@schlamstone.com

19                                        *Attorneys Defendants CWT Canada II Limited*
20                                        *Partnership and Resource Recovery*
                                          *Corporation*
21

22

23

24

25

26

27

28

1    **ORIGINAL** e-filed and **COPIES**

2    e-mailed this 9th day of October 2018 as
     follows:

3
     Dennis I. Wilenchik
4    WILENCHIK & BARTNESS, P.C.
5    The Wilenchik & Bartness Building
     2810 North Third Street
6    Phoenix, Arizona 85004
7    admin@wb-law.conm

8    Leo R. Beus
     BEUS GILBERT PLLC
9    701 N. 44th Street
10   Phoenix, Arizona 85008
     lbeus@beusgilbert.com
11
     *Attorneys for Wyo Tech Investment Group, LLC*
12

13

14   /s/ Henk Taylor
15   J. Henk Taylor

16

17

18

19

20

21

22

23

24

25

26

27

28