**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |
| Wyo Tech Investment Group LLC, | |
| Third Party Plaintiff, | |
| v. | |
| Joshua Wurtzel, et al., | |
| Third Party Defendants. | |
| Wyo Tech Investment Group LLC, | |
| Cross Claimant, | |
| v. | |
| Jean Noelting, et. al., | |
| Cross Defendants. | |

## INTRODUCTION

In September 2016, CWT Canada II Limited Partnership, Resources Recovery Division, and Jean Noelting (collectively, "Judgment Creditors") obtained a $7 million judgment in New York state court against Dennis Danzik and RDX Technologies

Corporation (collectively, "Judgment Debtors"). In October 2017, the Judgment Creditors' law firm, Schlam Stone & Dolan, LLP ("Law Firm"), utilized this judgment to issue a "restraining notice" to a New York-based branch of Wells Fargo bank. The notice asserted that Wells Fargo was required to freeze a particular account with a balance of $546,282.55. Upon receipt of the notice, Wells Fargo froze the account.

Although the Judgment Creditors had reasons to suspect the Judgment Debtors held an interest in the frozen account, the account was not actually held in either of the Judgment Debtors' names. Instead, it was held in the name of Wyo Tech Investment Group LLC ("Wyo Tech"), an Arizona-based company. When Wyo Tech learned its account had been frozen, it complained to the Judgment Creditors and to Wells Fargo, disputed whether the Judgment Debtors had any interest in the account, and threatened to sue. In response, Wells Fargo filed an interpleader action in this Court.

Since the interpleader action was instituted in November 2017, Wyo Tech has asserted a veritable smorgasbord of counterclaims, crossclaims, and third-party claims. In August 2018, the Court issued an order (Doc. 69) dismissing Wyo Tech's counterclaims against Wells Fargo and directing Wells Fargo to transfer the disputed funds into an account held by the Clerk of Court. That transfer has now occurred, and three additional motions are now fully briefed and ripe for resolution: (1) a motion to dismiss Wyo Tech's crossclaims against the Judgment Creditors and third-party claims against the Law Firm[1] (Doc. 48), (2) Wyo Tech's "Motion for Immediate Release of Wrongly Restrained Funds" (Doc. 72), and (3) Wells Fargo's motion for attorneys' fees and costs (Doc. 85).[2]

As explained below, the Court will grant the motion to dismiss Wyo Tech's crossclaims and third-party claims because the Court lacks personal jurisdiction over any

---

[1] Wyo Tech initially brought the third-party complaint against Schlam Stone & Dolan, LLP and Joshua Wurtzel, an associate at the firm (*see* Doc. 17), but Wyo Tech's amended third-party complaint dropped Wurtzel and added a different attorney, Jeffrey M. Eilender (*see* Doc. 36). For ease of reference, this Order will collectively refer to Eilender and Schlam Stone & Dolan, LLP as the Law Firm.

[2] Although the parties requested oral argument on these motions, the Court will deny the requests because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

of the parties against whom those claims are asserted. Next, the Court will deny Wyo Tech's motion for "immediate release" of the disputed funds because that motion is, in essence, a prematurely-filed summary judgment motion whose resolution should be deferred until later in the case. Finally, the Court will deny without prejudice Wells Fargo's motion for attorneys' fees and costs.

**BACKGROUND**

On November 9, 2017, Wells Fargo brought a complaint for interpleader under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. (Doc. 1.) Wells Fargo was facing competing claims on one of its accounts between Wyo Tech and the Judgment Creditors. In connection with this complaint, Wells Fargo also brought a Motion to Interplead Funds and for Order of Discharge. (Doc. 7.)

On January 17, 2018, Wyo Tech filed its amended answer. (Doc. 37.) The amended answer included (1) counterclaims against Wells Fargo for wrongful garnishment and aiding and abetting wrongful garnishment and tortious interference with contractual relations and business expectancies; (2) crossclaims against the Judgment Creditors for wrongful garnishment, tortious interference with contractual relations and business expectancies, and abuse of process; and (3) third-party claims against the Law Firm.[3] The underlying facts alleged in Wyo Tech's answer, and in Wells Fargo's complaint, are essentially identical:

On or about October 18, 2017, the Law Firm caused a restraining notice, purportedly issued pursuant to section 5222(b) of the New York Civil Practice Law and Rules ("CPLR"), to be served on Wells Fargo at its location at 1755 Broadway, New York, New York 10019. (Counterclaim ¶ 7, Crossclaim ¶ 9; TPC ¶ 8.) The Law Firm was acting on behalf of the Judgment Creditors. (Counterclaim ¶ 7, Crossclaim ¶ 9; TPC ¶ 8.)

The restraining notice provided that the Judgment Creditors had obtained a judgment in the amount of $7,033,491.13 against Dennis M. Danzik and RDX Technologies Corporation (f/k/a Ridgeline Energy Services, Inc.) and that the judgment

---

[3] The Court will refer to these as Counterclaim, Crossclaim, and TPC, respectively.

and accrued interest remained unpaid. (Counterclaim ¶ 8, Crossclaim ¶ 10; TPC ¶ 9.) This judgment had been obtained by the Judgment Creditors in *GEM Holdco, LLC, et al. v. CWT Canada II Limited Partnership, et al.*, Case Index No. 650841/2013, in the Supreme Court of the State of New York, County of New York ("the *GEM Holdco* case"). (Counterclaim ¶ 12, Crossclaim ¶ 14; TPC ¶ 13.) Wyo Tech was not a party to the *GEM Holdco* case and was not named as a debtor in the judgment. (Counterclaim ¶ 13; Crossclaim ¶ 15; TPC ¶ 14.)

The restraining notice issued to Wells Fargo stated that "it appears that you are in possession or in custody of property in which the judgment debtor has an interest as well as account(s) or any other property, tangible or intangible or interest in any property in the name of the judgment debtor, including, but not limited to, **the account reflected in the check in the attached Exhibit A, and any other accounts held in the name of Wyo Tech Investment Group LLC."** (Counterclaim ¶ 9; Crossclaim ¶ 11; TPC ¶ 10.) The referenced check was drawn on a Wells Fargo account ending in -2809 in Wyo Tech's name. (Counterclaim ¶ 9; Crossclaim ¶ 11; TPC ¶ 10.) The restraining notice further stated that "you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with any property in which the judgment debtors have any interest, except upon direction of the sheriff or pursuant to an order of the court until the aforesaid judgment is satisfied or vacated." (Counterclaim ¶ 11; Crossclaim ¶ 13; TPC ¶ 12.)

After being served with the restraining notice, Wells Fargo impounded all funds in the -2809 account. (Counterclaim ¶ 14; Crossclaim ¶ 16; TPC ¶ 15.)

On October 24, 2017, Wyo Tech representatives called counsel for Wells Fargo to point out that Wyo Tech was not listed as a Judgment Debtor and that the money in the frozen account was investor money in which the *GEM Holdco* case Judgment Debtors had no right, title, or interest. (Counterclaim ¶¶ 15-16; Crossclaim ¶¶ 17-18; TPC ¶¶ 16-17.) The Wyo Tech representatives also contacted the Law Firm that day with the same information and asked the Judgment Creditors to withdraw the restraining notice. (Crossclaim ¶ 19; TPC ¶ 18.)

On November 2, 2017, Wyo Tech's counsel emailed a letter to Wells Fargo's legal counsel, copying counsel for the Judgment Creditors, again notifying them that the *GEM Holdco* case Judgment Debtors had no interest in the impounded funds. (Counterclaim ¶ 17; Crossclaim ¶ 20; TPC ¶ 19.) This letter further asserted that the restraining notice was without binding effect and requested that Wells Fargo and the Judgment Creditors restore the funds. (Counterclaim ¶ 17; Crossclaim ¶ 20; TPC ¶ 19.)

On November 6, 2017, the Law Firm wrote a letter that disputed Wyo Tech's position and asserted that Wyo Tech was liable to the Judgment Creditors for the fraudulent transfers of Dennis Danzik, one of the Judgment Debtors in the *GEM Holdco* case. (Crossclaim ¶¶ 21-23; TPC ¶¶ 20-22.) The letter claimed that a number of payments had been made from the -2809 account "to Danzik, his family members, his company, or his cronies." (Crossclaim ¶ 23; TPC ¶ 22.)

In response, Wyo Tech's counsel sent a letter on November 8, 2017, notifying the Judgment Creditors and their counsel that Wyo Tech would seek "appropriate legal sanctions" if Wyo Tech's rights to the account were not restored. (Crossclaim ¶¶ 25-27; TPC ¶¶ 24-26.) The Judgment Creditors did not respond to this letter and continued to refuse to withdraw the restraining notice. (Crossclaim ¶¶ 28, 30; TPC ¶¶ 27, 29.)

**ANALYSIS**

I. Motion to Dismiss

The Judgment Creditors and Law Firm (collectively, "the movants") have moved to dismiss all of the crossclaims and third-party claims asserted against them by Wyo Tech. (Doc. 48.) The movants argue that (1) all of Wyo Tech's crossclaims and third-party claims should be dismissed under Rule 12(b)(2) based on a lack of personal jurisdiction, (2) Wyo Tech's third-party claims should be dismissed because they are "procedurally deficient" under Rule 14(a), and (3) all of Wyo Tech's crossclaims and third-party claims should be dismissed under Rule 12(b)(6) for failure to state a claim. *Id.*

The Court must begin by addressing personal jurisdiction. Indeed, "a federal court generally may not rule on the merits of a case without first determining that it has

jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). "[T]he Supreme Court has specifically instructed that a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim." *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011).

The movants argue they aren't subject to personal jurisdiction because they didn't commit any intentional acts that were "expressly aimed" at Arizona. (Doc. 48 at 2-7.) They contend that all of their conduct was directed toward New York—they obtained a judgment from a New York court, then invoked New York law to issue a restraining notice to a New York-based branch of Wells Fargo—and that, although it might have been foreseeable that such conduct would have "effects" in Arizona, this sort of attenuated connection is insufficient to create personal jurisdiction. *Id.* In response, Wyo Tech argues that (1) the Judgment Creditors "actually consented to this Court's Jurisdiction" by declining to raise a jurisdictional defense to Wells Fargo's interpleader action, and (2) personal jurisdiction exists over the movants because they "purposefully directed the Restraining Notice at WYO TECH's funds and, after having been clearly informed that the funds were in Arizona and being held up here, continued to cause the funds to be restrained and inflict damage here. In doing so, The New York Defendants should have reasonably expected to be hailed into court in Arizona for such conduct." (Doc. 57 at 4-7.)

The Court concludes that it lacks personal jurisdiction over the Judgment Creditors and the Law Firm with respect to Wyo Tech's crossclaims and third-party claims.

First, the Judgment Creditors have not waived their personal-jurisdiction defense. Although the law in this area is not a model of clarity,[4] the rule in the Ninth Circuit appears

---

[4] *Compare Carolina Cas. Ins. Co. v. Mares*, 826 F. Supp. 149, 153-54 (E.D. Va. 1993) (dismissing crossclaims asserted in interpleader action for lack of personal jurisdiction and noting that "courts which have addressed this issue have reached conflicting results"), *with Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F. Supp. 2d 481, 488 (S.D.N.Y. 2001) ("Because the Court has personal jurisdiction over the Brannons . . . under the interpleader statute, the Court also has supplemental personal jurisdiction over them for any state claims arising out of the same common nucleus of operative facts that are at issue in the interpleader action."); *see generally* Adam Hoffman, *Blurring Lines: How Supplemental Jurisdiction Unknowingly Gave the World Ancillary Personal Jurisdiction*, 38 U.S.F. L. Rev. 809, 809 (2004) ("Can a district court hearing a

to be that a party's participation in an interpleader action does not automatically mean the party has consented to the Court's personal jurisdiction for purposes of any crossclaims that may be asserted in the same case. *See Hagan v. Cent. Ave. Dairy*, 180 F.2d 502, 503-04 (9th Cir. 1950); *Hallin v. C.A. Pearson, Inc.*, 34 F.R.D. 499, 503 (N.D. Cal. 1963) ("The mere fact that . . . Symons, named as a defendant in this interpleader action, appeared to assert a claim should not in the opinion of the Court preclude it from objecting to the interposition of an in personam cross-claim against it."). As one court has explained:

> It is certainly a policy under the Rules to encourage the complete litigation in one case of all related issues between parties. In this case, however, this policy runs counter to the Congressional purpose of encouraging adverse claimants to money or property to come into court [in an interpleader action] and have their rights determined. To encourage defendant Peterson to come into this district in order to assert his claims to the interpleaded [funds], and then to require him to defend a $50,000 damage suit would be incongruous. Statutory interpleader . . . should not be so used as a tool to expand the jurisdictional drawing power of this Court over non-residents. Such an approach would do little toward urging non-residents to assert their claims in foreign courts.

*Marine Bank & Tr. Co. v. Hamilton Bros., Inc.*, 55 F.R.D. 505, 507 (M.D. Fla. 1972); *see also Hallin*, 34 F.R.D. at 503 ("To hold absolutely that appearance of a named claimant of itself precludes [an objection to personal jurisdiction as to a crossclaim] would tend to frustrate one of the main purposes of the Federal Interpleader Act, which is to facilitate and encourage the assertion of claims of all those possessing an interest in the fund deposited in Court."). Thus, the Court concludes that the Judgment Creditors' participation in the interpleader action does not automatically subject them to the Court's personal jurisdiction for purposes of Wyo Tech's crossclaims.[5]

---

statutory interpleader action subject an interpleaded defendant to personal liability from a co-defendant's cross-claim despite the fact that that defendant would not ordinarily be amenable to suit in that court on a kind of 'well, they're already here' approach to personal jurisdiction? . . . [T]he answer should be no, although some courts appear to think otherwise.").

[5] Based on this determination, the Court need not resolve the Judgment Creditors' alternative argument that, as a factual matter, they never consented to the Court's personal jurisdiction in the interpleader action. (Doc. 70 at 3.) Although the Judgment Creditors identified personal jurisdiction as an affirmative defense in their answer to the interpleader complaint (*see* Doc. 16 at 4), they also stated in their answer that they "[d]o not oppose" the relief being sought by Wells Fargo (*see* Doc. 16 at 5). These statements are difficult to reconcile.

Second, Wyo Tech has failed to meet its burden of establishing the Court has personal jurisdiction over the Judgment Creditors and Law Firm in relation to the crossclaims and third-party claims. "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citations and internal quotation marks omitted). "[U]ncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor,'" but "[a] plaintiff may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has "personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Morrill*, 873 F.3d at 1141.

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist "if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Morrill*, 873 F.3d at 1142 (citation omitted).

Here, Wyo Tech does not allege that the movants are subject to general jurisdiction

in Arizona. Thus, the Court must apply the Ninth Circuit's three-part test to determine if the movants had sufficient contacts with Arizona to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*Morrill,* 873 F.3d at 1142. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citations omitted).

Courts use the "purposeful availment" test for claims arising from contract and the "purposeful direction" test for claims arising from tort. *Id.* Here, all of Wyo Tech's crossclaims and third-party claims arise from tort, so the "purposeful direction" test applies. Under this test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F. 3d 797, 803 (9th Cir. 2004) (citation omitted).

"Actions may be directed at the forum state even if they occurred elsewhere," but "'random, fortuitous, or attenuated contacts' are insufficient to create the requisite connection with the forum." *Morrill*, 873 F.3d at 1142 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Court must focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (citation omitted). Importantly, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284. Courts should "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons

who reside there." *Id.* at 285. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

Here, the Judgment Creditors and the Law Firm committed the intentional act of causing a restraining notice to be served on Wells Fargo. But this act was not directed toward Arizona. In its complaint, Wyo Tech alleges that the movants caused a restraining notice issued under *New York* law (N.Y. C.P.L.R. § 5222(b)), in relation to a judgment obtained in *New York* state court, to be served on a *New York* branch of Wells Fargo. (Crossclaim ¶¶ 9-14; TPC ¶¶ 8-13.) The only alleged connections to Arizona are (1) the title holder of the account, Wyo Tech, was authorized to do business and was doing business in Arizona, (2) the funds in the account were "on deposit in a branch of Wells Fargo located in Scottsdale, Arizona," and (3) the effects of the movants' conduct were felt, and continue to be felt, in Arizona. (Crossclaims ¶¶ 3, 8; TPC ¶¶ 3, 7.)

These connections are insufficient. Put simply, the Judgment Creditors and the Law Firm cannot be said to have "expressly aimed" their conduct at Arizona (which is the second element of the "purposeful direction" test) by directing a restraining notice issued under New York law to a New York branch of a bank.[6] In *Walden*, the Supreme Court encountered a similar issue. There, a law enforcement agent seized $97,000 from a pair of professional gamblers, with knowledge that the gamblers lived in Nevada, as the gamblers were traveling through an airport in Georgia. 571 U.S. at 279-80. When the gamblers later attempted to sue the agent in Nevada, the agent moved to dismiss based on a lack of personal jurisdiction. *Id.* The Ninth Circuit rejected the agent's arguments but the Supreme Court reversed, holding that Nevada lacked personal jurisdiction because (1) the agent "never traveled to, conducted activities within, contacted anyone in, or sent anything

---

[6] *See also* Doc. 69 at 6-7 (Court's previous determination that "[t]he conduct at the core of Wyo Tech's counterclaims occurred in New York, where the Judgment Creditors served a Restraining Notice issued by New York court on a New York branch of Wells Fargo, and Wells Fargo complied by reaching a bank account that Wyo Tech opened in Arizona. The injury may have been felt in Wyoming or Arizona—where Wyo Tech is organized and conducts business—but it was caused in New York").

- 10 -

or anyone to Nevada," and (2) the gamblers "lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where [they] chose to be at a time when they desired to use the funds seized by [the agent]. [The gamblers] would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had." *Id.* at 288-90. The Court further noted that although "some of the cash seized in Georgia [was alleged to have] 'originated' in Nevada, . . . that attenuated connection was not created by [the agent], and the cash was in Georgia, not Nevada, when [the agent] seized it." *Id.* at 291.

The same logic applies here. The movants never traveled to, conducted activities within, or sent anything to Arizona to effectuate the freeze. That Wyo Tech felt the effects in Arizona, because it was doing business in Arizona, is not sufficient to find that the movants purposefully directed their actions toward Arizona. Furthermore, although *Walden* involved a physical seizure of currency within Georgia, whereas this case involved the freezing of an account being administered by a bank with branches all over the world, this distinction is not meaningful for purposes of the "purposeful direction" test. *Michael v. New Century Financial Services*, 65 F. Supp. 3d 797 (N.D. Cal. 2014), is instructive. There, the court found that defendants who placed a levy on a bank account at Chase Bank, utilizing a judgment obtained in New Jersey state court, were not subject to personal jurisdiction in California even though the account holder was a California resident and had opened the account in California. *Id.* at 808-09. The court noted:

> [D]etermining where a bank account is "located," for jurisdictional purposes, is a difficult question given the nature and character of national banks, including Chase. A person no longer has access to only one local bank from which he can take out money, but rather he has the convenience of being able to withdraw money and access his account from virtually any location around the world . . . . The Court, however, declines to answer this question because it is simply unnecessary for its determination—even assuming that Plaintiff's bank account is located in California, Plaintiff pleads only that Chase withdrew money from his account which it paid [in New Jersey], and does not show through evidence that Defendants had any contact with California prior to the date of the levy.

*Id.* at 809. Similarly, the Court here declines to decide the "location" of Wyo Tech's bank

account, but the Court's jurisdictional analysis would be the same even if the account were deemed to reside in Arizona.

Accordingly, the Court dismisses the crossclaims against the Judgment Creditors and the third-party complaint against the Law Firm for lack of personal jurisdiction. The dismissal is without prejudice.

II. "Motion for Immediate Relief from Wrongfully Restrained Funds"

An interpleader action typically proceeds in the following two stages: First, "the court determines whether the interpleader action is appropriate." *Metro. Life Ins. Co. v. Reynolds*, 2013 WL 6048808, \*2 (D. Ariz. 2013). If so, the court "may order the plaintiff to deposit the disputed funds, discharge the plaintiff, and direct the claimants to interplead." *Id.* "At the second stage, the court adjudicates the defendants' competing claims to the interplead[ed] funds, and the action usually proceeds as any other civil action." *Id.* "The second stage is usually resolved when the district court enters judgment in favor of a defendant who is legally entitled to the interplead[ed] funds." *Id.*

Here, the Court resolved the first stage in its August 1, 2018 order, which required Wells Fargo to deposit the disputed funds with the Clerk of Court. (Doc. 69.) Although not styled as such, Wyo Tech's "Motion for Immediate Release of Wrongfully Restrained Funds" (*see* Doc. 72) effectively amounts to a motion for summary judgment on the second stage of the interpleader action. After all, in this motion, Wyo Tech is asking the Court to "adjudicate[] the defendants' competing claims to the interplead[ed] funds" and to "enter[] judgment in favor of [the] defendant who is legally entitled to the interplead[ed] funds." *Reynolds*, 2013 WL 6048808 at \*2; *see also Mobley v. Metro. Life Ins. Co.*, 907 F. Supp. 495, 497 (D.D.C. 1995) (treating claimant's motion for declaratory judgment regarding another claimant's entitlement to funds as motion for summary judgment).

A motion for summary judgment at this stage of the case is premature, because the discovery deadline is over eight months away. In the Ninth Circuit, "[b]efore summary judgment may be entered against a party, that party must be afforded both notice that the motion is pending and an adequate opportunity to respond. Implicit in the 'opportunity to

respond' is the requirement that sufficient time be afforded for discovery necessary to develop 'facts essential to justify (a party's) opposition' to the motion." *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) (quoting Fed. R. Civ. P. 56(d)); *see also John Hancock Life Ins. Co. (U.S.A.) v. Jacobs*, 2013 WL 4050218, *3 (D. Nev. 2013) (treating claimant's motion for declaratory judgment that she was entitled to the disputed funds as motion for summary judgment and finding that "entry of judgment [was] premature" because at the "early stage in the proceeding, there appear[ed] to be genuine disputes of material fact about who ha[d] a colorable claim to the [funds]"). Thus, although there is some force to Wyo Tech's argument that the Judgment Creditors "have not even attempted to inform this Court of what additional discovery they need or what that additional discovery may show" (*see* Doc. 92 at 4 n.3), the applicable law nevertheless suggests that the Judgment Creditors are entitled to conduct discovery to dispute Wyo Tech's factual claims. *Cf. Wells Fargo Bank, Nat'l Ass'n v. Magellan Ship Owners Ass'n*, 2010 WL 2266752, *2 (D. Ariz. 2010) (denying portion of proposed scheduling order seeking "early distribution of interplead funds" because "the Court cannot sanction an early distribution of disputed funds absent full due process of law").

Accordingly, the Court denies Wyo Tech's motion without prejudice. Wyo Tech may refile a summary judgment motion in compliance with the Local Rules after the parties have had the opportunity to conduct discovery.

III. <u>Attorneys' Fees and Costs</u>

Wells Fargo has filed a motion seeking over $38,000 in attorneys' fees and costs arising from filing the interpleader action and defending against Wyo Tech's counterclaims. (Doc. 85.) This motion, however, fails to comply with LRCiv 54.2 in at least two respects.

First, the motion fails to comply with certain formatting and organizational requirements. LRCiv 54.2(c) requires a motion seeking attorneys' fees to employ an array of specific sections. Wells Fargo's motion does not follow this required structure.

Second, the motion fails to include the required meet-and-confer certification.

LRCiv 54.2(d)(1) provides that "[n]o motion for award of attorneys' fees will be considered unless a separate statement of the moving counsel is attached to the supporting memorandum certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues." Here, no such statement was provided, and it appears that Wells Fargo did not attempt to meet and confer with the other parties before filing its motion. This lack of consultation is particularly problematic because the parties' briefing suggests there is a potential middle ground here: Wyo Tech seems to acknowledge that Wells Fargo is entitled to at least $10,930.30 (Doc. 87 at 8), and the Judgment Creditors do not appear to object to the request.

For these reasons, the Court will deny Wells Fargo's motion without prejudice. If Wells Fargo wishes to re-submit a motion for attorneys' fees and costs, it must comply with all of LRCiv 54.2's requirements.[7]

Additionally, when submitting any future request for attorneys' fees in this case, the parties must comply with Paragraph 9 of this Court's standard Case Management Order,[8] which sets forth the following procedures:

> All motions for an award of attorneys' fees shall be accompanied by an electronic Microsoft Excel spreadsheet, to be emailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount

---

[7] It is also unclear whether Wells Fargo's motion for attorneys' fees is premature under Local Rule 54.2. Subdivision (b)(2) of that rule provides that "the party seeking an award of attorneys' fees and related non-taxable expenses must file and serve a motion . . . within fourteen (14) days of the entry of judgment in the action with respect to which the services were rendered." Here, although the Court has dismissed all of the claims against Wells Fargo and discharged Wells Fargo as a party, the Court has not yet entered a final judgment in the underlying case. Some courts have concluded that attorneys' fees cannot be sought in this circumstance. *See, e.g.*, *Double J Inv., LLC v. Automation Control & Info. Sys. Corp.*, 2014 WL 12672618, *1 (D. Ariz. 2014) ("Although the Aguilars have been dismissed from this lawsuit . . . attorneys' fees and related non-taxable expenses may only be awarded following a final judgment. A final judgment was not entered following the Court's dismissal of the claims against the Aguilars. Accordingly, the Court denies the current application without prejudice because it is premature."). Other courts have not, however, applied the same timing requirements to attorney-fee requests in interpleader actions. *See, e.g., Duckett v. Enomoto*, 2015 WL 12941862, *1 (D. Ariz. 2015); *K.T. v. Ramos*, 2012 WL 443732, *2 (D. Ariz. 2012).

[8] This case was reassigned to the current judge after the issuance of the scheduling order (Doc. 79), which does not contain any special provisions governing motions for attorneys' fees.

> of fees requested to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its motion. A party opposing a motion for attorneys' fees shall email to the Court and opposing counsel a copy of the moving party's spreadsheet, adding any objections to each contested billing entry (next to each row, in an additional column) to enable the Court to efficiently review the objections. This spreadsheet does not relieve the non-moving party of the requirements of Local Rule 54.2(f) concerning its responsive memorandum.

Finally, for purposes of assisting the parties during any future meet-and-confer efforts, the Court will note that, on the one hand, it doesn't share Wyo Tech's view that Wells Fargo's attorneys' billing rates are "astronomical and unreasonable." (Doc. 87 at 3.) In fact, Wells Fargo has identified a survey finding that the average billing rate in Maricopa County two years ago was higher than what was charged here. On the other hand, the Court is inclined to share Wyo Tech's skepticism toward the amount of time spent on certain tasks. For example, the notice of deposit, a two-paragraph filing, should not have taken over two hours to draft and review, and it is unclear why it took 15.2 hours to work on tasks related to the pursuit of attorneys' fees. The Court also notes that some of Wells Fargo's time entries are so vague that it is impossible to discern what task the attorney (or para-professional) was actually performing. (*See, e.g.*, Ms. Dawson's November 8, 2017 entry stating, "[a]nalyze information re dispute to assist with strategy re next steps," and June 1, 2018 entry stating, "[f]ollow up re new filing re matter").

Accordingly,

**IT IS ORDERED** that**:**

1. The motion to dismiss the crossclaims against CWT Canada II Limited Partnership, Resources Recovery Division, and Jean Noelting and the third-party claims against Schlam Stone & Dolan, LLP and Jeffrey M. Eilender (Doc. 48) is **GRANTED**;

2. The crossclaims against CWT Canada II Limited Partnership, Resources Recovery Division, and Jean Noelting and the third-party claims against Schlam Stone & Dolan, LLP and Jeffrey M. Eilender are **DISMISSED WITHOUT PREJUDICE**;

///

3. Wyo Tech's "Motion for Immediate Release of Wrongfully Restrained Funds" (Doc. 72) is **DENIED WITHOUT PREJUDICE**; and

4. Wells Fargo's motion for attorneys' fees and costs (Doc. 85) is **DENIED WITHOUT PREJUDICE**.

Dated this 19th day of December, 2018.

Dominic W. Lanza
United States District Judge