Jeffrey M. Eilender
Partner

jeilender@schlamstone.com

SCHLAM STONE & DOLAN LLP

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

February 25, 2019

**BY ECF**

The Honorable Dominic W. Lanza
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 621
401 West Washington Street, SPC 46
Phoenix, Arizona 85003

Re:   *Wells Fargo Bank v. Wyo Tech Investment Group, LLC, et al.*, Case No. 2:17-cv-04140-DWL

Dear Judge Lanza:

This firm represents Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (the "CWT Parties") in this action. In accordance with paragraph nine of this Court's Rule 16 Scheduling Order (Dkt. No. 79), we write jointly with counsel for Defendant Wyo Tech Investment Group, LLC—Wilenchik & Bartness, P.C. ("Wilenchik")—to raise a dispute concerning Wilenchik's refusal to produce documents in accordance with the subpoena we served on it, a copy of which is attached as Exhibit A.

Also in accordance with paragraph nine of this Court's Rule 16 Scheduling Order (Dkt. No. 79) and Rule 7.2(j) of the Rules of Practice of the U.S. District Court for the District of Arizona, counsel for the CWT Parties and Wilenchik jointly certify that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve this matter.

**The CWT Parties' Position**

On February 11, 2019, we served Wilenchik with the attached subpoena, which seeks documents sufficient to show all payments—including date, amount, and source account—made to Wilenchik by Wyo Tech and Inductance Energy Corporation (another Danzik-related entity formed using Wyo Tech money), as well as documents sufficient to show the clients on whose behalf and matters for which these payments were made. Wilenchik refused to produce documents in accordance with this subpoena, claiming they are not relevant. But Wilenchik is wrong, and should be ordered to produce responsive documents.

As this Court knows, the sole issue in this case is whether Dennis Danzik—a judgment debtor of the CWT Parties—has an interest in the disputed funds, which are now held by the Clerk of

The Honorable Dominic W. Lanza
February 22, 2019
Page 2 of 5

Court pending resolution of this case. And though, when the CWT Parties restrained them, the disputed funds were held in an account in Wyo Tech's name, Wyo Tech previously used its funds to pay thousands of dollars of Danzik's and his cronies' legal expenses in cases in which Wyo Tech had no interest.

Thus, the CWT Parties are entitled to discover how much Wyo Tech paid in Danzik's and his cronies' legal fees and for what matters, because the more money Wyo Tech paid for Danzik's and his cronies' legal fees—especially in matters in which Wyo Tech has no interest—the more probable it is that Danzik has an interest in the disputed funds. *See Bingham v. Zolt*, 231 A.D.2d 479 (N.Y. App. Div. 1st Dep't 1996) (bank account in name of nondebtor may be restrained when judgment debtor "regularly has used another's bank account" as a "source for payment of the debtor's expenses").

And while Wilenchik has argued that Wyo Tech's payment of legal fees for Danzik does not automatically mean that Wyo Tech's money belongs to Danzik, this is a merits argument that affects only the *weight* of this evidence—not its *discoverability*. Indeed, Wilenchik argues below that "discovery on this issue now does nothing to save the invalidity of the Restraining Notice [the CWT Parties] issued." But this position directly contradicts this Court's holding in its order denying Wells Fargo's summary judgment motion that the CWT Parties are "entitled to conduct discovery to dispute Wyo Tech's factual claims." Dkt. No. 94 at 12-13.

Further, just weeks before we restrained the disputed funds, Danzik's daughter wrote a $25,000 check from Wyo Tech's account for the "opening" of an Inductance account. And after we restrained Wyo Tech's account, Inductance began paying tens of thousands of dollars of Danzik's legal fees. Thus, if Inductance is paying Danzik's or his cronies' legal fees using money derived in part from Wyo Tech, it makes it more probable that Danzik has an interest in the disputed Wyo Tech funds—and merely diverted those funds (and future funds he acquired) to Inductance to continue paying his expenses after the CWT Parties restrained Wyo Tech's account.

Thus, the documents sought by this subpoena are relevant, and this Court should order Wilenchik to produce documents in accordance with it. Wilenchik's arguments about the appropriateness of a restraining notice are not relevant to this narrow discovery dispute.

Further, the CWT Parties also served an identical subpoena on Wyo Tech's other counsel, Beus Gilbert PLLC. Beus Gilbert has not objected to or otherwise responded to this subpoena outside of this joint letter. But for the same reasons Wilenchik should be ordered to produce documents in accordance with the subpoena, Beus Gilbert should as well.

The Honorable Dominic W. Lanza
February 22, 2019
Page 3 of 5

### **Wilenchik's Position**

The CWT Parties miss the point entirely; a Restraining Notice's validity rises or falls on the information known at the time of issuance. Moreover, the CWT Parties ignore and misconstrue the law they cite and the simple fact that a Restraining Notice is not valid if it is premised upon a theory of alter ego which has not already been adjudicated ***prior*** to the issuance of such a Restraining Notice. Finally, IEC is not a party to this litigation and any information sought is irrelevant and beyond the scope of discovery.

Judgment Creditors and their Counsels defense of their actions must be done based on the evidence ***they claim to have had in their possession*** at the time they issued the wrongful restraining notice and failed to comply with Arizona's garnishment statute. Indeed, Pursuant to CPLR § 5222 a restraining notice is valid if, ***at time of service***, the person served knows or has reason to believe that he is indebted to judgment debtor.

The CWT Parties subpoena only seeks to discover whether money was paid for the benefit of Dennis Danzik. There is not a single allegation that Dennis Danzik or RDX (the only judgment debtors) ever placed any of their own monies in any account nor would the subpoena ever discover any such information. Significantly, evidence of payment for the benefit of another is not sufficient to issue a Restraining Notice and is therefore entirely irrelevant:

> Significantly, while Judgment Creditors claim that evidence of payments being made from a third-party account on behalf of a Judgment Debtor is sufficient to allow a restraint of ***all*** third-party funds, what Judgment Creditors and their Counsel conveniently omit is that in both cases, the salient issue, was that the Judgment Debtor ***had deposited assets in the account***, and was dissipating those assets. *Zolt,* 231 A.D.2d 479 (the Court found the restraining notice to be properly issued because "***Deposition testimony and documentation*** indicated that ***defendant Zolt's personal funds were deposited in his wife's account***"). Indeed, the case that is relied upon by the Court in *Zolt* explicitly states that the "regular" payment of personal expenses is insufficient on its own, but rather, there must also be evidence that the account "functioned as 'recipients' of his personal assets." *ERA Mgt. v. Morrison Cohen Singer & Weinstein,* 199 A.D.2d 179 (1993). No evidence has been shown or produced that would establish that Judgment Debtors deposited any funds in the Wyo Tech account or that any of the Judgment Debtors drew any moneys from the account.

[Doc. 72 at *fn.* 1]. Rather than contest this, the CWT Parties Response blindly cited the same cases discussed by Wyo Tech. Tellingly, even the CWT Parties own citations belie their contention. [Doc. 88 at 14:19 – 24 ("see also Bingham v. Zolt, 231 A.D.2d 479, 479 (N.Y. App. Div. 1st Dep't 1996) (restraining notice properly issued when evidence showed that 'judgment debtor ha[d] regularly used another's bank account ***as a 'recipient' of the debtor's personal assets*** or as a source for payment of the debtor's expenses,' including using funds from this account to 'pay his legal expenses')" (emphasis added); *id.* at 14:24 – 27 ("ERA Mgt., Inc. v Morrison Cohen Singer & Weinstein, 199 A.D.2d 179, 179 (N.Y. App. Div. 1st Dep't 1993) (bank accounts belonging to non-debtor entities were properly restraining when evidence showed that accounts were 'regularly used to pay [debtor's] personal expenses' ***and functioned as '"recipients" of his personal assets'***)" (emphasis added)).

The Honorable Dominic W. Lanza
February 22, 2019
Page 4 of 5

That is, these cases stand for the simple proposition that a judgment debtor cannot transfer his funds into an account of another to pay his own expenses and avoid collection because the transfer of the funds to the account does not transmute the funds into those of the account holder. Similarly, non-judgment debtor funds transferred into a non-judgment debtor account are not transmuted into judgment debtor funds. Indeed, the funds cannot become judgment debtor funds unless and until specific funds are paid to the judgment debtor—the very reason why the proper action would have been to garnish Wyo Tech, *not* Wells Fargo.

In any event, the CWT Parties' contention that payment alone is sufficient is entirely absurd. Simply because a paycheck comes from the Federal Government does not make all funds of the United States the funds of that employee. Indeed, even in a more nefarious situation funds in an account are not, and cannot be transmuted simply by payment alone. Whether some funds were paid out of an account, gifted from an account, or stolen[1] therefrom does not change the ownership interest in the remaining funds or create a reasonable basis to seize the account. As we can all hopefully agree, if Party A gratuitously pays a small sum toward Party B's legal expenses for whatever reasons, Party B does not thereby become an owner of all of Party A's assets and funds. Again, as Wyo Tech has conceded, if the Judgment Creditors wish to garnish Wyo Tech relating to future payments to Judgment Debtors or debts owed to them, they would have been within their rights.

In reality, the CWT Parties are through this subpoena attempting to bolster an entirely unavailing argument that Wyo Tech is somehow an alter ego of Dennis Danzik or RDX. However, discovery on this issue now does nothing to save the invalidity of the Restraining Notice they issued. New York has specifically and explicitly stated that a Restraining Notice based upon a theory of alter ego is invalid unless there is a ruling from a Court *prior* to the issuance of the Restraining Notice that the company is indeed an alter ego of the debtor:

> The other cases cited by the plaintiff are equally inapposite. In both *Bingham v. Zolt,* 231 A.D.2d 479, 647 N.Y.S.2d 220 (App.Div.1996), and *ERA Mgmt., Inc. v. Morrison Cohen Singer & Weinstein,* 199 A.D.2d 179, 605 N.Y.S.2d 91 (App.Div.1993), the court found that restraining notices were properly issued against bank accounts held in the name of third parties, but where the plaintiffs had shown evidence that the accounts ***held the assets of the judgment debtor***. … ***They do not support the proposition that the assets of third parties may be restrained <u>in anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos</u> of the judgment debtor. Such a conclusion is not only unsupported by the text of N.Y. C.P.L.R. § 5222 or any of the cases cited by the plaintiff, but would also pose significant due process problems.***

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392–93 (S.D.N.Y. 2003) (emphasis added). As is clear, even under New York law, the

---

[1] By analogy, a thief does not obtain title to stolen funds, let alone the remaining funds that were not stolen. *Salt River Valley Water Users' Ass'n v. Peoria Ginning Co.*, 27 Ariz. 145, 152, 231 P. 415, 417 (1924) ("A thief or finder acquires no rights whatever to the goods, capable of ripening into title"). Similarly, if the CWT Parties and their Counsel's contention were correct, the crime of embezzlement could not exist, as the act of embezzling would necessarily thereby transmute ownership rights to the embezzler.

The Honorable Dominic W. Lanza
February 22, 2019
Page 5 of 5

restraint of the third party funds here on a proposed theory of alter ego through the use of a § 5222 restraining notice—as is the case here—is *not* allowed by New York law and constitutes a clear and knowing violation of due process.

      Finally, the portion of the subpoena related to non-party IEC is entirely irrelevant to this matter.  In fact, the CWT Parties have separately attempted to wrongfully restrain the funds in IEC's accounts at Bank of the West.  This is the exact issue raised in the emergency motion filed in this matter [Doc 98] which Wyo Tech incorporates by this reference.

      These same objections apply with equal force to the subpoena sent to the Beus law firm.

Sincerely,

*[signature]*

Jeffrey M. Eilender

cc:     All counsel of record (by ECF)

# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| Wells Fargo Bank, N.A. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:17-cv-04140-DWL |
| Wyo Tech Investment Group, LLC, et al. | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Wilenchik & Bartness, P.C.
2810 North Third Street, Phoenix Arizona 85004

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Appendix A

| Place: Ryan Rapp & Underwood, P.L.C.<br>3200 N. Central Ave, Suite 2250<br>Phoenix, Arizona 85012 | Date and Time:<br>02/25/2019 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/09/2019

CLERK OF COURT

OR

*/s/ Joshua Wurtzel*

*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* CWT Canada II Limited Partnership, Resource Recovery Corporation, Jean Noelting , who issues or requests this subpoena, are:

Joshua Wurtzel, Schlam Stone, 26 Broadway, New York, NY 10004; jwurtzel@schlamstone.com; (212) 344-5400

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 2:17-cv-04140-DWL   Document 101   Filed 02/25/19   Page 8 of 16

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:17-cv-04140-DWL

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:

Case 2:17-cv-04140-DWL   Document 101   Filed 02/25/19   Page 9 of 16

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# APPENDIX A

# DEFINITIONS

1. "All" means all or any, and "any" means all or any.

2. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside of its scope.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4. "DAS" means Danzik Applied Sciences, LLC.

5. "Document" or "documents" means all enumerated items in Rule 34(a)(1)(A) of the Wyoming Rules of Civil Procedure, including Electronically-Stored Information, as defined below. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. When the electronic and hard copy versions of any document are separate documents under this definition, both the electronic and hard copy versions should be produced.

6. "Electronically-Stored Information" or "ESI" includes, but is not limited to, the following:

   a. information or data that is generated, received, processed, or recorded by computers or other electronic devices, including, but not limited to, communications over a Bloomberg Terminal, electronic mail, text messages, instant message service messages, Social Media Posts, and voicemail;

      b.    files, information, or data saved on backup tapes or hard drives;

      c.    internal or external web sites;

      d.    output resulting from the use of any software program, including, but not limited to, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether this electronic data exists in an active file, a deleted file, or file fragment; and

      e.    activity listings of electronic mail receipts or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, including, but not limited to, personal digital assistants (e.g., iPhone, iPad), hand-held wireless devices (e.g., BlackBerrys), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents in these requests.

    7.    "Include" or "including" denotes a portion of a larger whole, and is used without limitation.

    8.    "Inductance" means Inductance Energy Corporation.

    9.    "Person" means any natural person or any business, legal, or governmental entity, or association.

10. "Relating to" means in whole or in part, concerning, constituting, containing, evidencing, referring to, discussing, dealing with, describing, reflecting, or pertaining to in any way whatsoever.

11. "RDX" means RDX Technologies Corporation.

12. "Social Media Posts" means any message—whether in the form of words or graphics—made using a website, application, program, or software that allows the user to share a message with one or more other persons, regardless of the number of persons (if any) with whom that message is actually shared and regardless of whether that message may be accessed by the public. For the avoidance of doubt, "Social Media Posts" does not include communications over a Bloomberg Terminal, electronic mail, text messages, instant message service messages, or voicemail.

13. "Solverdi" means Solverdi Worldwide Corporation.

14. "Wyo Tech" means Wyo Tech Investment Group, LLC.

15. "You" or "Your" means Wilenchik & Bartness, P.C.

## INSTRUCTIONS

1. The relevant time period to which each request refers is January 1, 2016 through the date of production.

2. The past tense form shall be construed to include the present tense, and vice versa, whenever such a dual construction will serve to bring within the scope of a request any response that would otherwise not be within its scope.

3. The use of the singular form of any word includes the plural, and vice versa.

4. Each category of documents in these requests extends to any and all documents in Your possession, custody, or control. A document shall be deemed to be in Your possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person and You (a) own such document in whole or in part; or (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such document; or (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such document; or (d) as a practical matter, have been able to use, inspect, examine, or copy such document. Such documents shall include, but are not limited to, documents that are in the custody of any of Your attorneys, representatives, or other agents.

5. All requests for the production of documents shall be construed to include any additional documents responsive to these requests that are discovered or produced after the date of production.

6. All documents should be produced in the order in which they appear in the files of the producing party, organized by source, and should contain a clear indication of where each document ends and the next begins. Documents maintained in a file folder or binder should be preceded by the file folder or binder label, if one exists, and should contain a clear indication of where the file folder or binder begins and ends. All attachments to a document should be produced with the document. A unique bates number should be affixed to each page.

7. All documents, including documents that originated in electronic form or in hard copy form, should be produced electronically in pdf format. Each individual

document should be produced as its own pdf. Each pdf should be labeled with the bates number of the first page of that document.

8. Metadata, including, but not limited to, bates number, custodian, author, to/from/cc/bcc, subject, sent date, and file date, that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available.

9. If You object to the production of any document or tangible thing within the scope of the requests, You must fully set forth your objections in writing, provide a list of all such documents and tangible things being withheld, and state the following for each such document or tangible thing: (i) the designated bates number, if any; (ii) the type of document, *e.g.*, letter or memorandum; (iii) the general subject matter of the document; (iv) the date of the document; (v) the location and custodian of the document; and (vi) the author of the document, the addressee of the document, any other recipients shown in the document, and, when not apparent, the relationship of the author, addressees, and recipients to each other.

10. If any document that You are requested to produce or identify was at one time in existence, but has been lost, discarded, or destroyed, identify in writing each document and provide the following information: (a) the date or approximate date it was lost, discarded, or destroyed; (b) the circumstances and manner in which it was lost, discarded, or destroyed; (c) the reason or reasons for disposing of the document (if discarded or destroyed); (d) the identity of all persons authorizing the document and having knowledge of the document; (e) the identity of the persons who lost, discarded, or

destroyed the document; (f) the identity of any persons having knowledge of the contents of the document; and (g) a detailed summary of the nature and contents of the document, including the author(s) of the document(s), the name of the person(s) to whom the document(s) was (were) delivered or addressed, including indicated or blind copy recipients, the date of the document(s), and a description of the subject matter, including any attachment or appendices, and the number of pages.

11. If You object in whole or in part to any request based on a claim of privilege, provide a list of the documents being withheld and for each such document: (a) state the nature of the privilege which is being claimed and, if the privilege is governed by state law, which state's privilege rule is being invoked; and (b) provide a description of the document, including (i) the designated bates number, if any; (ii) the type of document, *e.g.*, letter or memorandum; (iii) the general subject matter of the document; (iv) the date of the document; (v) the location and custodian of the document; and (vi) the author of the document, the addressee of the document, any other recipients shown in the document, and, when not apparent, the relationship of the author, addressees, and recipients to each other.

12. If any of these documents cannot be produced in full, You are requested to produce them to the fullest extent possible, specifying clearly the reasons for Your inability to produce the remainder and stating any information, knowledge, or belief You have concerning the unproduced portion.

13. The specificity of any request shall not be construed to limit the generality or reach of any other request.

**DOCUMENTS TO BE PRODUCED**

1. Documents sufficient to show all payments—including date, amount, and source account—made to You by Wyo Tech.

2. Documents sufficient to show all payments—including date, amount, and source account—made to You by Inductance.

3. Documents sufficient to show the client(s) on whose behalf the payments in Request Nos. 1 and 2 above were made.

4. Documents sufficient to show the matter(s) for which the payments in Request Nos. 1 and 2 above were made.