**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is a discovery dispute concerning a subpoena served by interpleader defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "Judgment Creditors") on third-party Wilenchik & Bartness, P.C. ("Wilenchik"), counsel for interpleader defendant Wyo Tech Investment Group LLC ("Wyo Tech").  (Doc. 101.)[1]  The Court held a telephonic hearing on February 27, 2019.  Although the Court initially hoped to rule on the discovery dispute promptly, the Court has concluded, after further consideration, that the issues presented by this dispute are intertwined with broader unresolved issues in the case.  Accordingly, the Court will order the parties to file supplemental briefing.

---

[1]      In the discovery dispute filing, the Judgment Creditors noted that they served an identical subpoena on Wyo Tech's other counsel, Beus Gilbert PLLC, and argued that "for the same reasons Wilenchik should be ordered to produce documents in accordance with the subpoena, Beus Gilbert should as well."  (Doc. 101 at 2.)

**BACKGROUND**

I.   <u>The Judgment Creditors Obtain A $7 Million Judgment Against Danzik, Then Utilize A "Restraining Notice" To Freeze Wyo Tech's Bank Account</u>

In 2016, the Judgment Creditors obtained a $7,033,491.13 judgment against Dennis Danzik and one of Danzik's companies, RDX Technologies Corporation (collectively, "Judgment Debtors"), in New York state court.  During that litigation, the New York court also held Danzik in civil and criminal contempt, concluding that Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant" who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."  (Doc. 89-3 at 9-10, 12, 13.)

In October 2017, the Judgment Creditors' attorneys attempted to collect on the outstanding judgment by freezing a particular bank account at Wells Fargo bank.  Notably, this account wasn't held in the name of either of the Judgment Debtors—it was held in the name of Wyo Tech, an LLC doing business in Arizona.

To freeze this bank account, the Judgment Creditors' attorneys utilized a procedural tool known as a "restraining notice," which is governed by section 5222 of the New York Civil Practice Law and Rules ("CPLR").  That statute provides, in relevant part, that "[a] restraining notice may be issued by . . . the attorney for the judgment creditor as officer of the court" and that it is permissible to serve a restraining notice "upon a person other than the judgment debtor or obligor" so long as the issuing attorney "has stated in the notice that . . . the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served."  *Id.* § 5222(a), (b).  In other words, CPLR § 5222 allows a judgment creditor to freeze a bank account held by a third party based solely on an assertion by the judgment creditor's attorney that the judgment debtor holds an interest in the account—there is no requirement that the judgment creditor establish this interest to a judge before the restraining notice may issue.  *See generally Global Tech., Inc. v. Royal Bank of Canada*, 2012 WL 89823, *12 n.9 (N.Y. Sup. Ct. 2012) (citation omitted) ("[A] party that seeks a restraining notice need only engage an attorney, who is authorized to

issue a restraining notice as an officer of the court.  The Court has no involvement with the issue of whether service of the restraining notice upon the garnishee comports with due process until the garnishee challenges the restraining notice, or until the judgment debtor seeks an order of contempt or a money judgment against the garnishee."); *Cruz v. TD Bank, N.A.*, 2 N.E.3d 61, 76 (N.Y. 2013) (quoting CPLR § 5222(a)) ("When a judgment creditor has properly imposed a restraint on a bank account, the bank has no choice but to freeze the assets.  Whether issued by a court or an attorney acting as an officer of the court, a restraining notice is an injunction and 'disobedience is punishable as a contempt of court.'").

After being served with the restraining notice, Wells Fargo froze Wyo Tech's account, which held $546,282.55.  When Wyo Tech learned its account had been frozen, it immediately complained to the Judgment Creditors and to Wells Fargo, disputed whether the Judgment Debtors held any interest in the account, and threatened to sue.  In response, Wells Fargo filed an interpleader action in this Court.

II.     The Arguments and Rulings Concerning Whether the Judgment Creditors Should Be Allowed to Conduct Discovery in the Interpleader Action

At the outset of this case, the Judgment Creditors and Wyo Tech presented sharply different views about how the litigation should proceed.  In the parties' initial Rule 26(f) report, which was filed in July 2018, the Judgment Creditors argued they should be allowed to conduct "discovery . . . to determine who has an interest in the funds at issue, who owns Wyo Tech, how Wyo Tech gets its money, why it paid hundreds of thousands of dollars to Danzik's company, wife, daughter, and cronies, why Danzik's wife and daughter had control of Wyo Tech's funds, and why Wyo Tech has paid thousands of dollars of Danzik's legal fees, among other things."  (Doc. 62 at 11.)  Wyo Tech, in contrast, argued that the Judgment Creditors shouldn't be allowed to conduct any discovery and that the Court should immediately decide who was entitled to the interpleaded funds.  (Doc. 62 at 13 ["Wyo Tech . . . believes that discovery in this case should be deferred until such time as the Court rules on the motion for summary judgment Wyo Tech intends to file within 30 days after the . . . Scheduling Conference. "].)

On July 24, 2018, the Court held a Rule 16 scheduling conference.  (Doc. 63.)  During this conference, the Court noted Wyo Tech's preference to postpone discovery until the Court had decided certain motions but ordered the parties to provide proposed dates in a new filing.

On August 16, 2018, Wyo Tech filed a motion entitled "Motion for Immediate Release of Wrongly Restrained Funds."  (Doc. 72.)  In this motion, Wyo Tech argued, among other things, that "Wyo Tech anticipates that Judgment Creditors and their Counsel will attempt to delay a ruling on this Motion by claiming that they need to conduct 'additional' discovery.  Any such request should be denied . . . [because] Judgment Creditors and their Counsel[']s defense of their actions must be done based on the evidence they claim to have had in their possession at the time they issued the wrongful restraining notice . . . ."  (Doc. 72 at 4 n.1, emphasis omitted.)

On August 20, 2018, the parties filed a supplemental Rule 26(f) report.  (Doc. 75.)  It stated that the parties should have until August 9, 2019, to complete discovery and that dispositive motions shouldn't be due until September 6, 2019.  (*Id.* at 2-3.)

On August 27, 2018, the Court issued its Rule 16 scheduling order.  (Doc. 79.)  In it, the Court approved the approach set forth in the parties' supplemental Rule 26(f) report, adopting the parties' proposed dates.  (*Id.* at 2-4.)

On October 9, 2018, the Judgment Creditors filed an opposition to Wyo Tech's motion for immediate release of funds.  (Doc. 88.)  Among other things, the Judgment Creditors argued that (1) they "are entitled to take discovery, pursuant to the Court's scheduling order, before the funds are summarily released" and (2) Wyo Tech's request for an immediate ruling was inconsistent with "its counsel['s] previous[] stipulat[ion] to an extensive discovery schedule."  (Doc. 88 at 13-15 & n.3.)

On October 31, 2018, this case was reassigned to the currently-assigned judge.  (Doc. 93.)

On December 19, 2018, the Court issued an order resolving several pending matters, including Wyo Tech's motion for immediate release of funds.  (Doc. 94.)  The Court

1   concluded that motion was "premature, because the discovery deadline is over eight

2   months away," and thus held that "Wyo Tech may refile a summary judgment motion in

3   compliance with the Local Rules after the parties have had the opportunity to conduct

4   discovery."  (Doc. 94 at 12-13.)

5   III.     The Current Discovery Dispute

6          The current discovery dispute (Doc. 101) concerns a subpoena the Judgment

7   Creditors served on Wilenchik on February 11, 2019.  The subpoena seeks documents

8   sufficient to show all payments made to Wilenchik by Wyo Tech and by third-party

9   Inductance Energy Corporation and the client(s) on whose behalf and the matter for which

10  the payments were made.  (Id. at 16.)  Wilenchik contends these documents are irrelevant

11  for three main reasons: (1) "[Inductance Energy Corporation] is not a party to this

12  litigation"; (2) "a Restraining Notice's validity rises or falls on the information known at

13  the time of issuance"; and (3) "evidence of payment for the benefit of another is not

14  sufficient to issue a Restraining Notice."  (Id. at 3-5.)  On the other hand, the Judgment

15  Creditors contend that "the sole issue in this case is whether Dennis Danzik . . . has an

16  interest in the disputed funds," and therefore "the [Judgment Creditors] are entitled to

17  discover how much Wyo Tech paid in Danzik's and his cronies' legal fees and for what

18  matters, because the more money Wyo Tech paid for Danzik's and his cronies' legal fees—

19  especially in matters in which Wyo Tech has no interest—the more probable it is that

20  Danzik has an interest in the disputed funds."  (Id. at 1-2.)

21                                          **DISCUSSION**

22         The current discovery dispute brings into focus three lurking, interrelated issues that

23  will eventually need to be resolved in this case.  Rather than defer the inevitable, the Court

24  will therefore require the parties to file supplemental briefing on those issues now.

25  I.     Did the Judgment Creditors Comply With CPLR § 5222(b) When They Issued The

26         Restraining Notice To Wells Fargo In October 2017?

27         On this issue, Wilenchik's (and, presumably, Wyo Tech's) argument is that the

28  restraining notice was invalid on its face because (a) the Judgment Creditors' theory, when

- 5 -

issuing the restraining notice, was that Wyo Tech was an alter ego of Danzik, yet (b) "New York has specifically and explicitly stated that a Restraining Notice based upon a theory of alter ego is invalid unless there is a ruling from a Court **prior** to the issuance of the Restraining Notice that the company is indeed an alter ego of the debtor." (Doc. 101 at 4, emphasis in original.) In support of this view, Wilenchik cites *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392-93 (S.D.N.Y. 2003), which held that the case law "do[es] not support the proposition that the assets of third parties may be restrained in anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos of the judgment debtor," as "[s]uch a conclusion is . . . unsupported by the text of N.Y. C.P.L.R. § 5222" and "would also pose significant due process problems."

The Judgment Creditors' position, meanwhile, is that "[i]t is well established [under CPLR § 5222(b)] that a judgment creditor can restrain funds even though they 'are not nominally held in the name of the judgment debtor . . . if such funds are used for the benefit of the judgment debtor.'" (Doc. 88 at 14-15, citation omitted; *see also* Doc. 107 at 4 ["This type of broad restraint is proper under New York law."].)

During the hearing on February 27, 2019, the Court informed the parties that it had identified, through its own independent research, two additional decisions that seem to support Wilenchik's view that a restraining notice can't be used to restrain the funds of a third party that's suspected to be an alter ego of the judgment debtor without a prior judicial finding of the alter-ego relationship. Those decisions are *Capitol Records, LLC v. Defries*, 2014 WL 5608137, *1 (S.D.N.Y. 2014) (finding that restraining notice could not be issued where "[t]here has been no finding by this Court or any other court that IOTA is the alter ego of Defries, and there is no contention that Sony owes Defries money in his individual capacity"), and *AXGINC Corp. v. Plaza Automall, Ltd.*, 2018 WL 4771886, *6 (E.D.N.Y. 2018) (quoting *JSC*, 295 F. Supp. 2d at 392) (emphasis omitted) ("[C]ourts that have interpreted *ERA Management* and *Bingham* have held that both cases stand for the principle that a restraining notice can only be issued against a third party's bank accounts if there is

evidence that those accounts actually hold 'the assets of a judgment debtor.'").  The Judgment Creditors did not, however, have a meaningful opportunity to address those cases because they were raised for the first time by the Court during the hearing.

Additionally, since the hearing concluded, the Court has conducted additional research and found some additional authorities that may undermine Wilenchik's position. For example, in *Hillwick Inc. v. Adv. Ready Mix Supply Corp.*, 2017 N.Y. Misc. LEXIS 3908 (N.Y. Sup. Ct. 2017), a judgment creditor issued a restraining notice under CPLR § 5222(b) to Chase Bank to freeze a bank account held by a third party.  The judgment creditor issued the notice under an alter ego theory: specifically, that "[a]ll of these companies have similar names and appear to operate out of the same location, utilize the same equipment, offer the same service, and share a common owner." *Id.* at *7-8.  The account holder moved to vacate the restraining notice on several different grounds, including by "rel[ying] on *JSC* for the proposition that plaintiff cannot restrain a non-party's property absent a determination on its liability, here, by means of the alter-ego doctrine." *Id.* at *12.  The court seemed to reject this argument—although the opinion isn't a model of clarity, it can be read as implying that it was procedurally permissible for the judgment creditor to issue the restraining notice even though it lacked a prior judicial finding of alter-ego status. *Id.*[2]  Similarly, a recent law review article suggests that "[a]lter ego cases routinely uphold the restraint of the bank account merely on the allegation that the corporate veil between the third party and the judgment debtor ought to be pierced" and that *JSC*'s holding to the contrary was incorrect and constituted "a feeble *Erie* guess of New York law."  David Gray Carlson, *Critique of Money Judgment Part Three: Restraining Notices*, 77 Alb. L. Rev. 1489, 1549-53 (2014).

Rather than continue to conduct its own independent research, the Court believes

---

[2]     Although the *Hillwick* court ultimately vacated the restraining notice, it did so because it concluded, on the merits, that the issuing party hadn't proved its alter-ego claim. *Id.* at *13-15.  The court also declined to sanction the issuing party, holding that its attempt to freeze the account under an alter-ego theory constituted a legitimate "attempt[] to enforce the legally obtained judgment against defendants in this action" and did "not constitute frivolous conduct or a drastic enforcement remedy against an innocent non-party." *Id.* at *18.

the best approach would be to present the parties with an opportunity to fully research and brief the issue on their own.

II.   Does It Matter Whether The Restraining Notice Was Valid Under New York Law, Given That The Funds Have Now Been Interpleaded?

Another lurking issue in this case is whether the Court even needs to address whether the restraining notice was issued in compliance with CPLR § 5222(b).  On this issue, the Judgment Creditors have continually taken the position that the sole issue before the Court is whether Danzik has an interest in the funds, not whether the restraining notice was valid in the first place.  (Doc. 88 at 16 ["As an initial matter, Wyo Tech's arguments about the validity of the restraining notice are irrelevant now that the previously restrained funds have been interplead with the Court—with Wyo Tech's consent.  The question before the Court in this interpleader action is not whether the original restraint was valid, but rather whether Danzik does or does not have an interest in those funds such that they can be used to satisfy a portion of the CWT Parties' judgment."]; Doc. 101 at 2 ["As this Court knows, the sole issue in this case is whether Dennis Danzik—a judgment debtor of the CWT Parties—has an interest in the disputed funds, which are now held by the Clerk of Court pending resolution of this case."]).  Additionally, during the hearing on February 27, 2019, the Judgment Creditors elaborated on this theory for the first time—they argued that Wyo Tech's only avenue for raising a procedural objection to the restraining notice would have been to initiate a proceeding in New York state court and that Wyo Tech forfeited its ability to raise such an objection by consenting to the interpleader action.  (Doc. 106 at 9-10.) However, the Judgment Creditors acknowledged they had not identified any "case law" specifically addressing this "very unique situation."  (*Id.*)

On the other hand, Wyo Tech contends that one of the disputed issues properly before the Court is whether the restraining notice was valid in the first place.  (Doc. 72 at 8, 13 [arguing that "the Restraining Notice is invalid as a matter of law and as such the funds must be released," and "[w]hile it is clear that none of the funds in the Wyo Tech account are owned by anyone other than Wyo Tech, even if the Judgment Debtors did have

right, title, or interest to the funds (which they do not), they must nonetheless be released now as the Restraining Notice is invalid and therefore ineffectual to restrain/garnish the funds"]).

Once again, the Court concludes it should solicit briefing from the parties on this key issue instead of attempting to resolve it, through its own independent research, based on the undeveloped assertions that have appeared in the parties' prior pleadings.

III.    On The Merits, Are The Judgment Creditors Limited To The Information Known To Them At The Time They Issued The Restraining Notice, Or Are They Entitled To Conduct Post-Issuance Discovery To Support Their Claim?

As noted in the Background section of this Order, the parties have presented different views throughout this case as to whether the Judgment Creditors should be allowed to pursue discovery in support of their claims.  The Judgment Creditors have consistently argued they are entitled to pursue discovery.  (*See, e.g.,* Doc. 62 at 12 [Rule 26(f) report]; Doc. 88 at 13-15 & n.3 [opposition to motion for immediate release of funds].)  Wyo Tech, in contrast, has repeatedly argued that discovery is inappropriate because "Judgment Creditors and their Counsel[']s defense of their actions must be done based on the evidence they claim to have had in their possession at the time they issued the wrongful restraining notice."  (Doc. 72 at 4 n.1, emphasis omitted.)

Although the Court previously accepted the parties' stipulated scheduling order (Doc. 79) and also concluded, in its December 19, 2018 order, that "the applicable law . . . suggests that the Judgment Creditors are entitled to conduct discovery to dispute Wyo Tech's factual claims" (Doc. 94 at 13), the recent developments in this case suggest this issue wasn't fully explored in the parties' prior pleadings and would benefit from further development.  Indeed, if Wyo Tech is correct that discovery is unavailable, then the pending discovery dispute will be easy to resolve.

When addressing this issue in their supplemental briefs, the parties should note that *Palestine Monetary Authority v. Strachman*, 62 A.D.3d 213 (N.Y. App. Div. 2009), seems to support the Judgment Creditors' claim that discovery is available in this context.  There, the Ungars obtained a $116 million judgment against the Palestinian Liberation

Organization ("PLO") and the Palestinian Authority ("PA") and then took various steps to collect on the judgment.  *Id.* at 216.  One of those steps was to issue a restraining notice under CPLR § 5222 to freeze a $30 million bank account held by a different entity, the Palestinian Monetary Authority ("PMA").  *Id.*  The Ungars' theory, when issuing the restraining notice, was that "the PMA is the alter ego . . . of the PA or the PLO" and/or may "hold[] any funds of the PA or the PLO."  *Id.* at 218.  During subsequent litigation in state court, in which the PMA sought to vacate the restraining notice, the Ungars "requested discovery" in an attempt to obtain evidentiary support for their position.  *Id.*  The trial court largely rejected these requests and ruled against the Ungars, even though it "acknowledged that discovery was limited and that upon full discovery the evidence might show the PMA does hold funds of the PA or the PLO."  *Id.* at 220.  The appellate court reversed, holding that the Ungars should have been allowed to conduct more discovery.  *Id.* at 231.

The parties should further note that "[b]road post-judgment discovery in aid of execution is the norm in federal and New York state courts."  *AXGINC*, 2018 WL 4771886 at *4 (quoting *Amtrust North America, Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 2016 WL 6208288, at *2 (S.D.N.Y. 2016)) (second citation and internal quotation marks omitted).  However, the case law refers to "broad post-*judgment* discovery," not post-*restraining notice* discovery, and the Court has some concerns about the due process implications that would be posed by a system in which a judgment creditor would have the right to conduct broad discovery after the issuance of a restraining notice in the hope of identifying evidence that might provide *post hoc* support for its claim.

\* \* \*

Accordingly, **IT IS ORDERED** that the Judgment Creditors and Wyo Tech submit supplemental briefs on the following three issues: (1) did the Judgment Creditors comply with CPLR § 5222(b) when they issued the restraining notice to Wells Fargo in October 2017?; (2) does it matter whether the restraining notice was valid under New York law, given that the funds have now been interpleaded?; and (3) on the merits, are the Judgment Creditors limited to the information known to them at the time they issued the restraining

notice, or are they entitled to conduct post-issuance discovery to support their claim?  The deadline for the parties to submit simultaneous briefs on these issues shall be **Friday, March 22, 2019**.  No responses or replies to the supplemental briefs are permitted.  Each brief shall not exceed 10 pages in length.

      **IT IS FURTHER ORDERED** that Wilenchik and Beus Gilbert PLLC need not respond to the subpoenas until the Court has resolved the discovery dispute.

      Dated this 5th day of March, 2019.

Dominic W. Lanza
United States District Judge