Dennis I. Wilenchik, #005350
**WILENCHIK & BARTNESS PC**
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

Leo R. Beus, #002687
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Wells Fargo Bank, N.A.,**<br><br>    **Plaintiff,**<br>v.<br>**WYO TECH Investment Group, LLC; CWT Canada II Limited Partnership; Resources Recovery Corporation; and Jean Noelting,**<br><br>    **Defendants.** | Case No.: 2:17-CV-04140-DWL<br><br>**SUPPLEMENTAL BRIEFING PURSUANT TO THIS COURT'S MARCH 5, 2019 ORDER (DOC. 109)**<br><br>**(Oral Argument Requested)** |
| **WYO TECH Investment Group, LLC,**<br><br>    **Cross-Claimant,**<br>v.<br>**CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,**<br><br>    **Cross-Claim Defendants.** | |
| **WYO TECH Investment Group, LLC,**<br><br>    **Third Party Plaintiff,**<br>v.<br>**Schlam Stone & Dolan, LLC, a New York Limited Liability Partnership; and Jeffrey M. Eilender,**<br><br>    **Third Party Defendants.** | |

Wyo Tech Investment Group, LLC ("Wyo Tech"), hereby files this Supplemental Briefing pursuant to this Court's Order (Doc. 109) requesting supplemental briefs that address (1) that the Judgment Creditors did not comply with CPLR § 5222(b) when they issued the restraining notice to Wells Fargo in October 2017; (2) that the interpleading of the funds does not cure the Judgment Creditors' clear violation of Wyo Tech's due process rights and must result in this matter being dismissed and the money released to Wyo Tech with fees and damages left to resolution; and (3) that on the merits, the Judgment Creditors are limited solely to the information known to them at the time they issued the Restraining Notice.

### I.  The Judgment Creditors Did Not Comply with CPLR § 5222(b) When they Issued the Restraining Notice to Wells Fargo in October 2017.

In "Critique of Money Judgment Part Three: Restraining Notices" the author in making sweeping generalizations clearly misses the mark, and his conclusions are not justifiable from the cases he cites at all. In fact, they are quite erroneous. For example, in claiming that "[a]lter ego cases routinely uphold the restraint of the bank account merely on the allegation that the corporate veil between the third party and the judgment debtor ought to be pierced", he relies on the following citation:

> See *Ivor B. Clark Co. v. Hogan*, 296 F. Supp. 407, 410-11 (S.D.N.Y. 1969); *Thompson v. Pollack*, 873 N.Y.S.2d 173, 175 (App. Div. 2d Dep't 2009) (refusing to vacate restraining notice where creditor presented prima facie evidence of alter ego). *But see Plaza Hotel Assocs. v. Wellington Assocs.*, 378 N.Y.S.2d 859, 865 (Sup. Ct. New York County 1975) (indicating that prima facie evidence of alter ego is required to "pierce the corporate veil").

However, this citation is as misleading as it is incorrect.

The first citation to *Igor* is not even a case that discusses a restraining notice premised on a theory of alter ego—indeed, the words "alter ego" do not even appear in the opinion—to the contrary, although not a model of clarity, *Igor* discusses a restraining notice where it is **uncontested** that the third party owes money to the debtor. *Igor* at 411 – 12 (Where corporate judgment debtor was indebted to its president against whom judgment creditor had also obtained judgment, the third party in interest, which was served with notice, was required to hold rental

1

monies which came into its hands to extent of judgments against corporate and individual judgment debtors.)

Furthermore, the Court in *Thompson* did not "refus[e] to vacate [a] restraining notice where [a] creditor presented prima facie evidence of alter ego". It refused to vacate a restraining notice when there was evidence that the "entity" did not even exist in any legal form. *Thompson*, 59 A.D.3d at 526 ("However, the plaintiff submitted evidence demonstrating that, although Ath-ens was apparently ***dissolved*** in 1993, the defendant continued to use the corporate name and continued to use the corporate account to write checks for his own personal expenses. Accordingly, the matter must be remitted to the Supreme Court, Westchester County, for a hearing to determine whether the defendant has an "interest" in the Signature One Bank account within the meaning of CPLR article 52 and for a new determination thereafter of the motion to vacate the restraining notice." (internal citations omitted) (emphasis added)). This is far from the issue or facts presented here.

The final citation is to *Plaza Hotel* as undermining the author's position that a mere allegation is enough. It is not. Ironically, this is the same case that the author relies on for his equally questionable claim that "*JSC* should therefore be viewed as a feeble *Erie* guess of New York law." Despite the author's claim that "even a casual glance at this opinion shows that it upheld the restraining notice on an alter ego theory" this comment actually undermines the author's contention, as well as credibility as a reporter. While a "casual glance" of *Plaza Hotel* might lead one to believe it was decided on a theory of alter ego, as the alter ego allegation was discussed therein. In fact, the decision held that the restraining notice at issue there was valid on a theory of fraudulent conveyance—as was aptly recognized by the Court in *JSC*. The *Plaza Hotel* Court explicitly stated: "Plaintiff has submitted documentation establishing a series of transactions by which ownership of various properties has been shifted from one Goldman-DiLorenzo enterprise to another, all apparently without consideration." Indeed, the *Plaza Hotel* Court went on to hold that "plaintiff has demonstrated that the assets held by Chase Manhattan

Bank are the assets of the judgment debtor, sufficient to warrant the continued restraint of disposition of those assets pending additional enforcement proceedings". Simply put, the evidence discussed and holding of the *Plaza Hotel* Court only supports a theory of fraudulent conveyance, not alter ego.

Moreover, to the extent the *Plaza Hotel* case did hold that the restraining notice was valid based on a theory of alter ego (which it did not), the entity in *Plaza Hotel* did not substantively deny that it was the alter ego of the Judgment Debtor and in fact, to the contrary, had previously judicially admitted as much. *Plaza Hotel Assocs.,* 84 Misc. 2d at 781 ("In opposition to all of this evidence, movant does not contest plaintiff's evidence, but merely responds: 'If plaintiff sued the wrong party, or omitted to sue a potential defendant, it cannot use self-help to correct its decision many years after the fact'"); *id.* at 780 – 81 ("Sol Goldman, in sworn testimony, averred that defendant corporation 'is still in business under a partnership now'. And, it has shown that, in its most recent brief in the Court of Appeals, defendant conceded that the various changes in ownership of the relevant property were 'not material to this case'."). This begs the question, how does *Plaza Hotel* undermine the clear rule of law that a court must have previously determined that an entity is the "alter ego" of judgment debtor prior to a restraining notice being validly issued when the entity in *Plaza Hotel* had judicially admitted as much in previous litigation? Plainly, the issue here was not addressed in any way by the *Plaza Hotel* case.

As is clear, David Gray Carlson's conclusion in "Critique of Money Judgment Part Three: Restraining Notice" is entirely unsupported. Indeed, the additional case found by this Court clearly indicates that New York Court's recognize the validity of the *JSC* opinion. While this Court has indicated that *Hillwick, Inv. v. Adv. Ready Mix Supply Corp.,* 2017 N.Y. Misc. LEXIS 3908 (N.Y. Sup. Ct. 2017) could be read to imply that the court rejected *JSC* it squarely did not. While the *Hillwick* Court's discussion of the *JSC* case concluded with a sentence beginning with the word "however", the sentence itself supports the contention that an allegation of "alter ego" is not sufficient under New York law. Rather than contradict *JSC t*he Court in *Hillwick* merely

3

quoted *United States v. Ceparano,* 2009 WL 8690129, 2009 U.S. Dist. LEXIS 131257 (EDNY 2009) which stated:

> [*JSC*] stands only for the proposition that **alleged "alter ego" status alone is insufficient** to issue a restraining notice against assets of a third party **without evidence of fraudulent conveyance or a showing that the third party is actually holding assets of the judgment debtor**. *JSC Foreign Ass'n Technostroyexport v. Int'l Dev. And Trade Serv.,* 295 F.Supp.2d 366, 392-93 (S.D.N.Y. 2003). In this case the appropriate test to be applied is whether the government has made a *prima facie* showing that the 1990 transfer of the Property to Dorothy was a fraudulent conveyance. *Blue Giant Equip. Corp. v. Tec-Ser, Inc.,* 92 A.D.2d 530, 459 N.Y.S.2d 948 (3d Dep't 1983) (finding issuance of restraining notice on third party appropriate where plaintiff made out "a *prima facie* case showing that the assignment of [the judgment debtor's] accounts receivable was not made in good faith or for adequate consideration [*i.e.* a fraudulent transfer].").

*Id.* (final bracket modification added). The Court in *Hillwick* went on to ignore the allegation of "alter ego" as it had already recognized such an allegation was not proper in accordance with *JSC* and *Ceparano* finding that because the judgment creditor had not provided evidence of a fraudulent transfer or that the assets were in fact the owned by the judgment debtor the restraining notice was invalid.

Here, as stated in the Joint Case Management Plan, their theory is "alter ego". [Joint Case Management Plan (Dkt. No. 62) at 3:13 – 17 ("That Danzik would **use an alter-ego** company to evade creditors is nothing new.").] As such, as is clear under New York law, the Judgment Creditors did not comply with CPLR § 5222(b) when they issued the Restraining Notice to Wells Fargo in October 2017.

## II. The Threshold Issue in this Case is Whether the Restraining Notice was Validly Issued.

As established above, and as stated by the *JSC* case, a restraining notice issued on the un-adjudicated theory of alter ego—as was the case here—constitutes a grave and significant due process violations. *JSC Foreign Economic Ass'n Technostroyexport,* 295 F.Supp.2d at 393. This due process violation does not end merely because the money has been interplead nor can this violation be cured or forgiven. As this Court is aware, the constitution requires, in certain instances, for a hearing to occur prior to a deprivation, even if a postdeprivation hearing is

4

afforded. Here, the Court in *JSC* has already determined that in the context of a restraining notice issued on a theory of alter ego, that hearing must occur prior to the deprivation. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392–93 (S.D.N.Y. 2003) ("These cases, like the others cited by the plaintiff, support the proposition that a judgment creditor may restrain the assets of a judgment debtor wherever those assets may be. ***They do not support the proposition that the assets of third parties may be restrained <u>in anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos</u> of the judgment debtor. Such a conclusion is not only unsupported by the text of N.Y. C.P.L.R. § 5222 or any of the cases cited by the plaintiff, but would also pose significant due process problems.***" (emphasis added)). As is clear therefore, the constitutional threshold issue is whether the Restraining Notice was validly issued, if it was not—as is the case here—the matter must be dismissed.

Moreover, this Court cannot condone the violation of constitutional rights by rewarding the culprit with proceedings it is not entitled to. The fact of the matter is, had the judgment creditors not violated Wyo Tech's due process rights the money would not have been interplead into this Court. As such, a recognition by this Court that the Restraining Notice violated Wyo Tech's due process rights must result in the dismissal of this matter and the release of the funds to Wyo Tech.

### III.  The Judgment Creditors Must be Limited to the Information Known to them at the Time They Issued the Restraining Notice.

The Court identifies *Palestine Monetary Authority v. Strachman,* 62 A.D.3d 213 (N.Y. App. Div. 2009) as potentially supporting the Judgment Creditor's claim that discovery is available here. However, *Strachman* involved a rare situation relating to governmental instrumentalities not at issue or relevant here. Specifically, due to the type of parties involved the normal presumptions regarding alter ego were reversed. Specifically, the issue in *Strachman* was whether the Palestine Monetary Authority, Palestine Authority, and Palestine Liberation

5

Organization are separate juridical entities. Notably, because a sovereign state was not involved, the burden was on the Palestine Monetary Authority to prove that it constituted a separate juridical entity rather than the alter ego of the Palestine Authority. *Palestine Monetary Auth.,* 62 A.D.3d at 222 – 23. Because the burden was on the party restrained, not the restraining party—as is the case here—the Court determined that the restraining party was entitled to discover what facts the restrained party would come forward with to rebut the presumption that it was not a separate juridical entity.

Fundamentally, this is the opposite of the case at bar. Here, the burden is on the restraining party, not the party restrained. Moreover, that burden must have been satisfied ***prior*** to issuance of the restraining notice in relation to a private entity such as Wyo Tech. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392–93 (S.D.N.Y. 2003) ("These cases, like the others cited by the plaintiff, support the proposition that a judgment creditor may restrain the assets of a judgment debtor wherever those assets may be. ***They do not support the proposition that the assets of third parties may be restrained <u>in anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos</u> of the judgment debtor. Such a conclusion is not only unsupported by the text of N.Y. C.P.L.R. § 5222 or any of the cases cited by the plaintiff, but would also pose significant due process problems.***" (emphasis added)). As such, the judgment creditors must be limited to what they knew at the time they issued the Restraining Notice. As this Court has recognized, it is fundamental in law that a party cannot violate ones rights and then hope and pray that it can justify its actions through *post hoc* discovery. Moreover, the uncontradicted case law demands this result. *Id.*

Nonetheless, assuming *arguendo* that this Court somehow concludes that it may ignore the fact that the issuance of a restraining notice on the theory of alter ego is a significant due process violation and instead decides to reward the culprits of this violation by determining that the only issue in this case is whether Dennis Danzik or RDX have an interest in the funds (which it should not), the discovery requested is still not relevant. Whether money was paid for the benefit of

6

Dennis Danzik or RDX does not establish any ownership or interest in the remaining monies in the account—nor does frequency or amount make it any more probable that there is such an interest. For example, I make payments to various charitable organizations to whom I do not owe a debt far more in both amount and regularity than I make payments to Walmart, this fact does not make it more likely that these charitable organization have an interest in the monies in my account than does Walmart; simply put, neither do. The *only* evidence that could support the claim that someone has an interest in monies in an account would be solely focused on the monies prior to entering the account, *i.e.* to establish their province, chain of title, or whether a fraudulent conveyance occurred. Wyo Tech and IEC are currently conducting audits and obtaining affidavits establishing where the funds came from which will once and for all dispel the entirely meritless claim of the judgment creditors that any of these monies are somehow the asset of a judgment debtor.

## CONCLUSION

For the foregoing reasons this Court must find that the Judgment Creditors did not comply with CPLR § 5222(b) when they issued the Restraining Notice to Wells Fargo in October 2017; that this clear violation of Wyo Tech's due process rights must result in the Court dismissing this matter and releasing the funds to Wyo Tech; and that under no circumstances are the Judgment Creditors entitled to discovery in attempt to create a *post hoc* justification for their constitutional violation.

**RESPECTFULLY SUBMITTED** March 25, 2019.

**WILENCHIK & BARTNESS, P.C.**
/s/ Dennis I. Wilenchik, Esq.
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

**BEUS GILBERT PLLC**
Leo R. Beus, Esq.
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

**ELECTRONICALLY FILED** March 25, 2019 March 25, 2019.

COPY served via CM/ECF System, which sends notification to all parties registered therein.

/s/ Hilary J. Myers