J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Wells Fargo Bank, N.A.

Plaintiff,

v.

Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,

Defendants.

And related claims.

Case No.: 2:17-cv-04140-PHX-DWL

**CWT PARTIES' SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO NONPARTY WILENCHIK AND BARTNESS, P.C.'s MOTION TO QUASH SUBPOENAS**

**Oral Argument Requested**

**TABLE OF CONTENTS**

**Page**

ARGUMENT .... 1

I. The CWT Parties Properly Issued the Restraining Notice Under C.P.L.R. § 5222(b) Even Though There Was No Prior Adjudication That Wyo Tech Is Danzik's Alter Ego .... 1

II. Whether the Restraining Notice Was Properly Issued Under C.P.L.R. § 5222(b) Does Not Matter Here Because the Disputed Funds Have Already Been Interpleaded, and This Is Not—Nor Could It Be—an Action to Vacate the Restraining Notice .... 5

III. The CWT Parties Are Entitled to Discovery to Support Their Claim That Danzik Has an Interest in the Disputed Funds, And They Are Not Limited to the Information They Knew When They Issued the Restraining Notice .... 8

## PRELIMINARY STATEMENT

***First***, the CWT Parties properly issued the restraining notice under C.P.L.R. § 5222(b), even though there was no prior adjudication that Wyo Tech is Danzik's alter ego. ***Second***, in any event, whether the restraining notice was properly issued under C.P.L.R. § 5222(b) does not matter here, because the disputed funds have already been interpleaded, and this is not—nor could it be—an action to vacate the restraining notice. ***Third***, the CWT Parties are entitled to discovery to support their claim that Danzik has an interest in the disputed funds, and they are not limited to the information they knew when they issued the restraining notice.

## ARGUMENT

### I. The CWT Parties Properly Issued the Restraining Notice Under C.P.L.R. § 5222(b) Even Though There Was No Prior Adjudication That Wyo Tech Is Danzik's Alter Ego

Wyo Tech is wrong that a restraining notice "based upon a theory of alter ego" is invalid unless there is a "ruling from a Court ***prior*** to the issuance of the Restraining Notice that the company is indeed an alter ego of the debtor." Dkt. No. 101 at 4 (citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392-93 (S.D.N.Y. 2003)).

The New York Appellate Division's holding in *Thompson v. Pollack* is on all fours. 59 A.D.3d 525 (N.Y. App. Div. 2nd Dep't 2009). There (like here), the judgment creditor used a restraining notice to freeze a nondebtor's bank account on the ground that the judgment creditor "believed" that the judgment debtor "had an interest" in the funds in the account. *Id.* at 526. And while the judgment creditor (like the CWT Parties) did not have a ***prior adjudication*** of alter ego liability, and the nondebtor (like Wyo Tech) "asserted that it was the owner of the restrained account" and that the judgment debtor "had no interest in the corporate account," the court refused to vacate the restraining

notice—holding that, since the judgment debtor (like Danzik) used the account for "personal expenses," the case should be "remitted" to the trial court for a "hearing to determine whether the defendant has an 'interest'" in the restrained account. *Id.* The absence of a prior adjudication of alter ego liability was irrelevant to whether the restraining notice was properly issued. *See id.*

The New York Appellate Division's holding in *1420 Associates, Inc. v. Modern Landfill & Recycling* is also directly on point. 256 A.D.2d 538 (2nd Dep't 1998). There (like here), the judgment creditor used a restraining notice to freeze a nondebtor's bank account on the ground that the judgment creditor "continued to use the subject account to pay, *inter alia*, admitted personal expenses." *Id.* at 539. And while the judgment creditor (like the CWT Parties) did not have a ***prior adjudication*** of alter ego liability, and the nondebtor (like Wyo Tech) "asserted that it was the owner of the subject Chase account" and was an entity "separate and distinct" from the judgment debtor, the court held that the case should be "remitted" to the trial court for a "hearing to determine whether" the judgment debtor had an "'interest' in the account within the meaning of CPLR article 52." *Id.* And again, the absence of a prior adjudication of alter ego liability was irrelevant to whether the restraining notice was properly issued. *See id.*

Further, contrary to Wyo Tech's argument (Dkt. No. 101 at 4), and as this Court recognized in its March 5 order (Dkt. No. 109 at 7), "[a]lter ego cases routinely uphold the restraint of the bank account merely on the ***allegation***"—not a prior adjudication—"that the corporate veil between the third party and the judgment debtor ought to be pierced." David Gray Carlson, *Critique of Money Judgment Part Three: Restraining Notices*, 77 Alb. L. Rev. 1489, 1549 (2014) (emphasis added); *see also United States v. Ceparano*, 2009 WL 8690129, at *3 (E.D.N.Y. May 13, 2009) (denying motion to vacate restraining notice served on nondebtor despite lack of prior adjudication of alter ego liability); *Ivor B.*

*Clark Co. v. Hogan*, 296 F. Supp. 407, 411 (S.D.N.Y. 1969) (restraining notice served on nondebtor upheld despite lack of prior adjudication of alter ego liability); *Blue Giant Equip. Corp. v. Tec-Ser, Inc.*, 92 A.D.2d 630 (3rd Dep't 1983) (denying motion to vacate restraining notice served on nondebtor despite lack of prior adjudication of alter ego liability); *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 378 N.Y.S.2d 859 (N.Y. Special Term 1975) (denying motion to vacate restraining notice served on nondebtor's bank account based on judgment creditor's claim that nondebtor and debtor were "separate only in form" despite lack of prior adjudication of alter ego liability); *De Lepomme v. Luquer*, 39 N.Y.S.2d 283 (N.Y. Sup. Ct. 1943) (denying motion to vacate restraining notice served on nondebtor based on judgment creditor's claim that nondebtor was the judgment debtor "under a different name" and that the restrained property was "in fact the property of said judgment debtor" despite lack of prior adjudication of alter ego liability).

While, as this Court observed (Dkt. No. 109 at 6), the federal court in *JSC* held that a restraining notice may not be used to restrain a nondebtor's assets "in anticipation of a finding that those" nondebtors are "alter egos" or "hold assets of alleged alter egos of the judgment debtor" (295 F. Supp. 2d at 392-93)—and a few other federal cases have followed this holding (Dkt. No. 109 at 6-7)—other cases and commentary have rejected these decisions as wrongly decided, or have narrowed their holdings to be meaningless.

Indeed, as this Court observed (*id.* at 7), according to a recent law review article, *JSC* was wrongly decided and a "feeble *Erie* guess of New York law." Carlson, 77 Alb. L. Rev. at 1553. And as the New York federal court held in *United States v. Ceparano, JSC* "stands only for the proposition that alleged 'alter ego' status alone is insufficient to issue a restraining notice against assets of a third party without ***evidence*** of fraudulent conveyance or a ***showing*** that the third party is actually holding assets of the judgment debtor. *Ceparano*, 2009 WL 8690129, at *3. Thus, a ***prior adjudication*** of alter ego

liability is not required to issue a restraining notice if the judgment creditor has some other "evidence" of a fraudulent transfer or can make a "showing" that the third party is holding the judgment debtor's assets. *See id.*; *see also Hillwick Inc. v. Advanced Ready Mix Supply Corp.* 2017 WL 4694865, at *5 (N.Y. Sup. Ct. May 15, 2017) (same), *cited in* Dkt. No. 202 at 7.

Further, requiring a judgment creditor to get a prior adjudication of alter ego liability against a nondebtor before restraining that nondebtor's assets is inconsistent with the purpose of a restraining notice—which is to "maintain the status quo" while the judgment creditor seeks turnover of the disputed funds. *Ceparano*, 2009 WL 8690129, at *3; *see also Interpool Ltd. v. Patterson*, 1995 WL 105284, at *1 (S.D.N.Y. Mar. 13, 1995) (purpose of restraining notice is to "preserve the status quo pending further proceedings in which the creditor's ability to reach specific property to satisfy the judgment may be determined"); C.P.L.R. § 5222 Legislative Studies and Reports ("restraining notice may be served on the debtor as well as on any garnishee or ***suspected*** garnishee") (emphasis added).

The New York Court of Appeals recently held that a restraining notice may be used to "***secure funds*** for ***later transfer*** to the judgment creditor through a sheriff's execution or ***turnover proceeding***." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 66 (2013) (emphasis added). And so requiring a judgment creditor to adjudicate whether a nondebtor is an alter ego of a debtor—and thus whether its assets are subject to turnover—***before*** restraining those assets is backward, and defeats the purpose of being able to use a restraining notice to maintain the status quo.

Indeed, a judgment creditor "may litigate" its claims that a nondebtor is the "alter ego[]" of the judgment debtor in a turnover proceeding under C.P.L.R. § 5225(b). *WBP Cent. Assocs., LLC v. DeCola*, 50 A.D.3d 693, 694 (N.Y. App. Div. 2nd Dept 2008). And

at the beginning of a turnover proceeding—which, under *Cruz*, may come ***after*** service of a restraining notice—the judgment creditor "need not prove" its entitlement to the funds, and instead must only "plausibly allege that it can meet this burden." *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 584-85 (S.D.N.Y. 2012). Thus, a judgment creditor may restrain a nondebtor's assets, and ***then*** litigate alter ego liability in a turnover proceeding—rather than before. And if a judgment creditor had to successfully adjudicate a nondebtor's alter ego liability ***before*** restraining that nondebtor's assets, a judgment creditor would almost never be able to use a restraining notice—since during the pendency of any alter-ego litigation, the nondebtor could freely move the disputed funds—and turnover and separate alter-ego litigation would be moot.

## II. Whether the Restraining Notice Was Properly Issued Under C.P.L.R. § 5222(b) Does Not Matter Here Because the Disputed Funds Have Already Been Interpleaded, and This Is Not—Nor Could It Be—an Action to Vacate the Restraining Notice

Wyo Tech is wrong that "even if Judgment Debtors had some unknown interest" in the disputed funds, the funds "must be released" because the restraining notice was "invalid as a matter of law" in the first instance. Dkt. No. 72 at 8.

In an interpleader action, the court must determine the ***"ownership"*** of the disputed funds. *United California Bank v. Fadel*, 482 F.2d 274, 275 (9th Cir. 1973); *see also NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1263 (6th Cir. 1985) ("only purpose of the interpleader action was to determine the ***ownership*** of the funds"); *Amethyst Int'l, Inc. v. Duchess*, 2014 WL 683670, at *5 (D.N.J. Feb. 20, 2014) (it is "indisputable" that "primary purpose" of interpleader action is to "determine who is the ***rightful owner***" of dispute asset); *Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp.*, 2011 WL 13220118, at *3 (C.D. Cal. June 27, 2011) (interpleader action used to "determine" the disputed asset's ***"rightful owner"***); *Wells v. Kearney*, 2009 WL 2568635,

at *2 (D. Ariz. Aug. 18, 2009) (interpleader action used to "determine ***ownership***" of disputed funds); *Aero Care Int'l L.L.C. v. Int'l Medevac Servs., Inc.*, 2008 WL 853623, at *1 (D. Ariz. Mar. 27, 2008) (interpleader action used to "secure and determine the ***rightful ownership*** of the contested funds") (all emphasis added).

Thus, Wyo Tech erroneously argues that the ownership of the disputed funds here is irrelevant because the restraining notice was improperly issued in the first instance. Indeed, Wyo Tech effectively argues that the disputed funds should be released because they should have never been restrained, and so never should have been available to be interpleaded, and so never should have been interpleaded. But Wyo Tech waived any objection to the interpleader of the disputed funds by failing to object to Wells Fargo's motion to interplead these funds. *See* Dkt. No. 13 at 3 ("Wyo Tech does not object to interpleader of its funds as a first step toward restoring its rightful access to its own funds."). And in any event, this Court already held that interpleader of the disputed funds is proper here. Dkt. No. 69 at 4; *see also* Dkt. No. 94 at 12; *Wells Fargo Bank, Nat'l Ass'n v. Magellan Ship Owners Ass'n*, 2010 WL 2266752, *2 (D. Ariz. 2010) (rejecting claimant's objection to interpleader of disputed funds when court "already determined that interpleader is an appropriate procedural mechanism").

Further, as the CWT Parties showed in their opposition to Wyo Tech's motion to enjoin other restraining notices the CWT Parties served (Dkt. No. 107 at 5-6), only the "court out of which the restraining notice issued"—which is the New York court here—may vacate or otherwise invalidate a restraining notice served under C.P.L.R. § 5222(b). *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018). And as the CWT Parties also showed (Dkt. No. 107 at 6-8), the Anti-Injunction Act also prohibits this Court from invalidating a New York restraining notice. *See Pressman v. Neubardt*, 2002 WL 31780183, at *4 (S.D.N.Y. Dec. 12, 2002) (denying motion to enjoin judgment

creditors' use of restraining notices to enforce New York state judgment because restraining notice is a "state court proceeding within the meaning of the Anti-Injunction Act").

Thus, by asking this Court to consider solely whether the restraining notice was properly issued—rather than who owns the disputed funds—Wyo Tech asks this Court to ignore its sole responsibility in an interpleader action (to determine "ownership" of the disputed funds) and to instead rule on an issue (validity of the restraining notice) that it has no power to adjudicate.

If Wyo Tech wanted to challenge the validity of the restraining notice, it could have done so by moving to vacate the restraining notice in New York. But it did not, and considering only whether the restraining notice was properly issued—as Wyo Tech urges this Court to do—rather than who owns the disputed funds, would improperly allow Wyo Tech to make an end run around the New York court and seek relief from this Court that this Court cannot grant. Moreover, if this Court were to grant judgment for Wyo Tech solely on the ground that the restraining notice was improperly issued (which, as explained above, is wrong in any event) and without regard to ownership of the disputed funds, this Court would be abdicating its sole duty in this case—which is to decide who is the rightful ***owner*** of the disputed funds. *See United California Bank*, 482 F.2d at 275.

Further, there is no due process problem with requiring Wyo Tech to challenge the validity of the restraining Notice in New York. To restrain or order the turnover of funds, the New York court "need only have *in personam* jurisdiction over the *garnishee*," i.e., Wells Fargo, and does not need to have jurisdiction over "either the judgment debtor or the third party who allegedly possesses the money in which the debtor has an interest." *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 583 (S.D.N.Y. 2012). This is because a restraining notice to, or turnover petition against, a nondebtor is a "proceeding against a

person, in order to 'demand that' this person (the garnishee) 'convert'" or restrain "'property for money for payment to a creditor.'" *Id.* (citation omitted). And if Wyo Tech wanted to avoid the risk that its funds could be restrained in New York, it should have deposited its funds in a bank that did not have a New York branch.[1]

### III. The CWT Parties Are Entitled to Discovery to Support Their Claim That Danzik Has an Interest in the Disputed Funds, And They Are Not Limited to the Information They Knew When They Issued the Restraining Notice

As a threshold matter, because—as explained above, this Court must determine the rightful ***ownership*** of the disputed funds, and the validity of the restraining notice is not relevant—what the CWT Parties knew when they issued the restraining notices is not relevant either. To the contrary, the only relevant issue here is who is the rightful ***owner*** of the disputed funds, and the CWT Parties are entitled to discovery to support their claim that Danzik owns—or otherwise has an interest in—these funds. *See Magellan Ship Owners Ass'n*, 2010 WL 2266752, *2 ("the Court cannot sanction an early distribution of disputed funds absent full due process of law").

In any event, under New York law, a judgment creditor is entitled to take discovery to support its claim that the judgment debtor owns or otherwise has an interest in funds held by a nondebtor after the judgment debtor restrains these funds.

As this Court observed, the New York Appellate Division's decision in *Palestine Monetary Authority v. Strachman* is on point. 62 A.D.3d 213 (N.Y. App. Div. 1st Dep't). There, judgment creditors served a restraining notice on a nondebtor, and the Appellate Division held that—***after*** service of the restraining notice—the judgment creditor was entitled to "full discovery" concerning whether the nondebtor was the "alter ego" or

---

[1] Since the sole issue here is who is the rightful owner of the disputed funds, cases vacating restraining notices on the ground that a nondebtor's payment of a judgment debtor's expenses, without more, is insufficient to justify issuance of a restraining notice ***may*** be relevant to the legal question regarding what level of interest in or control over the disputed founds amounts to "ownership," but they are not dispositive of this question.

"agent" of the judgment debtor, and whether the restrained funds "in fact, belong[ed]" to the judgment debtor. *Id.* at 222.

The court's decision in *Gryphon Domestic VI, LLC v GBR Information Services, Inc*. is also on point. 2004 WL 5653926 (N.Y. Sup. Ct. Oct. 29, 2004). There the judgment creditors served a restraining notice on a nondebtor despite the nondebtor's claim in a "sworn affidavit" that it "owe[d] no debt to the judgment debtors" and had no property in its possession "in which the judgment debtors ha[d] an interest." *Id.* The judgment creditors then brought a turnover proceeding, the purpose of which—like this interpleader action—was to determine whether the judgment debtors were "presently entitled to possession of the property" or whether the judgment creditors' "rights to possession of the property [were] superior to that of the third party." *Id.* And though the court there held that a turnover order was "not appropriate at this time" because the judgment creditors did not have enough evidence to meet this standard, the court also held that the judgment creditors "must have the opportunity to gather additional information by disclosure and the examination" of relevant documents." *Id.* And the court further held the nondebtor's president's sworn statement that the nondebtor had "no money or property of the judgment debtors" could not "deprive the judgment creditors of the ***right to conduct discovery***," since this sworn statement was "not the equivalent of an examination." *Id.* (emphasis added). Thus, though the judgment creditors did not have enough evidence when they issued the restraining notice to show that the restrained funds belonged to the judgment debtors, the court denied the motion for a turnover order "***without prejudice to renewal following discovery***." *Id.* (emphasis added).

Further, the court's decision in *De Lepomme* is also on point. 39 N.Y.S.2d 283. There, the court held that a judgment creditor that restrained assets of a nondebtor had the "right" to take "examinations" to determine whether the "property in the hands" of the

nondebtor was "property belonging to the judgment debtor or to others," and further held that that right "cannot be taken away from him by the presentation of a statement" by the nondebtor "as to its relations concerning the property," because "such a statement is not the equivalent of the examination allowed" by law. *Id.* (denying motion to vacate restraining notice without prejudice to a renewal "after the examinations have been had").

In its March 5 order, this Court stated that it has "some concerns about the due process implications that would be posed by a system in which a judgment creditor would have the right to conduct broad discovery after the issuance of a restraining notice in the hope of identifying evidence that might provide *post hoc* support for its claim." Dkt. No. 109 at 10. This is a valid concern, since "absent safeguards," New York's broad post-judgment enforcement procedures "could well be abused by judgment creditors seeking to drag foreign entities into court simply by bare allegations that they possess the money of a judgment debtor." *N. Mariana Islands*, 845 F. Supp. 2d at 583. But a judgment creditor's right to restrain the assets of—and then seek discovery from—a nondebtor is limited by the requirement that the judgment creditor "plausibly allege that it can meet its burden" to show that the judgment debtor has an interest in, and is entitled to possession of, the disputed funds (*id.* at 584-85)—which the CWT Parties did, and which this Court functionally recognized when it held (with Wyo Tech's consent) that this case is appropriate for interpleader.[2] And in any event, this procedure reflects the New York legislature's carefully-crafted balance between judgment creditors' and judgment debtors' (and their alleged alter egos') rights. So as explained above, if Wyo Tech did not want to subject itself to this procedure, it could have deposited its funds in a bank with no New York branches—especially since it knew (or could have known) about the judgment here.

---

[2] *See* Dkt. No. 69 at 8 n.1 ("The competing claims of the Judgment Creditors and Wyo Tech in this action themselves demonstrate the difficulty Wells Fargo would encounter in trying to resolve who is entitled to the funds in the account.").

Dated: March 25, 2019
Phoenix, Arizona

Respectfully submitted,

**RYAN RAPP & UNDERWOOD, P.L.C.**

By: /s/ Henk Taylor (016321)
J. Henk Taylor (016321)
3200 N. Central Ave., Suite 1600
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
E-Mail: htaylor@rrulaw.com

**SCHLAM STONE & DOLAN LLP**

Jeffrey M. Eilender
Bradley J. Nash
Joshua Wurtzel
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 34407677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**ORIGINAL** e-filed and **COPIES** e-mailed this 25th day of March 2019 as follows:

Dennis I. Wilenchik
**WILENCHIK & BARTNESS P.C.**
2810 North Third Street
Phoenix, AZ 85004
E-Mail: diw@wb-law.com

Leo R. Beus
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, AZ 85008
E-Mail: lbeus@beusgilbert.com

*Attorneys for Wyo Tech Investment Group, LLC*

/s/ Henk Taylor
J. Henk Taylor