WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

**INTRODUCTION**

Pending before the Court are (1) Wyo Tech Investment Group LLC's ("Wyo Tech") "Motion To Dismiss/Motion For Judgment On The Pleadings" (Doc. 95); (2) Wyo Tech's "Emergency Motion To Enjoin CWT Parties From Attempts To Utilize New York Restraining Notices To Restrain Funds Of Nondebtors And Nondebtor Assets Located Outside Of New York And Motion To Amend Complaint" (Doc. 98); and (3) a discovery dispute concerning a subpoena issued by CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "Judgment Creditors") on third party Wilenchik & Bartness, P.C. ("Wilenchik"), counsel for Wyo Tech (Doc. 101).

The Court held a telephonic hearing on the discovery dispute on February 27, 2019 (Doc. 103) and then requested supplemental briefing on three issues (Doc. 109), which the parties have provided (Docs. 113, 114). Afterward, on April 8, 2019, the Court held another round of oral argument.

As explained below, the Court has now reached conclusions as to the three legal

issues addressed in the supplemental briefing. Specifically, the Court concludes that (1) the Judgment Creditors complied with New York law when they issued the restraining notice to Wells Fargo, (2) the validity of the restraining notice is irrelevant now that the restrained funds have been interpleaded, and (3) the Judgment Creditors are entitled to conduct discovery in this interpleader action. Based on these conclusions, the Court will deny Wyo Tech's two pending motions and order Wilenchik and Beus Gilbert PLLC ("Beus Gilbert") to comply with the subpoenas.

**BACKGROUND**

I. <u>The Judgment Creditors Obtain A $7 Million Judgment Against Danzik, Then Utilize A "Restraining Notice" To Freeze Wyo Tech's Bank Account</u>

In 2016, the Judgment Creditors obtained a $7,033,491.13 judgment against Dennis Danzik and one of Danzik's companies, RDX Technologies Corporation (collectively, "Judgment Debtors"), in New York state court. During that litigation, the New York court also held Danzik in civil and criminal contempt, concluding that Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant" who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court." (Doc. 89-3 at 9-10, 12, 13.)

In October 2017, the Judgment Creditors' attorneys attempted to collect on the outstanding judgment by freezing a particular bank account at Wells Fargo bank. Notably, this account wasn't held in the name of either of the Judgment Debtors—it was held in the name of Wyo Tech, an LLC doing business in Arizona.

To freeze this bank account, the Judgment Creditors' attorneys utilized a procedural tool known as a "restraining notice," which is governed by section 5222 of the New York Civil Practice Law and Rules ("CPLR"). That statute provides, in relevant part, that "[a] restraining notice may be issued by . . . the attorney for the judgment creditor as officer of the court" and that it is permissible to serve a restraining notice "upon a person other than the judgment debtor or obligor" so long as the issuing attorney "has stated in the notice that . . . the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served." *Id.* § 5222(a), (b). In other words, CPLR § 5222 allows

a judgment creditor to freeze a bank account held by a third party based solely on an assertion by the judgment creditor's attorney that the judgment debtor holds an interest in the account—there is no requirement that the judgment creditor establish this interest to a judge before the restraining notice may issue. *See generally Global Tech., Inc. v. Royal Bank of Canada*, 2012 WL 89823, *12 n.9 (N.Y. Sup. Ct. 2012) ("[A] party that seeks a restraining notice need only engage an attorney, who is authorized to issue a restraining notice as an officer of the court. The Court has no involvement with the issue of whether service of the restraining notice upon the garnishee comports with due process until the garnishee challenges the restraining notice, or until the judgment debtor seeks an order of contempt or a money judgment against the garnishee.") (citation omitted); *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 230 (N.Y. 2013) ("When a judgment creditor has properly imposed a restraint on a bank account, the bank has no choice but to freeze the assets. Whether issued by a court or an attorney acting as an officer of the court, a restraining notice is an injunction and 'disobedience is punishable as a contempt of court.'") (quoting CPLR § 5222(a)).

After being served with the restraining notice, Wells Fargo froze Wyo Tech's account, which held $546,282.55. When Wyo Tech learned its account had been frozen, it immediately complained to the Judgment Creditors and to Wells Fargo, disputed whether the Judgment Debtors held any interest in the account, and threatened to sue. In response, Wells Fargo filed an interpleader action in this Court.

II. <u>The Arguments And Rulings Concerning Whether The Judgment Creditors Should Be Allowed To Conduct Discovery In The Interpleader Action</u>

At the outset of this case, the Judgment Creditors and Wyo Tech presented sharply different views about how the litigation should proceed. In the parties' initial Rule 26(f) report, which was filed in July 2018, the Judgment Creditors argued they should be allowed to conduct "discovery . . . to determine who has an interest in the funds at issue, who owns Wyo Tech, how Wyo Tech gets its money, why it paid hundreds of thousands of dollars to Danzik's company, wife, daughter, and cronies, why Danzik's wife and daughter had control of Wyo Tech's funds, and why Wyo Tech has paid thousands of dollars of Danzik's

legal fees, among other things." (Doc. 62 at 11.) Wyo Tech, in contrast, argued that the Judgment Creditors shouldn't be allowed to conduct any discovery and that the Court should immediately decide who was entitled to the interpleaded funds. (Doc. 62 at 13 ["Wyo Tech . . . believes that discovery in this case should be deferred until such time as the Court rules on the motion for summary judgment Wyo Tech intends to file within 30 days after the . . . Scheduling Conference. "].)

On July 24, 2018, the Court held a Rule 16 scheduling conference. (Doc. 63.) During this conference, the Court noted Wyo Tech's preference to postpone discovery until the Court had decided certain motions but ordered the parties to provide proposed discovery dates in a new filing.

On August 16, 2018, Wyo Tech filed a motion entitled "Motion for Immediate Release of Wrongly Restrained Funds." (Doc. 72.) In this motion, Wyo Tech argued, among other things, that "Wyo Tech anticipates that Judgment Creditors and their Counsel will attempt to delay a ruling on this Motion by claiming that they need to conduct 'additional' discovery. Any such request should be denied . . . [because] Judgment Creditors and their Counsel[']s defense of their actions must be done based on the evidence they claim to have had in their possession at the time they issued the wrongful restraining notice . . . ." (Doc. 72 at 4 n.1, emphasis omitted.)

On August 20, 2018, the parties filed a supplemental Rule 26(f) report. (Doc. 75.) It stated that the parties should have until August 9, 2019, to complete discovery and that dispositive motions shouldn't be due until September 6, 2019. (*Id.* at 2-3.)

On August 27, 2018, the Court issued its Rule 16 scheduling order. (Doc. 79.) In it, the Court approved the approach set forth in the parties' supplemental Rule 26(f) report, adopting the parties' proposed dates. (*Id.* at 2-4.)

On October 9, 2018, the Judgment Creditors filed an opposition to Wyo Tech's motion for immediate release of funds. (Doc. 88.) Among other things, the Judgment Creditors argued that (1) they "are entitled to take discovery, pursuant to the Court's scheduling order, before the funds are summarily released" and (2) Wyo Tech's request for

an immediate ruling was inconsistent with "its counsel['s] previous[] stipulat[ion] to an extensive discovery schedule." (Doc. 88 at 13-15 & n.3.)

On October 31, 2018, this case was reassigned to the currently-assigned judge. (Doc. 93.)

On December 19, 2018, the Court issued an order resolving several pending matters, including Wyo Tech's motion for immediate release of funds. (Doc. 94.) The Court concluded the motion was "premature, because the discovery deadline is over eight months away," and thus held that "Wyo Tech may refile a summary judgment motion in compliance with the Local Rules after the parties have had the opportunity to conduct discovery." (Doc. 94 at 12-13.)

**ANALYSIS**

I. Issues from Supplemental Briefs

    A. **Did The Judgment Creditors Comply With CPLR § 5222(b) When They Issued The Restraining Notice To Wells Fargo In October 2017?**

According to Wyo Tech, the restraining notice is invalid because there is a "clear rule of law" establishing "that a court must have previously determined that an entity is the 'alter ego' of [a] judgment debtor prior to a restraining notice being validly issued." (Doc. 113 at 3.) However, Wyo Tech cites only one case—*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003)—in support of its position.

The Judgment Creditors, on the other hand, dispute that a prior finding of alter ego status is required before a restraining notice may be issued and cite several cases in support of their position. (Doc. 114 at 1-5.)

In *JSC*, a court in the Southern District of New York held that third parties' "assets may not be restrained pursuant to § 5222 until their alleged alter ego status has been adjudicated and their liability for the previous judgment determined." 295 F. Supp. 2d at 393. The court held that New York state cases "support the proposition that a judgment creditor may restrain the assets of a judgment debtor wherever those assets may be" but "do not support the proposition that the assets of third parties may be restrained in

anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos of the judgment debtor." *Id.* at 392-93.

The Court respectfully disagrees with the *JSC* court's interpretation of New York state law. The parties have not identified any New York state-court cases in which a restraining notice was vacated due to the absence of a prior judicial finding of alter ego status, and there are multiple New York state-court cases in which courts declined to order vacatur under analogous circumstances.

For example, in *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 84 Misc. 2d 777, 781 (N.Y. Sup. Ct. 1975), the court refused to vacate a restraining notice issued on an alleged alter ego where the plaintiff had made only a "prima facie" showing that the judgment debtor and the third party on which the restraining notice was issued were "in fact one and the same, with the sole difference being one of form." The court found that the "plaintiff ha[d] demonstrated that the assets held by Chase Manhattan Bank are the assets of the judgment debtor, sufficient to warrant the continued restraint of disposition of those assets pending additional enforcement proceedings." *Id.* The court did not, in other words, vacate the restraining notice simply because the third party's alter ego status had not yet been established in a judicial proceeding.

Similarly, in *Thompson v. Pollack*, 59 A.D.3d 525 (N.Y. App. Div. 2009), the New York Supreme Court, Appellate Division overturned the lower court's vacatur of a restraining notice. The judgment creditor had issued the restraining notice on the account of a corporation in which it "believed" the judgment debtor had an interest based on evidence that the judgment debtor had "continued to use the corporate account to write checks for his own personal expenses." *Id.* at 525-26. The court remanded to the lower court "for a hearing to determine whether the defendant ha[d] an 'interest'" in the account. *Id.* at 526. In other words, the court declined to order vacatur even though the alter ego status had not yet been determined in a judicial proceeding.

And again, in *1420 Assocs., Inc. v. Modern Landfill & Recycling, a Waste Mgmt. Co.*, 256 A.D.2d 538, 539 (N.Y. App. Div. 1998), after the lower court vacated a restraining

notice based on a third-party corporation's argument that it was an "entity separate and distinct from the judgment debtor," the Supreme Court, Appellate Division reversed. The court "remitted for a hearing to determine whether [the individual judgment debtor] ha[d] an 'interest' in the account" because, even though the third-party corporation had apparently been dissolved, the individual judgment debtor "continued to use the corporate name and continued to use the subject account to pay, *inter alia*, admitted personal expenses." *Id.*

The Court also notes that, contrary to the *JSC* court's assertion, *Bingham v. Zolt*, 231 A.D.2d 479 (N.Y. App. Div. 1996), and *ERA Mgmt., Inc. v. Morrison Cohen Singer & Weinstein*, 199 A.D.2d 179 (N.Y. App. Div. 1993), simply do not address at what time the alter ego status of the third party must be adjudicated in relation to the issuance of the restraining notice; they certainly do not stand for the proposition that this adjudication must happen before restraining notices are issued.

Given this backdrop, the Court agrees with the observation, in a recent law review article on this topic, that "[a]lter ego cases routinely uphold the restraint of the bank account merely on the allegation that the corporate veil between the third party and the judgment debtor ought to be pierced." David Gray Carlson, *Critique of Money Judgment Part Three: Restraining Notices*, 77 Alb. L. Rev. 1489, 1554 (2014). The Court further agrees with the article's conclusion that *JSC*'s contrary interpretation of New York law appears to be incorrect. *Id.* at 1553 (characterizing *JSC* as "a feeble *Erie* guess of New York law").[1]

Furthermore, the Court is persuaded by the Judgment Creditors' argument that "requiring a judgment creditor to get a prior adjudication of alter ego liability against a

---

[1] Since 2012, a handful of federal courts have issued unpublished decisions adopting *JSC*'s views on this issue. *Capitol Records, LLC v. Defries*, 2014 WL 5608137, *1 (S.D.N.Y. 2014) (citing *JSC* for the proposition that, because "[t]here has been no finding by this Court or any other court that IOTA is the alter ego of Defries, . . . plaintiffs have not established their right to serve a second restraining notice on Sony or seek turnover of certain funds in Sony's possession"); *AXGINC Corp. v. Plaza Automall, Ltd.*, 2018 WL 4771886, *6 (E.D.N.Y. 2018) (citing *JSC* for the proposition that "a judgment creditor may not restrain the bank account of a third party unless and until it shows that the account actually contains funds that belong to the judgment creditor"). Those courts, however, did not perform their own analyses of why they believed *JSC* was correctly decided.

nondebtor before restraining that nondebtor's assets is inconsistent with the purpose of a restraining notice—which is to 'maintain the status quo' while the judgment creditor seeks turnover of the disputed funds." (Doc. 114 at 4, quoting *United States v. Ceparano*, 2009 WL 8690129, *3 (E.D.N.Y. 2009).) A judgment creditor issues "a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz*, 2 N.E.3d at 223; *see also Interpool Ltd. v. Patterson*, 1995 WL 105284, *1 (S.D.N.Y. 1995) (purpose of restraining notice is "to preserve the *status quo* pending further proceedings in which the creditor's ability to reach specific property to satisfy the judgment may be determined"). After a restraining notice is issued, the issuing party separately "may litigate, in [a turnover proceeding], its claims that transfers were made without fair consideration, that the [third parties] are the alter egos of the various corporate respondents, and that the corporate veil may be pierced." *WBP Cent. Assocs., LLC v. DeCola*, 50 A.D.3d 693, 694 (N.Y. App. Div. 2008). Because the restraining notice itself does not require turnover of the funds and simply requires maintenance of the status quo until a contested turnover proceeding, it would not make sense to require a conclusive finding of alter ego status before the restraining notice may issue. Moreover, CPLR § 5222 reflects a policy judgment by the New York legislature—which this Court is not free to second-guess—that an attorney's status as "officer of the court" when issuing a restraining notice should prevent abuse. *Save Way Oil Co. v. 284 E. Parkway Corp.*, 115 Misc. 2d 141, 144 (N.Y. Civ. Ct. 1982).

Accordingly, the Court concludes that (a) a judicial finding of the alter ego status of the third party is not required before a restraining notice may be issued on that third party's bank account and (b) the Judgment Creditors' issuance of the restraining notice to Wells Fargo was therefore permissible.

…

…

…

…

B. **Does It Matter Whether The Restraining Notice Was Valid Under New York Law, Given That The Funds Have Now Been Interpleaded?**

In an interpleader action, the court is tasked with determining the ownership of the disputed funds. *See, e.g.*, *United California Bank v. Fadel*, 482 F.2d 274, 275 (9th Cir. 1973) (interpleader action brought "to determine the *ownership* of funds in a savings account") (emphasis added); *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000), *opinion amended on denial of reh'g*, 255 F.3d 661 (9th Cir. 2000) ("[B]y bringing the action, the plaintiff benefits all parties 'by promoting early litigation on the *ownership* of the fund, thus preventing dissipation.'") (citation omitted and emphasis added); *NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1263 (6th Cir. 1985) ("The only purpose of the interpleader action was to determine the *ownership* of the funds . . . .") (emphasis added). This suggests that Wyo Tech may have forfeited any ability to dispute the propriety of the restraining notice by consenting to Wells Fargo's motion to interplead the funds (*i.e.,* remove the contested funds from Wyo Tech's bank account and place them in the Court's bank account). (Doc. 13 at 3 ["WYO TECH does not object to interpleader of its funds as a first step toward restoring its rightful access to its own funds."].)

This conclusion is bolstered by the fact that, in general, the proper court in which to dispute the validity of a restraining notice is the "court out of which the restraining notice issued." *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018); *see also Hillwick Inc. v. Advanced Ready Mix Supply Corp.*, 2017 N.Y. Misc. LEXIS 3908, *8-9 (N.Y. Sup. Ct. 2017) ("If the restraining notice is defective in some way, . . . or for any other reason that undermines it, it can be vacated on motion. The motion should of course be made to the court out of which the restraining notice issued (*i.e.,* was captioned) . . . .") (citation omitted).

Accordingly, the Court concludes that the sole issue to be resolved in this case is the ownership of the interpleaded funds, not the validity of the restraining notice.

…

C. **On The Merits, Are The Judgment Creditors Limited To The Information Known To Them At The Time They Issued The Restraining Notice, Or Are They Entitled To Conduct Post-Issuance Discovery To Support Their Claim?**

As an initial matter, because the issue in this action is ownership of the interpleaded funds, not the validity of the restraining notice, there would be no reason to limit discovery to what the Judgment Creditors knew at the time they issued the restraining notice.

Even if the validity of the restraining notice were still at issue, however, the Court is not persuaded that discovery should be so limited. Wyo Tech cites only the same case it cites throughout its motion—*JSC*—in support of its position. But the Court has already noted its disagreement with the *JSC* court's reasoning.

Furthermore, Wyo Tech has not convinced the Court of the inapplicability of *Palestine Monetary Authority v. Strachman*, 62 A.D.3d 213 (N.Y. App. Div. 2009), which the Court cited in its March 5, 2019 order. (Doc. 109 at 9-10.) There, the Ungars obtained a $116 million judgment against the Palestinian Liberation Organization ("PLO") and the Palestinian Authority ("PA") and then took various steps to collect on the judgment. *Id.* at 216. One of those steps was to issue a restraining notice under CPLR § 5222 to freeze a $30 million bank account held by a different entity, the Palestinian Monetary Authority ("PMA"). *Id.* The Ungars' theory, when issuing the restraining notice, was that "the PMA is the alter ego . . . of the PA or the PLO" and/or may "hold[] any funds of the PA or the PLO." *Id.* at 218. During subsequent litigation in state court, in which the PMA sought to vacate the restraining notice, the Ungars "requested discovery" in an attempt to obtain evidentiary support for their position. *Id.* The trial court largely rejected these requests and ruled against the Ungars, even though it "acknowledged that discovery was limited and that upon full discovery the evidence might show the PMA does hold funds of the PA or the PLO." *Id.* at 220. The appellate court reversed, holding that the Ungars should have been allowed to conduct more discovery. *Id.* at 231.

Thus, the Judgment Creditors may seek discovery regarding ownership of the funds and are not limited to information known when the restraining notice was issued.

II.   Discovery Dispute

Having determined that discovery is available to the Judgment Creditors, the Court rules on the merits of the discovery dispute. The dispute concerns a subpoena issued by the Judgment Creditors on Wilenchik on February 11, 2019. (Doc. 101.) The subpoena seeks documents sufficient to show all payments made to Wilenchik by Wyo Tech and by third party Inductance Energy Corporation ("Inductance") and the client(s) on whose behalf and the matter for which the payments were made. (*Id.* at 16.)[2]

### A.  **Parties' Arguments**

The Judgment Creditors contend the subpoenaed documents are relevant to whether Danzik has an interest in the interpleaded funds. They argue that "the more money Wyo Tech paid for Danzik's and his cronies' legal fees—especially in matters in which Wyo Tech has no interest—the more probable it is that Danzik has an interest in the disputed funds." (*Id.* at 2.) They further claim that, because "just weeks before [the Judgment Creditors' counsel] restrained the disputed funds, Danzik's daughter wrote a $25,000 check from Wyo Tech's account for the 'opening' of an Inductance account," "if Inductance is paying Danzik's or his cronies' legal fees using money derived in part from Wyo Tech, it makes it more probable that Danzik has an interest in the disputed Wyo Tech funds—and merely diverted those funds (and future funds he acquired) to Inductance to continue paying his expenses after the CWT Parties restrained Wyo Tech's account." (*Id.*)

Wilenchik objects on the sole ground that the documents sought by the subpoena are irrelevant. Wilenchik provides three main arguments in support of this objection: (1) "[Inductance] is not a party to this litigation"; (2) "a Restraining Notice's validity rises or falls on the information known at the time of issuance"; and (3) "evidence of payment for the benefit of another is not sufficient to issue a Restraining Notice." (*Id.* at 3-5.)

---

[2] In the discovery dispute filing, the Judgment Creditors noted that they served an identical subpoena on Wyo Tech's other counsel, Beus Gilbert, and argued that "for the same reasons Wilenchik should be ordered to produce documents in accordance with the subpoena, Beus Gilbert should as well." (Doc. 101 at 2.)

- 11 -

B.   **Legal Standard**

The test for "relevance," in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34. *See, e.g.*, *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("It is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34. Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."); Fed. R. Civ. P. 45, advisory committee notes to 1970 amendment ("[T]he scope of discovery is the same as that applicable to Rule 34 and the other discovery rules."); S. Gensler, 1 *Federal Rules of Civil Procedure, Rules and Commentary* (hereinafter "Gensler"), Rule 45, at 1189 (2018) ("The scope of information that may be sought via subpoena is the same as the scope of discovery generally under Rule 26(b).").

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).[3]

C.   **Analysis**

The Court finds that the documents sought through the subpoena are relevant and proportional under Rule 26(b)(1).

Most of Wilenchik's arguments rest on his (and Wyo Tech's) position that the issue in this case is the validity of the restraining notice. But the Court has now rejected that

---

[3] During the telephonic hearing on February 27, 2019, Wilenchik stated that it is objecting to the subpoena only on relevance grounds, not on privilege or burden grounds. (Doc. 106 at 14.) Accordingly, even though non-parties are generally entitled to special consideration when it comes to Rule 45 subpoenas—which is afforded by "weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party," *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (citations and internal quotation marks omitted)—no such weighing is required here.

argument and further determined the restraining notice was properly issued.

To be sure, the Court agrees with Wilenchik that whether Wyo Tech paid Danzik's attorneys' fees does not *conclusively* establish Danzik has an interest in the interpleaded funds. But the standard for relevance does not require that the evidence sought conclusively prove any issue in the case. If Wyo Tech paid Danzik's attorneys' fees, that at least makes it more likely Danzik had an interest in Wyo Tech's funds. *Bingham*, 231 A.D.2d at 479 (finding that "evidence demonstrat[ing] that a judgment debtor regularly has used another's bank account . . . as a source for payment of the debtor's expenses" was relevant to whether debtor has an interest in the bank account); *Thompson*, 59 A.D.3d at 525-26 (finding that evidence showing judgment debtor "use[d] the corporate account to write checks for his own personal expenses" was relevant to whether the judgment debtor had an interest in the account). Additionally, because some of Wyo Tech's funds were transferred to Inductance for the "opening" of an Inductance account immediately before the restraining notice was issued on the Wyo Tech account, whether Inductance paid Danzik's legal bills also bears on whether Danzik has an interest in the interpleaded funds.

Accordingly, the Court orders Wilenchik and Beus Gilbert to produce the documents requested by the subpoenas.

III. <u>Emergency Motion</u>

A. **Background**

On February 8, 2019, the Judgment Creditors served a new set of restraining notices on Wilenchik, Beus Gilbert, Wyo Tech, Danzik's wife and daughters, and a Bank of the West account held in the name of Inductance. (Doc. 98-2–7; Doc. 108 ¶ 3.)

B. **Parties' Arguments**

In Wyo Tech's "Emergency Motion To Enjoin CWT Parties From Attempts To Utilize New York Restraining Notices To Restrain Funds Of Nondebtors And Nondebtor Assets Located Outside Of New York," Wyo Tech made three requests: (1) to "declare that the New York Restraining Notices and Information Subpoenas are invalid and unenforceable and enjoin the CWT Parties from further attempts to utilize NY CPLR §

5222 Restraining Notices and Information Subpoenas in their attempts to collect on the already domesticated Judgment against Dennis Danzik and RDX Technologies"; (2) to grant Wyo Tech leave to amend its counterclaims; and (3) to "reconsider [the Court's] prior ruling that it lacked personal jurisdiction over the lawyer and law firm defendants." (Doc. 98.) However, in its reply, Wyo Tech withdrew the first two requests and retained only its request for reconsideration. (Doc. 110 at 1 ["Wyo Tech withdraws the portions of its motion (Doc. 98) that do not relate to its request that this Court reconsider its ruling regarding personal jurisdiction."].) Wyo Tech contends the Court now has general personal jurisdiction over the Judgment Creditors and their attorneys given their recent efforts to send restraining notices to at least seven individuals and entities located within Arizona. (*Id.* at 2-4.)[4]

The Judgment Creditors argue that (1) Wyo Tech has not satisfied the standard for a motion for reconsideration and (2) the additional contacts identified by Wyo Tech are insufficient for the Court to exercise general jurisdiction. (Doc. 107 at 15-17.)

C. **Analysis**

As an initial matter, although Wyo Tech's request is styled as a motion for reconsideration, Wyo Tech is functionally trying to amend the personal jurisdiction allegations underlying its counterclaims. The Local Rules provide a separate procedure for seeking leave to amend a complaint, LRCiv. 15.1, which Wyo Tech did not follow here.

Nonetheless, even if Wyo Tech had properly moved to amend its personal jurisdiction allegations, such a request would fail on the merits. As Wyo Tech acknowledges (Doc. 110 at 2), a court's "specific jurisdiction inquiry is limited to 'the defendant's suit-related conduct.'" *Picot v. Weston*, 780 F.3d 1206, 1215 n.3 (9th Cir. 2015) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Thus, "[a] plaintiff may not create personal jurisdiction over one claim by arguing that jurisdiction might be proper

---

[4] Although Wyo Tech seemed, in its motion, to be seeking reconsideration of the Court's personal jurisdiction ruling only as to "the lawyer and law firm defendants" (Doc. 98 at 8), Wyo Tech contended in its reply that the "Court should reconsider its previous decision . . . and find that there is personal jurisdiction over the [Judgment Creditors] and their attorneys" (Doc. 110 at 4).

- 14 -

over a different, hypothetical claim not before the court." *Id.* Accordingly, the Judgment Creditors' and their attorneys' conduct in issuing of new set of restraining notices in February 2019, which are unrelated to the narrow issue before this Court (*i.e.,* who has a superior claim to the interpleaded funds that were secured via a different restraining notice issued in October 2017), is irrelevant to the Court's *specific* personal jurisdiction analysis and does not affect the Court's prior conclusion.

Wyo Tech is also incorrect in contending the Court now has *general* personal jurisdiction over the Judgment Creditors and their attorneys with respect to the cross-claims/third-party claims. "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citations omitted). As the Ninth Circuit has noted, "[t]his is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Importantly, "ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant." *Id.* at 927.

Contrary to Wyo Tech's assertions, then, the question is not simply whether the "defendant engages in substantial, continuous or systematic activities within the forum" (Doc. 110 at 3), but instead is whether the defendant "engage[s] in 'continuous and systematic general business contacts,' *that 'approximate physical presence' in the forum state*." *Schwarzenegger*, 374 F.3d at 801 (citations omitted) (emphasis added); *see also Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) ("[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are

so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"). Serving a handful of restraining notices on parties within Arizona, engaging in separate litigation within Arizona, and conducting business meetings within Arizona, even if taken together, cannot be said to approximate physical presence in Arizona. Moreover, the individual Judgment Creditor, Jean Noelting, and the individual attorneys are not domiciled in Arizona, and the entity Judgment Creditors and the law firm cannot be said to be "at home" in Arizona.

IV.  Motion to Dismiss

    A.  **Background**

In December 2017, Danzik filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Wyoming (Case No. 17-20934). In April 2018, the bankruptcy court issued an order lifting the automatic stay in part so that Wyo Tech and the Judgment Creditors could continue litigating this interpleader action. (Doc. 99 at 5; *see also* Doc. 95-1 at 2 ["[T]he [bankruptcy] court entered its order terminating the automatic stay allowing the interpleader action to proceed."].)

Later, two of the Judgment Creditors, CWT Canada II Limited Partnership and Resource Recovery Corporation, asked the bankruptcy court to grant them "derivative standing" to assert additional claims—specifically, "fraudulent transfer and conspiracy to commit fraudulent transfer claims"—in the interpleader action on behalf of Danzik's estate. (Doc. 95-1 at 2.) In July 2018, the bankruptcy court issued a five-page order denying this request. (Doc. 95-1.) After summarizing the law concerning the "implied right for a creditor . . . to be granted permission to pursue avoidance actions on behalf of the bankruptcy estate when the trustee or debtor-in-possession refuses to do so" (*id.* at 2), the court concluded the Judgment Creditors' request should be denied because (1) they hadn't asked Danzik's estate for permission to assert the fraudulent transfer claims, (2) they hadn't provided any "specific factual allegations" to support their accusation that Danzik had fraudulently transferred any property to Wyo Tech, and (3) they hadn't proved that the Danzik estate's failure to assert claims in the interpleader action was unjustified or

unreasonable. (*Id.* at 2-5.)

Finally, in February 2019, the bankruptcy court dismissed the case. (Doc. 100-4.)

B. **Parties' Arguments**

Wyo Tech moves to dismiss, or, alternatively, for judgment on the pleadings, asking the Court to release the interpleaded funds to Wyo Tech on the ground that the Judgment Creditors are barred from making a claim on the interpleaded funds because their main contention here is that Danzik has an interest in the funds, yet "the Bankruptcy Court has already, unequivocally and specifically, ordered that the CWT Parties are not authorized to pursue such a claim in this action." (Doc. 95 at 1.)

In response, the Judgment Creditors argue the Court should deny this motion for four reasons: (1) Wyo Tech is barred by the law-of-the-case doctrine from seeking the same relief it sought in its unsuccessful August 16, 2018 motion (Doc. 72); (2) this is a disguised motion for reconsideration of the Court's August 1, 2018 order (Doc. 69), and Wyo Tech has no basis for reconsideration here; (3) this motion is premature because its asks the Court to decide the merits of the parties' claims before discovery closes; and (4) the bankruptcy court order on which Wyo Tech relies cannot have preclusive effect and is not preclusive here. (Doc. 99.)

C. **Analysis**

Wyo Tech's motion will be denied for several reasons. First, the Court is not persuaded that the bankruptcy court's July 2018 order should be construed as a determination, on the merits, that the Judgment Creditors lack any legitimate claim to the $546,282.55 in interpleaded funds. Notably, in April 2018, the bankruptcy court agreed to lift the automatic stay so the Judgment Creditors could pursue claims in this interpleader action. The July 2018 ruling, in contrast, addressed a technical, bankruptcy-specific issue as to whether the Judgment Creditors had "derivative standing" to assert particular claims on behalf of the bankruptcy estate. It would be anomalous to interpret the July 2018 ruling as implicitly overruling the April 2018 ruling.

Second, the July 2018 ruling merely noted that the Judgment Creditors hadn't

- 17 -

attempted to offer any specific allegations in support of their claim that Danzik had fraudulent transferred certain assets to Wyo Tech. In other words, the court was identifying a pleading deficiency. This is different from a determination, on the merits, that no fraudulent transfer occurred.

Third, it appears the primary reason why the bankruptcy court denied the Judgment Creditors' request for derivative standing was because they didn't make a request to the trustee of Danzik's estate before filing their motion, which is a procedural prerequisite under the relevant bankruptcy laws. This is, again, much different from a determination, on the merits, that no fraudulent transfer occurred.

Finally, it is also worth noting that, in February 2019, the bankruptcy court dismissed Danzik's bankruptcy case. This raises questions about whether any earlier orders issued by the bankruptcy court may be said to have a collateral estoppel effect. After all, under 11 U.S.C. § 349(b)(3), the dismissal of a debtor's bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." "The basic purpose of [§ 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *In re Lawson*, 156 B.R. 43, 45 (B.A.P. 9th Cir. 1993) (citation omitted). Thus, because "dismissal of the bankruptcy case revests the property of the estate in the party that owned it prior to the filing of the petition, there is no bankruptcy estate after the dismissal has been entered." *In re Steenstra*, 307 B.R. 732, 738 (B.A.P. 1st Cir. 2004) (citing 11 U.S.C. § 349(b)(3)).

Because the parties haven't briefed this issue in any depth, and because there are alternative reasons for denying Wyo Tech's motion to dismiss, the Court declines to resolve whether the dismissal of Danzik's bankruptcy case eliminates any collateral estoppel effect that might have otherwise flowed from the July 2018 order. Nevertheless, the Court notes that the July 2018 order addressed the narrow issue of whether the Judgment Creditors had derivative standing to assert certain claims on behalf of Danzik's estate. Yet a party wouldn't need the bankruptcy court's permission to assert claims on

behalf of a bankruptcy estate that no longer exists. Accordingly, any orders addressing a party's standing to assert claims on behalf of that nonexistent bankruptcy estate have arguably been are rendered moot by the dismissal of Danzik's case.

Accordingly, **IT IS ORDERED** that:

(1) Wyo Tech's "Motion To Dismiss/Motion For Judgment On The Pleadings" (Doc. 95) is **denied**;

(2) Wyo Tech's "Emergency Motion To Enjoin CWT Parties From Attempts To Utilize New York Restraining Notices To Restrain Funds of Nondebtors And Nondebtor Assets Located Outside of New York And Motion To Amend Complaint" (Doc. 98) is **denied**;

(3) To the extent the parties' joint notice of summary dispute (Doc. 101) may be construed as a motion to compel filed by the Judgment Creditors, that motion is **granted**; and

(4) Wilenchik and Beus Gilbert must produce the documents requested by the subpoenas by April 26, 2019.

Dated this 9th day of April, 2019.

_____
Dominic W. Lanza
United States District Judge