Dennis I. Wilenchik, #005350
**WILENCHIK & BARTNESS PC**
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

Leo R. Beus, #002687
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A., | Case No.: 2:17-CV-04140-DWL |
| Plaintiff, | |
| v. | **RESPONSE TO CWT PARTIES' AMENDED MOTION FOR AN ORDER TO SHOW CAUSE** |
| Wyo Tech Investment Group, LLC; CWT Canada II Limited Partnership; Resources Recovery Corporation; and Jean Noelting, | |
| Defendants. | **(Oral Argument Requested)** |

Counsel for Wilenchik & Bartness, P.C. ("W&B") and Beus Gilbert, PLLC ("Beus Gilbert") (collectively, "Responding Parties"), hereby respond to the CWT Parties' <u>Amended</u> Motion for an Order to Show Cause ("Amended Motion for OSC"), which was filed on May 15, 2019 (Dkt. No. 135) and the Court's Order filed on May 16, 2019 ("May 16 Order") (Dkt. No. 136) in this matter. The Responding Parties ask that the Court deny the Amended Motion for OSC and impose no sanctions. This Response is supported by the accompanying Memorandum of Points and Authorities.

. . .

. . .

**RESPECTFULLY SUBMITTED** May 22, 2019.

**WILENCHIK & BARTNESS, P.C.**

s/ Dennis I. Wilenchik
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

**BEUS GILBERT PLLC**
Leo R. Beus, Esq.
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

First, the Responding Parties wish to apologize sincerely to both the Court and opposing counsel for this incident, and fully acknowledge that mistakes were made here regarding the Subpoenas responses. We cannot apologize enough. Indeed, we concede we were wrong and will not make any excuses. However, we wish to make clear to the Court that nothing here was done intentionally or to be in any way contemptuous of this Court. Second, W&B seeks to emphasize that Beus Gilbert was in no way at fault for any of this. Indeed, W&B takes full responsibility for failing to check further with Beus Gilbert regarding whether they had received checks following October 18, 2017. Third, since uncovering these errors, W&B has taken all efforts available to rectify the situation and comply with the Subpoenas over and above what is required. As of May 22, 2019, Beus Gilbert has produced all 21 pages of responsive documents and W&B has produced 325 pages of responsive documents. Both firms strongly believe that they are in full compliance with the Subpoenas, but will continue to search diligently for responsive documents out of an extreme abundance of caution. Those documents were produced in a series of

2

productions beginning on May 14, 2019, which continued as additional responsive documents became known to counsel through May 22, 2019.

Dennis Wilenchik, owner of the firm, will take full responsibility for this. However, the Court should please keep in mind that after returning from vacation, out of the country, on April 10, David Timchak, who was responsible for the case, had left the firm to go to the firm of Fennemore Craig during that time. When Mr. Wilenchik returned, he also learned the devastating news that his son Jack Wilenchik was diagnosed with stage 2 colon cancer, which he has advised opposing counsel of. He assigned lawyers in the firm to deal with the Subpoena issues and to respond fully. It is regrettable that he was unable to be more actively involved in that process but he had delegated it, being preoccupied with obviously more important issues on his mind. He specifically asked his attorneys and paralegal to check with Beus Gilbert regarding all payments, and this was simply not done fully, each person apparently thinking the other had checked. For that Mr. Wilenchik is sorry given what transpired. Mr. Wilenchik was told by Mr. Swensen that the Order was complied with. That was wrong. We cannot emphasize enough, however, that the failure to fully produce were indeed just **mistakes** and the result of mere negligence. There was no intent or willfulness to violate the Court's April 9, 2019 Order. The last person Mr. Wilenchik would want in any way to be in contempt of in any way is this Court and he certainly had no such intent as head of the firm. Moreover, the Responding Parties have **absolutely no reason** to flout the Court's order. The Responding Parties also have **nothing to hide** with respect to the Subpoena responses, and there are no nefarious motives at play here since we have always maintained that none of the payments made to W&B by Wyo or IEC at issue in any way have anything to do with the money interplead in this case some time ago and that they prove nothing insofar as our firm is concerned, and the same is true as to Beus Gilbert. Having said that, this is in no way any excuse to have fully complied by the date set.

Thus, in response to the Motion and Amended Motion for OSC, and the Court's May 16, 2019 Order, the Responding Parties conducted a thorough review of the handling of these

3

Subpoena responses and have determined that, in addition to Mr. Swensen's acknowledged negligent mishandling, this issue was caused by an unfortunate combination of events at Wilenchik & Bartness over the past few months—in other words a "perfect storm" or "comedy of errors" (meant in the sense that is without even the slightest hint of humor) occurred as described below. Accordingly, the Responding Parties seek to inform the Court of the following to consider in determining whether any contemptuous conduct occurred:

- The Responding Parties, in particular W&B, have scoured their accounting books to uncover all responsive documents, which as of this filing, have all been produced to the CWT Parties. In short, the Responding Parties have **taken all possible measures to ensure compliance** with the Subpoenas.

- W&B accepts all responsibility for the untimely and improperly-limited Subpoena responses on behalf of W&B **and** Beus Gilbert. Mr. Leo Beus relied upon Mr. Swensen's representation that the Subpoenas were properly limited to January 1, 2016 to October 18, 2017, when he executed the Subpoena responses on behalf of Beus Gilbert. We emphasize that Mr. Beus' responses were technically accurate statements, however certain payments were made to Beus Gilbert following the incorrectly limited time-frame that were not accounted for given the foregoing mistake. In short, Mr. Beus had no reason to believe that Mr. Swensen was incorrect and Mr. Beus should bear no blame whatsoever.

- W&B did not have copies of the checks provided by Mr. Wurtzel, as the firm has never made or maintained copies of checks, but instead operates a semi-manual accounting system, which is no doubt consistent with other boutique litigation firms. In essence, the Subpoenas required the Responding Parties to learn W&B's bookkeeping system, which is semi-manual accounting and is rather complex. It is regrettable that mistakes were made here in fully understanding this.

- W&B personnel have worked tirelessly over the past week to bring the Responding Parties into full compliance with regard to the Subpoena responses and have made multiple

document productions in an effort to ensure that the CWT Parties were provided with as many documents and as much information as possible as to not only payment but application of payment to accounts, and as quickly as possible.

As such, the Responding Parties request that the Court decline to enter an order holding them in contempt. The reasons are simple. This is not a situation where the Responding Parties were attempting to flout a Court order or hoodwink the Court or counsel, let alone on any point they care about—there was no contemptuous conduct here. Rather, this situation is the result of a series of negligent missteps by Mr. Tyler Swensen, who believed he was acting in good faith. The Responding Parties are not simply refusing to comply with a Court order, otherwise we would not have made the subsequent productions of responsive documents to the CWT Parties. Attached as **Exhibit 1** is a Declaration from Mr. Swensen, which explains his good faith, but regrettably erroneous thought-process. He had exchanged various e mails with opposing counsel at all times attempting to resolve all issues once he realized his error.

Finally, the Responding Parties would be remiss to not point out that this entire situation was easily avoidable. Although we are not blaming Mr. Wurtzel for anything, the truth is had he sent even one e-mail, phone call, letter, or anything about not receiving the Subpoena responses, the Responding Parties would have been made immediately aware of that error, and could have avoided Court intervention entirely since he then also pointed out he had already some checks that had not been produced, which would have prompted further inquiry. Indeed, the Responding Parties again contend that LR Civ. 7.2(j) required Mr. Wurtzel to speak with us before filing the Motion for OSC, as this was a discovery motion. Again, this is not offered as an excuse by us for any of what happened, but should at least be considered.

Moreover, the request for sanctions in the amount of $500 per day dating back to April 27, 2019, is not reasonable and has no support in law. To the contrary, well-settled case law holds that the sole purpose of civil contempt is **not** to punish a contemnor, but to provide a sanction that will motivate the contemnor to immediately comply with the Court's Order and make the filing

party whole. We needed no such motivation to be clear. The mistakes here were self-inflicted but were not purposeful. A retroactive punishment does not fit that mold, as we had no indication that we were out of compliance with the Subpoenas until May 13, 2019, when the Motion for OSC was filed, which prompted a further review and investigation. Thus, the Responding Parties could not have been "motivated" to come into compliance with the Court's April 12, 2019 Order until then because Responding Parties believed that the Subpoena responses were served and complied with, even if not fully complied with as we then learned.

## II.     ADDITIONAL FACTS

The Court is already aware of the salient facts relating to the Responding Parties' accidental failure to serve the Subpoena responses on April 26, 2019, and the Responding Parties appreciate that the Court has accepted Ms. Stevens' explanation as to what occurred. (Dkt. No. 136 at 4:4–6.) Indeed, such mistakes as these regrettably happen. However, the Court is still unaware of several crucial events leading up to April 26, 2019. Some context and background information is both appropriate and helpful to show how a "perfect storm" contributed to this situation.

W&B is a relatively small, 10+ attorney-size firm handling mostly commercial litigation matters. The instant case is one of several, approximately seven (7) litigation cases relating to Mr. Dennis Danzik ("Danzik Cases") in some form or another, which W&B is handling. The Danzik Cases originated from New York and in Wyoming and are procedurally complex. These cases, including federal cases against Danzik Applied Sciences and former Board members of RDX, have been ongoing for several years, and touch on bankruptcy and collections issues, as well as numerous other issues. In other words, the Danzik Cases require careful and extended study for a newcomer to grasp. Until his departure on March 15, 2019, a now-former W&B associate attorney, Mr. David Timchak, was principally handling these matters for the firm. Ordinarily, that departure would have been a non-issue. However, very shortly thereafter, another W&B associate attorney, with a full caseload, also departed the firm without giving any advance notice. All the

1  while, Mr. Dennis Wilenchik, who is the lead counsel on this case, was travelling abroad in Europe
2  and the Middle East, with limited access to e-mail and therefore updates regarding this litigation.
3      While Mr. Wilenchik was traveling abroad, given the unforeseen dearth of attorney-
4  manpower in the office, senior associate attorney Tyler Swensen was forced to jump on this case
5  and others, several of which were also notoriously complex (as known around the office).
6  Compounding this difficult hurdle is the fact that W&B uses a semi-manual or "blended"
7  accounting system, which Mr. Swensen did not (and could not reasonably be expected to)
8  understand, which contributed to the erroneous statements made in the Subpoena responses.
9  Likewise, Chase Turrentine, a freshly-minted lawyer, who was just hired to replace the first-
10 departing associate, was feverishly studying the case in an attempt to get "up to speed" and was
11 likewise forced to handle the April 9, 2019 argument in this matter.
12     Mr. Wilenchik returned home on April 10, 2019. Unfortunately, while he was still abroad,
13 his son, John "Jack" Wilenchik was diagnosed with Stage 2 colon cancer and would require an
14 onslaught of doctor's visits, immediate chemotherapy and radiation, followed by future surgery.
15 Mr. Wilenchik first learned of this upon his return home. Jack Wilenchik is likewise an attorney
16 at W&B with a full-case load. Immediately upon learning this information, Dennis Wilenchik was
17 forced to deal with not only the accompanying emotional strain, which is unimaginable, but also
18 with ensuring that Jack's caseload was properly handled and that necessary reassignments and
19 other measures were made, which subsequently entailed hiring two new associate attorneys.
20 Needless to say, Mr. Wilenchik was unable to focus his attention to an ideal degree on this
21 particular issue. He informed opposing counsel of this in an e-mail and they expressed their
22 sympathy, which was appreciated. While regrettable, it is hopefully understandable. Mr.
23 Wilenchik understandably delegated this task of compliance.
24     Nevertheless, while juggling his onerous caseload, Mr. Swensen had several conversations
25 with Mr. Turrentine and others in the office, which, for one reason or another, resulted in one
26 highly-regrettable miscommunication. Mr. Swensen believed in good faith that this Court's April

12, 2019 Order, while denying the request to quash the Subpoenas outright, still permitted the Responding Parties to assert their objections, particularly the relevance objections with respect to the Subpoenas requested time-frame. Mr. Swensen concedes that he failed to review the Court's April 12, 2019 Order before drafting the Subpoena responses, but nevertheless thought that the responses he prepared would not flout this Court's Order. *See* Exhibit 1 at ¶ 10. Mr. Swensen makes no excuses for this mistake and takes full responsibility, which the Responding Parties hope the Court will accept.

Finally, the Responding Parties emphasize that neither W&B nor Beus Gilbert have anything to hide with respect to their responses to the CWT Parties' Subpoenas. There is no nefarious or ulterior motives here, nor is there any reason why the Responding Parties would seek to improperly impede or hinder this discovery. Nor is there any ongoing refusal by the Responding Parties to respond to the Subpoenas, and to the contrary, the Responding Parties have worked tirelessly to produce the responsive documents over the past few days. There is no contemptuous conduct here. The instant issue is nothing more than the product of Mr. Swensen's honest mistake taken in combination with a series of highly unfortunate circumstances.

### III. ANALYSIS

#### A. A FINDING OF CONTEMPT IS NOT APPROPRIATE

Federal Rule of Civil Procedure 45(g) provides that the Court: "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Civil contempt is characterized by the Court's desire to compel obedience to a Court Order or to compensate the contemnor's adversary for the injuries which result from the noncompliance. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983); *United States v. Bright*, 596 F.3d 683, 695–96 (9th Cir.2010).

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir.1993). An

alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply. *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); *see also Chairs v. Burgess,* 143 F.3d 1432, 1436 (11th Cir.1998) (holding that once a prima facie showing of contempt is made, "the burden then shifts to the alleged contemnor 'to produce evidence explaining his noncompliance'").

The Responding Parties assert that the foregoing reasons proffered constitute an "adequate excuse" as contemplated by the rule, emphasize that there was no intentional or wilful misconduct here, and that they took **prompt** action to ameliorate their mistake and began (and finished) producing documents **immediately thereafter**. The accidental failure to serve the CWT Parties with the Subpoena responses by April 26, 2019, was only made known to the Responding Parties on May 13, 2019. Once made known, as previously discussed, the Responding Parties took **all available actions** to come into compliance as quickly as possible. Thus, a finding of contempt is inappropriate in this instance.

### B. THE COURT SHOULD NOT ORDER RETROACTIVE SANCTIONS

In the original Motion and Amended Motion, the CWT Parties contend that the Court should order the Responding Parties to (1) pay the CWT Parties' legal fees incurred in making these Motions, and (2) further order the Responding Parties to pay $500 per day from April 27 to the date of full compliance with the Court's order. (Dkt. No. 131 at 3:11–17 and Dkt. No. 135 at 10:23–28). At the outset, the Responding Parties contend that because a contempt finding is unwarranted, any sanctions are also unwarranted. Furthermore, these proposed sanctions would not serve the remedial purpose of a contempt citation. Indeed, "[a] court may wield its civil contempt powers for two purposes: (1) "to coerce the defendant into compliance with the court's order"; and (2) "to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.,* 815 F.3d 623, 629 (9th Cir. 2016); *see also Ohr ex rel. NLRB v. Latino Express, Inc.,* 776 F.3d 469, 479–80 (7th Cir.2015) ("A civil contempt order can serve to coerce a party to obey a court order, or it can be intended to compensate a party who has suffered unnecessary

injuries or costs because of contemptuous conduct."). In this case, neither sanction is warranted, nor necessary. First, the Responding Parties have immediately taken all efforts on their own behalf to come into voluntary compliance with the Court's Order. *Stone v. City and Cty. Of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) ("The burden then shifts to the contemnors to demonstrate why they were unable to comply. They must show they took every reasonable step to comply.") (internal citations omitted.) Thus, the Court need not "coerce" the Responding Parties' to comply with the April 9, 2019 Order. Second, there were no losses sustained by the CWT Parties, which could not have been avoided altogether had the Responding Parties been advised about the situation per Rule 7.2(j), given that this is a discovery dispute.

Furthermore, retroactive sanctions dating back to April 27, 2019 (one day after the Subpoena responses were due), would not serve the remedial purpose of a civil contempt finding, given that the failure to serve the Subpoena responses by April 26, 2019, was a complete accident, which the Court and CWT Parties' counsel has already accepted. *United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980) (Punishment for civil contempt is usually considered to be remedial. The penalty is designed to enforce compliance with a court order.") In other words, imposing retroactive sanctions, after the Responding Parties have become in full compliance with the Subpoenas, could not "motivate" the Responding Parties now to comply with the Subpoenas immediately, since that have already happened. If any sanctions were to be imposed, which the Responding Parties contend should not, the sanctions would only be even arguably justifiable from the date of the CWT Parties' Amended Motion **(May 15, 2019)** to the date of the Responding Parties' full compliance with the subpoena **(May 22, 2019).** Finally, the proposed sanctions are incredibly overbearing. As calculated to date, these sanctions would amount to an astonishing **$25,000**. Should W&B undertake the burden of paying that fine in full, it could conceivably disrupt the firm's cash flows and jeopardize payroll.

. . .

. . .

## IV. CONCLUSION

For these reasons, the Responding Parties respectfully request that the Court deny the CWT Parties' Amended Motion for OSC and issue no sanctions in this matter for contempt.

**RESPECTFULLY SUBMITTED** May 22, 2019.

**WILENCHIK & BARTNESS, P.C.**

s/ Dennis I. Wilenchik
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

**BEUS GILBERT PLLC**
Leo R. Beus, Esq.
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the individuals registered.

*By: s/   Wendy L. Echols*

# EXHIBIT 1



**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
**WILENCHIK & BARTNESS PC**
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

Leo R. Beus, #002687
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| **Wells Fargo Bank, N.A.,** | Case No.: 2:17-CV-04140-DWL |
| **Plaintiff,** | |
| v. | **DECLARATION OF TYLER Q. SWENSEN** |
| **Wyo Tech Investment Group, LLC; CWT Canada II Limited Partnership; Resources Recovery Corporation; and Jean Noelting,** | |
| **Defendants.** | |

**TYLER Q. SWENSEN,** under penalty of perjury, states as follows:

1. My name is Tyler Q. Swensen. I am over the age of 18 and make the following statements based on my personal knowledge.

2. I am currently employed as a Senior Associate at the law firm of Wilenchik & Bartness, P.C. I have been employed by the firm for 14.5 of the last 16 years.

3. As a preface to the statements made hereinafter, I want the Court to know that I fully recognize and acknowledge my handling of the responses by Wilenchik & Bartness, P.C. ("WB") and Beus Gilbert, PLLC ("BG") to the Subpoenas served on them by CWT in this interpleader action was deficient. Indeed, I made mistakes both in preparing those responses and in failing to immediately recognize the deficiencies and erroneous statements contained in them. Both WB and BG and their named partners who signed the responses, Dennis Wilenchik and Leo Beus, were relying on me to prepare proper responses to the Subpoenas. I let them down.

4. I want the Court to know that my statements in this Declaration are not intended to excuse or justify my admittedly negligent and deficient handling of the tasks at issue, but rather simply to explain what happened and to make it clear that at no time did I or Messrs. Beus and Wilenchik ever intend to willfully flout this Court's Orders or show disrespect to the Court or the judicial system we all serve.

5. Between March 15, 2019, and April 10, 2019, Dennis Wilenchik was traveling in Europe and the Middle East.

6. During that same three-week period, two associate attorneys left WB. The first gave two weeks' notice before departing, but the other gave no notice at all. In a firm that typically employs only 9-12 attorneys, this was a significant reduction in manpower that was exacerbated by Mr. Wilenchik's absence.

7. In addition to the foregoing, on or about March 30, 2019, Jack Wilenchik, another associate at WB, and the only son of Dennis Wilenchik, was diagnosed with colon cancer. As a result of that diagnosis, Jack Wilenchik was required to immediately begin undergoing treatment and his father was understandably concerned, and upon his return to the U.S., began spending a great deal of his time and attention assisting Jack both with his cases and his medical issues.

2

8. The confluence of these events required me, as one of the Senior Associates, to take on several additional cases, including the instant action, with little or no forewarning. Both the instant case and another matter I was asked to jump into involved complex procedural histories going back several years and while I did the best I could, it was essentially impossible to digest and comprehend all of that background information in just a matter of days.

9. I did not begin working on this matter until after the Court had issued its April 9, 2019 ruling regarding WB and BG's pending motions.

10. Chase Turrentine, from WB, had handled the oral argument on those motions and after speaking with him, it was my understanding that the Court had denied the motions and held that CWT was entitled to responses to its discovery requests, including the Subpoenas issued to WB and BG.  I did not read the Court's Order at that time and had the impression, based on my miscommunication with Mr. Turrentine, that, although responses to the Subpoenas were now required by April 26, 2019, WB and BG were not precluded from raising objections. This was an incorrect assumption on my part.

11. The fact that I still mistakenly believed in good faith WB, BG and Wyo Tech were not precluded from raising objections to CWT's discovery requests is evidenced by the fact that I helped prepare objections to CWT's discovery requests on behalf of Wyo Tech and engaged in discussions with opposing counsel, Joshua Wurtzel, about those objections, which led to the May 1, 2019, telephonic conference with the Court addressing that discovery dispute.  I would not have taken, and did not take the position I did on that issue, had I believed that the Court had already ruled and addressed that same issue.

12. As a result of the above-described events, Dennis Wilenchik was relying heavily, if not exclusively, on me to handle matters associated with this litigation, including the preparation of the responses of WB and BG to the CWT Subpoenas.

13. It was my understanding that BG had not received any payments for any work it had done on behalf of Wyo Tech, Danzik Applied Sciences, Inductance, or anyone associated with those entities and WB had not received any such payments prior to October 2017. I was mistaken and should have investigated the facts more intensively. I wish I had.

14. Because I erroneously believed that WB and BG were still entitled to object to the temporal scope of the Subpoenas and mistakenly believed that neither firm had received any payments prior to October 2017, I drafted the responses based on those faulty premises and asked Messrs. Beus and Wilenchik to sign them, which they did in reliance on my judgment.

15. I then turned the delivery of those signed Responses over to our Senior Paralegal, Victoria Stevens, on April 26, 2019.

16. As Ms. Stevens has stated in her Declaration, she honestly believed that she had forwarded the Responses to Mr. Wurtzel on April 26, 2019. I fully believed that this occurred. I further believed that, given Mr. Wurtzel's near-constant communications efforts with me in the discovery throughout this case, that if Mr. Wurtzel had not received those Subpoena responses, he would have notified me immediately.

17. To my surprise, in my multiple email exchanges with Mr. Wurtzel after April 26, 2019, not once did he mention WB's and BG's Responses to the CWT Subpoenas. In fact, he did not mention them in the discussions and communications leading up to nor at any time during our teleconference about discovery disputes with the Court on May 1, 2019.

18. Thus, I assumed that the CWT Parties had accepted my objections and responses and that the issue was resolved. Never for a moment did I think that opposing counsel had not received those Responses on April 26, 2019.

. . .

. . .

4

19. It was not until Mr. Wurtzel filed his Motion for OSC on May 13, 2019, that I discovered our failure to transmit the Responses on April 26, 2019.

20. After realizing our error, I immediately undertook efforts not only to supply the prior Responses to the Subpoenas, but to also address Mr. Wurtzel's objections to them. I freely admit that I should have done a more thorough job from the outset of ascertaining the scope and effect of the Court's April 9, 2019 ruling. I also should have personally consulted with representatives of BG to verify what, if any, payments they had received that might be responsive to the CWT Subpoena.

21. I was admittedly negligent in my handling of this matter, but I never intentionally or knowingly disregarded or flouted any directive of the Court. For certain, neither Mr. Wilenchik nor Mr. Beus did so, since they were relying entirely on me to deal with the situation. Nor did I ever have any motive or reason to, apart from legitimate discovery objections, to refuse to provide those Subpoena responses.

22. Since discovering the mistakes and errors I committed along with others involved in the situation, I have exerted every possible effort to ensure WB's and BG's compliance with the Court's directives related to the firms' Responses to the CWT Subpoenas. To that end, I consulted with representatives of BG and prepared a supplemental Response to the Subpoenas containing all relevant records. I also reviewed the documentation in WB's possession and provided Mr. Wurtzel with additional information and explanations linking incoming payments responsive to the Subpoenas with outgoing payments made to cover attorneys' fees incurred on various client matters, to ensure that he could understand the information contained in the documents provided.

23. On May 14, 2019, I met with WB's office manager (who is also the bookkeeper) several times to learn the firm's accounting system and ledgers and collect all responsive

5

documents in the firm's possession. I also learned that WB does not maintain or keep copies of checks. However, we began producing documents to opposing counsel immediately. Mr. Wurtzel included those initial productions in his Amended Motion for OSC, as Exhibits I and J. (Dkt. Nos. 135-11 and 135-12.)

24. Although I am currently out of Arizona, it is my understanding that compliance efforts are ongoing in good faith and additional production(s) have been made.

25. Again, I apologize to the Court and opposing counsel for my mishandling of this situation and ask the Court to take into consideration the confluence of factors that created what might be described as a "perfect storm" leading to a series of errors in judgment and execution, none of which were intentionally devious or willfully contemptuous.

I declare under penalty of perjury that the foregoing statements in this declaration are true and correct to the best of my knowledge.

Dated this 22nd day of May, 2019.

_____
Tyler Q. Swensen

6