J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Wells Fargo Bank, N.A.<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,<br><br>　　　　　　Defendants.<br><br>And related claims. | Case No.: 2:17-CV-04140-DWL<br><br>**REPLY DECLARATION OF JOSHUA WURTZEL IN FURTHER SUPPORT OF THE CWT PARTIES' MOTION FOR CONTEMPT AGAINST NONPARTIES WILENCHIK & BARTNESS, P.C. AND BEUS GILBERT PLLC** |

In accordance with 28 U.S.C. § 1746, **JOSHUA WURTZEL**, declares, under the penalty of perjury, the following to be true and correct.

1. I am an associate of Schlam Stone & Dolan LLP, co-counsel with Ryan Rapp & Underwood, P.L.C. for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "CWT Parties") in this action. I submit this reply declaration in further support of the CWT Parties' Motion for Contempt Against Nonparties Wilenchik & Bartness, P.C. ("Wilenchik") and Beus Gilbert PLLC ("Beus Gilbert"). Unless otherwise specified, the matters below are based on my personal knowledge, communications with other attorneys in my firm, and a review of my firm's files.

2. On May 17 and 21, 2019, Wilenchik produced additional documents showing payments to it from Wyo Tech and Inductance, along with several redacted bills for various matters. Copies of all the documents Wilenchik produced since May 15, 2019—when we filed our amended motion for an order to show cause—are attached as Exhibit A.

3. Also on May 21, 2019, Wilenchik produced supplemental written responses to the CWT Parties' subpoenas—which purport to identify the documents responsive to each request by bates number. Copies of these written responses are attached as Exhibit B.

4. On May 22, 2019, Wilenchik and Beus Gilbert filed a Response to CWT Parties' Amended Motion for an Order to Show Cause. Dkt. No. 140. In this response, Wilenchik and Beus Gilbert state that, "[a]s of May 22, 2019, Beus Gilbert has produced all 21 pages of responsive documents and W&B has produced 325 pages of responsive documents," and that "[b]oth firms strongly believe that they are in full compliance with the Subpoenas, but will continue to search diligently for responsive documents out of an extreme abundance of caution." *Id.* at 2. Wilenchik further states that, as of May 22, "all

-2-

responsive documents" have "been produced," and it has taken "all possible measures to ensure compliance with the Subpoenas." *Id.* at 4. And Wilenchik and Beus Gilbert also argue that sanctions would not "motivate" them to "become in full compliance" with the subpoenas because "that ha[s] already happened." *Id.* at 10.

5.    Further, in a May 23, 2019 e-mail, Wilenchik again reiterated that "both firms have complied with the subpoena and produced all documentation we are even aware of." A copy of this e-mail is attached as Exhibit C.

6.    But these statements are again false. Wilenchik has not produced all documents in its possession, custody, or control that are responsive to the subpoena served on it.

7.    ***First***, for at least four of the payments Wilenchik identified as coming from Inductance or Wyo Tech, Wilenchik has failed to produce documents showing the source account from which these payments were made. This missing information is reflected in Appendix A to our reply memorandum of points and authorities, which we shared with Wilenchik by e-mail on May 24, 2019.

8.    ***Second***, for at least three of the payments Wilenchik identified as coming from Inductance or Wyo Tech, Wilenchik has failed to produce documents showing the clients on whose behalf or the matters for which these payments were made. This missing information is also reflected in Appendix A.

9.    ***Third***, in its May 22 production, Wilenchik produced handwritten ledgers showing hundreds of thousands of dollars in "Danzik Retainer" payments, as well as other handwritten documents reflecting additional payments. But for many of these payments, Wilenchik did not produce source-account, client, or matter information—and we cannot even tell who made these payments to Wilenchik. Copies of the pages Wilenchik

produced showing "Danzik" payments to it for which no additional information is provided are attached as Exhibit D. The specific payments at issue are highlighted.

10. On May 24, we had a meet and confer with Wilenchik, and asked who made these payments so we could determine whether (1) they were made by Wyo Tech or Inductance, in which case Wilenchik would be missing documents showing the source account of these payments and what client and matter these payments were for, or (2) they were made by a party other than Wyo Tech or Inductance, in which case nothing further would be required under the subpoena. But Wilenchik told us that it could not answer this question, because it did not know who made these payments to it.

11. We then told Wilenchik that it needed to figure this out to determine whether it had fully complied with the subpoena and this Court's April 9 order, since if these payments were made by Wyo Tech or Inductance, then Wilenchik is missing documents showing the source account of these payments and what client and matter these payments were for.

12. We also explained that Wilenchik could easily figure this out by looking at its own bank records—which it could get online by setting up an online account or from the bank by requesting them—and reviewing the checks it deposited that correspond to these payments.

13. But Wilenchik admitted that it had not tried to do this, admitted that it had not reviewed its own bank records for this information, and (erroneously) claimed that it had no obligation to collect or review its own bank records in response to the subpoena or April 9 order.

14. Following the May 24 meet and confer, we sent a follow-up e-mail to Wilenchik explaining exactly what it is missing and how it could gather that missing information.

15. Without giving any detail or explaining why we were wrong, Wilenchik continued to insist that it had produced all responsive documents. And one attorney at Wilenchik even demanded that we stop e-mailing it.

16. Wilenchik did agree to "ask for the checks as soon as we can if that helps as to what you are looking for," but did not say by when this would be done, and continued to claim that it did not understand what information was missing from its production—despite the chart we sent to it and our citation to the bates numbers of the pages of Wilenchik-produced documents showing unexplained "Danzik" payments. A copy of this e-mail chain is attached to the Wurtzel Reply Declaration as Exhibit E.

17. *Fourth*, Wilenchik still continues to withhold documents showing payments to it from Inductance. Indeed, attached as Exhibit F is a copy of a December 13, 2018 check from Inductance to Wilenchik for $100,000. Wilenchik did not produce this check or any other documents showing this payment.

18. While Wilenchik did produce documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it is not clear this is the same payment—and even if it is, as shown in Appendix A, Wilenchik has not produced any documents showing the source account for this payment.

Dated: May 28, 2019
    New York, New York

*Joshua Wurtzel*

————————————————
JOSHUA WURTZEL