Dennis I. Wilenchik, #005350
**WILENCHIK & BARTNESS PC**
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

Leo R. Beus, #002687
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Wells Fargo Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> Wyo Tech Investment Group, LLC; CWT Canada II Limited Partnership; Resources Recovery Corporation; and Jean Noelting, <br><br> Defendants. | Case No.: 2:17-CV-04140-DWL <br><br> **SURREPLY TO CWT PARTIES' REPLY BRIEF** <br><br> **(Oral Argument Requested)** |

Counsel for Wilenchik & Bartness, P.C. ("W&B") and Beus Gilbert, PLLC ("Beus Gilbert") (collectively, "Responding Parties"), hereby file this Surreply to the CWT Parties' Reply in Further Support of Contempt Motion ("Reply"). This Surreply is supported by the accompanying Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** May 29, 2019.

**WILENCHIK & BARTNESS, P.C.**

s/ *Tyler Q. Swensen*
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

**BEUS GILBERT PLLC**
Leo R. Beus, Esq.
701 North 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com
*Attorneys for Wyo Tech Investment Group, LLC*

### MEMORANDUM OF POINTS AND AUTHORITIES

The Responding Parties must address the mischaracterizations and misstatements by the CWT Parties in their Reply dated May 28, 2019.  On May 21, 2019, the Responding Parties (particularly W&B) produced 325 pages of documents in their possession which were responsive to the Subpoenas Duces Tecum served on them by CWT. W&B worked with its bookkeeper to produce every shred of paper in its records responsive to the CWT Subpoena.  Then, on May 22, 2019, the Responding Parties filed their Response to the CWT Parties' Amended Motion for an Order to Show Cause, (Dkt. No. 140), in which they honestly stated that they "are in full compliance with the Subpoenas." The Responding Parties continue to believe that to be true.

Shortly thereafter and continuing through the end of the week on May 24, 2019, W&B and CWT Parties' counsel, specifically Mr. Joshua Wurtzel, engaged in substantial dialogue in which Mr. Wurtzel demanded additional information (and documents that W&B does not have), which was outside the scope of, or not required by, the CWT Subpoenas.  These demands were frankly **entirely confusing** to W&B. Nevertheless, W&B **repeatedly** responded to Mr. Wurtzel in good faith in an attempt to address his unwarranted demands and he seemed to appreciate W&B's efforts.  Thus, it came as a complete shock to the Responding Parties when CWT sought leave to file a Reply and the corresponding Declaration of Mr. Wurtzel. Indeed, on May 24, 2019, W&B and Mr. Wurtzel held a teleconference to discuss these items raised and to permit Mr. Wurtzel to assist in explaining to W&B what exactly he was looking for.  However, Mr. Wurtzel only suggested this was a discovery "meet and confer" discussion *after* it occurred when, in fact, W&B made the offer to hold that teleconference to explain these issues to Mr. Wurtzel, not the other way around.  *See* Exhibit C to Reply Declaration of Joshua Wurtzel at *1 and *3.Thus, Mr.

Wurtzel's new objections again fail to comply with LR Civ. 7.2(j). *See Krueger Investments, LLC v. Cardinal Health 110, Inc.*, 2012 WL 3264524, at *2–3 (D. Ariz. August 9, 2012) (striking motion to compel subpoenaed witness for failure to comply with Rule 7.2(j)). In any event, the statements made in Mr. Wurtzel's Declaration and the CWT Parties' Reply cannot go unchallenged.

First, the Reply seeks to take W&B to task because "for at least four of the payments Wilenchik identified as coming from Inductance or Wyo Tech, Wilenchik has failed to produce documents showing the source account from which these payments were made." (Dkt. No. 143 at 2:13-18). CWT's conclusory accusation is based on the false presumption that W&B must have such documents in its possession. **W&B does not keep copies of incoming checks and cannot be expected to produce documents which it does not have.** W&B has produced all documents in its possession relating to these incoming payments, including copies of checks that were obtained from Wyo Tech and Inductance and documents showing application of the funds from those checks. Nothing more was or should be required. Nevertheless, W&B agreed to try to find the account numbers related to those checks.

It was not until Friday, May 24, 2019, that Mr. Wurtzel produced his "grid," which he attached as Appendix A to the Reply (Dkt. No. 143 at 10-11). Mr. Wurtzel produced that grid only minutes before W&B's phone call referenced in his declaration. In that telephonic conference, Mr. Wurtzel demanded that W&B produce copies of all checks in its possession which were responsive to the Subpoena requests. W&B reiterated, once again, that it does not keep or maintain copies of any checks in the regular course of business. Undeterred, Mr. Wurtzel then demanded that W&B access its online banking system to recover those checks. He was told that W&B did not have online banking access set up. Mr. Wurtzel then declared in conclusory fashion that W&B had an obligation under the Subpoenas to still get copies of those checks pursuant to supposed case law, holding that banking documents were in the "custody, possession, or control" of a subpoenaed party. In response, W&B told Mr. Wurtzel that its bookkeeper was out on

bereavement leave for her nephew's funeral from May 23, 2019 to May 28, 2019, and the bookkeeper is the only person with access to W&B bank, but would pass along this request and get back with him. Indeed, on May 28, 2019, before CWT Parties filed their Reply, W&B attempted to contact Mr. Wurtzel to notify him that its bookkeeper had returned to the office, called her contact at the bank, and was preparing to retrieve these checks from the bank. W&B also informed Mr. Wurtzel in an e-mail from Dennis Wilenchik that W&B had contacted its bank when Ms. Loftis got back after the Memorial Day holiday to get these checks as a courtesy beyond the checks already provided. Put simply, W&B does not have these checks in its direct possession—they are not at the office. If it indeed is the case that W&B has an obligation under the Subpoenas to retrieve these checks from its bank, then its bookkeeper is the only individual who can do so, and she was out on bereavement leave until May 28, 2019, and is now in the process of retrieving these checks immediately, as the CWT Parties' attorneys were informed last Friday by e-mail.

Second, the Reply complains that "for at least three payments Wilenchik identified as coming from Inductance or Wyo Tech, Wilenchik has failed to produce documents showing the clients on whose behalf or the matters for which these payments were made." (Dkt. No. 143 at 2:19–22). This is also an incorrect statement and reflects Mr. Wurtzel's misunderstanding as to W&B's bookkeeping system. In its May 21, 2019 production, W&B produced volumes of invoices related to these matters and reflecting application of payments to them. The only documents reflecting exactly how the payments/monies were applied to individual matters are those invoices, which W&B has **repeatedly** told Mr. Wurtzel. There is no other documentation reflecting how the funds were applied among matters. In order to determine how the funds were applied to the various cases, Mr. Wurtzel needs to review the retainer account ledgers produced and track the funds using those invoices. Mr. Wurtzel continually insists that W&B did not produce documents in its possession reflecting this information, he is flat wrong. Moreover, despite being told as much, W&B's only obligation under the Subpoena is to produce documents

responsive to the requests, if Mr. Wurtzel is unable to understand those documents, that is his problem. It does not necessarily mean that W&B has not complied with the Subpoena. Although, as a gesture of good faith, W&B has told him that it will explain these documents to him.

Third, CWT Parties complain that "Wilenchik produced handwritten ledgers showing hundreds of thousands of dollars in 'Danzik Retainer' payments, as well as other handwritten documents reflecting additional payments. But for many of these payments, Wilenchik did not produce source-account, client, or matter information—and we cannot even tell who made these payments to Wilenchik." (Dkt. No. 143 at 2:19–22). At the outset, this particular objection is simply a regurgitation of CWT's complaint about W&B providing checks identified in the documents that was addressed above. W&B reiterates that it does not have those documents in its immediate possession, and that there are not any more documents explaining that ledger that have been withheld. W&B even offered to have Mr. Wurtzel discuss this topic with its bookkeeper. As such, W&B is not out of compliance with the Subpoena.

Furthermore, the CWT Parties' entire position boils down to a demand that W&B explain the documentation it produced. That, however, is **not** W&B's obligation under the Subpoena but W&B even offered to do this too. W&B has offered in good faith to provide those explanations to Mr. Wurtzel, even despite the filing of the CWT Parties' Reply yesterday. The CWT Parties' ongoing demands amount to a mistaken assertion that because W&B does not have any responsive documents in its possession which inform the parties one way or another who made these additional payments on the handwritten ledger, that must mean W&B has therefore "failed to comply with the Subpoena and this Court's April 9 Order." CWT is wrong. Once again, W&B is not obligated to track down and produce documents that are not in its possession, even if those documents would shed light on some of Mr. Wurtzel's questions. Nor is W&B required to "prove a negative"—i.e., provide documentation showing that other payments did not come from Wyo Tech or Inductance in order to be deemed in compliance with the Subpoena. As for retrieving the

checks from the bank, Mr. Wurtzel asked for this and W&B is actively working on responding to that request, despite W&B's previous production of checks it did obtain from the client.

Finally, Mr. Wurtzel **falsely** complains:

> Wilenchik still continues to withhold documents showing payments to it from Inductance. Indeed, attached to the Wurtzel Reply Declaration as Exhibit F is a copy of a December 13, 2018 check from Inductance to Wilenchik for $100,000. Wilenchik did not produce this check or any other documents showing payment. While Wilenchik did produce documents showing [redacted], it is not clear this is the same payment—and even if it is, as shown in Appendix A, Wilenchik has not produced any documents showing the source account for this payment." (Dkt. No. 143 at 4:22-5:3).

Contrary to CWT's and Mr. Wurtzel's assertions, W&B **did** produce documents reflecting this payment on WB000005, WB000011, and WB000281. While the check was written on December 13, 2018, it was not deposited until January 16, 2019 (which is even reflected at the bottom of Dkt. No. 144-6), and recorded in the firm's handwritten ledger on January 14, 2019. With respect to the rest of this objection, which is merely a reprise of its demand for checks from W&B's bank, W&B does not have this check in its direct possession, but has made the offer (and now effort) in good faith to retrieve the check from its bank.

The Responding Parties are disappointed in what is starting to look like a vendetta and campaign to smear W&B as opposed to a legitimate attempt to obtain relevant evidence. Despite W&B's good-faith production of all documents in its possession, and its continual attempts to fully cooperate with Mr. Wurtzel to resolve any lingering issues (including its offer to retrieve the checks from its bank), and despite these documents' marginal relevance in this case, the CWT Parties continue to assert that W&B is not in compliance with the Subpoena and seemingly will not be satisfied unless and until W&B is held in contempt and sanctioned. In short, even though W&B has produced all documents in its possession, and is working to retrieve all of these checks from its bank in a gesture of good faith, CWT's real motivation here has nothing to do with any legitimate discovery purpose.

**RESPECTFULLY SUBMITTED** May 29, 2019.

       **WILENCHIK & BARTNESS, P.C.**

       s/ *Tyler Q. Swensen*
       Dennis I. Wilenchik, Esq.
       The Wilenchik & Bartness Building
       2810 North Third Street
       Phoenix, Arizona 85004
       admin@wb-law.com

       **BEUS GILBERT PLLC**
       Leo R. Beus, Esq.
       701 North 44th Street
       Phoenix, Arizona 85008
       lbeus@beusgilbert.com
       *Attorneys for Wyo Tech Investment Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2019, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the individuals registered.


*By: s/ Wendy L. Echols*