# Exhibit J

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of Arizona _____

| | | |
|---|---|---|
| Wells Fargo Bank, N.A. | ) | |
| _____ | ) | |
| *Plaintiff* | ) | Civil Action No.  2:17-cv-04140-DWL |
| v. | ) | |
| Wyo Tech Investment Group, LLC, et al. | ) | |
| _____ | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:                       Charles J. Davis and Richard W. Davis
                    2552 East Los Alamos Street, Gilbert, Arizona 85295

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

       See attached Appendix A

| Place: Ryan Rapp & Underwood, P.L.C.<br>3200 N. Central Ave, Suite 2250<br>Phoenix, Arizona 85012 | Date and Time:<br><br>02/28/2019 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/04/2019

*CLERK OF COURT*

                                 OR           *Joshua Wurtzel*

_____           _____
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   CWT Canada II _____ Limited Partnership, Resource Recovery Corporation, Jean Noelting _____ , who issues or requests this subpoena, are:

Joshua Wurtzel, Schlam Stone, 26 Broadway, New York, NY 10004; jwurtzel@schlamstone.com; (212) 344-5400

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:17-cv-04140-DWL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
    **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## APPENDIX A

## DEFINITIONS

1.    "All" means all or any, and "any" means all or any.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside of its scope.

3.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4.    "DAS" means Danzik Applied Sciences, LLC.

5.    "Document" or "documents" means all enumerated items in Rule 34(a)(1)(A) of the Wyoming Rules of Civil Procedure, including Electronically-Stored Information, as defined below. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. When the electronic and hard copy versions of any document are separate documents under this definition, both the electronic and hard copy versions should be produced.

6.    "Electronically-Stored Information" or "ESI" includes, but is not limited to, the following:

    a.    information or data that is generated, received, processed, or recorded by computers or other electronic devices, including, but not limited to, communications over a Bloomberg Terminal, electronic mail, text messages, instant message service messages, Social Media Posts, and voicemail;

        b.      files, information, or data saved on backup tapes or hard drives;

        c.      internal or external web sites;

        d.      output resulting from the use of any software program, including, but not limited to, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether this electronic data exists in an active file, a deleted file, or file fragment; and

        e.      activity listings of electronic mail receipts or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, including, but not limited to, personal digital assistants (e.g., iPhone, iPad), hand-held wireless devices (e.g., BlackBerrys), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents in these requests.

    7.     "Include" or "including" denotes a portion of a larger whole, and is used without limitation.

    8.     "Inductance" means Inductance Energy Corporation.

    9.     "Person" means any natural person or any business, legal, or governmental entity, or association.

10. "Relating to" means in whole or in part, concerning, constituting, containing, evidencing, referring to, discussing, dealing with, describing, reflecting, or pertaining to in any way whatsoever.

11. "RDX" means RDX Technologies Corporation.

12. "Social Media Posts" means any message—whether in the form of words or graphics—made using a website, application, program, or software that allows the user to share a message with one or more other persons, regardless of the number of persons (if any) with whom that message is actually shared and regardless of whether that message may be accessed by the public. For the avoidance of doubt, "Social Media Posts" does not include communications over a Bloomberg Terminal, electronic mail, text messages, instant message service messages, or voicemail.

13. "Solverdi" means Solverdi Worldwide Corporation.

14. "Wyo Tech" means Wyo Tech Investment Group, LLC.

15. "You" or "Your" means Charles J. Davis and Richard W. Davis.

## INSTRUCTIONS

1. The relevant time period to which each request refers is January 1, 2016 through the date of production.

2. The past tense form shall be construed to include the present tense, and vice versa, whenever such a dual construction will serve to bring within the scope of a request any response that would otherwise not be within its scope.

3. The use of the singular form of any word includes the plural, and vice versa.

2

4.      Each category of documents in these requests extends to any and all documents in Your possession, custody, or control. A document shall be deemed to be in Your possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person and You (a) own such document in whole or in part; or (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such document; or (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such document; or (d) as a practical matter, have been able to use, inspect, examine, or copy such document. Such documents shall include, but are not limited to, documents that are in the custody of any of Your attorneys, representatives, or other agents.

5.      All requests for the production of documents shall be construed to include any additional documents responsive to these requests that are discovered or produced after the date of production.

6.      All documents should be produced in the order in which they appear in the files of the producing party, organized by source, and should contain a clear indication of where each document ends and the next begins. Documents maintained in a file folder or binder should be preceded by the file folder or binder label, if one exists, and should contain a clear indication of where the file folder or binder begins and ends. All attachments to a document should be produced with the document. A unique bates number should be affixed to each page.

7.      All documents, including documents that originated in electronic form or in hard copy form, should be produced electronically in pdf format. Each individual

document should be produced as its own pdf. Each pdf should be labeled with the bates number of the first page of that document.

8.    Metadata, including, but not limited to, bates number, custodian, author, to/from/cc/bcc, subject, sent date, and file date, that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available.

9.    If You object to the production of any document or tangible thing within the scope of the requests, You must fully set forth your objections in writing, provide a list of all such documents and tangible things being withheld, and state the following for each such document or tangible thing: (i) the designated bates number, if any; (ii) the type of document, *e.g.*, letter or memorandum; (iii) the general subject matter of the document; (iv) the date of the document; (v) the location and custodian of the document; and (vi) the author of the document, the addressee of the document, any other recipients shown in the document, and, when not apparent, the relationship of the author, addressees, and recipients to each other.

10.    If any document that You are requested to produce or identify was at one time in existence, but has been lost, discarded, or destroyed, identify in writing each document and provide the following information: (a) the date or approximate date it was lost, discarded, or destroyed; (b) the circumstances and manner in which it was lost, discarded, or destroyed; (c) the reason or reasons for disposing of the document (if discarded or destroyed); (d) the identity of all persons authorizing the document and having knowledge of the document; (e) the identity of the persons who lost, discarded, or

destroyed the document; (f) the identity of any persons having knowledge of the contents of the document; and (g) a detailed summary of the nature and contents of the document, including the author(s) of the document(s), the name of the person(s) to whom the document(s) was (were) delivered or addressed, including indicated or blind copy recipients, the date of the document(s), and a description of the subject matter, including any attachment or appendices, and the number of pages.

11.     If You object in whole or in part to any request based on a claim of privilege, provide a list of the documents being withheld and for each such document: (a) state the nature of the privilege which is being claimed and, if the privilege is governed by state law, which state's privilege rule is being invoked; and (b) provide a description of the document, including (i) the designated bates number, if any; (ii) the type of document, *e.g.*, letter or memorandum; (iii) the general subject matter of the document; (iv) the date of the document; (v) the location and custodian of the document; and (vi) the author of the document, the addressee of the document, any other recipients shown in the document, and, when not apparent, the relationship of the author, addressees, and recipients to each other.

12.     If any of these documents cannot be produced in full, You are requested to produce them to the fullest extent possible, specifying clearly the reasons for Your inability to produce the remainder and stating any information, knowledge, or belief You have concerning the unproduced portion.

13.     The specificity of any request shall not be construed to limit the generality or reach of any other request.

## DOCUMENTS TO BE PRODUCED

1.     All documents concerning Your investment in Wyo Tech, including, but not limited to, the purported investment reflected in the check attached as Exhibit A.

2.     Documents sufficient to show the source of all funds You invested in Wyo Tech.

3.     All documents concerning Your investment in Inductance.

4.     Documents sufficient to show the source of all funds You invested in Inductance.

5.     Documents sufficient to show all Persons that have an ownership interest, direct or indirect, in Wyo Tech or Inductance.

6.     All documents provided to You by Wyo Tech or Inductance.

7.     All communications between You, on the one hand, and William J. Hinz, on the other hand, concerning Wyo Tech or Inductance.

8.     All documents, including communications, between You, on the one hand, and Dennis M. Danzik, Elizabeth J. Danzik, Jovahna Danzik, or Autumn Danzik, on the other hand.

9.     All documents concerning the allegations on pages 3-12 of the CWT Parties' Opposition to Motion for Immediate Release of Restrained Funds, filed on October 9, 2018 (Dkt. No. 88) in this action, a copy of which is attached as Exhibit B.

10.     All documents concerning the allegations in the Complaint for Interpleader (Dkt. No. 1) in this action, a copy of which is attached as Exhibit C.

# EXHIBIT A



CHARLES J DAVIS
RICHARD W DAVIS
2552 E LOS ALAMOS ST
GILBERT, AZ 85295-9039

95-219/1070 2888
9767620843

June 9, 2017

113

PAY TO THE ORDER OF _WYD Tech Project invest group_ — $ 250,000

_two hundred Fifty thousand dollars and %00_ DOLLARS

Wells Fargo Bank, N.A.
New Mexico
wellsfargo.com

FOR _25 units of WYD Tech._

⑈1070021921⑈        0⑈  00113

REQUEST 00007013013000000 250000.00
ROLL ECIA   20170609  000004989941956+
JOB ECIA E ACCT
REQUESTOR U537240
18886010  10/30/2017 Research 18886441

Summons and Subpoenas Department
D1111-016
Charlotte  NC  28201

# EXHIBIT B

1    J. Henk Taylor (016321)
2    **RYAN RAPP & UNDERWOOD, P.L.C.**
     3200 N. Central Ave, Suite 2250
3    Phoenix, Arizona 85012
     Telephone: (602) 280-1000
4    Facsimile: (602) 265-1495
5    Email: htaylor@rrulaw.com

6    Jeffrey M. Eilender (*admitted pro hac vice*)
7    Bradley J. Nash (*admitted pro hac vice*)
     Joshua Wurtzel (*admitted pro hac vice*)
8    **SCHLAM STONE & DOLAN LLP**
     26 Broadway
9    New York, New York 10004
10   Telephone: (212) 344-5400
     Facsimile: (212) 344-7677
11   E-Mail: jeilender@schlamstone.com
12   E-Mail: bnash@schlamstone.com
     E-Mail: jwurtzel@schlamstone.com
13
14   *Attorneys for Defendants CWT Canada II*
     *Limited Partnership and Resource Recovery*
15   *Corporation*

16                **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF ARIZONA**
17

18   Wells Fargo Bank, N.A.                 | Case No.: 2:17-CV-04140-JJT
19                   Plaintiff,
20           v.                              | **CWT PARTIES' OPPOSITION TO**
                                             | **MOTION FOR IMMEDIATE**
21                                           | **RELEASE OF RESTRAINED**
     Wyo Tech Investment Group, LLC, CWT     | **FUNDS**
22   Canada II Limited Partnership, Resources
23   Recovery Corporation, and Jean Noelting, | **Oral Argument Requested**
24                   Defendants.
25
26
27
28

1

## **TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    A.    The New York Court Enters Judgment Against Dennis Danzik and RDX for Defrauding the CWT Parties Out of Millions in Tax Credits ...................... 3

    B.    The New York Court Holds Danzik and RDX in Criminal and Civil Contempt ........................................................................................................... 4

    C.    The CWT Parties Take Discovery About Danzik's Assets ............................... 5

    D.    Danzik Launders Money Through Danzik Applied Sciences, LLC ................... 6

    E.    Danzik Launders Money Through Solverdi Worldwide Corporation ................ 6

    F.    Danzik Launders Money Through Wyo Tech Investment Group, LLC ............ 7

    G.    The Restraining Notice and the Instant Interpleader Action ........................... 11

ARGUMENT ............................................................................................................. 12

    I.    THE EXISTING RECORD ESTABLISHES A MATERIAL ISSUE OF FACT AS TO DANZIK'S INTEREST IN THE RESTRAINED FUNDS AND THE CWT PARTIES ARE, AT A MINIMUM, ENTITLED TO DISCOVERY BEFORE ANY FUNDS ARE RELEASED. ........................... 13

    II.    WYO TECH'S CHALLENGES TO THE VALIDITY OF THE RESTRAINING NOTICE FAIL. ....................................................................... 15

CONCLUSION ......................................................................................................... 17

Defendants CWT Canada II Limited Partnership ("CWT Canada"), Resource Recovery Corporation ("RRC"), and Jean Noelting ("Noelting," and together with CWT Canada and RRC, the "CWT Parties") submit this memorandum of points and authorities, together with the Declaration of Jeffrey M. Eilender, in opposition to the motion of Defendant Wyo Tech Investment Group, LLC ("Wyo Tech") for immediate release of the restrained funds (the "Motion").

## INTRODUCTION

This interpleader action arises from a New York Restraining Notice that the CWT Parties served on a New York branch of Wells Fargo in furtherance of their efforts to collect on a more-than $7 million judgment entered in the CWT Parties' favor against Wyo Tech's former principal Dennis Danzik. While the $546,282.55 that Wells Fargo restrained in accordance with the Restraining Notice was held in an account purportedly belonging to Wyo Tech, the evidence already available—before any discovery has been taken in this action—shows that Danzik exercises de facto control over the account such that the restrained funds actually belong to him. For example:

- Wyo Tech was formed by Danzik's wife Elizabeth who, until recently was a homemaker with no relevant business experience.

- Over half of the funds paid from the restrained Wyo Tech account were paid to Danzik's company (Danzik Applied Sciences, LLC ("DAS")), or to Elizabeth Danzik, Danzik's daughter, Jhovanna, and to other known Danzik cronies.

- Wyo Tech also paid thousands of dollars in Danzik's legal fees out of this account (in cases in which Wyo Tech was not involved).

- The signature card on the account states that Jovahna Danzik (a recent college graduate with no relevant business experience or other qualifications) is the "owner with control" of Wyo Tech.

That Danzik would use a sham company to hold his assets and keep them out of the reach of creditors is nothing new. Indeed, in the New York action in which the judgment against Danzik was entered, the Court held Danzik in criminal and civil contempt—and issued a warrant for his arrest—for, among other things, creating a "sham company" to evade creditors and violate a TRO prohibiting him from transferring funds without Court permission. Danzik has since fled New York, and he will be imprisoned if he returns.

Danzik is now attempting to perpetrate the same fraud in this Court. On August 1, 2018, the Court granted Wells Fargo's unopposed motion to interplead the restrained funds. With this motion, Wyo Tech—not coincidentally represented by Danzik's longtime counsel—seeks to skip over the second stage of the interpleader action: *i.e.*, the judicial determination of the ownership of the funds. Although styled as an application for "immediate release" of the restrained funds, the Motion, in effect, seeks summary judgment on the issue of ownership before the parties have conducted any discovery in this action. Wyo Tech asks the Court to release the funds based on its counsel's mere assertion that the funds do not belong to Danzik. It is well-established, however, that a judgement creditor can restrain and garnish funds in which the judgment debtor has an interest, even if the funds are nominally held in the name of a third-party. As shown below, the existing record presents material issues of fact as to Danzik's interest in the restrained funds, thus precluding an award of summary judgment. At a minimum, the CWT Parties are entitled to conduct discovery before the funds are summarily released.

For these reasons, the Motion should be denied.

## **STATEMENT OF FACTS**

**A.    The New York Court Enters Judgment Against Dennis Danzik and RDX for <u>Defrauding the CWT Parties Out of Millions in Tax Credits</u>**

In 2013, the CWT Parties sold a renewable energy company called Changing World Technologies, L.P. ("CWT") to RDX Technologies Corporation ("RDX"). Danzik was RDX's CEO. Under a subsidy program enacted by Congress, CWT was eligible for tax credits equal to $1 per gallon of renewable diesel fuel oil ("RDO") that it produced and sold. These credits could be applied to offset excise or corporate income taxes. Because RES owed no such taxes (as it had no profits), it was to receive a payment for each gallon of RDO. For RDO produced and sold in 2012, RES stood to receive at least $6 or $7 million in cash payments from the U.S. Government.

When RDX acquired CWT, in 2013, the parties agreed that tax credit payments the company received after the sale that were attributable to the 2012 tax year would be immediately remitted to the CWT Parties. However, following the acquisition, Danzik and RDX refused to remit over $5 million of tax credits to which RRC and CWT Canada were entitled. Instead, Danzik and RDX transferred the tax credits to Danzik himself, Danzik's wife Elizabeth, and companies that Danzik or his wife controlled. On November 4, 2015, because of what the New York court held were "multiple extensive, willful and contumacious violations of this court's discovery orders," the New York court struck Danzik's and RDX's defenses. On August 4, 2016, the New York court granted the CWT Parties' motion for a default judgment. Ex. 1.[1]

On September 7, 2016, the New York court entered judgment in favor of the CWT Parties and against Danzik and RDX for $7,033,491.13—which included the stolen tax credits, amounts due from a separate fraud, and pre-judgment interest. Ex. 2.

---

[1] Citations to "Ex. __" refer to the exhibits to the accompanying declaration of Jeffrey M. Eilender.

**B.** **The New York Court Holds Danzik and RDX in Criminal and Civil Contempt**

On June 3, 2016, after a four-day hearing, the New York court also held Danzik and RDX in criminal and civil contempt for their violation of additional court orders. Specifically, the court held that Danzik (a) deliberately violated an attachment order directing him to return the stolen tax credits, and a TRO prohibiting RDX from transferring funds without court permission; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft. Ex. 3.

In holding Danzik and RDX in contempt, the New York court held that the evidence at the contempt hearing showed "beyond a reasonable doubt, and certainly by clear and convincing evidence," that Danzik "stole all of the money" from the tax credits. The court also held that Danzik "admit[ted] his noncompliance with the Attachment Order," which required him to restore the stolen funds, and that his excuse for his noncompliance—that he lacked the funds to comply—was a "lie." Indeed, the New York court held that Danzik transferred the tax credit funds to "himself, his family members and their businesses," and then used that money to pay "personal expenses." *Id.*

The New York court also held that Danzik violated the TRO by creating a "sham" company, called M2R Licensing, LLC, for the purpose of "evading the court's orders and defrauding RDX's creditors." Indeed, the New York court held that "[a]fter having deposited the tax credit funds in a new, secret Hometown bank account, Danzik made sure to invoice all of RDX's clients with M2R invoices so revenue would be received by M2R instead of RDX," and changed invoices to existing RDX customers to come from M2R instead, "*before* M2R was even formed." The purpose of this scheme was for RDX to then claim that it "had no funds to comply with the Attachment Order." But according to the New York court, "that excuse" was a "fraud on the court." *Id.*

Further, according to the New York court, Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court." *Id*.

After holding Danzik and RDX in contempt, and giving them an opportunity to purge their contempt by restoring the stolen tax credits (which they did not do), the New York court issued a commitment order and an arrest warrant for Danzik. Exs. 4, 5. Danzik has since fled New York. If he returns, he will be arrested and imprisoned.

### C.    The CWT Parties Take Discovery About Danzik's Assets

Danzik and RDX have waived any appeal of the judgment entered against them in New York. But Danzik and RDX have refused to pay any portion of the judgment, and have actively interfered with the CWT Parties to enforce the judgment and take discovery about their assets.

Indeed, the CWT Parties have been seeking post-judgment discovery from Danzik and RDX in New York, Arizona, and Wyoming—where the judgment is also domesticated. Danzik has largely refused to cooperate in this discovery, forcing the CWT Parties to seek information about his assets from reliable nonparties. Initially, the CWT Parties did a nationwide search for bank accounts in Danzik's name, but came back with almost nothing. The CWT Parties also served numerous nonparty subpoenas on banks they believed might hold funds belonging to Danzik, but have not found any accounts in his name with a positive balance. It thus appeared that Danzik had no financial existence.

But according to Danzik himself, he is gainfully employed, and continues to enjoy a significant income stream. Indeed, during his December 2016 deposition in his failed Wyoming Chapter 11 bankruptcy—which Danzik filed the night before the last day of the contempt hearing in New York, and which the bankruptcy court dismissed as having been

filed in "bad faith"—Danzik testified that he averages "somewhere between $800,000, and a couple million dollars a year" in income. Ex. 6 at 88; Ex. 7 (order dismissing Danzik's Wyoming bankruptcy case). Further, during the October 16, 2017 hearing in Arizona state court, Danzik testified that he is currently employed full time. Ex. 8 at 18. And more fundamentally, Danzik has over $5 million of the CWT Parties' tax credits.

Given that Danzik appears to have hidden his assets and the stolen tax credits, and appears to have almost no assets in his own name, the CWT Parties expanded their search to include entities that Danzik owns or controls.

**D.** **Danzik Launders Money Through Danzik Applied Sciences, LLC**

The first entity to which the CWT Parties looked was DAS, which is a Delaware LLC that Danzik and his wife own. A forensic accounting expert retained by the CWT Parties determined that DAS is one of the entities to which Danzik transferred the stolen tax credits. Danzik testified that he "book[s]" business "through" DAS. Ex. 9 at 42. While he claimed that his wife, Elizabeth, is DAS's majority owner and managing member, Elizabeth was a housewife until recently, and had little or no business experience. Further, DAS has paid Danzik's legal fees in New York, Arizona, and Wyoming—and has even paid the legal fees for some of Danzik's coconspirators. Ex. 10.

Moreover, Danzik's Arizona counsel, which purport to represent DAS in a separate lawsuit in federal court in Arizona, send bills to DAS, "c/o Danzik Danzik," at Danzik's e-mail address—even though Danzik is not a party to that separate action. Ex. 11. Thus, the evidence shows that Danzik controls DAS, and has a beneficial interest in all DAS's assets.

**E.** **Danzik Launders Money Through Solverdi Worldwide Corporation**

Rather than paying most of its profits to Danzik and Elizabeth—DAS's two supposed owners—DAS transfers tens of thousands of dollars each month to another

Danzik entity, Solverdi.  Ex. 12.

The evidence shows that Solverdi holds Danzik's "slush fund"—which he uses for personal expenses and to support his lavish lifestyle.  Danzik is the only authorized signer on the Solverdi account ending in 2153.  Ex. 13.  And Danzik—an admitted compulsive gambler—spends tens of thousands of dollars each month at casinos in Las Vegas using his Solverdi account.  Ex. 14.  Danzik also uses this Solverdi account for other personal expenses, including dinners at PF Chang's and Red 8 (an Asian restaurant at the Wynn Las Vegas), and purchases at local and online stores like Walgreen's and Amazon. Danzik also withdraws cash from the account—indeed, on October 9, 2017, he withdrew $3,400 for himself.  Ex. 15.  Thus, the evidence shows that Danzik's money flows through DAS accounts, into the Solverdi "slush fund," and then goes out to support Danzik's lavish lifestyle and gambling habit.

**F.    Danzik Launders Money Through Wyo Tech Investment Group, LLC**

The evidence shows that Danzik, Elizabeth, and Jovahna keep DAS—and thus Solverdi—funded by transferring hundreds of thousands of dollars from Wyo Tech to DAS.  According to William J. Hinz (who claims to be a member and the interim CEO of Wyo Tech) Elizabeth formed Wyo Tech in Wyoming, and set up its bank accounts.  Also, according to Hinz, Elizabeth acted as Wyo Tech's "manager" when Wyo Tech was first formed. And according to Elizabeth herself, Elizabeth was a Wyo Tech employee doing "bookkeeping" and "other duties."  Ex. 16. Until recently, Elizabeth had no experience in "bookkeeping," "manage[ment]," or entity formation.

On September 2, 2016, Elizabeth opened a Wyo Tech account at Wells Fargo ending in 0345. On the account application, Elizabeth listed herself as the "Owner with Control of the Entity."  Ex. 17.  The statements for this account were sent to 1108 14th., Cody, Wyoming 82414, which is Danzik's and Elizabeth's address.  Ex. 18.  Almost

immediately after opening this Wyo Tech account, Elizabeth began transferring tens of thousands of dollars from the Wyo Tech account to DAS accounts, and to her own personal accounts. Indeed, Elizabeth transferred money to DAS on almost a daily basis, sometimes for as much as $20,000, and other times for as little as $100. Ex. 19. Elizabeth also wrote checks for thousands of dollars from this Wyo Tech account to DAS, Danzik, and even Solverdi. And Elizabeth withdrew thousands of dollars in cash from this account for herself. Ex. 20. This account was suddenly closed in April 2017, with the last few transfers going to DAS or to Elizabeth herself.

Hinz has claimed that "Danzik has been engaged to work on engineering and construction projects for Wyo Tech through" DAS—supposedly explaining some of these transfers to DAS—and that "neither Mr. Danzik nor DAS is currently engaged to perform further services for Wyo Tech." Ex. 21. But these statements are inconsistent with Hinz's own previous statements, and Wyo Tech's bank records. Indeed, as explained above, Elizabeth wrote checks directly to Danzik. So either Danzik was also employed directly by Wyo Tech—which Hinz has denied—or he was receiving payments from Wyo Tech for no reason. Further, Hinz and his counsel previously told the CWT Parties' counsel that, as of October 2017, DAS had worked for Wyo Tech only in the first quarter of 2017. But Wyo Tech's bank statements show that Wyo Tech was paying tens of thousands of dollars per month to DAS through the fall of 2017. Moreover, while Elizabeth has claimed that she no longer works for Wyo Tech, she still maintains a credit card in its name. She uses this credit card to pay personal expenses, including a Sirius XM Radio subscription and limousine service. Ex. 22.

On April 20, 2017, Jovahna opened up a new Wyo Tech account at Wells Fargo, ending in 2809 (the "Wells Fargo Account"). This is the account that the CWT Parties restrained, giving rise to this interpleader action. On the Wells Fargo Account

application, Jovahna listed herself "Owner with Control of the Entity." Ex. 23. Jovahna recently graduated from college, and aside for working for DAS, has no relevant business or professional experience. Indeed, according to a resume posted online, Jovahna went to college for design and art. Ex. 24. After opening the Wells Fargo Account, Jovahna then almost immediately began transferring tens of thousands of dollars to DAS accounts, Danzik, and Elizabeth. Again, these transfers varied drastically in amount, and were made on almost a daily basis. Indeed, on some days, Jovahna made half a dozen separate transfers. Ex. 25. Further, Jovahna wrote checks for tens of thousands of dollars to herself and to Elizabeth, and to many of Danzik's old cronies from his time at RDX— including Tony Calim, Vince Meil, Doug Bean, and Monica Garcia. Ex. 26.

Indeed, Jovahna used the Wells Fargo Account as the Danziks' personal piggy bank. Approximately 65% of the spent funds from the Wells Fargo Account were paid to DAS, Elizabeth, Jovahna, or Danzik's known cronies. Moreover, Jovahna used the Wells Fargo Account to pay for Danzik's personal expenses. Indeed, she used the Wells Fargo Account for purchases at Best Buy, payment of Danzik's Verizon and other bills, and hotel stays. Further, Jovahna paid thousands of dollars to Danzik's Arizona counsel from the Wells Fargo Account. Ex. 27. Wyo Tech is not a party to any lawsuits with Danzik, and Danzik's Arizona counsel has stated that it does not represent Wyo Tech, and does not know why Wyo Tech paid Danzik's legal fees. Ex. 28.

Moreover, Elizabeth also maintained another Wyo Tech account at U.S. Bank ending in 3829. From this account, she paid thousands of dollars to Danzik's New York counsel, Catafago Fini LLP. Ex. 29. Danzik's New York counsel, Jacques Catafago, has stated that this payment was for legal services his firm rendered to one of Danzik's coconspirators—whom the RRC and CWT Canada are suing separately in Arizona federal court—Tony Ker.

Thus, the evidence shows that Danzik—acting with Elizabeth, Jovahna, and Wyo Tech, and with Hinz's approval and assistance—is laundering his own money through "investors" or other means into Wyo Tech, and then out to DAS and Solverdi and to himself and his family members, or he has some beneficial interest in or entitlement to the funds in the Wells Fargo Account. Indeed, Danzik even pays some of his personal expenses directly from Wyo Tech. Further, the evidence shows that to the extent there are legitimate "investors" in Wyo Tech, Danzik, Elizabeth, Jovahna, and Wyo Tech are stealing from those investors by transferring Wyo Tech money to DAS, Danzik, Elizabeth, Jovahna, and Solverdi—as he did with CWT and RDX.

Moreover, Jovahna also wrote a check for $25,000 from the Wells Fargo Account to Inductance for Inductance's "opening." Ex. 30. According to Hinz, Inductance was Danzik's "employer" as of October 2017, and Hinz was Inductance's CEO. On October 27, 2017, the CWT Parties served a subpoena duces tecum on Inductance in the Wyoming judgment-enforcement action. Inductance never responded to this subpoena. In November 2017, the CWT Parties also served a writ of garnishment on Inductance in the Wyoming judgment-enforcement action to garnish Danzik's wages. Inductance never responded to this subpoena either.

According to Danzik's recent Chapter 11 bankruptcy petition, Danzik no longer works for Inductance, and instead now works for another company called Learsi, LLC. Ex. 31. But according to RDX's recent Chapter 11 bankruptcy petition, Inductance is paying RDX's legal fees, and is a "potential investor in a prospective plan of reorganization" of RDX. Ex. 32. And Inductance—just like Wyo Tech—has paid thousands of dollars to Elizabeth and Jovahna, including thousands of dollars for supposed "petty cash." The evidence thus shows that Inductance is a sham entity controlled by Danzik, Hinz, Elizabeth, and Jovahna—and operated to further Danzik's

and the Crossclaim Defendants' schemes and efforts to evade creditors.

On December 5, 2017, RDX filed for Chapter 11 bankruptcy protection in Arizona. On December 6, 2017, Danzik filed for Chapter 11 bankruptcy protection in Wyoming. Danzik and RDX filed these bankruptcy petitions on the eve of depositions they were required to attend in the Arizona judgment-enforcement action. This pattern of obstructionism is consistent with Danzik's and RDX's previous bankruptcy filings. Indeed, as explained above, Danzik previously filed bankruptcy on the eve of the last day of the contempt hearing in New York in an attempt to stay the contempt hearing. This bankruptcy was dismissed in bad faith. RDX also filed bankruptcy in a conceded effort to delay the New York action as well. RDX ultimately dismissed its petition after conceding that there was no purpose behind its Chapter 11 action if the automatic stay were lifted. Danzik's and RDX's most recent bankruptcy filings were made in bad faith.

**G.     The Restraining Notice and the Instant Interpleader Action**

On October 18, 2017, the CWT Parties served a restraining notice, issued pursuant to the Section 5222 of the New York Civil Practice Law and Rules ("CPLR"), on a New York branch of Wells Fargo (the "Restraining Notice"). Dkt. 12, Ex. B. The Restraining Notice required Wells Fargo to restrain "any accounts held in the name of Wyo Tech Investment Group LLC." The notice attached a copy of a check issued from a Wyo Tech account at Wells Fargo, and payable to Danzik's counsel, Wilenchik and Bartness.

Wells Fargo restrained the funds pursuant to the Restraining Notice. Wyo Tech, then represented by attorney Richard Walker, protested that the funds were improperly restrained because they belonged to Wyo Tech, not to Danzik. In response, the CWT Parties' counsel sent a letter spelling out the basis for their belief that Danzik had an interest in these funds. Dkt. 12, Ex. D.

On November 9, 2017, Wells Fargo filed the instant interpleader proceeding. On

August 1, 2018, the Court granted Wells Fargo's motion to interplead the restrained funds. Dkt. 69. In the same order, the Court dismissed Wyo Tech's counterclaims against Wells Fargo for wrongful garnishment and aiding and abetting, finding that they failed to state a claim upon which relief could be granted. In so ruling, the Court rejected Wyo Tech's argument that the Restraining Notice was facially defective because it was served on a Wells Fargo branch in New York, and the funds were held in Arizona. The Court held that this so-called "single entity rule" applied only to foreign bank branches, and did not preclude enforcement in Arizona of "an out-of-state garnishment notice served on an out-of-state branch." *Id.* at 6. Accordingly, "Wells Fargo had authority under New York law to comply with the Restraining Notice by freezing a bank account opened in Arizona." *Id.*

On August 16, 2018, Wyo Tech—now represented by Danzik's counsel, Wilenchik and Bartness—filed what it called a "Motion for Immediate Release of Wrongfully Restrained Funds." Dkt. 72. The Motion asks the Court to determine the ultimate issue in this interpleader action—*i.e.*, whether Danzik has an interest in the restrained funds such that they can be used to satisfy the CWT Parties' judgment. Thus, the motion effectively seeks summary judgment in favor of Wyo Tech, although counsel did not submit a Statement of Undisputed Material Facts, as required by LR 56.1.

On August 27, 2018, the Court entered a scheduling order, negotiated by the parties, pursuant to which fact discovery is scheduled to be completed by April 29, 2019, and the cut-off for all discovery is August 9, 2019. Dkt. 79. To date no discovery has been conducted.

## ARGUMENT

"An interpleader action usually proceeds in two stages. At the first stage, the court determines whether the interpleader action is appropriate. . . . At the second stage, the court adjudicates the defendants' competing claims to the interplead funds, and the action

usually proceeds as any other civil action." *Metro. Life Ins. Co. v. Reynolds*, 2013 WL 6048808, at *2 (D. Ariz. Nov. 15, 2013). Thus, the parties to an interpleader are entitled to conduct discovery and to have the dispute adjudicated on a full record. Courts have rejected applications for "early distribution of disputed funds" that do not afford the parties "full due process of law." *Wells Fargo Bank, Nat. Ass'n v. Magellan Ship Owners Ass'n*, 2010 WL 2266752, at *2 (D. Ariz. June 4, 2010).

In the instant Motion, Wyo Tech effectively asks this Court to grant it summary judgment on the central questions in dispute.[2] As shown below, the motion must be denied because the existing record presents material issues of fact as to the ownership of the restrained funds, and, at a minimum, the CWT Parties are entitled to take discovery on this issue before the Court rules. Furthermore, Wyo Tech's legal arguments concerning the facial validity of the restraining notice are incorrect, and indeed were already rejected by this Court in its prior order.

Thus, the Motion should be denied.

**I. THE EXISTING RECORD ESTABLISHES A MATERIAL ISSUE OF FACT AS TO DANZIK'S INTEREST IN THE RESTRAINED FUNDS AND THE CWT PARTIES ARE, AT A MINIMUM, ENTITLED TO DISCOVERY BEFORE ANY FUNDS ARE RELEASED.**

Wyo Tech's motion is based on the circular argument that the restrained funds should be summarily released because the Wells Fargo account is "the sole property of Wyo Tech." Wyo Tech Mem. at 9. Yet this is the very issue this Court must determine in this interpleader action—*i.e.*, whether the funds are, in fact, the sole property of Wyo

---

[2] Because it is really a summary judgment motion, Wyo Tech's Motion is also procedurally deficient in that it lacks an accompanying Statement of Undisputed Material Facts, as required by Local Rule 56.1 The motion can be denied for this reason alone. *See* L.R. 56.1 ("failure to submit a separate statement of facts . . . may constitute grounds for the denial of the motion"); *see also Fernandez v. City of Phoenix*, 2012 WL 1985682, at *3 (D. Ariz. June 4, 2012) ("non-compliance" with L.R. 56.1 is an "an independent ground" for denying a summary judgment motion.

Tech, or whether Danzik instead has an interest in those funds. Although Wyo Tech flatly asserts that "[t]here is no evidence that Mr. Danzik held any interest in the Wyo Tech funds," Wyo Tech. Mem. at 9, the existing record is replete with evidence that Danzik exercised de facto control over the account and the funds were largely used for his personal benefit. The evidence detailed above shows that Danzik used the Wyo Tech account to launder funds that were ultimately transferred to Danzik's accounts at DAS and Solverdi where he spent the money to support his lavish lifestyle. Moreover, tens of thousands of dollars from the account were used to pay Danzik's personal attorneys. Danzik's de facto control of Wyo Tech's account is further supported by the fact that the company was set up by Danzik's wife (until recently a homemaker with no relevant business experience), and Danzik's daughter (a recent college graduate with a degree in art and design) has signature authority for the account and is listed in bank records as the "Owner with Control of the Entity."

It is well-established that a judgment creditor can restrain funds even though they "are not nominally held in the name of the judgment debtor . . . if such funds are used for the benefit of the judgment debtor." *Wimbledon Financing Master Fund, Ltd. v. Bergstein*, 2018 WL 2163586, at *3 (Sup. Ct. N.Y. Co. May 10, 2018); *see also Bingham v. Zolt*, 231 A.D.2d 479, 479 (N.Y. App. Div. 1st Dep't 1996) (restraining notice properly issued when evidence showed that "judgment debtor ha[d] regularly used another's bank account as a 'recipient' of the debtor's personal assets or as a source for payment of the debtor's expenses," including using funds from this account to "pay his legal expenses"); *ERA Mgt., Inc. v Morrison Cohen Singer & Weinstein*, 199 A.D.2d 179, 179 (N.Y. App. Div. 1st Dep't 1993) (bank accounts belonging to non-debtor entities were properly restraining when evidence showed that accounts were "regularly used to pay [debtor's] personal expenses" and functioned as "'recipients' of his personal assets"). Here, the

evidence easily creates a material issue of fact that the Wyo Tech funds were used for Danzik's benefit and thus properly subject to the Restraining Notice. *See Blue Giant Equipment Corp. v. Tec-Ser, Inc.*, 92 A.D.2d 630, 631 (N.Y. App. Div. 3d Dep't 1983) (reversing vacature of restraining notice and noting that "issue of fact . . . concerning the judgment debtor's continued interest in the accounts [ ] is resolvable in a hearing").

At a minimum, the CWT Parties are entitled to take discovery, pursuant to the Court's scheduling order, before the funds are summarily released. Thus, Wyo Tech's motion, filed nearly a year before the discovery cut-off is at best premature. *See Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("Implicit in the opportunity to respond is the requirement that sufficient time be afforded for discovery necessary to develop facts essential to justify a party's opposition to the motion [for summary judgment]."); *Jordan v. Ryan*, 2010 WL 1541588, at *2 (D. Ariz. Apr. 19, 2010) (denying summary judgment as "premature" where "[n]o discovery has taken place"); *Bank of Am., N.A. v. Woodcrest Homeowners Ass'n*, 2016 WL 8732298, at *1 n.1 (D. Nev. Mar. 25, 2016) (summary judgment motion denied as "premature" when filed "ten months before the discovery cut-off date").[3]

## II.   WYO TECH'S CHALLENGES TO THE VALIDITY OF THE RESTRAINING NOTICE FAIL.

Wyo Tech argues that the Restraining Notice is invalid as a matter of law because (a) there was allegedly no evidence that Danzik had any interest in the restrained funds; (b) the Restraining Notice, which was served on a Wells Fargo branch in New York allegedly could not apply to an account held in Arizona; and (c) the CWT Parties did not

---

[3] Although its counsel previously stipulated to an extensive discovery schedule, Wyo Tech argues that the CWT Parties should not be entitled to take any discovery in this action because they have had the opportunity to depose Dennis and Elizabeth Danzik in other proceedings. But those depositions focused largely on other matters at issue in those cases and are not a substitute for the discovery the CWT Parties are entitled to take in this separate interpleader action.

comply with Arizona's Writ of Garnishment Statute. As an initial matter, Wyo Tech's arguments about the validity of the restraining notice are irrelevant now that the previously restrained funds have been interplead with the Court—with Wyo Tech's consent. The question before the Court in this interpleader action is not whether the original restraint was valid, but rather whether Danzik does or does not have an interest in those funds such that they can be used to satisfy a portion of the CWT Parties' judgment.

In any event, Wyo Tech's arguments regarding the Restraining Notice fail.

*First*, Wyo Tech's argument that the Restraining Notice was invalid because Wells Fargo had no reason to believe that Danzik had an interest in the funds is incorrect. The CWT Parties provided such evidence—including the check attached to the Notice itself (which shows the use of the funds to pay Danzik's personal lawyers who were not then representing Wyo Tech), and the information provided in the letter from the CWT Parties' counsel, which was copied to Wells Fargo's counsel. Moreover, as this Court ruled in its August 1, 2018 order, where, as here, a restraining notice specifies the property to be levied upon, the garnishee bank has "no duty to investigate the validity of the Restraining Notice." Dkt. 69 at 8. Thus, the Restraining Notice was facially valid, and the funds were validly restrained. Following the completion of discovery, this Court will resolve the issue of Danzik's interest in those funds.

*Second*, Wyo Tech erroneously argues that under the so-called "single entity rule," "a restraining notice served on a New York branch will be effective for assets held only in accounts at that branch but will have no impact on assets in other branches." Wyo Tech Mem. at 15. To the contrary, under New York law, "[o]nce a court has personal jurisdiction over the judgment debtor and bank, it can order the turn over of 'money or other personal property,' even property located out of state." *Signature Bank v. HSBC Bank USA, N.A.*, 67 A.D.3d 917, 918 (N.Y. App. Div. 2nd Dep't 2009); *see also*

-16-

*McCarthy v Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 275 (E.D.N.Y. 2011) ("as long as the New York court has personal jurisdiction over a defendant, regardless of whether it is the judgment debtor himself, or the garnishee bank, the court may order it to turn over out-of-state property to a judgment creditor") (citing *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009)).[4]

This Court already rejected Wyo Tech's interpretation of New York's "single entity rule," holding that "Wells Fargo had authority under New York law to comply with the Restraining Notice by freezing a bank account in Arizona." Dkt. 69 at 6. That holding is now "law of the case" and cannot be revisited on this Motion. *See United States v. County of Maricopa*, 151 F. Supp. 3d 998, 1013 (D. Ariz. 2015) (citing *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012)) ("Law of the case doctrine precludes a court from reexamining an issue previously decided by the same court, or a higher court, in the same case") (internal quotation marks omitted).

*Third*, Wyo Tech's argument that the CWT Parties failed to comply with Arizona's Garnishment completely misses the mark. Again, this Court ruled that the CWT Parties could properly use a New York restraining notice to restrain funds held by Wells Fargo in Arizona. Wyo Tech cites no case to the contrary, and provides no argument why the Arizona courts would not afford full faith and credit to an order issued from a sister state.

## CONCLUSION

For the reasons stated above, the Court should deny Wyo Tech's Motion.

---

[4] In *Motorola Credit Corp. v. Standard Chartered Bank*, the New York Court of Appeals held that "a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches." 24 N.Y.3d 149, 159 (2014). But the court's holding there was limited to the question whether process served in New York could restrain "assets held in *foreign* branch accounts," and the court specifically noted that it had "no occasion" to address whether process served in New York could restrain assets held in "domestic bank branches in New York or elsewhere in the United States." *Id.* at 159 n.2.

1    Dated: October 9, 2018

2            Phoenix, Arizona

3

4                              Respectfully submitted,

5                              **RYAN RAPP & UNDERWOOD, P.L.C.**

6                              By:   /s/ Henk Taylor (016321)

7                                    J. Henk Taylor (016321)

8                                    3200 N. Central Ave., Suite 1600

9                                    Phoenix, Arizona 85012

                                   Telephone: (602) 280-1000

10                                   Facsimile: (602) 265-1495

                                   E-Mail: htaylor@rrulaw.com

11                              **SCHLAM STONE & DOLAN LLP**

12

13                                    Jeffrey M. Eilender

                                   Bradley J. Nash

14                                    Joshua Wurtzel

                                   26 Broadway

15                                    New York, New York 10004

                                   Telephone: (212) 344-5400

16                                    Facsimile: (212) 34407677

                                   E-Mail: jme@schlamstone.com

17                                    E-Mail: bnash@schlamstone.com

18                                    E-Mail: jwurtzel@schlamstone.com

19                                *Attorneys Defendants CWT Canada II Limited*

20                                *Partnership and Resource Recovery*

                               *Corporation*

21

22

23

24

25

26

27

28

1   **ORIGINAL** e-filed and **COPIES**
2   e-mailed this 9th day of October 2018 as
    follows:
3
    Dennis I. Wilenchik
4   WILENCHIK & BARTNESS, P.C.
5   The Wilenchik & Bartness Building
    2810 North Third Street
6   Phoenix, Arizona 85004
7   admin@wb-law.conm

8   Leo R. Beus
    BEUS GILBERT PLLC
9   701 N. 44th Street
10  Phoenix, Arizona 85008
    lbeus@beusgilbert.com
11
12  *Attorneys for Wyo Tech Investment Group, LLC*
13
14  /s/ Henk Taylor
15  J. Henk Taylor
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT C

1  Barbara J. Dawson (#012104)
   Carlie Shae Tovrea (#029709)
2  Matt Jarvey (#031350)
   SNELL & WILMER L.L.P.
3  One Arizona Center
   400 E. Van Buren, Suite 1900
4  Phoenix, Arizona 85004-2202
   Telephone: 602.382.6000
5  Facsimile: 602.382.6070
   E-Mail: bdawson@swlaw.com
6          ctovrea@swlaw.com
           mjarvey@swlaw.com
7  Attorneys for Plaintiff Wells Fargo Bank, N.A.

8

9              IN THE UNITED STATES DISTRICT COURT

10               FOR THE DISTRICT OF ARIZONA

11

12  Wells Fargo Bank, N.A.,                    No.

13              Plaintiff,                     **COMPLAINT FOR
                                               INTERPLEADER**
14      v.

15  Wyo Tech Investment Group, LLC; CWT
    Canada II Limited Partnership, Resources
16  Recovery Corporation; and Jean Noelting,

17              Defendants.

18

19      Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") alleges the following in support

20  of its complaint against Defendants Wyo Tech Investment Group, LLC ("Wyo Tech"),

21  CWT Canada II Limited Partnership ("CWT Canada"), Resources Recovery Corporation

22  ("RRC"), and Jean Noelting ("Noelting") (collectively, the "Defendants"):

23                        **INTRODUCTION**

24      1.    This is an interpleader action. Wells Fargo seeks to interplead with the

25  Court $546,282.55 from a Wells Fargo bank account in the name of Wyo Tech, in

26  exchange for an order discharging Wells Fargo from any potential liability related to those

27  funds.

28

2. Two sets of adverse claimants have asserted claims to the funds that Wells Fargo now seeks to interplead.

3. On September 7, 2016, Defendants CWT Canada, RRC, and Noelting (collectively "the Judgment Claimants") obtained a judgment in the Supreme Court of the State of New York, Index No. 650841/2013, in the amount of $7,033,491.13 plus interest, against Dennis M. Danzik and RDX Technologies Corporation (f/k/a Ridgeline Energy Services, Inc.) (the "Judgment Debtors"). That judgment is attached hereto as Exhibit A (the "Underlying Judgment").

4. On one hand, the Judgment Claimants assert that they are entitled to the funds pursuant to the Underlying Judgment and a related restraining notice, which required Wells Fargo to freeze Wyo Tech's account.

5. On the other hand, Defendant Wyo Tech asserts that the Judgment Claimants are *not* entitled to the funds and has threatened to sue Wells Fargo if it does not unfreeze Wyo Tech's account.

6. Wells Fargo will potentially be subject to double liability because it may be required to pay the funds to both claimants. If it releases the frozen funds to Wyo Tech, then it risks contempt of court for violating the Judgment Claimants' restraining notice. If it keeps the funds frozen, however, then it risks litigation with Wyo Tech.

7. Accordingly, Wells Fargo now seeks to interplead the disputed funds with the Court so that the adverse claimants—the Defendants to this action—can adjudicate their entitlement to the funds and Wells Fargo can secure an order discharging it of liability to the Defendants.

## PARTIES, JURISDICTION, AND VENUE

8. Wells Fargo is a national bank organized under the National Bank Act. For diversity jurisdiction purposes, a national bank is a citizen of the state designated as its main office on its articles of association. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Wells Fargo's designated main office is in South Dakota.

- 2 -

9. Wyo Tech is a Wyoming limited liability company whose sole member, William Hinz, is a citizen of Maricopa County, Arizona. Upon information and belief, Wyo Tech does business in Maricopa County, Arizona.[1]

10. Upon information and belief, CWT Canada is a limited liability partnership incorporated in Delaware with its principal place of business in Toronto, Ontario, Canada. As a limited partnership, the citizenship of CWT Canada is the citizenship of its partners, and all partners are incorporated and reside in Toronto, Ontario, Canada.

11. Upon information and belief, RRC is a Delaware corporation with its principal place of business in New York.

12. Upon information and belief, Noelting is a citizen of Canada.

13. The Court has jurisdiction over this matter under 28 U.S.C. § 1335, because the two sets of claimants are of diverse citizenship, or, alternatively, under 28 U.S.C. § 1332, because the citizenship of the parties is completely diverse and because the amount in controversy exceeds $75,000.

14. Venue is proper in this Court under 28 U.S.C. § 1397 because Wyo Tech resides in the District of Arizona. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because Wyo Tech has threatened litigation in Arizona related to the disputed funds, or under 28 U.S.C. § 1391(b)(3) because at least one of the Defendants is subject to personal jurisdiction in the District of Arizona.

## GENERAL ALLEGATIONS

15. On September 7, 2016, the Judgment Claimants obtained the Underlying Judgment in the Supreme Court of the State of New York, Index No. 650841/2013, in the amount of $7,033,491.13 plus interest, against the Judgment Debtors.

16. On October 18, 2017, the Judgment Claimants issued a Restraining Notice and Information Subpoena to Wells Fargo, pursuant to New York law (the "Restraining Notice"). That Restraining Notice is attached hereto as Exhibit B.

---

[1] Upon information and belief, Wyo Tech has no known contacts with the state of New York.

Snell & Wilmer
L.L.P.
law offices
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

17.     In the Restraining Notice, the Judgment Claimants asserted that Wells Fargo is "in possession or in custody of property in which the judgment debtor has an interest as well as account(s) or any other property, tangible or intangible or interest in any property in the name of the judgment debtor, including but not limited to **the account reflected in the check in the attached Exhibit A, and any other accounts held in the name of Wyo Tech Investment Group LLC**." Ex. B, at 2 (emphasis in original). The attached check payable to Wilenchik & Bartness is drawn on the Wyo Tech account ending in -2809. Ex. B, at 4.

18.     Pursuant to Section 5222(b) of the New York Civil Practice Law and Rules, the Restraining Notice forbids Wells Fargo "to make or suffer any sale, assignment, or transfer of, or any interference with any property in which the judgment debtors have an interest, except upon direction of the sheriff or pursuant to an order of the court until the aforesaid judgment is satisfied or vacated." Ex. B, at 5. It also states that disobeying the Restraining Notice is punishable as contempt of court. Ex. B, at 5. If Wells Fargo failed to restrain the identified account, Wells Fargo could be liable to the Judgment Claimants.

19.     Section 5222(b) of the New York Civil Practice Law and Rules provides in relevant part:

> A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit *has stated in the notice* that a specified debt is owed by the person served to the judgment debtor or obligor or *that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served*. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon

1    him or her, or until the judgment or order is satisfied or vacated, whichever
2    event first occurs.

3    N.Y. C.P.L.R. 5222 (McKinney) (emphasis added).

4         20.    The Restraining Notice specifically identified and commanded the restraint
5    of the Wyo Tech account.

6         21.    After receiving the Restraining Notice, Wells Fargo froze the identified
7    Wyo Tech account so as to comply with the Restraining Notice and avoid liability for
8    contempt of court and to the Judgment Claimants.  The Wyo Tech account ending
9    in -2809 was opened at a Wells Fargo branch in Arizona.

10        22.    Further, the Business Account Agreement applicable to the Wyo Tech
11   account provides that in the event of an "adverse claim"—defined as "[a]ny person or
12   entity mak[ing] a claim against your account funds"—Wells Fargo can "[f]reeze all or
13   part of the funds in your account until we believe the dispute is resolved to our
14   satisfaction" and "[p]ay the funds into an appropriate court."  The Business Account
15   Agreement also provides that Wells Fargo "may charge any account you maintain with us
16   for our fees and expenses in taking these actions (including attorney's fees and
17   expenses)."

18        23.    Shortly after Wells Fargo froze the Wyo Tech account, counsel for Wyo
19   Tech contacted counsel for Wells Fargo by letter, copying counsel for the Judgment
20   Claimants, disputing that the funds in Wyo Tech's account are related to the Judgment
21   Claimants' judgment, asserting that Wyo Tech is the sole account holder and only party to
22   whom funds in the account are owed, asserting that "neither Mr. Danzik nor RDX nor any
23   member of Mr. Danzik's family holds any right, title, or interest" in the account,
24   acknowledging that a small indebtedness may be owed from Wyo Tech to Danzik Applied
25   Sciences, disputing that the Judgment Claimants' Restraining Notice is effective, and
26   threatening to sue Wells Fargo and Judgment Claimants in Arizona if Wyo Tech's funds
27   were not released by November 10, 2017.  The letter from Wyo Tech's counsel outlining
28   these assertions is attached hereto as Exhibit C.

Snell & Wilmer
L.L.P.
law offices
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

24.     Counsel for CWT Canada, RRC, and Noelting responded to Wyo Tech's counsel on November 6, 2017, asserting that the Restraining Notice is proper and that Wyo Tech is liable to Judgment Claimants for fraudulent transfers and conspiracy to commit fraudulent transfers.  This letter from Judgment Claimants' counsel is attached hereto as Exhibit D.  The letter identifies that Danzik's daughter, Jovahna Danzik, is listed on the signature card for the Wyo Tech account as the "Owner with Control of the Entity," "has check-signing authority, and directs so many payments to herself, her mother, and her father's company."  Ex. D, at 2.  The Judgment Claimants' counsel asserts that "if Wells Fargo releases these funds, it will be liable to the Judgment [Claimants]."  Ex. D, at 3.

25.     Without the interpleader action, Wells Fargo has two options: (1) obey the Restraining Notice and subject itself to litigation with Wyo Tech relating to the account freeze; or (2) release the disputed funds to Wyo Tech and risk contempt of court and liability to the Judgment Claimants for disobeying the Restraining Notice.

26.     Wells Fargo is unable to determine which Defendants are entitled to the funds subject to the interpleader action, and cannot determine which claim is valid without exposing itself to potential double litigation.

## COUNT I

### Interpleader

27.     Wells Fargo incorporates all prior allegations.

28.     Wells Fargo joins Defendants in this interpleader action pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22.

29.     Wells Fargo has in its custody or possession $546,282.55 from a Wells Fargo bank account in the name of Wyo Tech.

30.     Adverse claimants—the Judgment Claimants and Wyo Tech—are claiming entitlement to those funds.

31. Because of the adverse claims to the funds to the account ending in -2809, Wells Fargo is in the position of a stakeholder and claims no interest in the funds at issue (other than for reimbursement of its costs and attorneys' fees).

32. The Judgment Claimants' and Wyo Tech's claims to the funds risk subjecting Wells Fargo to double liability.

33. Wells Fargo seeks to interplead those funds with the Court and is ready, willing, and able to deposit the funds with the Court.

34. Wells Fargo is entitled to and requests an order discharging it from liability as to the claims made (or to be made) against it by the parties to this action.

**PRAYER**

WHEREFORE, Wells Fargo requests that the Court grant the following relief:

A. An order directing Wells Fargo to deposit the disputed funds into the registry of the Court and directing the Clerk to accept the deposit into an interest-bearing account until further orders from the Court;

B. An order restraining and permanently enjoining Defendants from instituting or prosecuting any action against Wells Fargo related to the funds at issue in this action, and dismissing and discharging Wells Fargo from any liability associated with those funds, *see* 28 U.S.C. § 2361;

C. An award of Wells Fargo's costs and reasonable attorneys' fees it incurred in this matter from the funds deposited with the Court;

D. Such a judgment is necessary to determine who is properly entitled to the account funds and direct the Clerk to release the funds in accordance with that judgment;

E. Any other relief to which Wells Fargo is entitled or that the Court deems just and proper.

Snell & Wilmer
L.L.P.
Law offices
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

RESPECTFULLY SUBMITTED this 9th day of November, 2017.

SNELL & WILMER L.L.P.

By: /s/ Carlie Tovrea
Barbara J. Dawson
Carlie Shae Tovrea
Matt Jarvey
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiff Wells Fargo
Bank, N.A.

4845-0138-1716.2

Snell & Wilmer
L.L.P.
law offices
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

- 8 -