J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,<br><br>　　　　　Defendants.<br><br>And related claims. | Case No.: 2:17-CV-04140-DWL<br><br>**CWT PARTIES'** ***EX PARTE*** **MOTION FOR LEAVE TO MAKE ALTERNATIVE SERVICE OF SUBPOENAS ON NONPARTY <u>DENNIS M. DANZIK</u>**<br><br>**Oral Argument Requested** |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1
STATEMENT OF FACTS ................................................................................................ 2
ARGUMENT ..................................................................................................................... 9
CONCLUSION ................................................................................................................ 12

Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "CWT Parties") move this Court under Fed. R. Civ. P. 1 and 45 for entry of an order granting them leave to serve subpoenas for documents and testimony by alternative methods on nonparty Dennis M. Danzik. This motion is supported by the following memorandum of points and authorities and the Declaration of Joshua Wurtzel.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

In this motion, we ask this Court to grant us leave to serve Mr. Danzik with subpoenas for documents and testimony by alternative methods—specifically, by overnight mail to his office and self-proclaimed home address, by e-mail to his e-mail account, and by e-mail to his Wyoming, New York, and Arizona counsel. As explained below, Mr. Danzik has been evading service of these subpoenas since April, and is well aware that we have been trying to subpoena him. Indeed, as explained below in greater detail, our process servers went to great lengths to attempt to serve Mr. Danzik in both Arizona (where he works) and Wyoming (where he claims to live). During these efforts, our Arizona server even spoke with Mr. Danzik by phone, who pretended to make arrangements to accept service in Wyoming. But despite our best efforts, we were unable to serve Mr. Danzik with a subpoena returnable in Arizona. And while we did serve him with a subpoena returnable in Wyoming, we believe Mr. Danzik no longer lives or regularly travels to Wyoming, so enforcement action against him there on the subpoena we already served (which Mr. Danzik disregarded) is likely to be futile.

This Court may "'allow substitute service of a Rule 45 subpoena, such as mail delivery, so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash.'" *In re: Ex Parte Application*

*of Pro-Sys Consultants & Neil Godfrey*, 2016 WL 6025155, at *2 (N.D. Cal. Oct. 14, 2016) (citation omitted). Thus, given that Mr. Danzik is a critical witness in this action, and given our extensive efforts to serve him in accordance with Fed. R. Civ. P. 45(b)(1), this Court should authorize alternative service on Mr. Danzik.

## STATEMENT OF FACTS

On January 12, 2018, Wyo Tech served its MIDP responses, identifying Mr. Danzik as a person with relevant, discoverable information, and listing Mr. Danzik's address as c/o Dennis Wilenchik of Wilenchik & Bartness—Wyo Tech's counsel in this action. Wurtzel Decl. Ex. A. Wilenchik & Bartness also previously represented Mr. Danzik in (1) the case captioned *CWT Canada II Limited Partnership, et al. v. Danzik, et al.*, Case No. 16-cv-607-PHX-DGC—which is a consolidated action pending in this District, and in which Mr. Danzik's claims against the CWT Parties were dismissed on January 26, 2018; (2) the judgment-enforcement action captioned *CWT Canada II Limited Partnership, et al. v. Danzik, et al.*, CV2017-005401, which is pending in Maricopa County Superior Court; (3) the underlying New York State action in which the CWT Parties got their judgment against Mr. Danzik, captioned *GEM Holdco, LLC, et al. v. CWT Canada II Limited Partnership, et al.*, Index No. 650841/2013—in which Mr. Wilenchik was recently admitted *pro hac vice* and remains as Mr. Danzik's counsel; and (4) Mr. Danzik's most-recent bankruptcy case, captioned *In re Danzik*, Case No. 19-20116—which was dismissed on June 24, 2019, and in which Mr. Wilenchik was recently admitted *pro hac vice*. *Id.* ¶ 3.

On February 3, 2019, we served Wyo Tech's counsel with a Rule 30 deposition notice for Mr. Danzik's deposition. *Id.* Ex. B.

On February 21, 2019, Wyo Tech's counsel told us that "Dennis Danzik is not an employee of Wyo Tech and therefor under the rules will need to be subpoenaed if you

-2-

want to take his deposition." *Id.* Ex. C.

Later that day, we responded, stating that Wyo Tech's MIDP responses listed Wyo Tech's counsel as the care-of address for Mr. Danzik, and asking Wyo Tech's counsel to either confirm that it would accept service of a subpoena on Mr. Danzik or provide Mr. Danzik's home and business addresses. *Id.*

Getting no response, we followed up with Wyo Tech's counsel on February 26, 2019, and again on February 27, 2019. *Id.* Finally, later on February 27, Wyo Tech's counsel responded, refusing to accept service or provide Mr. Danzik's home or business address, and stating: "Josh: We do not represent him and therefore cannot accept service. I am unaware of his current address but you may be able to find it in other court filings in cases you are involved in. I am unaware of any rule that would require me to attempt to figure that out for you." *Id.*

This response was intended to obstruct our efforts to take critical discovery in this case. Indeed, in previous testimony in other cases, Mr. Danzik refused to answer questions about where he lived—claiming that he did not know his own address. *Id.* Ex. D at 15:21-24. And in response to a question about where he was located during his video deposition in the related federal case listed above, Mr. Danzik's counsel there, Dennis Wilenchik, frivolously stated: "I'm going to object and instruct him, he doesn't have to answer that question and he can invoke his Fifth Amendment right, considering that you are trying to, as I understand it, arrest him, so that's my instruction to him." *Id.* Ex. E at 5:13-22.

In response to Wyo Tech's counsel's response in this case, we then pointed out that, according to his most-recent bankruptcy case, Mr. Danzik is employed by the same people who run Wyo Tech, *e.g.*, Wyo Tech CEO Bill Hinz, so Wyo Tech must know where Mr. Danzik lives and works. *Id.* We further demanded that Wyo Tech amend its MIDP responses to include these addresses. *Id.*

-3-

But Wyo Tech's counsel still refused to cooperate, claiming that "[i]t is my understanding at this time that Wyo Tech does not know this information." *Id.*

On March 4, 2019—after further demands—Wyo Tech amended its MIDP responses to state that it is "currently unaware of Dennis Danzik's physical residential address." *Id.* Ex. F.

Upon receiving this amended response, we asked Wyo Tech to identify Mr. Danzik's *business* address, since Wyo Tech's amended MIDP response conspicuously referred only to Mr. Danzik's "physical residential address." *Id.* ¶ 9. Wyo Tech's counsel stated that they would get back to us on this, but did not promptly do so. *Id.* ¶ 9.

On April 12, 2019, in advance of a meet and confer, we followed up, again demanding that Wyo Tech provide Mr. Danzik's business address—emphasizing again that Wyo Tech's CEO, Bill Hinz, regularly works with Mr. Danzik. *Id.* Ex. G. On April 15, 2019, the parties' counsel held a meet and confer, during which Wyo Tech's counsel agreed to ask Mr. Hinz if he knows Mr. Danzik's business and home addresses and, if so, provide them to us. *Id.*

After some follow up, on April 18, 2019, Wyo Tech's counsel responded, stating that, "[t]he last known business address for Dennis Danzik, according to Hinz is: 7543 E Tierra Buena Ln., Scottsdale, AZ 85260," but that Mr. Hinz "does not know what his home address is." *Id.*

On April 22, 2019, our process server attempted service at this Scottsdale address, but was unsuccessful. *Id.* Ex. H. Specifically, the server buzzed the intercom bell at the building and asked the woman who answered for Mr. Danzik; the woman asked why the server was there, to which the server said that he had a subpoena for Mr. Danzik. *Id.* But the woman then claimed that Mr. Danzik "did not office" out of this building, and hung up on the server. *Id.* The woman refused to provide her company name or business card. *Id.*

-4-

Also on April 22, 2019, another process server attempted service at Mr. Danzik's purported home address in Cody, Wyoming. *Id.* Ex. I. This is the home address that Mr. Danzik listed on his most-recent bankruptcy petition, though this home has been in foreclosure for years, and we do not believe that Mr. Danzik regularly lives there any more. *Id.* ¶ 12. When the server arrived, she encountered an older man, who identified himself as the caretaker and who said that Mr. Danzik was not there. *Id.* Ex. I. This caretaker also said that he never knows when Mr. Danzik is coming to Cody until a week or less before he arrives. *Id.*

On April 23, 2019, our process server again attempted service at the Cody, Wyoming address. *Id.* This time, no one responded to the server's knocks at the door. The server then returned about an hour later, but again no one answered the door. *Id.* The server placed her business card on the front door of the house. *Id.*

On April 26, 2019, our process server made a second attempt at the Scottsdale address. *Id.* This time, the server noticed a dumpster in the back of the building "labeled with the names of Danzik Applied Sciences and Inductance Energy Corp." *Id.* Ex. H. Thus, we are confident that—as Wyo Tech's counsel told us—this is Mr. Danzik's business address. The server then buzzed the intercom bell again and asked for Mr. Danzik. *Id.* The woman who answered asked whether the server had an appointment with him, and when the server said he did not and that he had a subpoena for Mr. Danzik, the woman again claimed that he "did not office" out of this building. *Id.* The woman refused to provide any contact information for Mr. Danzik. *Id.* The server then left a note with his own contact at the door of the building and asked the woman to pass it along to Mr. Danzik. *Id.*

On April 27, 2019, our process server again attempted service at the Cody, Wyoming address. *Id.* Ex. I. The server's business card—which she left on April 23—had

been removed from the front door. *Id.* But there was no answer at the door again. *Id.*

On April 29, 2019, Mr. Danzik called our Arizona process server's cell phone—presumably in response to the note our server left at his office on April 26. *Id. Id.* Ex. H. In response to Mr. Danzik's call, our server told Mr. Danzik that he had a subpoena for him—to which Mr. Danzik responded that he was traveling in Nevada and that we should serve him at his home at 1334 Sunset Boulevard, South Cody, Wyoming 82414. *Id.* Mr. Danzik further stated that he may be at his home in Cody around May 13, 2019, and that we should call him at that time. *Id.*

Later on April 29, our process server attempted service at Mr. Danzik's office in Scottsdale. *Id.* Ex. H. But this time, there was no answer at the buzzer. *Id.*

On May 10, 2019—in response to Mr. Danzik's phone call with our Arizona process server—our Wyoming process again attempted service at the Cody, Wyoming home, but no one was there. *Id.* Ex. I.

On May 11, 2019, our process server again attempted service at the Cody, Wyoming home. *Id.* No one was there again, and the server left a note on the door for Mr. Danzik to call her. *Id.* The server then called the phone number from which Mr. Danzik called our Arizona server, but Mr. Danzik did not answer and the voicemail was not set up. *Id.*

On May 12, 2019, our process server again returned to the Cody, Wyoming home. *Id.* This time, the caretaker was there, and he said that he had sent Mr. Danzik our Wyoming server's business card but had no further indication that Mr. Danzik was coming into town. *Id.*

On May 13, 2019, our process server again made two separate service attempts at the Cody, Wyoming home. *Id.* The server also called Mr. Danzik's phone, but again he did not answer and there was no voicemail set up. *Id.*

On May 13 and 15, 2019, our Wyoming process server sent text messages to Mr. Danzik at the phone number from which he called our Arizona server. *Id.* But Mr. Danzik did not respond. *Id.*

Later on May 15, our process server made another service attempt at the Cody, Wyoming home, but no one was there. *Id.*

Mr. Danzik never reached out to our Wyoming process server in response to her numerous calls and text messages. *Id.* Thus, when Mr. Danzik called our Arizona server, he likely had no intent of cooperating to accept service, and instead was attempting to cause us delay and additional expense in trying to serve him.

On May 15, 2019, the Wyoming bankruptcy court held an evidentiary hearing on our motion to dismiss Mr. Danzik's bankruptcy case. Hunsicker Decl. ¶ 2. Mr. Danzik appeared for and testified at this hearing in Cheyenne, Wyoming (six hours from Cody, Wyoming)—which was the first time he physically attended a hearing in Wyoming bankruptcy court in the three bankruptcies that he filed since 2016. *Id.* ¶ 3. At the end of that hearing, while he was still in the courtroom, our Wyoming bankruptcy counsel handed Mr. Danzik a copy of the subpoenas for documents and testimony that we had been trying to serve on Mr. Danzik since April. *Id.* ¶ 4. This subpoena required Mr. Danzik to produce documents by May 24, 2019, and to appear for a deposition on June 4, 2019. *Id.* Ex. A.

But critically, we inadvertently had our Wyoming bankruptcy counsel hand Mr. Danzik only the copies of the subpoenas that were returnable in Wyoming, rather than the (substantively-identical) ones returnable in Arizona. Wurtzel Decl. ¶ 14. This is significant, because as explained above, we believe that Mr. Danzik no longer lives in Wyoming, and instead works primarily in Arizona. Wurtzel Decl. ¶ 14. Thus, while we could enforce the subpoena we served on him in Wyoming, those enforcement efforts will

likely end up being futile, given that Mr. Danzik no longer lives there and seems to travel there only rarely as well. *Id.* ¶ 14.

On May 17, 2019, Wyo Tech's counsel asked us to consent to asking this Court to adjust the date or time of this Court's show-cause hearing on our contempt motion against Wilenchik & Bartness and Beus Gilbert. *Id.* Ex. J. We agreed, but noted that one of the alternate dates they proposed—June 4, 2019—was the date set for Mr. Danzik's deposition in the subpoena we served on him. *Id.* After some back and forth, we agreed to list June 4 as an alternate date for the show-cause hearing, but only if Wyo Tech's counsel—which, as explained above, previously represented Mr. Danzik (and was then also representing Mr. Danzik in his Wyoming bankruptcy and in the New York action)—worked with Mr. Danzik to secure an alternate date for his deposition. *Id.* Wyo Tech's counsel then said that it would work with Mr. Danzik's other Wyoming bankruptcy counsel to secure an alternate date. *Id.*

On May 21, 2019, Wyo Tech's counsel wrote to us that he "checked as a courtesy as promised," and that Mr. Danzik "will be in touch re his deposition date." *Id.* Ex. K. But Mr. Danzik did not produce any documents in response to our subpoena, nor did he ever reach out to us to arrange an alternate deposition date. *Id.*

Thus, on June 5, 2019, we e-mailed Mr. Danzik—at the e-mail address he uses—demanding that he produce documents in response to the subpoena by June 7, 2019, and also give us some available alternate deposition dates in July and August. *Id.* We copied Wyo Tech's counsel on this e-mail. *Id.* But neither Mr. Danzik nor Wyo Tech's counsel responded to this e-mail. *Id.* ¶ 16. Nor has Mr. Danzik—to date—produced any documents in response to this subpoena or reached out to us to arrange an alternate deposition date. *Id.*

As this Court knows, the critical issue in this case is whether Mr. Danzik has an

-8-

interest in the interpleaded funds that were previously held in Wyo Tech's account at Wells Fargo. Mr. Danzik's document production and testimony are thus critical. And as explained above, while we could seek to enforce these subpoenas against Mr. Danzik in Wyoming, those efforts would likely be futile, since Mr. Danzik no longer lives there and seems to seldom travel there.

Further, as a practical matter, Wyo Tech could produce Mr. Danzik if it wanted to. Indeed, though Wyo Tech claims that Mr. Danzik no longer works for it, we understand that Mr. Danzik works for Inductance or other related companies. *Id.* ¶ 17. We also understand that Inductance is merely the purported operating entity that leases technology that Danzik purportedly created from Wyo Tech, and that any other related companies are similarly related to Wyo Tech and Inductance and are all run by the same people—specifically, Messrs. Hinz and Danzik. *Id.* ¶ 17. And critically, Mr. Danzik submitted a declaration in support of Wyo Tech's position when this case began. *Id.* Ex. L. Thus, while—in this motion—we seek only leave to make alternative service of a subpoena returnable in Arizona on Mr. Danzik, we reserve the right to seek an order of preclusion against Wyo Tech if we cannot secure Mr. Danzik's document production and testimony.

## ARGUMENT

Under Rule 45(b)(1), serving a subpoena requires "delivering a copy to the named person." The Ninth Circuit has not yet decided whether a court may authorize alternative service under Rule 45(b)(1), but there is a "'growing—although still minority—trend among courts to allow substitute service of a Rule 45 subpoena, such as mail delivery, so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash.'" *In re: Ex Parte Application of Pro-Sys Consultants & Neil Godfrey*, 2016 WL 6025155, at *2 (citation omitted).

Though we did not locate any decision in this District dealing with this issue, as a

matter of first impression, this Court should follow this "growing trend" and authorize alternative service on Mr. Danzik. Indeed, the Rules of Civil Procedure "should not be construed as a shield for a witness who is purposefully attempting to evade service." *Toni Brattin & Co. v. Mosaic Int'l, LLC*, 2015 WL 1844056, at *4 (N.D. Cal. Apr. 9, 2015). And "Rule 45 should be construed as provided in Rule 1 'to secure the just, speedy, and inexpensive determination of every action,' which would allow for alternate means of service." *Id.*

Further, the text of Rule 45(b)(1) "does not unequivocally require delivery by hand-to-hand exchange"; instead, "service 'requires delivering a copy' of the subpoena to the witness." *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 754 (E.D. Mich. 2011). Thus, the "method of delivery is not specified," and "[w]hen hand-to-hand delivery is required, the rules generally indicate that requirement by designating 'personal' service." *Id.* Rule 45(b)(1) does not require "personal" service on a nonparty.

Moreover, cases holding that service made by alternative methods was improper under Rule 45(b)(1) often do not involve a motion for leave to make alternative service—and instead merely reject a party's unilateral efforts to serve a nonparty by alternative methods. *See Casun Invest, A.G. v. Ponder*, 2019 WL 2358390, at *3 (D. Nev. June 4, 2019) ("The safest course of action when a party is unable to effectuate personal service, is to file a motion for leave to serve the subpoena by alternative means."). Here, the CWT Parties seek leave to make alternative service.

Further, "'[c]ourts are more inclined to grant such alternative service where the serving party has provided sufficient evidence of its earlier diligence in attempting to effectuate personal service.'" *Chambers v. Whirlpool Corp.*, 2016 WL 9451361, at *2 (C.D. Cal. Aug. 12, 2016) (citation omitted). As explained above, the CWT Parties made extensive—and certainly diligent—efforts to serve Mr. Danzik with subpoenas for

-10-

documents and testimony in this case, and he is undoubtedly aware of these subpoenas.

Finally, though this motion is made on notice to Wyo Tech, we labeled this an *ex parte* motion because Wyo Tech has no standing to oppose this motion. Indeed, "[a] party has standing to challenge a subpoena served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena." *Cheatwood v. Christian Bros. Servs.*, 2018 WL 287389, at *1 (D. Ariz. Jan. 4, 2018). And neither a party nor a party's counsel has standing to "object to the grant of leave to alternative service" on a nonparty, especially when that counsel "does not represent" the nonparties. *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014).

The alternative method of service must be "reasonably calculated under the circumstances to provide" Mr. Danzik with both "notice and an opportunity to present objections." *Toni Brattin & Co.*, 2015 WL 1844056, at *4. Thus, this Court should grant the CWT Parties leave to serve Mr. Danzik by: (1) overnight FedEx to his purported home at 1334 Sunset Boulevard, Cody, Wyoming 82414; (2) overnight FedEx to his office at 7543 East Tierra Buena Lane, Scottsdale, Arizona 85260; (3) e-mail to his e-mail address at dmdanzik@gmail.com; and (4) e-mail to his Wyoming bankruptcy counsel, Ken McCartney; his New York counsel, Jacques Catafago and Tom M. Fini; and Wyo Tech's counsel (who was and is Mr. Danzik's counsel in other matters), Dennis M. Wilenchik. Given that Mr. Danzik is already aware of the subpoenas we have been trying to serve on him, and given that these attorneys are all regularly in touch with Mr. Danzik, these methods are "sufficient to ensure that [Mr. Danzik] has knowledge of and actually receive[s] the subpoena[]." *Chambers*, 2016 WL 9451361, at *3; *see also In re: Ex Parte Application of Pro-Sys Consultants & Neil Godfrey*, 2016 WL 6025155, at *2 (granting leave to serve subpoena by "overnight courier" to deponent's residence when deponent

refused to accept service and was "attempting to evade personal service").

## CONCLUSION

This Court should grant the CWT Parties leave to serve Mr. Danzik with subpoenas for documents and testimony in this action, returnable in Phoenix, Arizona, by (1) overnight FedEx to his purported home at 1334 Sunset Boulevard, Cody, Wyoming 82414; (2) overnight FedEx to his office at 7543 East Tierra Buena Lane, Scottsdale, Arizona 85260; (3) e-mail to his e-mail address at dmdanzik@gmail.com; and (4) e-mail to his Wyoming bankruptcy counsel, Ken McCartney; his New York counsel, Jacques Catafago and Tom M. Fini; and Wyo Tech's counsel (who was and is Mr. Danzik's counsel in other matters), Dennis M. Wilenchik.

Dated: July 8, 2019
       Phoenix, Arizona

                                  Respectfully submitted,

                                  **RYAN RAPP & UNDERWOOD, P.L.C.**

                                  By:   /s/ Henk Taylor (016321)
                                           J. Henk Taylor (016321)
                                           3200 N. Central Ave., Suite 1600
                                           Phoenix, Arizona 85012
                                           Telephone: (602) 280-1000
                                           Facsimile: (602) 265-1495
                                           E-Mail: htaylor@rrulaw.com

                                  **SCHLAM STONE & DOLAN LLP**

                                      Jeffrey M. Eilender (*admitted pro hac vice*)
                                      Bradley J. Nash (*admitted pro hac vice*)
                                      Joshua Wurtzel (*admitted pro hac vice*)
                                      26 Broadway
                                      New York, New York 10004
                                      Telephone: (212) 344-5400
                                      Facsimile: (212) 34407677
                                      E-Mail: jeilender@schlamstone.com
                                      E-Mail: bnash@schlamstone.com
                                      E-Mail: jwurtzel@schlamstone.com

                                  *Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**ORIGINAL** e-filed and **COPIES**
e-mailed this 8th day of July
2019 as follows:

Dennis I. Wilenchik
Tyler Swenson
Chris Meyers
**WILENCHIK & BARTNESS P.C.**
2810 North Third Street
Phoenix, AZ 85004
E-Mail: diw@wb-law.com
E-Mail: tylers@wb-law.com
E-Mail: chrism@wb-law.com

Leo R. Beus
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, AZ 85008
E-Mail: lbeus@beusgilbert.com

*Attorneys for Wyo Tech Investment Group, LLC*

/s/ Henk Taylor
J. Henk Taylor