J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited
Partnership, Resource Recovery Corporation, and
Jean Noelting*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A.<br><br>Plaintiff,<br><br>v.<br><br>Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,<br><br>Defendants.<br><br>And related claims. | Case No.: 2:17-CV-04140-DWL<br><br>**CWT PARTIES' MOTION FOR AN ORDER TO SHOW CAUSE AND FOR ADDITIONAL SANCTIONS**<br><br>**Oral Argument Requested** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ............................................................................................................. 5

I.      THIS COURT SHOULD HOLD ALL THE CONTEMNORS IN CIVIL
        CONTEMPT OF THE CONTEMPT ORDER, AND ISSUE BENCH
        WARRANTS FOR THEIR ARREST ...................................................................... 5

II.     SEPARATELY, THIS COURT SHOULD ISSUE A BENCH WARRANT FOR
        DAS's PURPORTED SOLE MEMBER, ELIZABETH DANZIK ......................... 8

CONCLUSION ......................................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "CWT Parties") move this Court for entry of (1) an order to show cause why nonparties Charles J. Davis, Richard W. Davis, Ashley Mosharrafa, Tamir Mosharrafa, Ali M. Mosharrafa, Kristin Joiner Mosharaffa, and Elizabeth Danzik (as purported sole member of Danzik Applied Sciences, LLC ("DAS")) (collectively, the "Contemnors") should not be held in civil contempt for their refusal to comply with this Court's June 27, 2019 contempt order (Dkt. No. 167) (the "Contempt Order") by refusing to pay the daily fines this Court imposed on each of them, with the sanction for their contempt of the Contempt Order being additionally daily fines and issuance of a bench warrant for their arrest and an order incarcerating them until they fully comply with the Contempt Order or show that they cannot; and (2) a bench warrant for the arrest of Elizabeth Danzik—Dennis Danzik's wife and the purported sole member of DAS—and an order incarcerating her until she causes DAS to fully comply with the subpoena served on it in this action in accordance with the Contempt Order or shows that she cannot.

This motion is supported by the following memorandum of points and authorities and the Declaration of Joshua Wurtzel. The CWT Parties have lodged a proposed form of order granting this motion, and proposed bench warrants for each contemnor are attached to the Wurtzel Declaration as Exhibits A-G.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

As we explained in our July 26, 2019 status report (Dkt. No. 181), all seven of the Contemnors have refused to pay the daily fines this Court assessed on them in the Contempt Order. And DAS—Wyo Tech's managing member—which is purportedly a single-member entity owned and controlled by Dennis Danzik's wife, Elizabeth Danzik—

has refused to produce any documents in response, or otherwise meaningfully respond, to the subpoena we served on it in accordance with the Contempt Order. Thus, despite this Court's Contempt Order and on-the-record admonitions to Wyo Tech's counsel—which appears to be directly in touch with most of, if not all, the Contemnors—the Contemnors continue to flout this Court's authority.

*First*, this Court should hold all seven Contemnors in civil contempt of the Contempt Order because they have refused to pay the daily fines required by the Contempt Order. And the sanction this Court imposes on them for this contempt should be an additional daily fine of $1,000 per day and the issuance of bench warrants for their arrest.

*Second*, and separate and apart from sanctions for refusal to pay daily fines, this Court should also issue a bench warrant for the arrest of Elizabeth Danzik, DAS's purported sole and managing member, because DAS continues to refuse to comply with the subpoena served on it, and thus remains in civil contempt.

## STATEMENT OF FACTS

As this Court knows, on June 27, 2019, this Court entered the Contempt Order—holding nonparties DAS, Charles J. Davis, Richard W. Davis, Ashley Mosharrafa, Tamir Mosharrafa, Ali M. Mosharrafa, and Kristin Joiner Mosharaffa in civil contempt, ordering them to pay the CWT Parties' legal fees incurred in moving for contempt against them, and assessing a $250 daily fine against each of them beginning on June 27, 2019 and lasting until each "fully complies" with the subpoenas served on them. Dkt. No. 167 at 2.

Following the June 27 Contempt Order, the CWT Parties made extensive efforts to serve each of these seven nonparties with the Contempt Order—some of whom were served only after multiple attempts at multiple locations. But between June 28 and July 8, 2019, all seven were served with the Contempt Order. *See* Dkt. No. 182-1.

1
2
3
4
5
6
7
8
9
10

On July 1, 2019, Charles Davis made a substantial production of documents in response to the subpoena. Dkt. No. 182 ¶ 3. These documents included e-mails between Mr. Davis, Dennis Danzik, Bill Hinz (Wyo Tech's CEO), and Wyo Tech's counsel in which Mr. Davis appears to seek advice from Wyo Tech regarding his obligation to respond to the subpoena—thus showing that he knew about this subpoena since it was served almost six months ago and, likely with some encouragement by Wyo Tech, chose to ignore it. *See* Dkt. No. 182-2. We are satisfied that Mr. Davis's production "fully complies" with the subpoena served on him, though Mr. Davis has not paid the daily fine this Court imposed in the Contempt Order. Dkt. No. 182 ¶ 4.

11
12
13
14
15
16
17
18
19

On July 8, 2019, having received no response from any of the other Contemnors, we sent letters to each of them demanding their immediate compliance with the subpoenas we served on them, asking them to reach out to us to make arrangements to pay our attorneys' fees and the daily fine this Court imposed, and attaching the Contempt Order. *See* Dkt. No. 182-3. Also on July 8, we sent a letter to Charles Davis acknowledging receipt of his production, and demanding that he pay the daily fine this Court imposed on him for four days ($1,000). *Id.* Mr. Smith did not respond to this letter, nor has he paid these daily fines or reached out to us to discuss this. Dkt. No. 182 ¶ 5.

20
21
22
23
24
25

On July 10, 2019, Wyo Tech's counsel forwarded us a two-page, written response from DAS—which was signed **under penalty of perjury** by Elizabeth Danzik, Dennis Danzik's wife and the supposed sole member of DAS. Dkt. Nos. 182 ¶ 6, 182-4. This response purported to respond to the subpoena we served on DAS. Dkt. No. 182-4. But DAS refused produce any documents in response to the subpoena. Dkt. No. 182 ¶ 6. And DAS's excuses for its failure to produce responsive documents were frivolous. *Id.*

26
27
28

**First**, in response to most of our document requests, DAS claimed that it has no responsive documents "beyond those that have already been produced to CWT and its

attorneys" in other actions. Dkt. No. 182-4. But this is not an acceptable response. If DAS has documents responsive to these requests in its possession, custody, or control, it is required to produce them—regardless of whether it believes we already have copies of these documents.

*Second*, DAS did not respond to our request for all contracts or agreements between it and Wyo Tech or Inductance—and incorrectly misstated Request No. 7 as one for communications with Mr. Hinz. Dkt. Nos. 182 ¶ 8, 182-4.

*Third*, DAS stated that Ms. Danzik is DAS's "sole member." Dkt. No. 182-4. But DAS did not produce any documents showing this. Dkt. No. 182 ¶ 9.

*Fourth*, DAS stated that it has no documents concerning its operation, "including the Persons that control [DAS] and [its] beneficial owners," because "DAS ceased operations in the late summer or [sic] 2017." Dkt. No. 182-4. But this is not an acceptable response either. Even if DAS ceased operations, as long as it remains in existence (which it does), it must have documents showing who controls it and who its beneficial owners are. And it certainly must have these documents from before late-summer 2017, when it was concededly still in operation.

On July 10, 2019, we sent Ms. Danzik a letter outlining these deficiencies, and explaining that DAS's written response to the subpoena we served on it was an "unacceptable, disingenuous response to the subpoena that [DAS] ignored for over five months," and that its "continued refusal to produce responsive documents shows that [it] still fail[s] to take this subpoena—and the court's order holding DAS in civil contempt— seriously." Dkt. No. 182-5. Also in this letter, we demanded that DAS pay the daily fine this Court imposed on it for its continued period of noncompliance. *Id.* Neither DAS nor Ms. Danzik responded to this letter, nor did DAS or Ms. Danzik pay these daily fines, nor did they reach out to us to discuss this. Dkt. No. 182 ¶ 11.

On July 11, 2019, Ashley Mosharrafa, Tamir Mosharrafa, Ali M. Mosharrafa, and Kristin Joiner Mosharaffa all produced responses to the subpoenas served on them. *Id.* ¶ 12. We are satisfied that the Mosharrafas' productions "fully compl[y]" with the subpoenas served on them. *Id.* We responded to them by e-mail acknowledging receipt of these productions, but also demanding that they each pay the daily fine this Court imposed on each of them for 13 days ($3,250 each). Dkt. No. 182-6. None of the Mosharrafas responded to this e-mail, nor have they paid these daily fines or reached out to us to discuss this. Dkt. No. 182 ¶ 13.

As this Court knows, we stated the facts above in our July 26, 2019 status report. *See* Dkt. No. 181. Since filing this status report, we received a written response and small document production from Richard W. Davis. Wurtzel Decl. ¶ 4. According to the U.S.P.S. parcel in which we received this response and production, Mr. Davis mailed these documents out on July 23, 2019. *Id.* We are satisfied that this production "fully complies" with the subpoena served on Mr. Davis, though Mr. Davis has not paid the daily fine this Court imposed in the Contempt Order. *Id.* Given his July 23 production date, Mr. Davis is liable for 26 days of daily fines, for a total of $6,500.

To date, we have not received any further response or documents from DAS, nor have any of the Contemnors paid the daily fines this Court imposed on them in the Contempt Order. *Id.* ¶ 5.

## ARGUMENT

### I.     THIS COURT SHOULD HOLD ALL THE CONTEMNORS IN CIVIL CONTEMPT OF THE CONTEMPT ORDER, AND ISSUE BENCH WARRANTS FOR THEIR ARREST

"'Civil contempt is characterized by the court's desire to compel obedience to a court order, or to compensate the contemnor's adversary for the injuries which result from the noncompliance.'" *Sell v. Country Life Ins. Co.*, 2017 WL 5713885, at *3 (D. Ariz.

Feb. 27, 2017) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)). "A party moving for civil contempt 'has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.'" *Id.* (quoting *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)). "'The burden then shifts to the contemnors to demonstrate why they were unable to comply.'" *Id.* (quoting *Affordable Media, LLC*, 179 F.3d at 1239).

"The court's power of civil contempt includes the power to issue a bench warrant for a contemnor's arrest." *Perry v. O'Donnell*, 759 F.2d 702, 706 (9th Cir. 1985). And "[w]hile the use of a civil arrest warrant is an extreme remedy," this Court has the "inherent power to punish a party for failure to comply with a court order," and also has the "statutory authority to punish by imprisonment a party's failure to comply with a court order." *United States v. Hill*, 2014 WL 12839160, at \*4 (D. Ariz. June 23, 2014) (citing 18 U.S.C. § 401). Further, a party imprisoned for civil contempt "'carries the keys of his prison in his own pocket,'" since he can "'end the sentence and discharge himself at any moment by doing what he had previously refused to do.'" *United States v. Harper*, 2009 WL 2983204, at \*1 (D. Ariz. Sept. 15, 2009) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

It is undisputed that, in the Contempt Order, this Court ordered all seven Contemnors to pay daily fines of $250 "beginning on June 27, 2019 and lasting until the non-party fully complies with the subpoena(s) at issue." Dkt. No. 167 at 2. It is also undisputed that all seven Contemnors were served with the Contempt Order (Dkt. No. 182-1), and that they understood the Contempt Order—since they all provided a response of some kind (Dkt. No. 182 ¶¶ 3, 6, 12; Wurtzel Decl. ¶ 4). And it is also undisputed that none of the seven contemnors have paid the daily fines this Court ordered them to pay, despite our demands for them and warning that we would seek their arrest if they failed to

pay. Dkt. No. 182-3; Wurtzel Decl. ¶ 5. Thus, this Court should hold all seven Contemnors in civil contempt of the Contempt Order based on their failure to pay these daily fines.

Further, imposing additional fines or monetary sanctions on the Contemnors will be unlikely—on their own—to compel them to pay the daily fines in the Contempt Order, since the Contemnors have already shown that they will not pay these fines absent additional enforcement methods. And converting these fines to judgment will require the CWT Parties to incur substantial additional costs to enforce these judgments against the Contemnors, which would be for only a few thousand dollars in most cases. Thus, to compel the Contemnors' compliance with the Contempt Order, this Court should issue bench warrants for their arrest, and should order them incarcerated until they fully comply with the Contempt Order or show that they cannot. *See Laparade v. Ivanova*, 116 F. App'x 100, 102 (9th Cir. 2004) (court issued warrant for contemnor's arrest after contemnor was held in contempt but still refused to "appear and pay daily fines"); *S.E.C. v. Navin*, 97 F.3d 1460 (9th Cir. 1996) (after party's nonpayment of civil penalties, court held party in contempt and issued "bench warrant for his arrest"); *Miller v. Iles*, 978 F.2d 715 (9th Cir. 1992) (court issued warrant for party's arrest after he "failed to appear at a contempt hearing on his failure to pay the sanctions"); *Harper*, 2009 WL 2983204, at *2 (issuing warrants for contemnors' arrest); *United States v. Foley*, 2009 WL 1010085, at *2 (D. Ariz. Apr. 14, 2009) (issuing warrant for contemnor's arrest); *see also A&F Bahamas, LLC v. World Venture Group, Inc.*, 2019 WL 3326025, at *5 (C.D. Cal. June 7, 2019) (Report and Recommendation) (recommending that district judge issue a bench warrant for contemnor's arrest if contemnor failed to pay court-ordered monetary sanction); *Sand Creek Partners, Ltd v. Am. Fed. Sav. & Loan Ass'n of Colorado*, 2016 WL 829974, at *2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(D. Nev. Mar. 2, 2016) (issuing bench warrant for contemnor's arrest until contemnor "fully cure[d] his contempt").

And as an additional method to compel their compliance, this Court should also require each Contemnor to pay $1,000 per day from the date of entry of this order through the date they pay all the daily fines assessed against them under the Contempt Order (plus any additional daily fines that accrue under this order).

## II.   SEPARATELY, THIS COURT SHOULD ISSUE A BENCH WARRANT FOR DAS's PURPORTED SOLE MEMBER, ELIZABETH DANZIK

A command to a company is "in effect a command to those who are officially responsible for the conduct of its affairs." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 955 (9th Cir. 2014) (citation omitted). Thus, "[i]f they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.'" *Id.* (citation omitted); *see also N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977) (officers of company are "legally identified" with company, and are thus "liable in contempt for disobeying an order" directed to company).

"'[T]o be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or be legally identified with him,' and that the non-party have notice of the order.'" *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) (alterations in original) (citation omitted). The managing member of an LLC is "legally identified" with the LLC, because the managing member

has the "ability to act on behalf of" the LLC. *United States v. Montgomery Global Advisors LLC*, 2006 WL 950102 at *2 (N.D. Cal. Mar. 2, 2006).

As explained above, DAS has not "fully complie[d]" with the subpoena we served on it. Indeed, it has refused to produce any documents, and has made only pithy—often-incredible—excuses for why it need not comply with the subpoena. *See* Dkt. No. 182-4. And if DAS's response is considered compliance with the subpoena—or even partial compliance to avoid arrest or further contempt sanctions—then this Court's Contempt Order requiring DAS to "fully compl[y]" with the subpoena served on it would mean nothing. Indeed, if DAS avoids arrest or further sanctions here, then any nonparty could prepare a pithy, written response without searching for or producing any documents and know that they are unlikely to be sanctioned. This is not the law.

Further, in her response—which she swore to under oath—Ms. Danzik claims that she is the "sole member" of DAS. Dkt. No. 182-4 Response No. 8. And in the Wyo Tech operating agreement, which lists DAS as Wyo Tech's managing member, Ms. Danzik signs on behalf of DAS as its managing member. Dkt. No. 160-8 at 23. Thus, Ms. Danzik has the "ability to act on behalf of" DAS—and indeed, is the only person who can act on behalf of DAS. *See Montgomery Global Advisors*, 2006 WL 950102 at *2. And since DAS was properly served and Ms. Danzik is clearly aware of the Contempt Order based on her limited response to the subpoena, Ms. Danzik can be held personally liable for DAS's contempt, since DAS's contemptuous conduct is functionally hers, and vice versa. *See id.* (holding managing member of LLC "personally liable" for LLC's contempt). And proceeding solely against DAS is likely to be futile, since Ms. Danzik swore in her response that DAS is no longer in operation (Dkt. No. 182-4 Response No. 9), and our understanding is that DAS is merely a shell company that Dennis Danzik and his wife use to funnel money between entities for their personal benefit.

1

2          Moreover, this Court should issue a bench warrant for Ms. Danzik's arrest to

3   compel DAS's (and thus her) compliance with the subpoena, because Ms. Danzik has

4   already shown that she will disregard this Court's orders as she sees fit. Indeed, Wyo

5   Tech's counsel has stated that Ms. Danzik is a current Wyo Tech employee. Dkt. No. 174-

6   3 at 5. And Wyo Tech's counsel currently represents Ms. Danzik and DAS in a separate

7   suit with the CWT Parties that is scheduled for trial before Judge Campbell in December

8   2019. *See CWT Canada II Limited Partnership, et al. v. Danzik, et al.*, Case No. 16-cv-

9   00607-PHX-DGC (D. Ariz.). So there is no doubt that Ms. Danzik knew of the June 27

10  contempt hearing and of her obligations under the Contempt Order, yet chose to disregard

11  them anyway. Thus, Ms. Danzik's arrest is likely the only way to compel DAS's (and thus

12  her) compliance with the Contempt Order.

13                                      **<u>CONCLUSION</u>**

14         This Court should issue (1) an order to show cause why nonparties Charles J.

15  Davis, Richard W. Davis, Ashley Mosharrafa, Tamir Mosharrafa, Ali M. Mosharrafa,

16  Kristin Joiner Mosharraffa, and Elizabeth Danzik (as purported sole member of DAS)

17  should not be held in civil contempt for their refusal to comply with the Contempt Order

18  by refusing to pay the daily fines this Court imposed on each of them, with the sanction

19  for their contempt of the Contempt Order being assessment of daily fines of $1,000 per

20  day from the date of entry of this order through the date they pay all the daily fines

21  assessed against them under the Contempt Order (plus any additional daily fines that

22  accrue under this order), and issuance of a bench warrant for their arrest and an order

23  incarcerating them until they fully comply with the Contempt Order or show that they

24  cannot; and (2) separately, a bench warrant for the arrest of Elizabeth Danzik and an order

25  incarcerating her until she causes DAS to fully comply with the subpoena served on it in

26  this action in accordance with the Contempt Order or shows that she cannot.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, since the Contemnors have now been personally served twice—with the subpoenas and the Contempt Order—and given the substantial expense the CWT Parties have already incurred serving the Contemnors, this Court should also authorize service of its order to show cause on these nonparties by overnight Federal Express.

Dated: August 2, 2019
         Phoenix, Arizona


                                    Respectfully submitted,

                                    **RYAN RAPP & UNDERWOOD, P.L.C.**

                                    By:    /s/ Henk Taylor (016321)
                                           J. Henk Taylor (016321)
                                           3200 N. Central Ave., Suite 1600
                                           Phoenix, Arizona 85012
                                           Telephone: (602) 280-1000
                                           Facsimile: (602) 265-1495
                                           E-Mail: htaylor@rrulaw.com

                                    **SCHLAM STONE & DOLAN LLP**

                                           Jeffrey M. Eilender (*admitted pro hac vice*)
                                           Bradley J. Nash (*admitted pro hac vice*)
                                           Joshua Wurtzel (*admitted pro hac vice*)
                                           26 Broadway
                                           New York, New York 10004
                                           Telephone: (212) 344-5400
                                           Facsimile: (212) 34407677
                                           E-Mail: jeilender@schlamstone.com
                                           E-Mail: bnash@schlamstone.com
                                           E-Mail: jwurtzel@schlamstone.com

                                    *Attorneys for Defendants CWT Canada II*
                                    *Limited Partnership, Resource Recovery*
                                    *Corporation, and Jean Noelting*

-12-

**ORIGINAL** e-filed and **COPIES**
e-mailed this 2nd day of August
2019 as follows:

Dennis I. Wilenchik
Tyler Swenson
Chris Meyers
Chris Feasel
**WILENCHIK & BARTNESS P.C.**
2810 North Third Street
Phoenix, AZ 85004
E-Mail: diw@wb-law.com
E-Mail: tylers@wb-law.com
E-Mail: chrism@wb-law.com
E-Mail: chrisf@wb-law.com

Leo R. Beus
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, AZ 85008
E-Mail: lbeus@beusgilbert.com

*Attorneys for Wyo Tech Investment
Group, LLC*

_____
Joshua Wurtzel