J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
Email: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Wells Fargo Bank, N.A.<br><br>            Plaintiff,<br><br>      v.<br><br>Wyo Tech Investment Group, LLC, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting,<br><br>            Defendants.<br><br>And related claims. | Case No.: 2:17-CV-04140-DWL<br><br>**CWT PARTIES' OPPOSITION TO NONPARTIES WILENCHIK & BARTNESS, P.C.'s AND LISA LOFTIS's MOTION TO QUASH OR MODIFY SUBPOENAS AND CROSS MOTION TO COMPEL <u>WILENCHIK'S TESTIMONY</u>**<br><br>**Oral Argument Requested** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ..................................................................................................................... 5

I.  THIS COURT SHOULD DENY THE MOTION TO QUASH THE SUBPOENA TO MS. LOFTIS AS MOOT ........................................................................................ 5

II. THIS COURT SHOULD DENY THE MOTION TO MODIFY THE SUBPOENA TO WILENCHIK, AND SHOULD ORDER WILENCHIK TO COMPLY WITH IT ........................................................................................................................... 5

CONCLUSION ................................................................................................................ 11

Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "CWT Parties") submit this memorandum of points and authorities, along with the Declaration of Joshua Wurtzel, in opposition to nonparties Wilenchik & Bartness, P.C.'s ("Wilenchik") and its office manager, Lisa Loftis's, motion to quash or modify the deposition subpoenas the CWT Parties served on them, and in support of the CWT Parties' cross motion to compel Wilenchik's testimony.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

In their motion to quash or modify, Wilenchik and its office manager, Ms. Loftis, move to modify and quash the deposition subpoenas the CWT Parties served on them, respectively. This motion should be denied, and this Court should instead order Wilenchik to produce a Rule 30(b)(6) witness on all six topics in the subpoena to it.

*Concerning the subpoena to Ms. Loftis*, given that Wyo Tech has represented that it will designate Ms. Loftis as its Rule 30(b)(6) deponent, as we told Wilenchik by e-mail before it and Ms. Loftis filed this motion, we agree to depose Ms. Loftis in that capacity only—since the questions we would ask her in her personal capacity would, and her answers in response to those questions should, be identical. Thus, this part of the motion should be denied as moot.

*Concerning the subpoena to Wilenchik*, Wilenchik's objections to our deposition topics are erroneous. Indeed, the Wilenchik's objections ignore that Wilenchik claimed that it did not have any documents showing the clients on whose behalf or the matters for which hundreds of thousands of dollars in retainer payments from Wyo Tech and Inductance were made; and so, since there are supposedly no documents showing this information, we are entitled to seek this information through testimony. And Wilenchik's objections other objections rely on its erroneous claim that this Court "accepted"

Wilenchik's representations about what documents it had and how it managed client retainers for *all* purposes, and that these representations are beyond challenge. But contrary to Wilenchik's claim, this Court did not accept Wilenchik's representations for all purposes, and instead merely accepted them in declining to order it to produce documents it said did not exist and in declining to hold it in contempt. And also contrary to Wilenchik's claim, during the May 29, 2019 show-causing, this Court expressly contemplated that we would depose Wilenchik on this exact topic—stating: "I just will further note that, again, **I see a world where in later stages of this case there might be depositions from folks within the firm about how the accounting system works.** So, this record should be crystal clear that I'm making rulings made on point-blank representations to me how the accounting system works. **If these representations turn out to be inaccurate, that will be a big problem.** But I accept what you've said. And given that, I don't think that there's anything else for me to compel with respect to these accounting issues." Wurtzel Decl. Ex. A at 44:15-24.

## STATEMENT OF FACTS

As this Court knows, on May 29, 2019, this Court held a show-cause hearing on the CWT Parties' motion to hold Wyo Tech's counsel, Wilenchik, in civil contempt for its failure to comply with the document subpoena the CWT Parties served on it. *See* Dkt. No. 155. And as this Court will recall, this subpoena sought documents sufficient to show all payments—including date, amount, and source account—that Wyo Tech and Inductance made to Wilenchik, as well as documents sufficient to show the clients on whose behalf and the matters for which these payments were made. Dkt. No. 101 at 7-16.

As part of their contempt motion, the CWT Parties argued that Wilenchik should be held in contempt because it failed to produce any documents showing the clients on whose behalf or the matters for which hundreds of thousands of supposed-retainer

payments from Wyo Tech and Inductance were made. Dkt. No. 153 at 4.

During the show-cause hearing, Wilenchik claimed that these documents did not exist, stating that it "does not track payments coming in by client matter unless the payment comes from that client on that matter," and since Wyo Tech and Inductance deposited money into Wilenchik's trust account "for use on a variety of cases," those funds were not "tracked at that stage by matter," and were instead "tracked by payor." Wurtzel Decl. Ex. A at 11:2-9. Thus, according to Wilenchik, the documents it produced before the show-cause hearing were "everything [it] had in [its] records" responsive to this request. *Id.* at 11:14-15.

In response to Wilenchik's representations, this Court said that it shared the CWT Parties' "skepticism of the idea that a $100,000 retainer check could come into your firm and there could be zero paperwork anywhere showing who gets credit for that or what client matters it subsequently got applied to when you were working on it." *Id.* at 39:3-7. But Wilenchik stood on its representations, stating "there's nothing more we can say, other than we've given [the CWT Parties' counsel] all the documentation that's out there," and **"if he wants to depose Miss Loftis and ask her those questions, fine."** *Id.* at 39:25-40:3.

When it ruled on the CWT Parties' contempt motion—declining to hold Wilenchik in contempt but sanctioning it and requiring it to pay the CWT Parties' attorneys' fees (Dkt. No. 155)—this Court stated that, like the CWT Parties, it was "initially skeptical that a firm wouldn't have more documented paperwork internally showing after the money comes in how it gets allocated between those accounts." Wurtzel Decl. Ex. A at 43:17-20. But this Court then held: "[A]t the end of the day there's only one party that has the foundation to make a representation on whether it's complied with the subpoena, and that's the Wilenchik firm, because they're the ones who are familiar with their accounting

systems and how they track funds internally. They've represented that they've complied with the subpoena. I accept that representation." *Id.* at 44:8-14.

This Court, however, also emphasized an important limitation to its holding: "I just will further note that, again, **I see a world where in later stages of this case there might be depositions from folks within the firm about how the accounting system works.** So, this record should be crystal clear that I'm making rulings based on point-blank representations to me how the accounting system works. **If these representations turn out to be inaccurate, that will be a big problem.** But I accept what you've said. And given that, I don't think that there's anything else for me to compel with respect to these accounting issues." *Id.* at 44:15-24.

While Wilenchik produced documents showing how payments from Wyo Tech and Inductance were **ultimately applied**, as it stands today, we don't know the clients on whose behalf or the matters for which hundreds of thousands of dollars from Wyo Tech and Inductance were **initially made and earmarked**—since Wilenchik claimed that it does not have any documents showing this. Which clients and matters specific retainer payments were earmarked for when they were made—regardless of which clients and matters the funds were ultimately applied toward—is significant, because if some of these payments were initially earmarked for Dennis Danzik, his wife, his company, or his cronies, that makes it more probable that Mr. Danzik has an interest in the interpleaded funds. Thus, since Wilenchik has stated that it does not have any documents showing this information, the only way we can get this information is through a deposition. Further, as explained above, this Court—and even Wilenchik—expressly contemplated that we would depose the people at Wilenchik with personal knowledge about how these retainer payments were earmarked and what, if any, documents existed regarding this. So the purpose of our deposition subpoenas to Wilenchik and Ms. Loftis is to gather the

information about which Wilenchik claimed it didn't have any documents, and to test Wilenchik's representations above.

## ARGUMENT

### I. THIS COURT SHOULD DENY THE MOTION TO QUASH THE SUBPOENA TO MS. LOFTIS AS MOOT

As we explained to Wilenchik by e-mail before it and Ms. Loftis filed this motion (Dkt. No. 179-1 at 15), we do not plan to depose Ms. Loftis twice. Instead, if Wilenchik will designate Ms. Loftis as its Rule 30(b)(6) deponent, then we are satisfied taking her deposition in that capacity only—since the questions we would ask her in her personal capacity would be the same as those we would ask Wilenchik. And Ms. Loftis's answers should be the same regardless of whether she answers on her own behalf or on behalf of Wilenchik. If there is some reason we need to depose Ms. Loftis in her individual capacity as well—such as if she claims that Wilenchik doesn't have knowledge about a particular topic but she personally does (which wouldn't make sense anyway, since Wilenchik's knowledge should be coextensive with hers)—then we reserve our right to seek further relief from this Court at that time. But as long as Ms. Loftis will be Wilenchik's Rule 30(b)(6) deponent, absent unforeseen circumstances, we agree to depose her only in that capacity. And so this Court should deny the motion to quash the subpoena to Ms. Loftis as moot.

### II. THIS COURT SHOULD DENY THE MOTION TO MODIFY THE SUBPOENA TO WILENCHIK, AND SHOULD ORDER WILENCHIK TO COMPLY WITH IT

In its motion, Wilenchik complains that our service of these subpoenas is "obnoxious," "offensive," "abusing," "harassing," and "completely groundless," and claims that we have "no good-faith basis" for seeking to depose it and that we are doing so solely in the "vain hope of embarrassing or at least vexing" it. Dkt. No. 179 at 3-4. But

this is false. Indeed, while Wilenchik may (understandably) be frustrated with this case, the orders to produce, sanctions orders, and contempt orders that this Court has issued are all the result of Wyo Tech's, its investors and affiliated nonparties', and its counsel's failure to comply with their discovery obligations. *See* Wurtzel Decl. Ex. Ex. A at 45:11-14 (The Court: "I want to make crystal clear that I do find that CWT is the aggrieved party here who rightfully came to the Court for relief. They shouldn't have to wait this long for discovery."); *id.* at 46:3-7 (The Court: "[T]he fact that I'm ruling the way I'm ruling shouldn't in any way suggest that CWT did something wrong here. They're the ones that were entitled to this discovery a long time ago, and I'm just trying to make sure they get it."). Thus, Wilenchik's purported incredulity with these subpoenas is entirely unwarranted. And Wilenchik's claim that we are seeking discovery solely to "embarrass[]" or "vex[]" it is erroneous; to the contrary, every discovery demand we made in this case was made in a good-faith effort to get evidence showing that Dennis Danzik has an interest in the interpleaded funds, and it is Wyo Tech, its investors and affiliated nonparties, and its counsel that have stood in our way.

Further, Wilenchik argues that there is "no rational basis" for us to depose it to "test" the representations it made to this Court at the show-cause hearing, because this Court "has already stated that it 'accepts the representations made by counsel for Wyo Tech that counsel have complied with the subpoena.'" Dkt. No. 179 at 3. But as shown above, this Court stated that it accepted Wilenchik's representations that it had complied with the document subpoena served on it **solely for purposes of ruling on our contempt motion at the show-cause hearing**. *See* Wurtzel Decl. Ex. Ex. A at 44:7-14. This Court did **not** hold that Wilenchik's representations were accepted for **all** purposes, or that the CWT Parties had no right to further challenge them. To the contrary, as explained above, just after stating that it accepted Wilenchik's representations, this Court stated that it

"see[s] a world where **in later stages of this case there might be depositions from folks within the firm about how the accounting system works**." *Id.* at 44:15-18.

Wilenchik also argues that the CWT Parties are "obviously seeking to manufacture discrepancies between W&B's deposition testimony and its prior subpoena responses and representations to the Court **when there are absolutely none**." Dkt. No. 179 at 4. But Wilenchik's claim that, at its deposition, it does not plan to contradict itself is not a replacement for its deposition testimony. And Wilenchik's complaint that we refuse to accept an affidavit from Ms. Loftis or have an informal conversation with her (*id.* at 4, 8) is not a reason to prevent us from taking Wilenchik's deposition either, since we are entitled to get Wilenchik's formal testimony under oath.

Moreover, Wilenchik argues that it is "not willing" to "violate its obligations to maintain client confidences and attorney-client privilege." Dkt. No. 179 at 8. But as explained below, the deposition subpoena we served does not ask it to do this. Wilenchik also argues that it is "not willing" to "disclose its own confidential and proprietary business practices." *Id.* But if Wilenchik's representations during the contempt briefing and the show-cause hearing were true, then Wilenchik has already publicly disclosed all of this information. And if there are "business practices" related to the topics in the deposition subpoena that Wilenchik did not already disclose, then that is all the more reason why a deposition of Wilenchik is necessary.

In any event, though reluctantly, Wilenchik agrees to appear for a Rule 30(b)(6) deposition, and so the sole dispute before this Court is the scope of this deposition.

**Topic Nos. 1 and 2**

These topics seek testimony about the "payments—including date, amount, and source account—made to" Wilenchik by Wyo Tech and Inductance. Dkt. No. 179-1 at 9. Wilenchik agrees to provide testimony on these topics. *See id.* at 17.

**Topic Nos. 3 and 4**

These topics seek testimony about the "client(s) on whose behalf" and the "matter(s) for which" the "payments in Request Nos. 1 and 2 above were made." *Id.* at 9.

Wilenchik objects to these topics on the grounds that they "impermissibly seek discovery of attorney-client privileged communications (assuming any occurred) regarding how certain funds were to be 'earmarked' when they were deposited or, alternatively, such questions would require W&B's representative to speculate about the payor's intentions and thoughts about the use of the funds when they were being deposited"; and also that they are "wholly inappropriate." Dkt. No. 179 at 9. Wilenchik instead proposes that these topics be "limited exclusively to questions about the factual matters of which invoices the payments in Request Nos. 1 and 2 have actually been used to pay." *Id.* But these objections are erroneous, and this limitation is improper.

*First*, the attorney-client privilege does not protect "'information regarding the fee arrangements'" between attorney and client. *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) (citation omitted). Indeed, "fee information generally is not privileged" because "[p]ayment of fees is incidental to the attorney-client relationship, and does not usually involve disclosure of confidential communications arising from the professional relationship." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988); *see also In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994) ("'Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client.'") (citation omitted). Thus, for what clients or matters Wilenchik earmarked Wyo Tech's and Inductance's retainer payments is not privileged—even if Wilenchik had discussions with Wyo Tech and Inductance about what these payments were for—since any discussions about payment are "incidental" to the attorney-

-8-

client relationship, and would not include requests for or provisions of legal advice. *See Tornay*, 840 F.2d at 1426. And in any event, Wilenchik—which has the burden to show that the information sought is privileged—does not even say whether it had any of these discussions with Wyo Tech or Inductance. *See* Dkt. No. 179 at 9. Also, we are not asking Wilenchik to "speculate" about any payor's intention; instead, we plan to ask it which matters and clients **it** earmarked these payments for.

Further, during the extensive litigation regarding the document subpoena we served on Wilenchik—which sought this same information—Wilenchik never claimed that this information was privileged, and argued only that it didn't have documents responsive to these requests. Nor has Wilenchik explained why information concerning how it **earmarked** retainer payments is any more privileged than information concerning how these retainer payments were **ultimately used**—about which it agrees to provide testimony—or how this information would be privileged in a deposition but not in an affidavit or off-the-record phone call with Ms. Loftis—which Wilenchik has also offered.

***Second***, these topics are not "wholly inappropriate." To the contrary, Wilenchik claimed at the show-cause hearing that it does not have any documents showing this information. *See* Wurtzel Decl. Ex. A at 11:2-9, 14-15. Thus, we now seek this information through deposition testimony.

**Topic No. 5**

This topic seeks testimony about Wilenchik's "system and protocols related to the record-keeping, management, and preservation of documents reflecting client payments, charges, and invoices." Dkt. No. 179-1 at 9.

Wilenchik objects to this topic on the ground that it is "aimed solely at 'testing' the representations made by Wyo Tech's counsel that were already accepted by the Court, when there has been no reason shown or given for questioning those representations."

-9-

Dkt. No. 179 at 9. Wilenchik further argues that this topic "should be stricken entirely," or if not stricken entirely, limited solely to questions about "how and where the records produced contain the information sought by the CWT Parties." *Id.* at 10.

But Wilenchik ignores that, as explained above, this Court accepted its representations about its accounting system solely for the purpose of ruling on the contempt motion at the show-cause hearing, and this Court expressly contemplated that the CWT Parties may challenge these representations at a deposition of Wilenchik. *See* Wurtzel Decl. Ex. A at 44:15-24.

Further, while we will take Wilenchik up on its offer to explain the documents it produced, we are also entitled to discover why—and whether it is true that—Wilenchik has no documents showing the clients on whose behalf or the matters for which hundreds of thousands of dollars of retainer payments from Wyo Tech and Inductance were made.

**Topic No. 6**

This topic seeks testimony about Wilenchik's "search for, and collection and review of, documents in response to" the subpoena we served on it and this Court's April 9, 2019 order compelling Wilenchik to produce documents in response to the subpoena. Dkt. No. 179-1 at 9.

Wilenchik objects on the ground that this topic is "aimed solely at re-opening the entire OSC hearing in which any noncompliance with the prior subpoena was **rectified and resolved**." Dkt. No. 179 at 10 (emphasis added). But as explained above, factual disputes about Wilenchik's accounting system and why it did not have documents showing how hundreds of thousands of dollars of retainer payments were earmarked were not dispositively "rectified and resolved."

Wilenchik also argues that we agreed that the $10,000 it paid toward our attorneys' fees in accordance with this Court's sanctions order "'resolve[d] the issue of sanctions

-10-

relating to [the] contempt motion.'" *Id.* (quoting Dkt. No. 179-1 at 21). But we are not seeking to reopen the contempt motion, and as Wilenchik concedes (Dkt. No. 179 at 10), we conditioned this agreement on the absence of evidence that "comes out showing that Wilenchik's (or Beus Gilbert's) representations to the court during the contempt hearing and in the contempt briefing were not true." *See* Dkt. No. 179-1 at 21. And while Wilenchik argues that "[n]o such evidence has 'come out'" (Dkt. No. 179 at 10), the only way this evidence would "come out" would be through the sworn testimony of Wilenchik—likely the only party with personal knowledge about its search for and collection and review of documents. Indeed, this Court relied on Wilenchik's exclusive personal knowledge about its compliance with the subpoena in declining to order it to produce further documents or hold it in contempt. *See* Wurtzel Decl. Ex. A at 44:8-14 (The Court: "[A]t the end of the day there's only one party that has the foundation to make a representation on whether it's complied with the subpoena, and that the Wilenchik firm, because they're the ones who are familiar with their accounting systems and how they track funds internally. They've represented that they've complied with the subpoena. I accept that representation."). And so we should be able to get sworn testimony from Wilenchik on this topic.

## **CONCLUSION**

This Court should deny the motion to quash the subpoena to Ms. Loftis as moot, further deny the motion to modify the subpoena to Wilenchik, and order Wilenchik to produce a Rule 30(b)(6) witness to testify on all six topics in the subpoena to it.

Dated: August 5, 2019
   Phoenix, Arizona

                Respectfully submitted,

                **RYAN RAPP & UNDERWOOD, P.L.C.**

By:   /s/ Henk Taylor (016321)
       J. Henk Taylor (016321)
       3200 N. Central Ave., Suite 1600
       Phoenix, Arizona 85012
       Telephone: (602) 280-1000
       Facsimile: (602) 265-1495
       E-Mail: htaylor@rrulaw.com

**SCHLAM STONE & DOLAN LLP**

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 34407677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting*

**ORIGINAL** e-filed and **COPIES** e-mailed this 5th day of August 2019 as follows:

Dennis I. Wilenchik
Tyler Swenson
Chris Meyers
Chris Feasel
**WILENCHIK & BARTNESS P.C.**
2810 North Third Street
Phoenix, AZ 85004
E-Mail: diw@wb-law.com
E-Mail: tylers@wb-law.com
E-Mail: chrism@wb-law.com
E-Mail: chrisf@wb-law.com

Leo R. Beus
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, AZ 85008
E-Mail: lbeus@beusgilbert.com

*Attorneys for Wyo Tech Investment Group, LLC*

/s/ J. Henk Taylor
J. Henk Taylor