**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

A group of non-party subpoena recipients ("the Subpoenaed Individuals") has filed a motion for recusal. (Doc. 204.) For the following reasons, the motion will be denied.

**BACKGROUND**

This is a civil interpleader action in which two sets of adversaries—(1) Wyo Tech Investment Group LLC ("Wyo Tech") and (2) CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "Judgment Creditors")—are fighting over $546,282.55. The procedural and factual background is summarized in earlier orders (Docs. 94, 119), so only a brief recap is necessary here.

In 2016, the Judgment Creditors obtained a $7 million judgment against Dennis Danzik in New York state court.

In October 2017, the Judgment Creditors attempted to collect on a portion of the outstanding judgment by freezing a bank account at Wells Fargo, which had a balance of $546,282.55. Notably, this account wasn't held in Danzik's name. Instead, it was held in the name of Wyo Tech. To freeze the account, the Judgment Creditors' attorneys utilized

an unusual procedural tool known as a "restraining notice," which is governed by section 5222 of the New York Civil Practice Law and Rules.

Wyo Tech protested when it learned its account had been frozen, arguing that it had no connection with Danzik and that Wells Fargo should immediately release the frozen funds. In response, Wells Fargo filed an interpleader action in this court. Functionally, this meant that Wells Fargo deposited the disputed funds into the Court's bank account so the Court could referee the fight between Wyo Tech and the Judgment Creditors over who has the superior entitlement to the funds.

The interpleader action was filed in November 2017 and initially assigned to a different judge. (Doc. 1.) In October 2018, it was reassigned to the undersigned judge. (Doc. 93.) This reassignment was part of the initial wave of case reassignments triggered by the undersigned judge's appointment to the bench.

One of the key disputed issues in this case has been whether the Judgment Creditors should be entitled to conduct discovery concerning their theory that Danzik secretly controls Wyo Tech or otherwise has an interest in Wyo Tech's funds. In a lengthy order issued in April 2019, the Court concluded that the Judgment Creditors should be entitled to pursue such discovery. (Doc. 119.)

The litigation since this discovery ruling has been quite contentious. For example:

▪ On May 15, 2019, the Judgment Creditors filed an amended motion to hold Wyo Tech's counsel in civil contempt for, *inter alia*, failing to respond to certain subpoenas. (Doc. 135.) On May 29, 2019, following a hearing, the Court declined to make a contempt finding. (Doc. 155.)

▪ On June 19, 2019, the Judgment Creditors filed another motion seeking civil contempt sanctions. (Doc. 159.) This motion was directed at a group of seven non-party subpoena recipients (different from the Subpoenaed Individuals) who had failed to respond to subpoenas requesting financial and other records. (*Id.*) On June 27, 2019, the Court held a hearing on this motion, which none of the subpoena recipients chose to attend. (Doc. 166.) Accordingly, the Court issued an order holding the seven non-parties in civil

contempt and imposing daily fines until the documents were produced. (Doc. 167.)

▪ On August 2, 2019, the Judgment Creditors filed a motion in which they acknowledged that six of the seven non-parties had produced the subpoenaed documents following the issuance of the contempt order but nevertheless requested that the Court issue an order compelling those non-parties' immediate imprisonment. (Doc. 183.) On August 6, 2019, the Court denied this motion in relevant part and refused to order anybody's imprisonment. (Doc. 186.) The Court did, however, set a further show-cause hearing concerning one of the non-parties—a company called Danzik Applied Sciences, LLC ("DAS"), whose only member is Danzik's wife, Elizabeth Danzik—that had been held in civil contempt in the June 27, 2019 order because there were unresolved questions concerning whether DAS had subsequently complied with the subpoena. (*Id.*)

**DISCUSSION**

The Subpoenaed Individuals are a group of additional non-parties who have received subpoenas from the Judgment Creditors. As an attachment to their recusal motion, they have filed a motion to quash those subpoenas (Doc. 204-2).

The Subpoenaed Individuals first seek recusal because (1) the undersigned judge "reportedly was and is a close friend of" an attorney who currently works at the U.S. Attorney's Office ("USAO"), (2) that attorney's brother is a partner at a private law firm in Phoenix, and (3) an attorney from that law firm (but not the brother of the friend) is serving as local counsel for the Judgment Creditors in this case. (Doc. 204 at 1-4.)

This argument lacks merit. Although it may be appropriate for a judge to consider recusing from a case in which one of the attorneys is a close personal friend,[1] the Subpoenaed Individuals have not identified any authority suggesting that recusal is necessary when a judge's friend's brother's law partner is serving as local counsel in a case (or when the judge's friend's brother may have an indirect financial interest in the case).

---

[1] *See, e.g., United States v. Murphy*, 768 F.2d 1518, 1537-38 (7th Cir. 1985) (noting that "a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer" but holding that recusal should have occurred in particular case because the judge and prosecutor were "the best of friends" and "had secret plans to take a joint vacation immediately after trial").

- 3 -

Indeed, such a rule would presumably mean that a judge in a small legal community would never be able to hear a case. *United States v. Bayard*, 2010 WL 560666, *1 (D.N.H. 2010) ("As is generally the case in small states, judges and lawyers are familiar with one another. . . . No objectively reasonable person, fully informed of the relevant facts, would have reason to doubt my impartiality in this case.").

Second, the Subpoenaed Individuals contend that recusal is necessary under 28 U.S.C. § 455(b)(3) because Danzik was the subject of a criminal investigation by the USAO "[a]t the time Judge Lanza was heading up the criminal division of the USAO-Arizona." (Doc. 204 at 2.) The Subpoenaed Individuals further assert that "[t]he law firm of Wilenchik & Bartness . . . represented Dennis Danzik with respect to the USAO-Arizona's investigation of him." (*Id.* at 3.) Thus, the Subpoenaed Individuals argue that "Judge Lanza was clearly involved, either personally or due to his supervisory responsibilities, with the Danzik investigation." (*Id.* at 4-5.) The Subpoenaed Individuals also contend the Court's previous "rulings on various discovery issues, including its imposition of sanctions on other nonparty investors who were previously subpoenaed, . . . might well appear to a reasonable onlooker [to be proof] that Judge Lanza has been swayed by his prior knowledge of Dennis Danzik." (*Id.* at 3-4.)

These arguments are unavailing. As a threshold matter, no reasonable observer could view the discovery rulings in this case as proof of bias against Danzik. As noted, the Court rejected the Judgment Creditors' request to hold Wyo Tech's counsel in civil contempt, rejected the Judgment Creditors' request for an order of imprisonment, and only held the other group of non-parties in civil contempt after they inexplicably chose not to submit any briefs defending their conduct or show up for the show-cause hearing. *Cf. In re Apex Oil Co.*, 981 F.2d 302, 304 (8th Cir. 1992) (a reasonable person would not question a judge's impartiality when a judge rules contrary to the alleged bias).

On the merits, the plain language of section 455(b)(3) makes clear that recusal is necessary only when a judge, while in prior government practice, participated in the actual "proceeding" or "particular case in controversy" that is now pending before that judge. *Id.*

("[The judge] shall . . . disqualify himself . . . [w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."). This means that a judge who was once an Assistant U.S. Attorney ("AUSA") cannot, after appointment to the bench, preside over a criminal case that he or she personally investigated or prosecuted while at the USAO. *See, e.g., United States v. Smith*, 775 F.3d 879 (7th Cir. 2016). But this isn't a criminal case—it's a civil interpleader action, Danzik isn't even a party, and the narrow issue to be resolved is whether the Judgment Creditors are entitled to funds that had been deposited in Wyo Tech's account. Section 455(b)(3) doesn't apply in this circumstance. *United States v. Lara-Unzueta*, 735 F.3d 954, 959 (7th Cir. 2013) ("*The proceeding means the current proceeding*. This interpretation is dictated by the text of the statute.") (emphasis in original).

This isn't a mere technical distinction. The Court isn't being asked in this case to decide whether Danzik actually engaged in any criminal or other misconduct. To the contrary, the Judgment Creditors already have a $7 million judgment against Danzik that was issued by a New York state court[2]—a judgment that is entitled to respect under the Full Faith and Credit Clause of the U.S. Constitution—and the narrow issue to be decided is whether Danzik had an interest in the funds held in Wyo Tech's bank account. The Subpoenaed Individuals have not alleged that the prior criminal investigation of Danzik by the USAO had anything do to with Danzik's relationship (if any) with Wyo Tech.[3] This

---

[2] The undersigned judge is not blind to the fact that the judge in the New York state matter held Danzik in civil and criminal contempt and concluded that Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant" who "lie[d]," "deliberately did not disclose" relevant records, "coerced [a witness] into submitting false affidavits," and "perjured himself before a Canadian bankruptcy court." (Doc. 89-3 at 9-10, 12, 13.) However, the undersigned judge learned that information through participation in this case, and "[k]nowledge obtained in the course of earlier participation in the same case does not require that a judge recuse himself." *United States v. Winston*, 613 F.2d 221, 223 (9th Cir. 1980).

[3] Specifically, the Subpoenaed Individuals contend the USAO was "investigating Dennis Danzik for various alleged crimes related to tax credits received by RDX which [the Judgment Creditors] claim[] should have been paid to [them]—even though the entire premise and basis for seeking those tax credits rested on fraudulent representations and actions by [the Judgment Creditors] related to a bogus biodiesel production facility it deceived RDX into purchasing from it." (Doc. 204 at 2-3.)

further undermines their claim for recusal. *Cf. United States v. Outler*, 659 F.2d 1306, 1312-13 (5th Cir. 1981) (magistrate judge not required to recuse when presented with an application for a search warrant concerning the defendant's medical practice, even though the magistrate judge had prosecuted the defendant for a different medical-related offense two years earlier while serving as an AUSA, because recusal is required "only when the two proceedings have a common, single transaction or event at issue").

The undersigned judge will further note that he has no recollection of discussing or participating in any criminal investigation of Danzik while at the USAO.[4] Indeed, had the name "Danzik" rung a bell at the time the undersigned judge inherited this case, he would have disclosed that potential connection to the parties so they could make their own assessment of whether to file recusal motions. On that note, it is telling that the law firm representing Wyo Tech in this matter (Wilenchik & Bartness), which is alleged to have served as Danzik's counsel during the criminal investigation and which has characterized "[t]he instant case [as] one of several, approximately seven (7) litigation cases relating to Mr. Dennis Danzik . . . in some form or another, which [Wilenchik & Bartness] is handling" (Doc. 140 at 6), hasn't raised any recusal-related concerns during the last year of litigation.[5]

---

[4] To be clear, the undersigned judge does not know whether such an investigation occurred—the Court simply accepts the Subpoenaed Parties' representation that Danzik was the subject of an investigation.

[5] The Court further notes that, had Wyo Tech attempted to file a recusal motion at this late juncture of the case, such a motion would have been untimely. "It is well established in this circuit that a recusal motion must be made in a timely fashion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992). Such a requirement exists to lessen the "risk that litigants would use recusal motions for strategic purposes." *Id.* (quotation omitted). *See also United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997) ("[A] party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention."). Here, because the only entities formally seeking recusal are the Subpoenaed Individuals (who had no prior involvement in this case), their motion will not be denied on timeliness grounds. That said, the motion is predicated on information that likely came from Wyo Tech and Danzik (and that Wyo Tech's counsel, Wilenchik & Bartness, must have known at the time this case was reassigned to the undersigned judge). The Subpoenaed Individuals would have no other way of knowing about non-public criminal investigations that didn't result in charges. Further, the proposed order granting the recusal motion was emailed to the Court's chambers email address by Wyo Tech's counsel, not by the Subpoenaed Individuals' counsel. *See* Exhibit A. Such coordination raises the possibility that Wyo Tech is using the Subpoenaed Individuals as a stalking horse to evade the time limits on recusal motions.

- 6 -

In any event, from January 2015 to September 2018, the undersigned judge served in the role of Chief/Executive AUSA at the USAO (and not "head of the entire criminal division," as the Subpoenaed Individuals state in their motion). This is not a position that typically involves day-to-day supervision of individual criminal investigations. Such investigations are conducted by line AUSAs, who in turn report to section chiefs, who report to the criminal chief, who in turn is supervised by the Chief/Executive AUSA. This is relevant because "an AUSA who occupied a supervisory position in the U.S. Attorney's Office during the prosecution is not later required to recuse herself solely on that basis." *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Rather, "§ 455(b)(3) requires recusal only when the supervisor actually participated in a case." *United States v. Champlin*, 388 F. Supp. 2d 1177, 1181 (D. Haw. 2005).[6]

The next, and ostensibly related, reason the Subpoenaed Individuals seek recusal under section 455(b)(3) is that "[a]s part of his efforts to exonerate himself and explain his situation, Dennis Danzik reached out to Congressman David Schweikert to see if he or someone from his office could introduce him to someone 'at the right level' within the USAO-Arizona. Congressman Schweikert's Chief of Staff . . . contacted a Mr. Lopez at the USAO-Arizona to make that introduction and, as a result, Dennis Danzik was ultimately able to speak directly to Mr. (now Judge) Lanza." (Doc. 204 at 3.)

Before receiving the recusal motion, the undersigned judge had no recollection of ever having a phone conversation with Danzik. (Again, had the name "Danzik" rung a bell at the outset of this case, the undersigned judge would have informed the parties.) However, the email attached to the motion—a September 14, 2015 email from a

---

[6] *See generally Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995) ("[Section] 455(b)(3) does not mandate recusal unless the former government attorney has actually participated in some fashion in the proceedings. Mangum does not allege specific participation by Judge Wingate in his guilty plea proceedings, but rather, he asserts that Judge Wingate was a member of the prosecution staff. Such a claim is not sufficient to mandate recusal.") (footnote omitted); *Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) ("[T]his *per se* [disqualification] rule does not extend to disqualify a supervisory AUSA who had no involvement with a case brought in his district."); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988) (same).

congressional staffer to the USAO's public affairs officer (but not the undersigned judge), with Danzik cc'd (Doc. 204-1 at 1)—does trigger some vague memories. Specifically, the undersigned judge now recalls that, after this email was forwarded to him, a single phone conversation with Danzik ensued. The undersigned judge does not, however, recall this conversation as involving Danzik trying to explain why he shouldn't be charged with crimes (which is how the Subpoenaed Individuals characterize it in their motion). It is inconceivable that the target of a criminal investigation, let alone a sophisticated white-collar target represented by Wilenchik & Bartness, would affirmatively call the USAO, without an immunity agreement in place, to discuss the merits of a pending investigation. Instead, the undersigned judge's vague recollection is that Danzik called because he wanted the USAO to pursue an investigation of crimes allegedly committed by others.

This was not a noteworthy conversation. Private individuals routinely call the USAO in the hope of initiating an investigation of others. The usual practice (at least in Arizona during the undersigned judge's tenure) was to route such calls to the Chief/Executive AUSA. As a result, the undersigned judge fielded dozens of similar inquiries during his four years in that position. Almost invariably, the response was the same—the caller should contact the FBI or some other law enforcement agency because the USAO is a prosecutor's office, not an investigatory office. This was, as far as the undersigned judge can recall, the sum and substance of the 2015 conversation with Danzik—a single brief (and unmemorable) phone call, unconnected to Wyo Tech, that resulted in nothing. Such a phone call surely cannot require recusal under 28 U.S.C. § 455(b)(3) in an unrelated civil lawsuit four years later.

Finally, although the only statutory provision cited in the Subpoenaed Individuals' motion is § 455(b)(3), the motion also asserts that recusal is warranted because "what matters is not the reality of bias or prejudice but its appearance." (Doc. 204 at 5.) This appears to be a request for recusal under 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.*

The test under § 455(a) is whether "a reasonable person with knowledge of all the facts" would conclude the judge's impartiality might reasonably be questioned. *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (quotation omitted). "The reasonable person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *Id.* (quotation omitted). "The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id.* (quotation omitted).

Here, the reasons identified in the Subpoenaed Individuals' motion—(1) issuing discovery rulings with which they apparently disagree, (2) being friends with a lawyer who has a brother who has a law partner who is serving as local counsel in this case, (3) working for the USAO at the same time that a different AUSA, separated by three levels of supervisors, was pursuing an unrelated criminal investigation involving a non-party, and (4) having a phone call four years ago with a non-party about an unrelated matter—would not cause a reasonable person to question the undersigned judge's impartiality. *See also United States v. Carey*, 929 F.3d 1092, 1104-06 (9th Cir. 2019) (recusal not required under § 455(a), where judge relied on extrajudicial materials in reaching decision, because "courts have regularly held that outside knowledge does not on its own prejudice judicial proceedings"); *Champlin*, 388 F. Supp. 2d at 1183 (recusal not required under § 455(a) when proffered reasons all relate to prior government service and are insufficient to require recusal under § 455(b)(3)).

Accordingly, **IT IS ORDERED** that:

(1) The Subpoenaed Individuals' motion for recusal (Doc. 204) is **denied**; and

(2) The Judgment Creditors' response to the Subpoenaed Individuals' motion to quash (Doc. 204-2) is due within 14 days of today's date.

Dated this 27th day of August, 2019.

Dominic W. Lanza
United States District Judge

**Exhibit A**

 2:17-cv-04140 - Wyo Tech adv. Wells Fargo
Hilary Myers
to:
lanza_chambers@azd.uscourts.gov
08/23/2019 10:30 AM
Cc:
Tyler Swensen, "Thomas A. Zlaket, P.L.L.C.", Carol Davis, Chris Feasel, Chris Meyers, Victoria Stevens
Hide Details
From: Hilary Myers <HilaryM@wb-law.com> Sort List...
To: "lanza_chambers@azd.uscourts.gov" <lanza_chambers@azd.uscourts.gov>
Cc: Tyler Swensen <TylerS@wb-law.com>, "Thomas A. Zlaket, P.L.L.C." <tom@zlaketlaw.com>, Carol Davis <carol@zlaketlaw.com>, Chris Feasel <chrisf@wb-law.com>, Chris Meyers <ChrisM@wb-law.com>, Victoria Stevens <VictoriaS@wb-law.com>
History: This message has been forwarded.

2 Attachments

 
08-22-19 Proposed Form of Order re Recusal.docx   Wyo tech Motion to Quash v4-1.docx

Please see the attached proposed orders in word format that correlate with DKT #204.

Thank you.


www.wb-law.com

Hilary Myers
Legal Assistant
HilaryM@wb-law.com

The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
P 602-606-2810 | F 602-606-2811

---------------------------

ATTORNEY/CLIENT COMMUNICATION

The information transmitted by this e-mail is intended only for the addressee and may contain confidential and/or privileged material. Any interception, review, retransmission, dissemination or other use of this information by persons or entities other than the intended recipient is prohibited by law and may subject them to criminal or civil liability. If you received this communication in error, please contact us immediately at (602) 606-2810, and delete the communication from any computer or network system.

---------------------------