**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

Pending before the Court is a motion to quash/modify filed by non-parties Wilenchik & Bartness, P.C. ("the Wilenchik Firm") and Lisa Loftis. (Doc. 179.) The motion is directed at a pair of Rule 45 deposition subpoenas that were issued by CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "Judgment Creditors"), who have filed an opposition to the motion. (Doc. 184.)[1] As explained below, the motion will be granted in part and denied in part.

## BACKGROUND

I. <u>Case Background</u>

This is a civil interpleader action in which two sets of adversaries—(1) Wyo Tech Investment Group LLC ("Wyo Tech") and (2) the Judgment Creditors—are fighting over $546,282.55.

In 2016, the Judgment Creditors obtained a $7 million judgment against Dennis

---
[1] The Judgment Creditors requested oral argument, but that request will be denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

Danzik in New York state court.

In October 2017, the Judgment Creditors attempted to collect on a portion of the outstanding judgment by freezing a bank account at Wells Fargo, which had a balance of $546,282.55. Notably, this account wasn't held in Danzik's name. Instead, it was held in the name of Wyo Tech. To freeze the account, the Judgment Creditors' attorneys utilized an unusual procedural tool known as a "restraining notice," which is governed by section 5222 of the New York Civil Practice Law and Rules.

Wyo Tech protested when it learned its account had been frozen, arguing that it had no connection with Danzik and that Wells Fargo should immediately release the frozen funds. In response, Wells Fargo filed an interpleader action in this court. Functionally, this meant that Wells Fargo deposited the disputed funds into the Court's bank account so the Court could referee the fight between Wyo Tech and the Judgment Creditors over who has the superior entitlement to the funds.

II.  The Ruling That The Judgment Creditors Are Entitled To Conduct Discovery Concerning The Legal Fees Remitted To The Wilenchik Firm By Wyo Tech

One of the key disputed issues in this case has been whether the Judgment Creditors should be entitled to conduct discovery concerning their theory that Danzik secretly controls Wyo Tech or otherwise has an interest in Wyo Tech's funds. In a lengthy order issued in April 2019, the Court concluded that the Judgment Creditors should be entitled to pursue such discovery. (Doc. 119.)

In that order, the Court also addressed a related discovery dispute, which concerned a Rule 45 document subpoena the Judgment Creditors had issued to the Wilenchik Firm in February 2019. (*Id.* at 11-13.) That subpoena sought all "documents sufficient to show all payments made to Wilenchik by Wyo Tech and by third party Inductance Energy Corporation ('Inductance') and the client(s) on whose behalf and the matter for which the payments were made." (*Id.* at 11.) The Judgment Creditors argued the subpoena was appropriate because they had a good-faith basis to believe Wyo Tech and Inductance had been paying the Wilenchik Firm to represent Danzik in various legal matters and "the more

money Wyo Tech paid for Danzik's and his cronies' legal fees—especially in matters in which Wyo Tech has no interest—the more probable it is that Danzik has an interest in the disputed funds." (*Id.*, citation omitted.) The Wilenchik Firm disagreed, arguing the subpoena should be quashed because, *inter alia*, the payment records are irrelevant. (*Id.*) The Court rejected the Wilenchik Firm's relevance argument and ordered it to comply, reasoning as follows:

> To be sure, the Court agrees with Wilenchik that whether Wyo Tech paid Danzik's attorneys' fees does not *conclusively* establish Danzik has an interest in the interpleaded funds. But the standard for relevance does not require that the evidence sought conclusively prove any issue in the case. If Wyo Tech paid Danzik's attorneys' fees, that at least makes it more likely Danzik had an interest in Wyo Tech's funds. [Citing New York cases.] Additionally, because some of Wyo Tech's funds were transferred to Inductance for the 'opening' of an Inductance account immediately before the restraining notice was issued on the Wyo Tech account, whether Inductance paid Danzik's legal bills also bears on whether Danzik has an interest in the interpleaded funds.

(*Id.* at 13, citations omitted.)

III. The Wilenchik Firm's Belated Production Of The Subpoenaed Payment Records

A. **The Motion Papers**

This was not, unfortunately, the end of the dispute over the payment records. On May 13, 2019, the Judgment Creditors filed a motion for an order to show cause ("OSC") why the Wilenchik Firm should not be held in civil contempt for failing to comply with the subpoena. (Doc. 131.) This motion stated that the Wilenchik Firm had simply ignored the April 26, 2019 production deadline that was set forth in the Court's earlier order and not produced any responsive records. (*Id.*)

On May 15, 2019, the Wilenchik Firm filed a response to the OSC motion. (Doc. 134.) The Wilenchik Firm asserted that it mistakenly thought it had sent responses to the subpoena to the Judgment Creditors on April 26, 2019 and only came to realize, after receiving the OSC Motion, that the responses had never been delivered due to a miscommunication. (*Id.* at 2, 4.) The Wilenchik Firm also asserted that it supplemented its responses by producing responsive documents after corresponding with the Judgment

- 3 -

Creditors' counsel after the OSC motion was filed. (*Id.* at 4-5.)

Later that day, the Judgment Creditors filed an amended motion for an OSC. (Doc. 135.) In this motion, the Judgment Creditors asserted that the belatedly-produced documents were still insufficient because, among other things, (1) "Wilenchik's production of 14 pages . . . doesn't show which payments were for which clients or which matter, nor do they show the 'account source' of the payments, all of which were required by the subpoena"; and (2) "Wilenchik continues to withhold documents related to other payments we know it got from Wyo Tech and Inductance. Indeed, we submit with this motion several checks from Wyo Tech and Inductance to Wilenchik showing payments that Wilenchik did not disclose in its production." (*Id.* at 3-4.)

On May 16, 2019, the Court issued an order setting a hearing on the Judgment Creditors' OSC request. (Doc. 136.) In this order, the Court expressed "significant concerns about discovery conduct of Wilenchik . . . . These concerns have nothing to do with the timing of the discovery responses—like the Judgment Creditors, the Court accepts the [Wilenchik Firm's] representation that [it] mistakenly believed [its] discovery responses had been sent on April 26, 2019. Instead, these concerns flow from the substance of the discovery responses and the seeming inaccuracy of certain statements contained in the [Wilenchik Firm's] brief to the Court." (*Id.* at 4.) The hearing was set for May 29, 2019. (Doc. 138.)

On May 22, 2019, the Wilenchik Firm submitted a response brief. (Doc. 140.) In this brief, the Wilenchik Firm stated that it "wish[ed] to apologize sincerely to both the Court and opposing counsel for this incident, and fully acknowledge that mistakes were made here regarding the Subpoenas responses. We cannot apologize enough. Indeed, we concede we were wrong and will not make any excuses. However, we wish to make clear to the Court that nothing here was done intentionally or to be in any way contemptuous of this Court." (*Id.* at 2.) The Wilenchik Firm further represented that, following its receipt of the Judgment Creditors' amended motion, it had "produced 325 pages of responsive documents," which was far more than the 14 pages it had previously produced. (*Id.*) The

Wilenchik Firm concluded by asking the Court to decline to hold it in civil contempt because its "acknowledged negligent mishandling" of the situation "was caused by an unfortunate combination of events at [the Wilenchik Firm] over the past few months—in other words a 'perfect storm' or 'comedy of errors' (meant in the sense that is without even the slightest hint of humor)." (*Id.* at 4.)

On May 28, 2019, the Judgment Creditors filed a reply in support of their OSC motion. (Doc. 150.) In it, they disputed the Wilenchik Firm's representation that all responsive documents had been produced, arguing that (1) "for at least four of the payments [the Wilenchik Firm] identified as coming from Inductance or Wyo Tech, [the Wilenchik Firm] has failed to produce documents showing the source account from which these payments were made," (2) "for at least three of the payments [the Wilenchik Firm] identified as coming from Inductance or Wyo Tech, [the Wilenchik Firm] has failed to produce documents showing the clients on whose behalf or the matters for which these payments were made," and (3) the Wilenchik Firm's "handwritten ledgers," which "show[] hundreds of thousands of dollars in 'Danzik Retainer' payments," were not accompanied by "source-account, client, or matter information—and we cannot even tell who made these payments to [the Wilenchik Firm]." (*Id.* at 2-3.) The Judgment Creditors also argued that the Wilenchik Firm hadn't produced "a December 13, 2018 check from Inductance to [the Wilenchik Firm] for $100,000," which the Judgment Creditors only happened to know about through other sources. (*Id.* at 4-5.)

B.     **The Contempt Hearing**

On May 29, 2019, the Court held the OSC hearing. (Doc. 157.) During this hearing, the Wilenchik Firm argued it shouldn't be held in civil contempt because its earlier production failures and misstatements were caused by its lawyer's misunderstanding of the firm's "particular system of bookkeeping, which [counsel] didn't understand until [he] spoke to Miss Loftis, who handles all those matters and all the banking." (*Id.* at 10-11.) The Wilenchik Firm further represented "we have a situation where we have third parties, Wyo Tech and Inductance, depositing funds into our trust account for use on a variety of

cases. So those funds are not tracked at that stage by matter, they're tracked by payor. Which is, you know, the money came from Inductance and/or Wyo Tech, or it came from Danzik Applied Sciences." (*Id.* at 11.) The Wilenchik Firm also represented that "[w]e've pulled every shred of every paper that could possibly be responsive and produced it. To date we've produced 325 pages of documents, . . . [a]nd let me be clear, that's all we have, that's all we got." (*Id.* at 20.)

In response to this assertion, the Court posed some questions to the Wilenchik Firm concerning the Judgment Creditors' claim that some responsive records still had not been produced. (*Id.* at 22.) The Wilenchik Firm replied by stating it was still "working on getting" copies of certain materials and "to get that, we're going to have to pull the checks, which we've instructed our bookkeeper to do, to just flat out get it." (*Id.* at 23.)

Next, the Judgment Creditors addressed the Court. During this portion of the hearing, the Court asked the Judgment Creditors to identify, with specificity, which documents they believed were still outstanding. In response, the Judgment Creditors stated: "Obviously when they got a check, . . . it didn't just go into the pot of all escrow funds . . . without any further tracking. . . . [T]here has to be some type of tracking that shows this $100,000 check from Wyo Tech or from Inductance just came in, and this will be applied to any one of these, quote, Wyo Tech or, quote, Danzik matters. That's all I'm looking for. A document that shows which matters and which clients it would be permissible to use that retainer check for. They haven't produced something like that." (*Id.* at 30.) Later, the Judgment Creditors elaborated: "I just can't understand how a law firm could accept payments into its escrow account without having a single piece of paper or document that says, this $100,000 escrow payment is to be used for this client or for these ten clients or these ten matters." (*Id.* at 32-33.)

Following this exchange, the Court again posed some questions to the Wilenchik Firm. Among other things, the Court stated that it "tend[s] to share [the Judgment Creditors'] skepticism of the idea that a $100,000 retainer check could come into your firm and there could be zero paperwork anywhere showing who gets credit for that or what

client matters it subsequently got applied to when you were working on it." (*Id.* at 39.) In response, the Wilenchik Firm's lawyer stated:

> I had my own skepticism about that until *I had it explained to me by Miss Loftis. And she does keep track of all this*. . . . I even asked her, I said, okay, so what happens if a client calls up and says, how much money do I have left in my retainer account in your trust account? And the way she does that is to go and take the documents that we supplied, and to subtract amounts paid to other slips of paper or ledgers that she has that shows money coming in, and says, okay, based on these two figures this is what you've got left. She literally goes through that process. *It's not written down anywhere*.

(*Id.* at 39, emphases added.) The Wilenchik Firm further asserted that "as much as [the Judgment Creditors don't] accept that, the offer was made by Mr. Wilenchik to . . . have Ms. Loftis speak to [the Judgment Creditors] directly, and she can explain it to [them] and answer [their] questions." (*Id.*) Later, the Wilenchik Firm reiterated: "[T]here's nothing more we can say, other than we've given [the Judgment Creditors] all the documentation that's out there. And if [they want] to depose Miss Loftis and ask her those questions, fine." (*Id.* at 39-40.)

Based on these representations, the Court ended the hearing by (1) declining to hold the Wilenchik Firm in civil contempt (*id.* at 41), (2) ordering the Wilenchik Firm to produce any outstanding bank records within 30 days (*id.* at 42), and (3) declining—based on the Wilenchik Firm's representation that no such records existed—to require the Wilenchik Firm to produce any internal accounting records showing how retainer payments had been allocated to individual client matters (*id.* at 44). However, with respect to this final category of information, the Court clarified that "I see a world where in later stages of this case there might be depositions from folks within the firm about how the accounting system works." (*Id.* at 44.)

IV. <u>The Rule 45 Deposition Subpoenas</u>

On July 8, 2019, the Judgment Creditors issued a Rule 45 deposition subpoena to the Wilenchik Firm (Doc. 179-1 at 6-9) and a separate Rule 45 deposition subpoena to Lisa Loftis, the Wilenchik Firm's accountant and bookkeeper (Doc. 179-1 at 2-4.) The

- 7 -

subpoena to the Wilenchik Firm identifies the following six subjects as the "matters for examination":

1. "The payments—including date, amount, and source account—made to You by Wyo Tech."
2. "The payments—including date, amount, and source account—made to You by Inductance."
3. "The client(s) on whose behalf the payments in Request Nos. 1 and 2 above were made."
4. "The matter(s) for which the payments in Request Nos. 1 and 2 above were made."
5. "Your system and protocols related to the record-keeping, management, and preservation of documents reflecting client payments, charges, and invoices."
6. "Your search for, and collection and review of, documents in response to the (i) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated February 9, 2019, served on You in this action; and (ii) order of the court in this action, dated April 9, 2019 (Dkt. No. 119 at 19)."

(Doc. 179-1 at 9.)

## ANALYSIS

I. <u>The Parties' Arguments</u>

The motion to quash/modify (Doc. 179) can be divided into two parts. As for the subpoena to Ms. Loftis in her individual capacity, she argues it should be quashed because it is "completely redundant of the subpoena served on the Firm and is therefore totally unnecessary, disproportionate to the needs of the case, and constitutes pure harassment and an unwarranted intrusion on [her] personally." (*Id.* at 1-2, 5-7.) As for the other subpoena, the Wilenchik Firm "moves only for a modification of the subpoena to strictly limit the scope of the questioning." (*Id.* at 2, 7-11.)

In general, the Wilenchik Firm argues its subpoena is objectionable because any deposition would "run the extreme risk of imposing on [its] obligation to maintain client confidences and privileges" and also "would impinge on the confidential, proprietary nature of [its] business operations, bookkeeping and accounting methods." (*Id.* at 4.) As for the six categories of information identified in the deposition notice, the Wilenchik Firm doesn't challenge the first or second categories. (*Id.* at 9.) With respect to the third and fourth categories (the identity of the "clients" and "matters" that were to receive credit for the payments made by Wyo Tech and Inductance), the Wilenchik Firm argues such information constitutes "attorney-client privileged" information and that answering "such questions would require [its] representative to speculate about the payor's intentions and thoughts about the use of the funds when they were being deposited." (*Id.*) Thus, the Wilenchik Firm argues these requests should "be modified and limited exclusively to questions about the factual matters of which invoices the payments in Request Nos. 1 and 2 have *actually* been used to pay." (*Id.*, emphasis added.) With respect to the fifth category (the Wilenchik Firm's system and protocols for tracking client payments), the Wilenchik Firm argues it "is designed exclusively to harass, vex and annoy [the Wilenchik Firm] and to implicitly (and unethically) accuse its attorneys of lack of candor to the tribunal without any valid basis whatsoever." (*Id.* at 9-10.) Finally, with respect to the sixth category (how the Wilenchik Firm searched for responsive documents in response to the earlier document subpoena and the April 2019 order), the Wilenchik Firm argues it "is aimed solely at re-opening the entire OSC hearing in which any noncompliance with the prior subpoena was rectified and resolved." (*Id.* at 10.)

In their response (Doc. 184), the Judgment Creditors argue the motion to quash the subpoena to Ms. Loftis is "moot" because they've told the Wilenchik Firm they'll forego such a deposition so long as Ms. Loftis is designated as the Rule 30(b)(6) representative for purposes of the firm's deposition. (*Id.* at 1, 5.) As for the other subpoena, the Judgment Creditors generally argue that although the documents previously produced by the Wilenchik Firm "show[] how payments from Wyo Tech and Inductance were ultimately

applied, as it stands today, we don't know the clients on whose behalf or the matters for which hundreds of thousands of dollars from Wyo Tech and Inductance were initially made and earmarked." (*Id.* at 4.) The Judgment Creditors argue such information "is significant, because if some of these payments were initially earmarked for Dennis Danzik, his wife, his company, or his cronies, that makes it more probable that Mr. Danzik has an interest in the interpleaded funds." (*Id.*) With respect to the third and fourth categories, the Judgment Creditors argue the privilege objection is meritless because fee information isn't considered privileged under Ninth Circuit law (*id.* at 8-9) and the "proprietary business practices" objection is meritless because the Wilenchik Firm "already publicly disclosed all of this information" during the contempt hearing (*id.* at 7). With respect to the fifth category, the Judgment Creditors argue that the parties and Court specifically contemplated, during the contempt hearing, that the Wilenchik Firm might later be required to explain in a deposition how its accounting system works. (*Id.* at 9-10.) And with respect to the sixth category, the Judgment Creditors argue they "should be able to get sworn testimony from [the Wilenchik Firm]" to verify the oral representations that were made during the contempt hearing. (*Id.* at 11.)

In the reply (Doc. 192), Loftis argues her request to quash isn't moot because the Judgment Creditors still haven't withdrawn her subpoena. (*Id.* at 3.)[2] As for the other subpoena, the Wilenchik Firm generally argues that the information being sought is irrelevant and disproportionate. (*Id.* at 3-4.) More specifically, the Wilenchik Firm argues categories three and four are improper because the information being sought "is attorney-client privileged communication." (*Id.* at 4-5.) The Wilenchik Firm does not, however, provide any legal citations in support of this claim. (*Id.*) As for the fifth and sixth categories, the Wilenchik Firm reiterates its earlier argument that this information "has absolutely zero relevance to any issue in this case and is being sought solely to harass and

---

[2] Loftis also argues the Court should "award . . . her attorneys' fees incurred in opposing" the subpoena. (Doc. 192 at 3.) This request will be rejected. First, it is hornbook law that arguments raised for the first time in a reply are waived. Second, fees would not be appropriate here because the Court is granting the motion to quash/modify only in part.

vex [the Wilenchik Firm] apparently in the hopes of embarrassing it by showing that its system of tracking funds [in] its trust account is somehow substandard or deficient." (*Id.* at 4.)

II. <u>Discussion</u>

As for the subpoena directed to Ms. Loftis, the Court agrees it should be quashed. Indeed, the Judgment Creditors seem to acknowledge that subpoena is unnecessary in light of the Wilenchik Firm's agreement to have Ms. Loftis serve as its representative during its deposition. This acknowledgement, however, doesn't render the motion to quash "moot" because the subpoena to Ms. Loftis remains outstanding and the Judgment Creditors haven't formally withdrawn it. Thus, the motion to quash that subpoena will be granted.

As for the other subpoena, the Wilenchik Firm hasn't moved to quash it and doesn't object to the first and second categories of information specified in the deposition notice. Thus, the narrow issue for the Court to resolve is whether the third, fourth, fifth, and sixth categories should be eliminated or narrowed.

With respect to the third and fourth categories, the Wilenchik Firm's primary argument is the information sought by the Judgment Creditors is protected by the attorney-client privilege. This argument is unavailing. The law in the Ninth Circuit is clear: "Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client." *In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994) (quotation omitted). Notably, the Wilenchik Firm has already produced—without raising any concern over privilege issues—all of the documents in its possession showing the retainer payments it received from Wyo Tech and Inductance and all of the documents in its possession (including "handwritten ledgers," *see* Doc. 150 at 3) showing which clients and matters ultimately received credit under its accounting system based on those payments. There is no logical reason why those categories of information should be considered non-privileged but information about the clients and matters for

which the retainer payments were initially earmarked should be considered privileged.[3]

The Wilenchik Firm also argues that categories three and four are impermissible because its representative would be forced "to speculate about the payor's intentions and thoughts about the use of the funds when they were being deposited." (Doc. 179 at 9.) But during the contempt hearing, the Wilenchik Firm stated that, although its system for crediting retainer payments toward particular clients and matters is "not written down anywhere," Ms. Loftis "does keep track of all of this" and has her own "process" for keeping track of things. (Doc. 157 at 39.) Having made that representation, the Wilenchik Firm cannot now assert that any testimony on this topic by Ms. Loftis would be speculative.

The Court also rejects the Wilenchik Firm's argument that categories three and four are impermissible because they "would impinge on the confidential, proprietary nature of [its] business operations, bookkeeping and accounting methods." (Doc. 179 at 4.) During the contempt hearing, the Wilenchik Firm described its internal accounting system in great detail and then offered to have Ms. Loftis submit to a deposition to answer any questions about it. (*See, e.g.,* Doc. 157 at 39 ["[T]he offer was made by Mr. Wilenchik to . . . have Ms. Loftis speak to [the Judgment Creditors] directly, and she can explain it to [them] and answer [their] questions."]; *id.* at 39-40 ["[T]here's nothing more we can say, other than we've given [the Judgment Creditors] all the documentation that's out there. And if [they want] to depose Miss Loftis and ask her those questions, fine."].) Moreover, this is not a trade secrets case in which the Wilenchik Firm would somehow face financial harm if a competitor learned about and copied its accounting system.

The Wilenchik Firm's final basis for objecting to categories three and four is that the information being sought is irrelevant, disproportionate to the needs of the case, and unduly burdensome. The Court disagrees.[4] Under New York law, a judgment creditor

---

[3] If the Judgment Creditors were to attempt to delve into truly privileged topics during the deposition, counsel for the Wilenchik Firm would, of course, be entitled to raise appropriate objections at that time.

[4] As noted in an earlier order (Doc. 119 at 12 & n.3), the test for "relevance," in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34. *See, e.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("It is well settled . . . that the scope of discovery under a subpoena is the same as

may be entitled to funds held in a third party's bank account if that account is used to pay the judgment debtor's expenses. (*See generally* Doc. 119 at 13.) It is therefore relevant to know whether Wyo Tech and/or Inductance were depositing large retainer payments in the Wilenchik Firm's escrow account with the expectation that such funds would be used to pay Danzik's personal legal expenses. On that note, the Court is particularly unpersuaded by the Wilenchik Firm's assertion that "if Wyo Tech chose to pay legal fees of someone else simply as a charitable act, would that give the beneficiary of that largesse some kind of interest in Wyo Tech's bank account too? Of course not." (Doc. 192 at 2 n.1.) The Court is unaware of any examples of companies spending tens or hundreds of thousands of dollars of their investors' money on "charitable" gifts of legal fees to unrelated businessmen who themselves are not engaged in charitable affairs.

With respect to the fifth category of information ("Your system and protocols related to the record-keeping, management, and preservation of documents reflecting client payments, charges, and invoices"), the Wilenchik Firm's objections will be overruled. This is exactly the type of information the Wilenchik Firm offered, during the contempt hearing, to have Ms. Loftis provide during a future deposition. It also makes sense to allow the Judgment Creditors to obtain information on this topic, given the Wilenchik Firm's representation that its system for crediting escrow payments to particular clients and matters is "not written down anywhere" and that Ms. Loftis is responsible for "keep[ing]

---

the scope of discovery under Rule 26(b) and Rule 34. Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."); Fed. R. Civ. P. 45, advisory committee notes to 1970 amendment ("[T]he scope of discovery is the same as that applicable to Rule 34 and the other discovery rules."); S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 45, at 1189 (2018) ("The scope of information that may be sought via subpoena is the same as the scope of discovery generally under Rule 26(b)."). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). However, non-parties are entitled to special consideration in the Rule 45 context when "weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party." *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012).

track of all this." (Doc. 157 at 39.) The Court does not view the Judgment Creditors' interest in obtaining information on this topic to be some sort of nefarious plot to question the veracity of the Wilenchik Firm's attorneys—one of the relevant issues in this case is whether Wyo Tech and Inductance made retainer deposits that were intended to benefit Danzik and it is necessary to understand the Wilenchik Firm's "system and protocols related to the record-keeping, management, and preservation of documents reflecting client payments, charges, and invoices" in order to properly evaluate that issue.

Finally, with respect to the sixth category of information, the Wilenchik Firm's objections will be sustained. Unlike category five, the Judgment Creditors don't need this information to evaluate and understand the significance of the other evidence in the case.

Accordingly, **IT IS ORDERED** that:

(1) The motion to quash/modify (Doc. 179) is **granted in part and denied in part**;

(2) The subpoena to Ms. Loftis is quashed; and

(3) The subpoena to the Wilenchik Firm is modified in the following respect: the sixth category of information specified in the deposition notice shall be removed.

Dated this 29th day of August, 2019.

Dominic W. Lanza
United States District Judge