**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

Pending before the Court is a motion to strike filed by CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (collectively, the "Judgment Creditors"). (Doc. 228.) Wyo Tech Investment Group LLC ("Wyo Tech") opposes the motion to strike and also seeks the undersigned judge's recusal under 28 U.S.C. § 455(a). (Doc. 231.) For the following reasons, both motions will be denied.

## BACKGROUND

This is a civil interpleader action in which Wyo Tech and the Judgment Creditors have asserted competing claims to a sum of money, $546,282.55, that was previously deposited in Wyo Tech's bank account at Wells Fargo. On October 31, 2018, this case was transferred to the undersigned judge. (Doc. 93.) In the 11 months since the reassignment, the undersigned judge has issued numerous rulings, some of which are discussed in detail below.

On August 22, 2019, a group of non-party subpoena recipients filed a motion for recusal. (Doc. 204.)

On August 27, 2019, the Court issued an order denying the motion. (Doc. 209.) In a nutshell, the Court concluded that recusal wasn't warranted because "the reasons identified in the Subpoenaed Individuals' motion—(1) issuing discovery rulings with which they apparently disagree, (2) being friends with a lawyer who has a brother who has a law partner who is serving as local counsel in this case, (3) working for the [U.S. Attorney's Office] at the same time that a different [attorney in that office], separated by three levels of supervisors, was pursuing an unrelated criminal investigation involving a non-party, and (4) having a phone call four years ago with a non-party about an unrelated matter—would not cause a reasonable person to question the undersigned judge's impartiality." (*Id.* at 9.)

This order also included a footnote concerning the timeliness of the recusal motion. Specifically, the Court "note[d] that, had Wyo Tech attempted to file a recusal motion at this late juncture of the case, such a motion would have been untimely. . . . Here, because the only entities formally seeking recusal are the Subpoenaed Individuals (who had no prior involvement in this case), their motion will not be denied on timeliness grounds. That said, the motion is predicated on information that likely came from Wyo Tech and [Dennis] Danzik (and that Wyo Tech's counsel, Wilenchik & Bartness, must have known at the time this case was reassigned to the undersigned judge). The Subpoenaed Individuals would have no other way of knowing about non-public criminal investigations that didn't result in charges. Further, the proposed order granting the recusal motion was emailed to the Court's chambers email address by Wyo Tech's counsel, not by the Subpoenaed Individuals' counsel. Such coordination raises the possibility that Wyo Tech is using the Subpoenaed Individuals as a stalking horse to evade the time limits on recusal motions." (*Id.* at 6 n.5, citation omitted.)

On September 12, 2019, Wyo Tech (through its counsel, Dennis Wilenchik of the law firm Wilenchik & Bartness) filed a document entitled "Supplement To Clarify The Record Re: Denial Of Motion For Recusal Filed By Non-Parties" (hereinafter "the Supplement") (Doc. 227.) In the Supplement, Wyo Tech "takes issue with certain

gratuitous statements" in the order denying the recusal motion. (*Id.* at 1.) First, Wyo Tech disputes that it "was fully aware of all of the facts set forth in the Subpoenaed Parties' recusal motion" at the time this case was reassigned to the undersigned judge in October 2018. (*Id.* at 2.) Specifically, Wyo Tech asserts that it "only just recently" learned of the familial relationship between a friend of the undersigned judge and an attorney who works for the law firm that is representing the Judgment Creditors in this case. (*Id.*) Second, Wyo Tech characterizes as "presumptuous and insulting" the suggestion in the order that Wyo Tech had anything to do with the Subpoenaed Parties' decision to file the recusal motion, arguing that "[u]ndersigned counsel was not even aware of it." (*Id.* at 2-3.)

On September 13, 2019, the Judgment Creditors filed a motion to strike the Supplement. (Doc. 228.) First, the Judgment Creditors argue the Supplement is procedurally improper because it is "functionally a post-decision objection" to the order denying the recusal motion, yet "a party is not authorized by any statute, rule, or court order to submit additional argument or facts merely to 'clarify the record.'" (*Id.* at 1-2.) Second, the Judgment Creditors argue that the premise underlying the Supplement—that Wyo Tech had nothing to do with the Subpoenaed Individuals' decision to file the recusal motion— is false. (*Id.* at 2-3.) In support of this claim, the Judgment Creditors enclose a series of emails they recently obtained via a subpoena to a Wyo Tech investor. (Doc. 229 at 2 ¶ 2.) These emails show that, on August 16, 2019, Mr. Wilenchik sent an email to other attorneys at Wilenchik & Bartness, asking, "[C]an u [sic] send me a draft objection we can ask [the Subpoenaed Individuals' counsel] to file?" (Doc. 229-1 at 4.) Mr. Wilenchik's email added, "Also we shd [sic] file our own." (*Id.*) In response, one of those attorneys wrote: "See attached. We are setting up a meeting with [the Subpoenaed Individuals' counsel] for Monday to discuss this and the motion for recusal as you requested." (Doc. 229-1 at 3.) Mr. Wilenchik then forwarded this email chain to Wyo Tech's CEO, who in turn forwarded it to a distribution list of at least 12 individuals (all of whom appear to be Wyo Tech investors). (Doc. 229-1 at 2.) At the top of this email, also sent on August 16, 2019, Wyo Tech's CEO wrote in part: "[W]e are going to file a motion to have a Judge recuse

himself . . . ." (*Id.*)

On September 16, 2019, Wyo Tech filed a "Response To . . . Motion To Strike And . . . Motion For Recusal." (Doc. 231.) Wyo Tech begins by arguing that the Court's earlier rulings in this case were erroneous and constitute proof of bias. (*Id.* at 2-4.) Next, Wyo Tech argues the motion to strike should be denied because the "Supplement is not prohibited by any statute, rule, or court order" and the Judgment Creditors have not "pointed to any authority to support that assertion." (*Id.* at 4-6.) Wyo Tech also argues that the emails enclosed as an exhibit to the motion to strike (which show that Wyo Tech and its counsel were involved in the preparation of the earlier recusal motion) do not contradict any of the assertions in the Supplement: "Wyo [Tech] and its counsel have never actually ever denied . . . that they agreed with and assisted [the Subpoenaed Individuals' counsel] in representing his clients based on providing him with the relevant facts and evidence, from which he then decided . . . to file the recusal motion." (*Id.* at 4 n.3.) Furthermore, Wyo Tech contends the Judgment Creditors acted improperly in attaching the emails to the motion because they "are clearly attorney-client privileged communications which were obviously inadvertently disclosed by Wyo [Tech]." (*Id.*) Finally, Wyo Tech makes its own recusal request under 28 U.S.C. § 455(a). (*Id.* at 7-10.) It incorporates the arguments contained in the earlier recusal motion and also contends that certain "newly discovered information" supports its request. (*Id.*)

## DISCUSSION

I.    Motion To Strike

The first motion before the Court is the Judgment Creditors' motion to strike. (Doc. 228.) It is governed by LRCiv 7.2(m)(1), which provides that "a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rules of Civil Procedure 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."

On the one hand, the Court agrees with the Judgment Creditors that the elements of LRCiv 7.2(m)(1) are satisfied here. The Court is not aware of any "statute, rule, or court

order" that would authorize a litigant to file a "supplement" whose sole purpose is to criticize an order, issued 16 days earlier, that denied a motion which hadn't been filed by that litigant. Thus, the Supplement filed by Wyo Tech could be stricken under LRCiv 7.2(m)(1).

Nevertheless, the Court will decline to grant the Judgment Creditors' motion. "Motions to strike," at least in the Rule 12(f) context, "are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).[1] There are sound reasons for this disfavored status. Motions to strike often needlessly run up the cost of litigation and squander judicial resources, and there is a quick, simple, and cost-free alternative to striking an irrelevant pleading—ignoring it. *Cf. AIRFX.com v. AirFX LLC*, 2012 WL 129804, *1 (D. Ariz. 2012) ("Defendant moves to strike plaintiffs' reply . . . , arguing that the reply raises new arguments . . . . [A] motion to strike in this case is unnecessary, as we do not consider new arguments raised in a reply."). For these reasons, some district courts have concluded that "[a] motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted). Thus, the Court will decline to strike the Supplement.

Wyo Tech should not, however, construe this outcome as an invitation to keep filing procedurally-improper documents. This is the second time Wyo Tech has filed an unauthorized "supplement" in this case. (Docs. 176, 227.) Any similar future filing will be stricken by the Court, without the need for a motion by the Judgment Creditors.

---

[1] *See generally* S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 12, at 314-15 (2018) ("[M]otions to strike under Rule 12(f) are generally viewed with disfavor, perhaps because experience with dubious Rule 12(f) motions has led courts to view them skeptically. Thus, while courts acknowledge that motions to strike can serve legitimate ends, they certainly do not encourage lawyers to file them.").

## II.   Motion For Recusal

The second motion before the Court is Wyo Tech's motion for recusal, which is incorporated into its response to the motion to strike.  (Doc. 231.)[2]

### A.   **The Prior Rulings**

Wyo Tech's first argument is that the Court's previous rulings in this case were not just wrong, but so obviously wrong that they must have been motivated by a secretly-harbored bias and sense of antipathy toward Wyo Tech and Danzik.  (Doc. 231 at 1-4, 9.)

This argument is baseless.  Although the Court is hesitant to comment on its previous rulings—they speak for themselves—Wyo Tech's decision to advance such an argument in its recusal motion triggers a need to address it.

#### 1.   April 9, 2019 Ruling

The first ruling with which Wyo Tech apparently disagrees is the Court's April 9, 2019 order, which concluded that the Judgment Creditors should be entitled to conduct discovery in this case.

As background, in February 2019, the parties notified the Court (via a joint letter) that they had a disagreement concerning the enforceability of a particular subpoena.  (Doc. 101.)  Two days later, the Court held a telephonic hearing to address the dispute.  (Doc. 103.)  At the outset of the hearing, the Court stated it was "tentatively inclined to quash the subpoena" at Wilenchik & Bartness's request, based on one of the cases cited in the joint letter, but also noted that "[i]n Shepardizing that case just recently in preparing for this hearing, [the Court] found several other cases by federal courts in New York" that also touch upon the availability of discovery in restraining-notice cases.  (Doc. 106 at 2-4.)  The

---

[2]      Wyo Tech asks that "this matter be immediately transferred to another judge for an independent hearing on both the Motion to Strike and its Motion for Recusal."  (Doc. 231 at 1-2.)  But a recusal "motion is addressed to, and must be decided by, the very judge whose impartiality is being questioned."  *In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1994).  *See also United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980) ("[S]ection 455 includes no provision for referral of the question of recusal to another judge . . . ."); *United States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge.  It requires the judge to disqualify himself when any one of the statutory conditions is met.  It makes no provision for the transfer of the issue to another judge.").

Court ultimately took the matter under advisement, rather than ruling from the bench, so it could further review the newly-discovered cases. (*Id.* at 17.) About a week later, the Court issued an order explaining that, "[a]lthough the Court initially hoped to rule on the discovery dispute promptly, the Court has concluded, after further consideration, that the issues presented by this dispute are intertwined with broader unresolved issues in the case. Accordingly, the Court will order the parties to file supplemental briefing." (Doc. 109 at 1.) This order then summarized three interrelated legal issues and gave the parties an opportunity to address those issues via 10-page briefs. (*Id.* at 5-11.)

On April 9, 2019, after reviewing the parties' supplemental briefs (Docs. 113, 114) and after hearing oral argument (Docs. 118, 121), the Court issued a lengthy order that, among other things, concluded the Judgment Creditors should be entitled to conduct discovery. (Doc. 119.)

         2.   <u>May 1, 2019 Ruling</u>

Another apparent source of Wyo Tech's opprobrium is the Court's May 1, 2019 ruling that Wyo Tech had forfeited its ability to raise overbreadth objections to the Judgment Creditors' document requests and interrogatories.

As background, on April 30, 2019, the parties informed the Court (via joint letter) of another discovery dispute. (Docs. 125, 126.) This time, the dispute concerned Wyo Tech's failure to provide timely responses to the Judgment Creditors' document requests and interrogatories, which were served on Wyo Tech on February 3, 2019. (*Id.*) In a nutshell, Wyo Tech initially agreed to comply with these requests by April 5, 2019 but missed this deadline. When the Judgment Creditors followed up on April 10, 2019 (after the issuance of the order confirming the Judgment Creditors' right to conduct discovery), Wyo Tech responded by agreeing to make its production by April 22, 2019. (*Id.*) Unfortunately, Wyo Tech ignored this deadline, too. (*Id.*) On April 23, 2019, the Judgment Creditors made another follow-up attempt and Wyo Tech responded by agreeing to make its production by April 25, 2019. (*Id.*) However, Wyo Tech ignored this deadline, too, and failed to produce anything. (*Id.*) Finally, on April 30, 2019, Wyo Tech argued for the

first time that certain individual document requests and interrogatories were objectionable because they were overbroad. (*Id.*)

On May 1, 2019, following a telephonic hearing, the Court issued an order concluding that Wyo Tech had forfeited any overbreadth objections by failing to timely assert them. (Doc. 128.) Specifically, the Court ruled that, under Rules 33 and 34 of the Federal Rules of Civil Procedure, Wyo Tech was required to raise any overbreadth objections by no later than the deadline for production, so its assertion of those objections on April 30, 2019 came too late. (Doc. 130 at 4-5, 26-29.) However, notwithstanding that ruling, the Court then *sua sponte* ordered the Judgment Creditors to narrow one of their requests for production, in an effort to avoid undue expense to Wyo Tech, and also gave some additional time for Wyo Tech to comply. (*Id.* at 29-32.) The Court also effectively rejected the Judgment Creditors' request for costs and attorneys' fees under Rule 37(a)(5), explaining that "[e]ven though [the Court was] ruling against Wyo Tech here and . . . ordering them to comply, [it did] understand that there was some nuance here in terms of the overall posture of the case." (*Id.* at 32-33.)

### 3. May 29, 2019 Ruling

Another apparently disputed ruling is the Court's order of May 29, 2019, which denied the Judgment Creditors' request to hold Wilenchik & Bartness in civil contempt.

The background for this ruling is that, as part of the April 9, 2019 order, the Court ruled that Wilenchik & Bartness and another law firm, Beus Gilbert ("the firms"), were required to comply with a subpoena seeking certain non-privileged payment records. (Doc. 119 at 11-13.) The order gave the firms until April 26, 2019 to make the production.[3] (*Id.* at 19.) As with the previous dispute, however, this deadline was blown. Accordingly, on May 13, 2019, the Judgment Creditors filed a motion for an order to show cause why the firms shouldn't be held in civil contempt. (Doc. 131.) Two days later, the firms filed a

---

[3] During the hearing on April 8, 2019, the Court asked Wilenchik & Bartness how long it would take for the relevant records to be identified and produced. (Doc. 121 at 41-42.) Counsel indicated that two-and-a-half weeks would be sufficient. (*Id.*) That is why the Court selected a production date of April 26, 2019.

response explaining that they'd arranged for a paralegal to send responses to the subpoenas on April 26, 2019 and were under the misimpression (until they received the Judgment Creditors' motion) that the responses had been sent and were acceptable. (Doc. 134.) This response also asserted that Beus Gilbert "has never received any funds from either Wyo Tech or Inductance and therefore has no documents in its possession responsive to the [Judgment Creditors'] subpoena whatsoever" and that "by the time the Court reads this Response, [Wilenchik & Bartness] will have provided [the Judgment Creditors] with all remaining records in its possession showing payments received from Wyo Tech and Inductance and how those funds have been applied to various client matters." (*Id.* at 5 & n.2.)

Unfortunately, these statements were false. Several hours after the response was filed, the Judgment Creditors filed an amended motion for an order to show cause. (Doc. 135.) Included with this motion were (1) a copy of a $20,000 check from Inductance to Beus Gilbert dated March 15, 2018 (Doc. 135-13 at 2), which contradicted the firms' claim that Beus Gilbert had never received any such payments, and (2) documents showing that "Inductance paid Wilenchik $100,000 on April 9, 2018 and $100,000 on August 21, 2018" and that "Wilenchik did not produce these checks, or any documents showing these payments, and instead falsely represented that its May 14 production—which did not include documents showing these payments—included 'all payments' it received from Inductance and Wyo Tech at any time." (Doc. 135 at 7.)

Based on this submission, the Court issued an order setting a show-cause hearing. (Doc. 136.) This order noted that "[t]he Court has significant concerns about [the] discovery conduct of Wilenchik and Beus Gilbert" arising "from the substance of the discovery responses and the seeming inaccuracy of certain statements contained in the firms' brief to the Court." (*Id.* at 4.) A few days before the hearing, the firms filed another brief. (Doc. 140.) In the introductory paragraph of this brief, authored by Wilenchik & Bartness, the firms stated that they "wish to apologize sincerely to both the Court and opposing counsel for this incident, and fully acknowledge that mistakes were made here

regarding the Subpoenas responses." (*Id.* at 2.)  The brief went on to acknowledge that a Wilenchik & Bartness attorney had engaged in "negligent mishandling," which the brief chalked up to "an unfortunate combination of events at Wilenchik & Bartness over the past few months—in other words a 'perfect storm' or 'comedy of errors' (meant in the sense that is without even the slightest hint of humor)." (*Id.* at 4.)

The show-cause hearing took place on May 29, 2019.  (Doc. 155 [minute entry]; Doc. 157 [transcript].)  At the outset of the hearing, the Court took a moment to personally address Mr. Wilenchik, express its condolences to the Wilenchik family concerning the recent illness of Mr. Wilenchik's son, and inform the Judgment Creditors' counsel that "I've had cases with Mr. Wilenchik before, and I know him and his son." (Doc. 157 at 4.)  On the merits, after a different Wilenchik & Bartness attorney argued that the false statements and production failures should be considered a product of negligence (*id.* at 4-14), the Court stated: "[F]undamentally my overall objective here is I just want to make sure all the discovery gets provided and the case gets back on track. . . .  [I] give full credit to the idea that this was not an intent to mislead, it was negligence, it was a mistake.  I appreciate all of that." (*Id.* at 14.)  Next, the Court stated that it believed the Judgment Creditors should be compensated for the time spent briefing the show-cause issue and then asked the Wilenchik & Bartness attorney if he was aware of any mechanisms for imposing a cost award "without making a formal contempt finding." (*Id.* at 18.)  Later in the hearing, the Judgment Creditors' attorney stated that the briefing costs related to the show-cause issue were "probably in the neighborhood of $25,000." (*Id.* at 33.)  At the conclusion of the hearing, the Court expressly declined to hold either law firm in civil contempt.  (*Id.* at 41.)  The Court also stated that the Judgment Creditors' request for $25,000 in fees was too high and held that "no more than $10,000 would be appropriate here to provide reasonable compensation for the fees that [the Judgment Creditors have] incurred." (*Id.* at 47.)  Following these rulings, Mr. Wilenchik stated: "[T]hank you for the sympathy." (*Id.* at 48.)

…

## 4. June 27, 2019 Ruling And Related Rulings

Wyo Tech also appears to take issue with a civil contempt order issued on June 27, 2019.

As background, in February 2019, the Judgment Creditors served Rule 45 subpoenas on seven non-parties. (Doc. 159.) These subpoenas required the recipients to produce documents and/or appear for depositions by the end of March 2019. (*Id.*) When none of the recipients bothered to respond, the Judgment Creditors sent follow-up letters to them in mid-April 2019. (*Id.*) Nobody responded to these letters, either. (*Id.*) As a result, on June 19, 2019, the Judgment Creditors filed a motion for an order to show cause why the seven subpoena recipients shouldn't be held in civil contempt. (*Id.*) In support of the motion, the Judgment Creditors filed a declaration averring that a different subpoena recipient had "received a copy of a letter from Wyo Tech's counsel, Wilenchik & Bartness, . . . claiming that the nonparty subpoenas . . . were invalid because [the Judgment Creditors] did not give [Wilenchik & Bartness] notice of the subpoenas before service." (Doc. 160 ¶ 17.) The Judgment Creditors also submitted evidence showing that they had, in fact, given proper notice of service to Wilenchik & Bartness. (Doc. 160 ¶ 17; Doc. 169-2.) In response, the Court scheduled a show-cause hearing for June 27, 2019 and ordered the Judgment Creditors to serve each of the subpoena recipients with a copy of the order setting the show-cause hearing. (Doc. 161.)

On June 27, 2019, the show-cause hearing occurred as scheduled. (Doc. 166 [minute entry]; Doc. 172 [transcript].) Notably, none of the seven subpoenaed parties chose to attend this hearing or submit briefs in advance of the hearing. (*Id.*) However, an attorney from Wilenchik & Bartness—who made clear that he was only Wyo Tech's counsel and was not representing any of the subpoenaed parties—did appear. (Doc. 172 at 6.) Among other things, this attorney acknowledged that Wilenchik & Bartness had received notice of the subpoenas in February 2019 and simply overlooked the notice because "Mr. Wilenchik's inbox is substantially full." (*Id.* at 9.) The attorney also confirmed that Wilenchik & Bartness had sent the letter discussed in the Judgment

Creditors' declaration (*i.e.,* the letter to Wyo Tech incorrectly stating that the subpoena recipients could ignore the subpoenas due to a lack of proper notice) and was unable to say whether Wilenchik & Bartness had ever corrected this misstatement after learning that proper notice had, in fact, been provided. (*Id.* at 9-11.)

Following the hearing, the Court issued an order holding the seven subpoena recipients in civil contempt. (Doc. 167.) This order also imposed a daily fine of $250 against each subpoena recipient "beginning on June 27, 2019 and lasting until the non-party fully complies with the subpoena(s) at issue." (*Id.* at 2.)

The next relevant contempt-related activity occurred on August 2, 2019, when the Judgment Creditors filed a motion for an order to show cause why additional sanctions should not be imposed. (Doc. 183.) In this motion, the Judgment Creditors stated that six of the seven contemnors had come into compliance but nevertheless urged the Court to order their immediate imprisonment because they hadn't paid the daily fines imposed by the contempt order. (*Id.*) As for the remaining contemnor, an entity called Danzik Applied Sciences ("DAS"), the Judgment Creditors argued that although DAS had made a production attempt, it was incomplete, so DAS's manager (Dennis Danzik's wife, Elizabeth Danzik) should be immediately imprisoned, too. (*Id.*)

On August 6, 2019, the Court issued an order denying the Judgment Creditors' motion in significant part. (Doc. 186.) As for the six contemnors who had come into compliance following the issuance of the June 27, 2019 contempt order, the Court declined to impose any further sanctions and faulted the Judgment Creditors for overreaching: "[I]t certainly doesn't seem necessary to issue a bench warrant for their arrest." (*Id.* at 4.) As for DAS, the Court declined to accept the Judgment Creditors' assertion that DAS's production effort was incomplete and instead gave DAS an opportunity to defend the production's sufficiency at a hearing. (*Id.* at 4-5.)

Finally, on August 30, 2019, the Court held a hearing concerning DAS's alleged noncompliance. During this hearing, DAS's counsel acknowledged that DAS's prior production effort may have been incomplete but urged the Court to afford DAS more time

to come into compliance.  The Court agreed with this approach, specifically declined to "impose any further sanctions against non-party Elizabeth Danzik," and ordered the Judgment Creditors and DAS to meet and confer about obtaining a complete production. (Doc. 219 at 1.)

5.    August 27, 2019 Ruling

In the Supplement, Wyo Tech argues that footnote five in the order denying the earlier recusal motion—the footnote in which the Court noted that Wyo Tech may have helped coordinate the filing of that motion (Doc. 209 at 6 n.5)—constitutes further proof of bias.  (Doc. 227.)

As it turns out, this footnote hit the bullseye.  The emails attached to the Judgment Creditors' motion to strike establish, beyond a shadow of a doubt, that Wyo Tech's counsel was personally involved in the development and filing of the recusal motion.[4]

…

---

[4]    Wyo Tech argues that the emails revealing Wilenchik & Bartness's involvement in the earlier recusal motion are "clearly attorney-client privileged communications which were obviously inadvertently disclosed by Wyo [Tech] and should have been returned to [Wilenchik & Bartness] immediately."  (Doc. 231 at 4 n.3.)  Notably, Wyo Tech does not provide any legal citations in support of this claim.  Moreover, the declaration from the Judgment Creditors explains that the emails were produced by a Wyo Tech *investor*—presumably, one of the twelve individuals who is identified in the distribution list at the top of the email—in response to a Rule 45 subpoena.  (Doc. 229 ¶ 2 ["This email chain was produced earlier this week by a nonparty in response to one of the subpoenas we served in this action."].)  Thus, it wasn't inadvertently produced by *Wyo Tech* in response to a request for production.  And the fact the email was intentionally forwarded to a Wyo Tech investor by a Wyo Tech representative suggests it has lost whatever privileged character it may have once enjoyed.  Wilenchik & Bartness acknowledged earlier in this case that it only represents Wyo Tech, not the company's third-party investors (Doc. 172 at 6), and even wrote a letter to the Wyo Tech investors in February 2019 in which it "stress[ed] to you [investors] that we do not represent you and you should obtain counsel to advise you." (Doc. 191-18.)  Accordingly, when Wyo Tech's CEO chose to forward the email chain (which included a series of internal emails between Wilenchik & Bartness attorneys) to a distribution list of third-party investors, any privilege was likely waived.  *Cf. Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 551 (D. Ariz. 2002) (noting that the proponent of a privilege claim "must prove that the communication was made in confidence and subsequently maintained as confidential" and finding that proponent couldn't meet this burden because "there [was] undisputed evidence that third parties, Merrill Lynch employees, were present during the meeting at which the alleged protected communications took place").  *See generally Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

- 13 -

6.   <u>Summary</u>

In the Court's view, the foregoing summary is helpful in analyzing Wyo Tech's argument that the rulings to date in this case show "that Judge Lanza's ability to be impartial is questionable at best," that "this Court has granted unusual latitude" to the Judgment Creditors, and that "the Court's prior statements and rulings . . . show potential if not actual bias that would cause any reasonable lay person to question Judge Lanza's impartiality." (Doc. 231 at 2, 9.)

For example, although Wyo Tech appears to view the April 9, 2019 order (authorizing discovery) as a manifestation of bias, it should be noted that this 19-page order was issued only after a request for supplemental briefing and that the order carefully considers all of the parties' arguments, includes dozens of case citations, and also cites several different law review articles and practice guides. One would hope that a reasonable layperson would view it as a sincere attempt to properly rule on the disputed legal issues in this case.

As for the May 1, 2019 order (holding that Wyo Tech forfeited its overbreadth objections), this was a common-sense outcome compelled by the plain language of Rules 33 and 34. If anything, the undersigned judge resolved close calls in Wyo Tech's favor by *sua sponte* modifying one the Judgment Creditors' requests for production and effectively rejecting the Judgment Creditors' fee request.

As for the May 29, 2019 order (declining to hold Wilenchik & Bartness in civil contempt), it is almost unfathomable that Wyo Tech could view this as proof of bias. The hearing was predicated by Wilenchik & Bartness missing a production deadline, then making demonstrably-false statements to the Court and Judgment Creditors about the contents of its belated production. Nevertheless, the Court chose not to make a contempt finding, even though the facts may have warranted one. And the Court ultimately reduced the Judgment Creditors' fee request from $25,000 to $10,000, even though Wilenchik & Bartness didn't proffer any reason why the $25,000 figure should be considered inflated.

As for the June 29, 2019 civil contempt order and related rulings, the Court imposed

sanctions only after the subpoena recipients (1) didn't bother to respond to the subpoenas, (2) didn't bother to respond to follow-up letters from the Judgment Creditors concerning the subpoenas, (3) ignored the subpoenas because Wilenchik & Bartness had incorrectly told them the subpoenas were invalid (a miscalculation caused by Wilenchik & Bartness's failure to monitor its own email account and compounded by the firm's failure to correct its incorrect advice after learning it was wrong), (4) didn't bother to submit any briefs in response to the show-cause order, and (5) didn't bother to show up for the show-cause hearing. This was remarkably brazen conduct and the decision whether to make a civil contempt finding wasn't a close (or even reasonably debatable) call. Moreover, the Court rejected the Judgment Creditors' later request for an imprisonment sanction and declined to impose further sanctions against DAS even after it became clear that DAS's belated production effort was incomplete. The Court is struggling to understand how these rulings could be viewed as proof of bias.

Finally, as for the footnote in the August 27, 2019 order, making accurate observations about Wyo Tech's and Wilenchik & Bartness's involvement in the preparation of the earlier recusal motion does not constitute proof of judicial bias.

### B.    Newly Discovered Information

Wyo Tech also argues that "newly discovered information" demonstrates that recusal of the undersigned judge is required under 28 U.S.C. § 455(a). (Doc. 231 at 7-10.) This argument fails for several interrelated reasons.

First, the request is untimely. In the earlier order, the Court observed that any recusal request by Wyo Tech would likely be considered untimely. (Doc. 209 at 6 n.5.) In support of this view, the Court cited *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992), which holds that "[i]t is well established in this circuit that a recusal motion must be made in a timely fashion" and explains that "[t]he absence of such a requirement would result in . . . a heightened risk that litigants would use recusal motions for strategic purposes," and *United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997), which emphasizes that "a party having information that raises a possible ground for

- 15 -

disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention."

These are the exact circumstances presented here. Indeed, Wyo Tech acknowledges it is seeking recusal in part because it doesn't agree with the rulings that have been issued in the 11 months since this case was reassigned to the undersigned judge.

Nor would it be accurate to characterize all of the information discussed in Wyo Tech's Supplement and motion as "newly discovered." Most of that information relates to the undersigned judge's time at the U.S. Attorney's Office and is predicated on the inaccurate theory that the undersigned judge personally led a criminal investigation of Danzik and formed a negative view of Danzik based on that investigation. Putting aside the specific problems with some of the newly-proffered information (which are addressed below), Wilenchik & Bartness was Danzik's attorney during the time period in question.[5] It strains credulity to believe that none of this information was known to Wilenchik & Bartness and Wyo Tech at the time of this case's reassignment in October 2018. This is a textbook case of a litigant being aware of information at the start of a case, saying nothing, and then belatedly seeking recusal after becoming dissatisfied with the judge's rulings—a practice that is corrosive to the rule of law and specifically prohibited by Ninth Circuit precedent. *Cf. United States v. Sierra Pacific Indus.*, 759 F. Supp. 2d 1198, 1205-06 (E.D. Cal. 2010) ("[A] judge must take care not to recuse out of an abundance of caution when it appears that a party may be seeking recusal out of dissatisfaction after sustaining adverse rulings.").

Indeed, in the Supplement, Wyo Tech only purports to identify one piece of information that its counsel didn't learn about until recently: the fact that one of the undersigned judge's friends (a former colleague from the U.S. Attorney's Office) is the

---

[5] This statement is based on the assertion in the Subpoenaed Individuals' earlier recusal motion (which, as has now become clear, Wilenchik & Bartness helped develop) that "[t]he law firm of Wilenchik & Bartness . . . represented Dennis Danzik with respect to the USAO-Arizona's investigation of him." (Doc. 204 at 3.) Additionally, Wilenchik & Bartness stated in an earlier brief in this case that "[t]he instant case [was] one of several, approximately seven (7) litigation cases relating to Mr. Dennis Danzik . . . in some form or another, which [Wilenchik & Bartness] is handling." (Doc. 140 at 6.)

brother of an attorney who works at the same law firm that is serving as the Judgment Creditors' local counsel in this case. (Doc. 227 at 2.) But as discussed in the earlier order, this is an invalid basis for seeking a judge's recusal. Wyo Tech tellingly does not cite any cases holding (or even suggesting) that recusal is required when a judge's friend's brother's co-worker is serving as an attorney in a pending case and it would be ludicrous if that were the rule. In fact, the ABA ethics opinion enclosed as an exhibit to the Supplement—which Wyo Tech somehow proffers as support for its position—specifically recognizes that recusal isn't required under these circumstances. Doc. 227-1 at 2 ("In short, judges need not disqualify themselves if a lawyer or party is an acquaintance, nor must they disclose acquaintanceships to the other lawyers or parties.").[6]

Second, the newly-proffered information does not, on the merits, come close to triggering a need for recusal. When evaluating this information, it is helpful to begin by summarizing the legal standards governing a recusal request predicated on a judge's prior activity while in government service. Those standards are set out in detail in the order denying the earlier recusal motion. (Doc. 209 at 4-7.) Specifically, the order explained that "recusal is necessary only when a judge, while in prior government practice, participated in the actual 'proceeding' or 'particular case in controversy' that is now pending before that judge. This means that a judge who was once an Assistant U.S. Attorney ('AUSA') cannot, after appointment to the bench, preside over a criminal case that he or she personally investigated or prosecuted while at the USAO. But this isn't a criminal case—it's a civil interpleader action, Danzik isn't even a party, and the narrow issue to be resolved is whether the Judgment Creditors are entitled to funds that had been deposited in Wyo Tech's account. Section 455(b)(3) doesn't apply in this circumstance." (*Id.* at 4-5, citations omitted). The order further noted that 28 U.S.C. § 455(a) doesn't

---

[6]      Wyo Tech's motion can be read as suggesting, in various places, that the undersigned judge is a close personal friend of both of the brothers at issue. (Doc. 231 at 5 [alluding to "the relationships between Judge Lanza and the . . . brothers"]; *id.* at 8 [alluding to "the . . . brothers' relationship and the Court's acknowledgement of that friendship"].) This is inaccurate. The friendship is with the former colleague from the U.S. Attorney's Office, not with the former colleague's brother (the attorney who has a co-worker who is serving as local counsel in this case).

supply a different or less stringent test.  (*Id.* at 9, citing *United States v. Champlin*, 388 F. Supp. 2d 1177, 1183 (D. Haw. 2005)).

This backdrop is important because Wyo Tech's newly-proffered information relates to the same alleged criminal investigation of Danzik by the U.S. Attorney's Office that was addressed in the earlier order.  And as discussed in that order, the prior investigation is not the same "proceeding" or "particular case in controversy" as the current civil interpleader action.

Third, the newly-proffered information is flawed for other reasons.  Wyo Tech's recusal motion is supported by two exhibits.  The first is a declaration from Anthony Ker. (Doc. 231-1.)  The Ker declaration can be divided into three parts.  In paragraphs 5-7, Ker provides a summary of various phone conversations he allegedly had with Jean Noelting (one of the Judgment Creditors) between mid-2015 and July 2019.  Ker contends that, during these conversations, Noelting admitted that the Judgment Creditors hired the law firm serving as local counsel in this case because of its political connections in Arizona, admitted that the Judgment Creditors have "powerful friends . . . at the 'Southern District' in New York," admitted that he (Noelting) had "in-person discussions with U.S. Attorneys at the DOJ in Arizona, specifically a 'Mr. Sexton' and his boss 'Dominic Lanza,'" and admitted that he (Noelting) had personally visited with "'them downtown' at the DOJ in Arizona and spoke to the person at the DOJ in charge of the FBI."  (*Id.*, citation omitted.) Next, in paragraph 8, Ker provides a summary of an undated conversation between Ker and Danzik during which Danzik allegedly "told [Ker] he had contact with Dominic Lanza via political connections . . . and as a whistleblower."  (*Id.*)  Finally, in paragraph 9, Ker contends that "RDX's legal counsel [from] the law firm Gibson and Dunn, personally knows Dominic Lanza" and that this attorney "told [Ker] [he] spoke to the DOJ in 2015 about RDX, Danzik, Noelting, and the CWT Parties."  (*Id.*)  The second exhibit is an unauthenticated copy of an email that Danzik purportedly sent to an attorney at Gibson, Dunn & Crutcher in September 2015.  (Doc. 231-2.)

These exhibits are unpersuasive for several reasons.  As an initial matter, Ker fails

to disclose in his declaration (and Wyo Tech fails to disclose in its motion) that Ker is embroiled in contentious litigation against the Judgment Creditors in a different lawsuit, before a different judge, in which Ker stands accused of aiding and abetting Danzik's fraud and in which Ker attempted to sue the Judgment Creditors for defamation. *CWT Canada II Ltd. P'ship v. Danzik*, 2019 WL 79001, *3 ("[One of the Judgment Creditors] sued . . . Ker, alleging that [he] knew of and aided in Danzik's fraudulent theft scheme. Ker filed a counterclaim to that suit."); *id.* at *10 ("The Court will grant CWT's motion for summary judgment with respect to Ker's defamation counterclaims."). Wilenchik & Bartness has represented both Danzik and Ker in that case. *Id.*

This potential bias bears upon an overarching flaw of the Ker declaration—it is all hearsay. Ker does not have personal knowledge of any of the matters described in his declaration and instead purports to summarize conversations he had with others. The hearsay issue is particularly problematic because most of the alleged conversations involved Noelting, with whom Ker is adverse. Moreover, many of the alleged conversations with Noelting involved topics (such as why the Judgment Creditors hired certain law firms or whether the Judgment Creditors have political connections in the Southern District of New York) that have no apparent relevance to why recusal is being sought here. Finally, with respect to Noelting's alleged statements about prior meetings and phone calls with government officials in Arizona, the undersigned judge has no recollection of ever meeting with Noelting or speaking with Noelting on the phone. Any hearsay suggestion to the contrary in the Ker declaration is, to the best of the undersigned judge's recollection, mistaken.[7]

Next, paragraph 8 of the Ker declaration states that Danzik told Ker he once spoke to the undersigned judge in the capacity of a "whistleblower." (Doc. 231-1 at 4.) Similarly, the unauthenticated email states that Danzik had just spoken to the undersigned judge and

---

[7]     Moreover, even if such a call theoretically had occurred, this would merely show there were two fleeting phone calls in 2015 (instead of the one addressed in the earlier recusal order) that were so unmemorable they didn't trigger any associations when this case was transferred in October 2018.

the conversation was "[a]ll positive." (Doc. 231-2 at 2.)  But both of these items are fully consistent with, and indeed corroborate, the earlier order's description of the 2015 conversation with Danzik: "The undersigned judge does not . . . recall this conversation as involving Danzik trying to explain why he shouldn't be charged with crimes (which is how the Subpoenaed Individuals characterize it in their motion).  It is inconceivable that the target of a criminal investigation, let alone a sophisticated white-collar target represented by Wilenchik & Bartness, would affirmatively call the USAO, without an immunity agreement in place, to discuss the merits of a pending investigation.  Instead, the undersigned judge's vague recollection is that Danzik called because he wanted the USAO to pursue an investigation of crimes allegedly committed by others."  (Doc. 209 at 8.)  Paragraph 8 and the email therefore add nothing to the recusal analysis.

Finally, as for paragraph 9 of the Ker declaration, it alleges that the undersigned judge "personally knows" a lawyer at the law firm of Gibson, Dunn & Crutcher who has represented Ker's company and who told Ker that he met with unspecified Department of Justice officials (but not the undersigned judge) in 2015 about matters involving Danzik and some of the parties in this case.  This is about as compelling as the theory that a judge must recuse from any case in which a friend's brother's co-worker is serving as local counsel.  The undersigned judge worked at Gibson, Dunn & Crutcher from 2003 to 2008 before joining the U.S. Attorney's Office.  It is global law firm with approximately 1,200 attorneys.  Unsurprisingly, the undersigned judge still knows some of the attorneys who work there.  This doesn't trigger a need to recuse whenever one of those acquaintances handles a different but tangentially-related matter involving some of the same parties.  Doc. 227-1 at 2 ("In short, judges need not disqualify themselves if a lawyer or party is an acquaintance, nor must they disclose acquaintanceships to the other lawyers or parties.").

\*\*\*

The undersigned judge fully agrees with, and has carefully considered, the Ninth Circuit's exhortation that "[i]f it is a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008).  Nevertheless, the law is equally clear

that "courts have a 'strong duty to sit' when there is no legitimate reason to recuse" and that a judge should not recuse "based on unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *Melendres v. Arpaio*, 2009 WL 2132693, *12 (D. Ariz. 2009) (citations omitted).

There is no legitimate reason for recusal here. The undersigned judge had a fleeting contact with Danzik in 2015 that was so insubstantial his name didn't ring a bell when this case was reassigned in October 2018. In the 11 months since then, the Court has issued many rulings in a hard-fought case. Due to apparent disagreement with those rulings, Wyo Tech has now filed a recusal motion that is predicated on dubious legal theories (*i.e.,* a judge must recuse whenever a friend's sibling's co-worker is serving as counsel or whenever the judge is acquainted with a lawyer who is handling a different case involving some of the same parties), questionable hearsay, and information that was mostly known to Wyo Tech's counsel at the time of the case reassignment. It would be unfair to the Judgment Creditors, corrosive to the rule of law, and an abdication of the judicial oath to recuse under these circumstances.

Accordingly, **IT IS ORDERED** that:

(1)     The Judgment Creditors' motion to strike (Doc. 228) is **denied**;

(2)     Wyo Tech's motion for recusal (Doc. 231) is **denied**; and

(3)     Any future "supplement" filed by Wyo Tech without authorization will be summarily stricken.

Dated this 27th day of September, 2019.

_____
Dominic W. Lanza
United States District Judge