Barbara J. Dawson (#012104)
Carlie Shae Tovrea (#029709)
Matt Jarvey (#031350)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bdawson@swlaw.com
      ctovrea@swlaw.com
      mjarvey@swlaw.com

*Attorneys for Plaintiff Wells Fargo Bank, N.A.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> Wyo Tech Investment Group, LLC; CWT Canada II Limited Partnership; Resources Recovery Corporation; and Jean Noelting, <br><br> Defendants. | No. CV 2:17-cv-04140-JJT <br><br> **WELLS FARGO'S MOTION FOR ATTORNEYS' FEES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> (Assigned to the Honorable Dominic W. Lanza) |
| Wyo Tech Investment Group, LLC, <br><br> Counterclaimant, <br><br> v. <br><br> Wells Fargo Bank, N.A., <br><br> Counterdefendant. | |
| Wyo Tech Investment Group, LLC, <br><br> Cross-Claimant, <br><br> v. <br><br> CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting, <br><br> Cross-Claim Defendants. | |

4811-7666-0079

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | Wyo Tech Investment Group, LLC,<br>　　　　　　　Third Party Plaintiff,<br>v.<br>Schlam Stone & Dolan, LLP, a New York Limited Liability Partnership; and Jeffrey M. Eilender,<br>　　　　　　　Third Party Defendants. |

Plaintiff Wells Fargo moves the Court for an order awarding Wells Fargo its reasonable attorneys' fees incurred in prosecuting this interpleader action. This motion follows the Court's Order on August 1, 2018, in which the Court dismissed all counterclaims against Wells Fargo, ordered Wells Fargo to interplead the disputed account at issue in this case, and discharged Wells Fargo from any liability. Doc. 69. Wells Fargo interpleaded the account on August 17, 2018. Doc. 74.

This motion also follows the Court's Order on December 19, 2018 (Doc. 94), which denied Wells Fargo's previous Motion for Attorney Fees (Doc 85). Wells Fargo has since reduced its request by $3,961.80 dollars to address the Court's comments regarding its fees. At this time, Wells Fargo seeks attorneys' fees in the amount of $35,619.50.

As an initial matter, the Court can award attorneys' fees to Wells Fargo at this point in the litigation. Although a final judgment has not been entered in this case, Local Rule 54.2 does not prevent Wells Fargo from requesting attorney fees at this stage of the proceeding. *See* LRCiv. 5.4.2(b)(2). Rather, the Court may, prior to the entry of judgment, award attorneys' fees pursuant to its equitable discretion to award fees in interpleader actions. *See Liberty Life Assur. Co. of Bos. v. Ramos*, No. CV-11-156-PHX-LOA, 2012 WL 10184, at *6 (D. Ariz. Jan. 3, 2012) (granting interpleader's motion for fees although dispute was unresolved between interested parties); *Duckett v. Enomoto*, No. CV-14-01771-PHX-NVW, 2015 WL 12941862, at *1 (D. Ariz. Dec. 30, 2015) (denying summary judgment but ordering interpleading party to "file a motion pursuant to Local Rule LRCiv 54.2" for requested attorney fees and costs); *see also Trs. of the Dirs.*

- 2 -

*Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) opinion amended on denial of reh'g, 255 F.3d 661 (9th Cir. 2000) ("The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court"). Although some courts have required a final judgment prior to an award of fees, these cases are distinguishable because they are not interpleader actions. *See, e.g.*, *Double J Inv., LLC v. Automation Control & Info. Sys. Corp.*, No. CV-13-00773-PHX-SRB, 2014 WL 12672618, at *1 (D. Ariz. Jan. 28, 2014) (denying motion for fees as premature in a breach of contract case, even though party was dismissed for plaintiffs' failure to state a claim); *Bueno v. Chang*, No. CV 16-03450-PHX-DGC (JZB), 2017 WL 4573617, at *2 (D. Ariz. Oct. 12, 2017) (denying motion for fees in regard to preliminary injunction).

Recently, Wells Fargo became aware that Defendants Wyo Tech and the Judgment Claimants[1] are currently engaged in settlement discussions and participated in a settlement conference beginning on Thursday, December 5, 2019. *See* Docs. 287 and 289. Because any settlement would necessarily allocate the interpleaded funds, Wells Fargo requests its attorneys' fees, at this time, to protect its ability to seek equitable reimbursement for its efforts. *See Duckett*, 2015 WL 12941862, at *1 (reimbursing the interpleading party's attorneys' fees in light of interpleader's "equitable considerations"). Should the interested parties deplete the funds prior to such an award, Wells Fargo, as the disinterested stakeholder, would be unduly prejudiced. *See, e.g.*, *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 898 (9th Cir. 2012) (affirming the district court judgment in interpleader as "[t]he availability of interpleader need not produce a harsh result for a legitimate claimant who is forced into interpleader due to a rival claimant's non-meritorious assertions").

Therefore, Wells Fargo respectfully submits this Motion for Attorney Fees pursuant to LRCiv 54.2, which is supported by the following Memorandum of Points and

---

[1] The "Judgment Claimants" comprise Defendants CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting.

- 3 -

Authorities and the exhibits attached hereto.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  BACKGROUND

Through no fault of its own, Wells Fargo found itself caught between two adverse claimants—Defendants Wyo Tech and the Judgment Claimants—who continue to make competing claims to Wyo Tech's bank account that Wells Fargo held but had no interest in. Wells Fargo faced a choice: interplead the disputed account or face potentially costly litigation against one or more of the adverse claimants. Wells Fargo chose what was likely to be the less costly option—interpleader. By making that choice, Wells Fargo benefited the competing Defendants by promoting early resolution of the account's ownership and by preserving the account in the care of the Clerk. In conferring that benefit, however, Wells Fargo also incurred the expense of bringing (and litigating) this action. Wells Fargo should not be forced to bear that expense when it had no interest in the Defendants' dispute in the first place.

Both the law of interpleader and Wyo Tech's account agreement governing the disputed account permit Wells Fargo to be reimbursed for the attorneys' fees it incurred in prosecuting this action. Wells Fargo thus asks that the Court order the Clerk to disperse to Wells Fargo funds from the interpleaded account sufficient to cover Wells Fargo's fees.

On August 1, 2018, the Court granted two of Wells Fargo's pending motions: its Motion to Interplead Funds and for Order of Discharge (Doc. 7) and its Motion to Dismiss Counterclaims (Doc. 46). *See* Doc. 69 at 8. In doing so, the Court ordered Wells Fargo to deposit the funds in Wyo Tech's disputed account with the Clerk, and ordered that, "[o]nce Wells Fargo makes the deposit, it is discharged from any liability with regard to

---

[2] In compliance with LRCiv. 54.2(d), attached for this Court's review at Exhibits A through D are: (A) Statement of Consultation; (B) Redacted Wells Fargo Law Department Matter Confirmation Form for this matter; (C) Task-Based Itemized Statement of Fees; and (D) the Affidavit of Carlie Tovrea. Although requested by LRCiv. 54.2(d)(2), a fee agreement is not attached, as Snell & Wilmer did not enter into a specific fee agreement with Wells Fargo relating to this matter. Instead, under the general engagement of the firm by Wells Fargo, Wells Fargo agreed to pay (or has already paid) Snell & Wilmer at the hourly rates listed, and for the services described, in Exhibit C.

- 4 -

1   the funds deposited and dismissed from this action." *Id.* Wells Fargo deposited the funds
2   on August 17, 2018. Doc. 74. The Court also restrained the Defendants from instituting
3   any proceeding against Wells Fargo with respect to the funds. Doc. 69 at 8. And the
4   Court dismissed Wyo Tech's counterclaims against Wells Fargo. *Id.* Wells Fargo was
5   successful against Wyo Tech's attempts to thwart the purposes of interpleader, and Wells
6   Fargo prevailed on all of its arguments against Wyo Tech's counterclaims.

7   Although the Court granted Wells Fargo's Motion to Interplead, the Court's Order
8   did not address Wells Fargo's request for attorneys' fees raised in that motion. Doc. 7 at
9   4–5. Wells Fargo thus requests its fees separately in this motion.

10  **II.    WELLS FARGO IS ELIGIBLE FOR AN AWARD OF ATTORNEYS' FEES.**
11  Wells Fargo is eligible for an award of its attorneys' fees based on both the law of
12  interpleader and the terms of its account agreement.

13  **A.    Law of interpleader**
14  The law of interpleader authorizes the award of attorneys' fees in favor of the
15  interpleader plaintiff. "[T]he proper rule, in an action in the nature of interpleader, is that
16  the plaintiff should be awarded attorney fees for the services of his attorneys in
17  interpleading." *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188,
18  194 (9th Cir. 1962). Similarly, the "court has discretion to award costs" to the
19  interpleader plaintiff "whenever it is fair and equitable to do so." 7 C. Wright, A. Miller
20  & M. Kane, Federal Practice and Procedure § 1719 (2d ed. 1986) [hereafter "Wright"].
21  The rationale for awarding the plaintiff its fees and costs is twofold. First, "the plaintiff
22  has benefited the claimants by promoting early litigation on ownership of the fund, thus
23  preventing dissipation." *Schirmer Stevedoring Co.*, 306 F.2d at 193 (citation omitted).
24  Second, "the plaintiff should not have to pay attorney fees in order to guard himself
25  against the harassment of multiple litigation." *Id.* "There is no equity in compelling him
26  to bear these charges. On the contrary, the parties who have benefited thereby should bear
27  them." Wright § 1719.

28

**B.      Wyo Tech's account agreement**

Additionally, Arizona law holds that a contractual provision for attorneys' fees will be enforced according to its terms. *Beaulieu Grp. LLC v. Inman, No.* CV-10-1590-PHX-LOA, 2011 WL 5833820, at *2 (D. Ariz. Nov. 21, 2011) (citing *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (Ct. App. 1994)). Wells Fargo is eligible for an award of its fees and expenses under its contract with Wyo Tech—called the Business Account Agreement—which governs the disputed account. That agreement is updated periodically. The version of the agreement operative at the time the interpleader funds were deposited with the Court is attached as Exhibit E. The prior version, operative when this case was filed, is attached as Exhibit F.[3] An affidavit authenticating both versions of the agreement is attached as Exhibit G. Both versions of the agreement contain the same terms relevant to Wells Fargo's fee request. Because reimbursement under Wyo Tech's account agreement is a matter of what Wells Fargo is *contractually* entitled to, it is not subject to whatever limitations, if any, that federal interpleader case law might place on reimbursement.

The account agreement governs what Wells Fargo may do in the event of an "adverse claim" against Wyo Tech's account. An adverse claim occurs when "[a]ny person or entity makes a claim against your [Wyo Tech's] account funds." Ex. E at 15; Ex. F at 12. In the event of an "adverse claim," the account agreement authorizes Wells Fargo to: "Freeze all or part of the funds in your account" and "Pay the funds into an appropriate court." Ex. E at 15; Ex. F at 12. Most importantly, the agreement provides that Wells Fargo "may charge any account you maintain with us for our fees and expenses in taking these actions (including attorney's fees and expenses)." Ex. E at 16; Ex. F at 12. And the agreement separately provides that if Wells Fargo "incur[s] any fees or expenses (including attorney's fees and expenses) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us." Ex. E at 16;

---

[3] The relevant excerpt from the agreement attached as Exhibit B is also attached to Wells Fargo's Motion to Interplead, at Doc. 7-1.

- 6 -

Ex. F at 13. The terms of the account agreement authorize an award of attorneys' fees in favor of Wells Fargo.

## III. **WELLS FARGO IS ENTITLED TO ITS ATTORNEYS' FEES.**

Wells Fargo is entitled to its fees both under the law of interpleader and under Wyo Tech's account agreement governing the account deposited with the Clerk. Each is an independent basis to award Wells Fargo's fees, and Wells Fargo is entitled to those fees.

The Ninth Circuit Court of Appeals has observed that interpleader fee awards are "typically modest" because they do not cover fees for "litigating the merits of the adverse claimants' positions." *Trs. of the Dirs. Guild*, 234 F.3d at 427. Wells Fargo's counsel have attempted to minimize their fees in prosecuting this action, consistent with maintaining the quality and accuracy of Wells Fargo's filings. But this interpleader case has not been "typical." While Wells Fargo, as the disinterested stakeholder, has avoided litigating the merits of Wyo Tech's and the Judgment Claimants' adverse claims, Wells Fargo was forced to research and brief substantially more issues than it would typically because it had to defend against Wyo Tech's counterclaims, which the Court has now dismissed. Wells Fargo had to defend against Wyo Tech's counterclaims in order to effect the purpose of interpleader—to "discharge the plaintiff from further liability" and to restrain Wyo Tech from "instituting or prosecuting any proceeding" related to the disputed account. 28 U.S.C. § 2361.

Absent Wyo Tech's counterclaims, Wells Fargo would have simply filed an interpleader complaint, a short (perhaps uncontested) motion to interplead funds, and its mandatory initial disclosures, after which it would have interpleaded the funds and requested a modest fee award. Instead, however, Wyo Tech pursued two counterclaims against Wells Fargo for wrongful garnishment and aiding and abetting wrongful garnishment and tortious interference with contractual relations and business expectancies, simply based on the fact that Wells Fargo attempted to interplead Wyo Tech's disputed account rather than hand it over to Wyo Tech. Wyo Tech also opposed Wells Fargo's motion to interplead making it a contested matter. In other words, Wyo

1  Tech tried to subject Wells Fargo to liability for pursuing a remedy, interpleader, designed
2  to extricate Wells Fargo from liability. Wyo Tech's counterclaims forced Wells Fargo to
3  draft an answer, research Arizona, New York, and federal law applicable to the
4  counterclaims, brief a motion to dismiss, and expand the issues briefed in its motion to
5  interplead. And Wells Fargo had to do these things just to interplead an account in which
6  Wells Fargo acknowledged all along that it had no interest.

7  In short, what typically would have been a simple process was made complicated
8  through Wyo Tech's counterclaims and challenges, and not due to any fault of Wells
9  Fargo. Wyo Tech's complications generated fees that Wells Fargo otherwise would not
10 have incurred. Under these circumstances, Wells Fargo is entitled to an award of its
11 attorneys' fees and should not be penalized because its fee request is less "modest" than it
12 otherwise might have been.

13 Because Wells Fargo facilitated the orderly resolution of the adverse parties'
14 dispute by filing this interpleader action, and because Wells Fargo incurred costs
15 associated with extricating itself—a disinterested stakeholder—from the adverse parties'
16 dispute, Wells Fargo requests that the Court award its reasonable attorneys' fees to be
17 "paid from the interpleaded fund itself." *Tise*, 234 F.3d at 427.

18 Additionally, the terms of the account agreement and what occurred in this case
19 show that Wells Fargo is entitled to its attorneys' fees. Here, the Judgment Claimants
20 made an adverse claim against Wyo Tech's account by issuing the Restraining Notice in
21 which the Judgment Claimants claimed that they were entitled to funds in the account.
22 Doc. 1-1 at 10–13. In such a situation, the account agreement permits Wells Fargo to do
23 exactly what it did in this case, and Wells Fargo is entitled to fees pursuant to the account
24 agreement. *See* Ex. E at 15-16; Ex. F at 12-13.

25 Wyo Tech's account agreement thus unambiguously permits Wells Fargo to charge
26 against the account Wells Fargo's fees incurred in interpleading the account. To comply
27 with the Court's August 1, 2018, Order, Wells Fargo deposited with the Clerk the full
28 balance of Wyo Tech's account without first debiting the account for any fees. Now that

- 8 -

the account has been interpleaded with the Clerk, however, Wells Fargo is entitled to be reimbursed for its attorneys' fees from those interpleaded funds, as it would otherwise be entitled to be under the account agreement.

Additionally, Wells Fargo is also entitled to fees incurred in preparing its Motion for Attorneys' Fees and this Memorandum. *See Gametech Intern., Inc. v. Trend Gaming Systems, L.L.C.*, 380 F.Supp.2d 1084, 1101 (D. Ariz. 2005) (awarding attorneys' fees incurred in preparing a fee application when fee award was based on the parties' contract). Here, attorney services were necessary to assist Wells Fargo in seeking recovery of its attorneys' fees expended by filing this interpleader action and defense of Wyo Tech's needless counterclaims.[4]

## IV. REASONABLENESS OF REQUESTED AWARD.

Wells Fargo requests an award of its attorneys' fees detailed in the tables below.

| Attorney Fees | Amount |
|---|---|
| Barbara J. Dawson | $3,082 |
| Carlie Tovrea | $7,631.80 |
| Matthew Jarvey | $16,282 |
| Shalayne Pillar | $7,892.90 |
| **TOTAL** | **$34,888.70** |

| Para-Professional Fees | Amount |
|---|---|
| Ranita Rozenberg | $730.80 |
| **TOTAL** | **$730.80** |

| | |
|---|---|
| **TOTAL REQUEST** | **$35,619.50** |

An affidavit supporting these fees is attached as Exhibit D. An itemized billing spreadsheet is attached as Exhibit C (and also provided in Microsoft Excel format to the Court and opposing counsel by email).

In addition to the accompanying affidavit attached as Exhibit D, which attests to the reasonableness and necessity of the requested fees, an analysis of the factors identified in LR 54.2(c)(3) shows that Wells Fargo's requested fee award is reasonable.

---

[4] As identified in Exhibit C, Wells Fargo does not seek attorneys' fees for revisions to its motion for attorneys' fees completed after August 2018.

- 9 -

### A. The Time and Labor Required of Counsel.

The legal work performed by Wells Fargo's counsel was necessary to Wells Fargo prevailing in this action. The number of hours expended by counsel was reasonable, as they were incurred in performing services necessary to pursue the interpleader and ward off Wyo Tech's attempts to hold Wells Fargo liable for pursuing interpleader of the contested funds. As identified in Exhibits C and D, the majority of tasks undertaken by Wells Fargo's counsel were necessitated by Wyo Tech's actions in opposing the interpleader and pursuing meritless counterclaims, unnecessarily increasing the time and labor required of Wells Fargo's counsel to interplead the funds and secure a discharge of liability, as well as to dismiss Wyo Tech's counterclaims.

As noted above, Wells Fargo is also entitled to fees incurred in preparing its Motion for Attorneys' Fees. *See Gametech Intern., Inc.*, 380 F.Supp.2d at 1101. Here, attorney services were necessary to assist Wells Fargo in seeking recovery of its attorneys' fees expended by filing this interpleader action and defense of Wyo Tech's meritless counterclaims.

### B. Counsel's Billing Rates Were Reasonable and Customary.

The billing rates charged by Snell & Wilmer to Wells Fargo in this action were reasonable, as they were a fixed rate, and the hourly rates charged were at or below the customary billing rates charged by Snell & Wilmer during the relevant time periods for the attorneys involved. In particular, Ms. Dawson, Ms. Tovrea, and Mr. Jarvey all charged a lower billing rate in this case than they typically charge, and Ms. Pillar charged a similar or lower billing rate in this case that she typically charges.[5] Ex. D, ¶¶ 8–11.

---

[5] Regarding Ms. Pillar's billing rates, and in anticipation of Wyo Tech's objections (which it also raised in its Response to Wells Fargo's previous Motion for Attorney Fees, Expenses, and Costs (*see* Doc. 87)), Wells Fargo notes that the fact that Ms. Pillar was, for a time, charging a higher hourly rate than the more-experienced Ms. Tovrea or Mr. Jarvey was a function of counsel's fee arrangement in which an attorney's initial billing rates were locked in for a period of time, even as the attorney gained more experience. This arrangement actually evidences the *reasonableness* of Wells Fargo's fee request because it means that more-experienced members of Wells Fargo's legal team were performing work at steep, locked-in discounts.

Moreover, as recognized by the Court, Wells Fargo's counsel's billing rates were below the median rates for Maricopa County.[6] *See* Doc. 94 (noting the Court "doesn't share Wyo Tech's view that Wells Fargo's attorneys' billing rates are astronomical and unreasonable" in light of the Maricopa County survey). In 2016, the Arizona Attorney reported that the median hourly billing rate in Maricopa County was $282. Ms. Tovrea, Ms. Pillar, and Mr. Jarvey *all* charged rates below that (now-two-year-old) median rate. Whatever Wyo Tech might think of counsel's rates, in "commercial litigation between fee-paying clients . . . the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187–88, 673 P.2d 927, 931–32 (Ct. App. 1983).

### C. Counsel Are Experienced, Reputable, and Able.

The attorneys representing Wells Fargo in this lawsuit practice in the area of commercial litigation. Each attorney is experienced, reputable, and able. Barb Dawson is a partner attorney at Snell & Wilmer. She received her law degree from the University of Iowa in 1988 and has been licensed to practice law in Arizona since 1988. Ms. Dawson has practiced commercial litigation at Snell & Wilmer since 1989, and she focuses on general commercial and financial services litigation.

Carlie Tovrea is an associate attorney at Snell & Wilmer. She received her law degree from the University of Iowa College of Law in 2012, served as a law clerk to a federal judge, and has been licensed to practice law in Arizona since 2012. She has practiced commercial litigation at Snell & Wilmer since 2013, and her focus is on general commercial and financial services litigation.

Matt Jarvey is an associate attorney at Snell & Wilmer. He received his law degree from Drake University Law School in 2013, served as a law clerk to a federal judge, and has been licensed to practice law in Arizona since 2014. Mr. Jarvey has practiced

---

[6] *See* Olabisi Whitney & Rick DeBruhl, *Attorney Survey*, Arizona Attorney, p. 25 (Sept. 2016), *available at* http://www.azattorneymag-digital.com/azattorneymag/201609/?pg=27#pg27.

- 11 -

1  commercial litigation at Snell & Wilmer since 2014 and has focused on financial services
2  litigation, among other things.
3        Shalayne Pillar is an associate attorney at Snell & Wilmer.  She received her law
4  degree from the Washington University School of Law in 2017, and has been licensed to
5  practice law in Arizona since 2017.  Ms. Pillar has practiced commercial litigation at Snell
6  & Wilmer since 2017, and she focuses on general commercial litigation.

### D. **Counsel Obtained a Favorable Result.**

As a result of the work that Wells Fargo's counsel performed, the interpleader action was successful and all counterclaims against Wells Fargo were dismissed and Wyo Tech obtained nothing from Wells Fargo, as discussed above.

### E. **Counsel Exercised Independent Billing Judgment.**

To be clear, the fees requested above are not the full amount of fees that Wells Fargo has incurred in this interpleader action.  Wells Fargo's counsel have exercised independent billing judgment and have excluded from this fee request several categories of billing entries, which describe work that was necessary to prosecute this action but which was arguably not directly related to Wells Fargo's request for interpleader or its defense against Wyo Tech's counterclaims.  Ex. D, ¶ 16.  In its original motion, Wells Fargo exercised this independent billing judgment to reduce its requested fees by at least $8,760.47.  Doc. 85.

Since then, and after considering the Court's December 19, 2018 Order (Doc. 94), Wells Fargo has applied additional independent billing judgment to address the issues raised by the Court.  As a result, Wells Fargo has reduced its request by additional $3,961.80 (which does not include additional fees incurred, but not requested, since late August 2018).  *Id.*  As a result, Wells Fargo only seeks the remaining fees identified above, which directly relate to Wells Fargo's pursuit of this interpleader action or defending against Wyo Tech's now-dismissed counterclaims.

## V. CONCLUSION

Wells Fargo had no part in the underlying account dispute that gave rise to this action. Yet, through no fault of its own, it was forced to incur fees to interplead Wyo Tech's disputed account when Wells Fargo found itself caught in the middle of a dispute related to that account. By interpleading the account, Wells Fargo benefited the adverse claimants by facilitating an orderly and early resolution of the account's ownership. As a matter of equity, and as a matter of Wyo Tech's account agreement, Wells Fargo should not have to bear the expense of interpleading an account in which it has no interest. This is especially true given that Wells Fargo was forced to spend substantially more time litigating this interpleader action because it had to deal with Wyo Tech's counterclaims, which Wells Fargo did not invite, and which the Court has now dismissed. Wells Fargo thus asks the Court to award its fees, listed in the section above, to be satisfied from the interpleaded funds.

DATED this 9th day of December, 2019.

SNELL & WILMER L.L.P.

By: *s/Carlie Tovrea*
Barbara J. Dawson
Carlie Shae Tovrea
Matt Jarvey
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Plaintiff Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Dennis I. Wilenchik, Esq.
Wilenchik & Bartness, P.C.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

and

Leo R. Beus, Esq.
Beus Gilbert, P.L.L.C.
701 N. 44th Street
Phoenix, Arizona 85008
lbeus@beusgilbert.com

*Attorneys for Defendant Wyo Tech Investment Group LLC*

J. Henk Taylor
Ryan Rapp & Underwood, P.L.C.
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012

and

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
Schlam Stone & Dolan LLP
26 Broadway
New York, New York 10004
jeilender@schlamstone.com
bnash@schlamstone.com
jwurtzel@schlamstone.com

*Attorneys for Defendants and Crossclaim Defendants CWT Canada II Limited Partnership, Resource Recovery Corporation, Jean Noelting; and Third-Party Defendants Schlam Stone & Dolan LLP, Joshua Wurtzel and Jeffrey M. Eilender*

  s/Pati Zabosky

4811-7666-0079