**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wyo Tech Investment Group LLC, et al., | |
| Defendants. | |

Pending before the Court is the parties' most recent status report. (Doc. 298.) For the following reasons, the stay will remain in place until the parties resolve their litigation before Judge Logan in *Resource Recovery Corp. v. Inductance Energy Corp. et al.*, 20-CV-764-PHX-SPL.

## RELEVANT BACKGROUND

In this interpleader action, which was initiated in November 2017, the CWT Parties and Wyo Tech each contend they are entitled to $546,282.55 in funds that were previously held in an account at Wells Fargo. (*See generally* Doc. 119.) The litigation has been extremely contentious, involving sanctions, contempt orders, and recusal requests. (*See generally* Doc. 246.) Nevertheless, the parties filed a notice on November 20, 2019 announcing that they "and their affiliates have agreed to have global settlement discussions in an attempt to settle this and all other related pending litigation." (Doc. 287 at 1.) Based on this development, the parties asked the Court to enter a stay. (*Id.*) This request was granted. (Doc. 289.)

At the time the stay was issued, there was one pending motion: the CWT Parties' motion to transfer a different case to the undersigned judge—a fraudulent transfer action they filed against Wyo Tech and Inductance Energy Corporation ("Inductance") in September 2019, which bears the case number 19-CV-5255-PHX-MTL and has been assigned to Judge Liburdi (the "Fraudulent-Transfer Action"). (Doc. 238.) Additionally, about two weeks after the stay was issued, Wells Fargo filed a motion for attorneys' fees. (Doc. 290.) That motion also remains unresolved in light of the stay.

On December 13, 2019, the parties filed a second status report. (Doc. 291.) In it, they requested a continuation of the stay because "scheduling issues" had caused the mediation to be postponed until January 2020, but they clarified that "[o]ver the last several weeks, the parties' principals have also productively communicated in writing and by phone concerning potential settlement terms and issues to be resolved at this mediation." (*Id.* at 2.) Given these representations, the Court kept the stay in place. (Doc. 292.)

On January 24, 2020, the parties filed a third status report. (Doc. 293.) It stated:

> [T]he parties held a mediation in Phoenix, Arizona before the Honorable Barry C. Schneider, at which the parties entered into a binding term sheet. Under this term sheet, upon execution of formal settlement documentation and closing of the transaction contemplated by the parties' settlement, the claims of [the CWT Parties] in this action will be resolved by way of assignment to William J. Hinz or his designee. The parties are in the process of negotiating a formal settlement agreement. Once executed, under the parties' settlement, there will be a 60-day waiting period before the contemplated transaction closes. Thus, the parties jointly request that the stay of this action be continued until further order of this Court.

(*Id.* at 2.) Accordingly, the Court allowed the stay to remain in place and ordered the parties to file a substitution order (or further status report) by April 24, 2020. (Doc. 294.)

On March 11, 2020, the CWT Parties filed a motion asking the Court to hold a telephonic conference to address their "contemplated motion to enforce the parties' binding term sheet." (Doc. 295 at 2.) The following day, the Court denied this request, explaining that the earlier orders only contemplated lifting the stay before April 24, 2020 at the joint request of the parties. (Doc. 297.) The Court also encouraged the parties to continue working toward a settlement. (*Id.*)

On April 20, 2020, one of the CWT Parties filed a new lawsuit in the District of

- 2 -

Arizona. It is captioned *Resource Recovery Corp. v. Inductance Energy Corp et al.*, CV-20-764-PHX-SPL, and has been assigned to Judge Logan (the "Term-Sheet Action"). As for the nature of the lawsuit, the complaint explains:

> This is an action to enforce a settlement agreement Defendants entered into with RRC and the CWT Parties to resolve several lawsuits pending in this District and in other courts, in exchange for a payment of $2.5 million by the Defendants to RRC and the CWT Parties. Under the terms of the settlement agreement, all the Defendants are jointly and severally liable for the $2.5 million payment. But despite RRC and the CWT Parties' performance of all their obligations, Defendants have unaccountably repudiated the validity of the agreement and refused to pay. Thus, RRC now sues for this settlement payment and specific enforcement of the Defendants' nonmonetary obligations under the agreement.

(*Id.*, Doc. 1, ¶ 1.) The complaint also notes that "[t]his action is related to the interpleader action captioned *Wells Fargo Bank, N.A. v. Wyo Tech Investment Group, LLC, et al.*, Case No. 17-cv-4140-DWL." (*Id.* at 2 n.1.)

On April 24, 2020, the parties filed their fourth status report, which is addressed below. (Doc. 298.)

**DISCUSSION**

I.      The Parties' Arguments

In the fourth status report, the CWT Parties argue that the parties entered into a "binding" settlement agreement—in the form of a term sheet—during the mediation in January 2020, that William Hinz (who is an investor in Wyo Tech and the CEO of Inductance) agreed under the term sheet to be personally responsible for the $2.5 million settlement payment, that Mr. Hinz's personal guarantee was a critical settlement term. (Doc. 298 at 2-4.) Nevertheless, the CWT Parties contend that Mr. Hinz and the Wyo Tech parties have refused, in the months since the mediation, to execute a formal settlement agreement that is consistent with those terms and have instead attempted to impose a "material modification" by "insist[ing] that any follow-up agreement make only [a defunct company called] RDX liable for this [$2.5 million] payment." (*Id.*) As relief, "the CWT Parties request that the stay in this action be lifted solely to the extent of (1) allowing the CWT Parties to move to transfer the Term-Sheet Action to Your Honor, and allowing this Court to rule on that motion, and (2) allowing this Court to rule on the CWT Parties' motion

- 3 -

to transfer the Fraudulent-Transfer Action to Your Honor." (*Id.* at 7.)

Wyo Tech, unsurprisingly, has a much different take on the current state of affairs. In its portion of the status report, Wyo Tech contends that it (and Inductance) "always contemplated that RDX would be solely liable for the payment," that the law firms who have represented it in this action—Wilenchik & Bartness and Beus Gilbert—were improperly excluded from attending the mediation, that Mr. Hinz "inadvertently signed [the term sheet] on a signature line with his personal name, not Inductance, as he intended," that the mediator "has no recollection of any discussion or agreement reached that the individual signatories would personally guarantee or become liable for the payment," and that the first draft of the settlement agreement, which was drafted by the CWT Parties following the mediation, didn't require Mr. Hinz to personally guarantee the payment. (Doc. 298 at 7-13.) As for how to proceed, Wyo Tech offers two options: (1) "the Court should dismiss this action with prejudice and return the interpled funds," or (2) "alternatively, [the Court should] continue the stay in this case until the CWT Parties' new lawsuit filed on April 20, 2020 (2:20-cv-00764-SPL) . . . is resolved." (*Id.* at 7-8.) Wyo Tech also disagrees with the CWT Parties' suggestion that this Court could lift the stay and resolve the enforceability of the term sheet, arguing that the Court "only has jurisdiction over Wyo [Tech] and the CWT Parties, but the Terms Sheet was signed by several individuals and entities that are not parties to this action," such that the Court "has no jurisdiction over them and therefore cannot pass upon the enforceability of the Terms Sheet." (*Id.* at 9.)

II.   Analysis

It is disappointing, although perhaps not surprising, that the parties' settlement attempt has now become the springboard for even more litigation. As for how to proceed, one option would be to lift the stay for the limited purpose of addressing whether the parties entered into a binding settlement agreement during the mediation. In general, a district court "has inherent authority to enforce agreements that settle litigation before it." *Slater v. Arizona*, 2019 WL 5801981, *3 (D. Ariz. 2019) (citing *In re City Equities Anaheim, Ltd.*,

1  22 F.3d 954 (9th Cir. 1994)).  The difficulty here, however, is that the alleged settlement
2  agreement isn't limited to these parties and this action—instead, it is a global settlement
3  agreement that, in the CWT Parties' view, resolves an array of different lawsuits and binds
4  an array of different individuals and entities who are not parties in his action.  As Wyo
5  Tech points out, it is unclear whether the Court would possess authority, as part of this
6  action, to address the enforceability of such an agreement.  Additionally, given that the
7  CWT Parties have now filed a different action to resolve the enforceability question, there
8  are sound reasons not to address it as part of this case.

9  Another option (which the CWT Parties propose) would be to lift the stay so the
10  CWT Parties can file a motion to transfer the Term-Sheet Action from Judge Logan to this
11  Court.  Although this approach might make sense from an efficiency perspective, *see*
12  LRCiv 42.1(a), the presence in the Term-Sheet Action of counsel from Fennemore Craig,
13  P.C. (*see* 20-CV-764-PHX-SPL, Doc. 11 at 4), a firm in which the undersigned judge's
14  spouse is a shareholder, creates a conflict that precludes the Court from overseeing it.

15  Wyo Tech suggests a third option would be to declare that this case is over and
16  release the disputed money back to Wyo Tech.  (Doc. 298 at 7.)  It is unclear why Wyo
17  Tech believes this would be a legally appropriate outcome, given the pending dispute over
18  the terms and enforceability of the alleged settlement agreement.

19  The remaining option is to allow the stay to remain in place while the parties (and
20  non-parties) litigate the Term-Sheet Action before Judge Logan.  Although this is an
21  imperfect option, because it will delay the resolution of this long-pending action, it is the
22  best option available.  Indeed, if the term sheet is deemed enforceable, it appears this action
23  will be resolved without the need for further litigation.

24  …
25  …
26  …
27  …
28  …

Accordingly, **IT IS ORDERED** that the stay in this action shall remain in effect pending the resolution of the Term-Sheet Action. In the interim, the two pending motions in this action (Docs. 238, 290) will remain unresolved. The parties are ordered to file a joint status report within five days of the resolution of the Term-Sheet Action.

Dated this 1st day of May, 2020.

Dominic W. Lanza
United States District Judge