**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank NA, | No. CV-17-04140-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| WYO Tech Investment Group LLC, et al., | |
| Defendants. | |

On September 7, 2016, CWT Canada II Limited Partnership, Resources Recovery Corporation, and Jean Noelting (collectively, "Judgment Creditors") obtained a $7 million judgment in New York state court against Dennis Danzik and RDX Technologies Corporation (collectively, "Judgment Debtors"). To effectuate the judgment, the Judgment Creditors' law firm issued a "restraining notice" to a New York-based branch of Plaintiff Wells Fargo Bank ("Wells Fargo"). The notice asserted that Wells Fargo was required to freeze a particular account with a balance of $546,282.55.

Upon receipt of the notice, Wells Fargo froze the account. Although the Judgment Creditors had reason to suspect the Judgment Debtors held an interest in the frozen account, it was not actually held in either of the Judgment Debtors' names. Instead, it was held in the name of Defendant Wyo Tech Investment Group, LLC ("Wyo Tech"), an Arizona-based company. When Wyo Tech learned its account had been frozen, it complained to the Judgment Creditors and to Wells Fargo, disputed whether the Judgment Debtors had any interest in the account, and threatened to sue.

In response, Wells Fargo filed a complaint for interpleader in this Court under 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure. (Doc. 1.) Wyo Tech, in turn, attempted to assert various tort-based counterclaims against Wells Fargo (Doc. 37), but the Court eventually dismissed those counterclaims, authorized Wells Fargo to interplead the disputed funds, and discharged Wells Fargo from liability (Doc. 69). Afterward, Wells Fargo filed a motion for attorneys' fees (Doc. 85), which was denied without prejudice for procedural reasons (Doc. 94), and by the time Wells Fargo refiled its fee request in December 2019 (Doc. 290), the case was stayed (Doc. 289).

Wells Fargo's fee request has remained pending for nearly two years due to the continuation of the stay, but based on recent developments, all parties now agree that the stay may be lifted for the limited purpose of resolving the fee request. (Doc. 306.) For the following reasons, the request is granted in full.

**BACKGROUND**

On September 25, 2018, Wells Fargo submitted its first motion for attorneys' fees, seeking $39,981.30. (Doc. 85.) The Court denied the motion without prejudice because it did not follow Local Rule 54.2's formatting and organizational requirements and lacked a meet-and-confer certification. (Doc. 94 at 13.) The Court also expressed uncertainty about whether the motion was premature under Local Rule 54.2 and questioned the vagueness and extent of certain time entries. (*Id.* at 14-15 & n.7.)

On November 20, 2019, at the parties' request (Doc. 287), the Court granted a stay of all deadlines in support of settlement negotiations. (Doc. 289.) For reasons that are too convoluted to summarize in succinct fashion, the stay remains in effect to this day, pending the resolution of a Ninth Circuit appeal in a related action. (Doc. 306.)

On December 9, 2019, Wells Fargo submitted a second motion for attorneys' fees, this time seeking only $35,619.50. (Doc. 290.)

On June 30, 2021, with the parties' agreement, the Court lifted the stay for the limited purpose of resolving Wells Fargo's motion for attorneys' fees. (Doc. 306.)

On July 14, 2021, Wyo Tech filed a response. (Doc. 310.) The Judgment Creditors,

in contrast, did not file a response.

On July 20, 2021, Wells Fargo filed a reply.  (Doc. 311.)  Nobody requested oral argument.

**ANALYSIS**

I.   Timeliness

In the December 2018 order denying Wells Fargo's first motion for attorneys' fees, the Court observed that "[i]t is . . . unclear whether Wells Fargo's motion for attorneys' fees is premature under Local Rule 54.2." (Doc. 94 at 14 n.7.)  Upon further consideration, the Court is satisfied that Wells Fargo's current motion is not premature.

As an initial matter, all parties agree that Wells Fargo's motion is ripe for resolution. (Doc. 290 at 1-2; Doc. 310 at 3.)  This agreement, standing alone, authorizes the Court to proceed.  *Cf. Patton v. Johnson*, 915 F.3d 827, 836 (1st Cir. 2019) ("Where, as here, all parties agree to the application of a particular source of law, a court is free to forego an independent analysis and accept the parties' agreement.") (internal quotation marks omitted).

Even if the parties were not in agreement, the Court would conclude that, at least under the unusual circumstances of this case, it is permissible to resolve the fee request despite the absence of a final judgment.  The starting point for the analysis is Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, which provides that a claim for attorneys' fees must be "filed no later than 14 days after the entry of judgment" and requires the movant to "specify the judgment, rule or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(i–ii).  Similarly, Local Rule 54.2(b)(2) provides that "[u]nless otherwise provided by statute or court order entered in an individual case, the party seeking an award of attorneys' fees and related non-taxable expenses must file and serve a motion for award of attorneys' fees . . . within fourteen (14) days of the entry of judgment in the action with respect to which the services were rendered."  LRCiv 54.2(b)(2).  Because both rules seem to view the entry of judgment as the triggering event after which a claim for attorneys' fees may be submitted, this Court has previously

interpreted them as requiring the entry of judgment before attorneys' fees may be awarded. *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. No. 9*, 2019 WL 1894719, *3 (D. Ariz. 2019). Other courts have reached the same general conclusion. *See, e.g.*, *Bueno v. Chang*, 2017 WL 4573617, *3 (D. Ariz. 2017); *Double J Inv., LLC v. Automation Control & Info. Sys. Corp.*, 2014 WL 12672618, *1 (D. Ariz. 2014). On the other hand, some courts have granted fee requests in interpleader actions before entry of final judgment, albeit without specifically addressing whether the request was premature. *Liberty Life Assur. Co. of Bos. v. Ramos*, 2012 WL 10184, *5–6 (D. Ariz. 2012) (awarding fees before entry of final judgment); *Duckett v. Enomoto*, 2015 WL 12941862, *1 (D. Ariz. 2015) (same).

Although the Court is not prepared to conclude that the issuance of a fee award is always permissible in an interpleader action before the entry of judgment, that approach makes sense here. Not only do the parties agree that Wells Fargo's request should be resolved now, but this action has been stayed for nearly two years and will remain stayed indefinitely, while the parties pursue a Ninth Circuit appeal of a related action. All the while, Wells Fargo—which sought to interplead the disputed funds in 2017, in the hope of quickly extracting itself from the controversy—has been forced to wait patiently for reimbursement. The time has come to resolve its request. *Cf. Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 898 (9th Cir. 2012) ("Interpleader proceedings are pragmatic in nature and should be resolved expeditiously.").

II.     Wells Fargo's Entitlement To Attorneys' Fees

"[T]he proper rule, in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading." *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962). *See also Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984) ("Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action."). "[A] court will award fees from the proceeds whenever: (1) the party seeking fees is a disinterested stakeholder; (2) who had conceded liability; (3) has deposited the funds into court; and (4) has sought a discharge from liability." *Liberty Life*,

2012 WL 10184 at *3 (internal quotation marks omitted).

Wells Fargo has satisfied all of the threshold criteria for an award of attorneys' fees under the law of interpleader. Wells Fargo has already interpleaded the funds in the disputed account and been discharged from liability. Nor is there is any argument or evidence that Wells Fargo has an interest in the interpleaded funds or that this case was "unnecessarily prolonged due to [Wells Fargo's] wrongdoing or actions." *Liberty Life*, 2012 WL 10184 at *5. To the contrary, Wells Fargo was subjected to an unusually combative interpleader process in which it had to fend off unmeritorious tort counterclaims.

Citing a case from the Eleventh Circuit, *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380 (11th Cir. 1994), Wyo Tech points out that "[s]ome courts have declined to award fees to banks in situations where banks 'resort to interpleader in their normal course of business.'" (Doc. 310 at 3). Although Wyo Tech informs the Court of this line of authority, it does not apply it. Nor is Eleventh Circuit law controlling here.

At any rate, this line of authority is factually inapplicable. The "cost of business" theory of non-reimbursement appears to apply primarily to insurers that should expect conflicting claims from policy beneficiaries. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1719 (7th ed. 2021). And even *Mandalay Shores*, which extended the theory to deny attorneys' fees to a bank, distinguishes between banks acting as depository, as Wells Fargo would be considered here, and banks acting as the trustee of an estate, in which case the bank should anticipate multiple claimants to the estate and allocate the costs of litigation among its customers. *Mandalay Shores*, 21 F.3d at 383 ("[When] the bank is acting merely as a depository [and] there is little expectation that a dispute as to ownership will arise . . . an award of fees to the bank engaging in interpleader may be appropriate.").

For these reasons, the Court finds that an award of attorneys' fees is appropriate.[1] The remaining question is the amount of fees to which Wells Fargo is entitled.

---

[1] Because Wells Fargo is entitled to attorneys' fees under the law of interpleader, it is unnecessary to resolve Wells Fargo's alternative argument that it is entitled to attorneys' fees under Wyo Tech's account agreement. (Doc. 311 at 3.)

- 5 -

III.     Amount And Source Of Attorneys' Fees

When calculating the size of a fee award in an interpleader action, "the broad rule . . . is reasonableness." *Liberty Life*, 2012 WL 10184 at *4. With that said, "[a]ttorneys' fee awards to the disinterested interpleader plaintiff are typically modest." *Schreffler v. Metro. Life Ins. Co.*, 2006 WL 1127096, *6 (D. Ariz. 2006). This is because "the attorneys' fees are paid from the interpleaded fund itself, [and] there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). "[A]ttorneys' fee awards are [thus] properly limited to those fees that are incurred in filing the action and pursuing the [interpleader's] release from liability, not in litigating the merits of the adverse claimants' positions." *Id.* at 426.

Wells Fargo originally requested $39,981.30 in attorneys' fees. (Doc. 85.) In response, the Court signaled that it did not view Wells Fargo's hourly rates as extreme but was concerned about the amount of time spent on certain tasks and the vagueness of certain time entries. (Doc. 94 at 15.) In response, Wells Fargo has now reduced its fee request to $35,619.50. (Doc. 290 at 9.)

Wells Fargo's amended request is reasonable. Although attorneys' fees in interpleader actions are "typically modest," the Court notes that Wells Fargo's involvement was unusually protracted (through no fault of its own) and that the claimed hours "were reasonably expended in preparing and maintaining this interpleader action. [Wells Fargo] has not engaged in, nor charged any fees for, advocacy on behalf of any of the adverse claimants or for litigation of issues unrelated to reasonably effectuating the interpleader . . . ." *Liberty Life*, 2012 WL 10184 at *4–5. *See also* Wright, Miller & Kane § 1719 ("There are cases . . . in which the award is quite substantial because of the difficulties encountered by the stakeholder's attorney."); *A/S Krediit Pank v. Chase Manhattan Bank*, 303 F.2d 648, 649 (2d Cir. 1962) (awarding over $10,500 in fees and expenses—which

would be worth over $94,000 today[2]—where the interpleader was so complex "the docket entries alone fill six and a half printed pages").

Wyo Tech nevertheless maintains that Wells Fargo's fee request is "unreasonable" and states that it should be "no more than $20,000." (Doc. 310 at 3, 5.) But Wyo Tech does not explain why it now concedes that $20,000 is reasonable when it was previously unprepared to part with more than $10,930.30. (*Compare* Doc. 87 at 8 *with* Doc. 310 at 5.) Although Wyo Tech "incorporates by reference" the arguments in its earlier motion opposing attorneys' fees (Doc. 310 at 4), it would require judicial guesswork to identify the $9,069.70 to which Wyo Tech no longer objects. Such guesswork is prohibited by Local Rule 54.2(f)'s requirement that a response to a fee motion "shall separately identify each and every disputed time entry or expense item." LRCiv 54.2(f).

Finally, Wyo Tech argues that "all attorneys' fees incurred by Wells Fargo should be split equally by all parties claiming an interest in the funds." (Doc. 310 at 4.) But the Ninth Circuit has been clear that "attorneys' fees are paid from the interpleaded fund itself." *Tise*, 234 F.3d at 427.

Accordingly,

**IT IS ORDERED** that Wells Fargo's motion for attorneys' fees (Doc. 290) is **granted.**

**IT IS FURTHER ORDERED** that Wells Fargo is awarded $35,619.50 for its attorneys' fees and costs. The Clerk of Court is directed to pay Wells Fargo the sum of $35,619.50 from the interpleaded funds in the District Court of Arizona's registry to Wells Fargo's counsel of record.

Dated this 1st day of September, 2021.

Dominic W. Lanza
United States District Judge

---

[2] *See* https://www.usinflationcalculator.com/